## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>HAPPY CABBAGE ANALYTICS, INC.<br><br>Defendant. | Case No.: 1:25-cv-01083-JPW |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................1

PROCEDURAL HISTORY............................................................................3

STATEMENT OF FACTS .............................................................................4

STATEMENT OF QUESTIONS INVOLVED.................................................6

ARGUMENT ................................................................................................6

I.    PLAINTIFF LACKS ARTICLE III STANDING........................................6

    A.    Plaintiff's alleged injury is not "fairly traceable" to Defendant's
        conduct .........................................................................................7

        1.    Traceability Requires There to be a Causal Connection
            Between Plaintiff's Injury and Defendant's Conduct...............7

        2.    Defendant Maintains a Text Platform and Did Not Send
            Texts to Plaintiff....................................................................8

II.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR
    FAILURE TO STATE A CLAIM.............................................................11

    A.    Section 227(c)(5) of the TCPA applies only to telephone calls
        to residential subscribers ............................................................12

        1.    The Do-Not-Call Provisions of the TCPA Do Not Apply
            to Text Messages...................................................................13

        2.    The Court Need Not Defer to FCC Guidance .........................16

III.  PLAINTIFF'S SECOND CAUSE OF ACTION SHOULD BE
    DISMISSED BECAUSE SECTION 227(d) OF THE TCPA DOES
    NOT PROVIDE FOR A PRIVATE CAUSE OF ACTION .......................17

    A.    No private right of action exists for Plaintiff's second cause of
        action .........................................................................................17

    b.    Plaintiff's Complaint fails to allege any stop request was not
        honored within a "reasonable" time frame.........................................19

CONCLUSION ...........................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adler v. Vision Lab Telecomm., Inc.*,
    393 F. Supp. 2d 35 (D.D.C. 2005).................................................................18

*Alexander v. Sandoval*,
    532 U.S. 275 (2001)........................................................................................17

*Animal Science Prods., Inc. v. China Minmetals Corp.*,
    654 F.3d 462 (3d Cir. 2011) ............................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................11

*Braver v. NorthStar Alarm Servs., LLC*,
    No. 5:17-cv-0383, 2019 WL 3208651 (W.D. Okla. July 16, 2019)..................18

*Cordoba v. DIRECTV, LLC*,
    942 F.3d 1259 (11th Cir. 2019) ........................................................................8

*Cunningham v. Politi*,
    No. 4:18-cv-00362, 2019 WL 2519702 (E.D. Tex. Apr. 26, 2019)..................12

*Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*,
    450 F.3d 130 (3d Cir. 2006) ............................................................................11

*Davis v. CVS Pharmacy, Inc.*,
    __ F. Supp. 3d __, 2025 WL 2491195 (N.D. Fla. Aug. 26, 2025)
    .............................................................................................................12–15

*Duke Power Co. v. Carolina Env't Study Grp., Inc.*,
    438 U.S. 59 (1978)............................................................................................8

*Facebook, Inc. v. Duguid*,
    592 U.S. 395 ...................................................................................................16

*Franklin v. Upland Software, Inc.*,
    No. 1-18-CV-00236, 2019 WL 433650, at *2 (W.D. Tex. Feb. 1,
    2019) ..........................................................................................................9, 10

*Gaker v. Q3M Ins. Sols.*,
  No. 3:22-cv-00296, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023) .................... 13

*Holmes v. Back Drs, Ltd.*,
  695 F. Supp. 2d 843 (S.D. Ill. 2010) .................................................................. 18

*Jackson v. Direct Bldg. Supplies LLC*,
  No. 4:23-CV-01569, 2024 WL 184449, at *7 (M.D. Pa. Jan. 17,
  2024) ................................................................................................................... 12

*Jones v. Blackstone Med. Servs., LLC*,
  __ F. Supp. 3d ___, 2025 WL 2042764 (C.D. Ill. July 21, 2025) ............... 12, 14

*Kopff v. Battaglia*,
  425 F. Supp. 2d 76 (D.D.C. 2006) ................................................................ 17–18

*Linlor v. Five9, Inc.*,
  No. 17-cv-218, 2017 WL 2972447 (S.D. Cal. July 12, 2017) ............................. 9

*Loper Bright Enterprises v. Raimondo*,
  603 U.S. 369 (2024) ..................................................................................... 14, 16

*Luckau v. Sunrun, Inc.*,
  No.25-cv-01661-JST, 2025 WL 2780784 (N.D. Ca. Sept. 30,
  2025) ................................................................................................................... 18

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ......................................................................................... 6, 8

*Malleus v. George*,
  641 F.3d 560 (3d Cir. 2011) ............................................................................. 11

*McLaughlin Chiropractic Assocs., Inc., v. McKesson Corp.*,
  606 U.S. 146 (2025) .................................................................................. 12, 14, 16

*Moore v. Triumph CSR Acquisition, LLC*,
  No. 1:23-cv-04659, 2023 WL 8601528 (N.D. Ill. Dec. 12, 2023) .................... 13

*Orsatti v. Quicken Loans, Inc.*,
  No. 2:15-cv-09380, 2016 WL 7650574 (C.D. Cal. 2016) ................................. 19

*Pub. Int. Rsch. Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc.*,
  913 F.2d 64 (3d Cir. 1990) .......................................................................... 7, 10

*Riccio v. Sentry Credit, Inc.*,
  954 F.3d 582 (3d Cir. 2020) ...............................................................................13

*Santiago v. Warminster Twp.*,
  629 F.3d 121 (3d. Cir. 2010) ..............................................................................11

*Scruggs v. CHW Grp., Inc.*,
  No. 2:20-cv-48, 2020 WL 9348208 (E.D. Va. Nov. 12, 2022) ...........................7

*Sheski v. Shopify (USA) Inc.*,
  No. 19-cv-06858, 2020 WL 2474421 (N.D. Cal. May 13, 2020) ........................9

*Shoemaker v. Zeitlin*,
  No. 1:21-cv-1668, 2023 WL 3826460................................................................7

*Simmons v. Charter Comm's, Inc.*,
  222 F. Supp. 3d 121 (D. Conn. 2016)...............................................................20

*Smith v. Am.-Amicable Life Ins. Co. of Te*xas,
  No. CV 22-333, 2022 WL 1003762 (E.D. Pa. Apr. 4, 2022)..............................8

*Wilson v. PL Phase One Operations L.P.*,
  422 F. Supp. 3d 971 (D. Md. 2019)...................................................................18

**Statutes**

47 U.S.C. § 227 *et seq.* ..............................................................................*passim*

47 U.S.C. § 227(c)(1) ........................................................................................12

47 U.S.C. § 227(c)(5)...................................................................................*passim*

47 U.S.C § 227(d) ......................................................................................3, 16–18

**Other Authorities**

47 C.F.R. § 16.1200(c)........................................................................................12

47 C.F.R. § 64.1200(d)(3).............................................................................*passim*

47 C.F.R. § 64.1200(d)(4)...................................................................................18

89 FED. REG. 82518-01 (Oct. 11, 2024) (to be codified at 47 C.F.R. pt.
  64) ....................................................................................................................20

Defendant Happy Cabbage Analytics, Inc. ("Happy Cabbage" or "Defendant"), by and through its undersigned counsel, respectfully submits this brief in support of its motion to dismiss Plaintiff Asher Bronstin's Class Action Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## **INTRODUCTION**

This action arises out of claims by Asher Bronstin ("Plaintiff") based on two text messages that he allegedly received regarding products offered by "The Spot" over three years ago, on March 9 and March 17, 2022, respectively. Plaintiff asserts that these text messages violate the do-not-call provisions of the Telephone Consumer Protection Act ("TCPA"). Rather than sue The Spot, which sold the products at issue in the texts, Plaintiff has been engaged in a fishing expedition for a litigation target. Indeed, upon learning that The Spot was out of business, Plaintiff initially brought suit against Jane Technologies, Inc. ("Jane Technologies"), a software platform used in the cannabis industry that hosted The Spot's website. When Plaintiff realized his claims against Jane Technologies were too attenuated to sustain a TCPA claim, he replaced Jane Technologies with Happy Cabbage after conducting limited third-party discovery. This Action is an attempt to expand the scope of the TCPA to hold Happy Cabbage liable solely because it had the misfortune of having a customer that is no longer solvent use its text platform. The Complaint should be dismissed on numerous grounds set forth below.

Plaintiff's claims are predicated upon the theory that the two text messages he allegedly received violated 47 U.S.C. § 227(c)(5). Specifically, Plaintiff alleges that (i) he registered his number on the national Do Not Call Registry ("NDNCR") and received "telephone solicitations," and (ii) Happy Cabbage failed to maintain an internal do-not-call list, as required by 47 C.F.R. § 64.1200(d)(3). However, as demonstrated below, Plaintiff's claims fail as a matter of law.

**First**, this Court lacks subject-matter jurisdiction because Plaintiff does not have Article III standing. As demonstrated by Plaintiff's original effort to bring this Action against Jane Technologies, Plaintiff is desperately seeking to hold someone liable for the actions that a now defunct business, The Spot, allegedly took more than three years ago. The attenuated connection between Happy Cabbage and Plaintiff's claims is precisely why the Article III standing analysis includes a requirement that any injury is traceable to the alleged conduct of the defendant. Plaintiff cannot ask this Court to hold Happy Cabbage liable for the independent acts of The Spot just because Plaintiff cannot recover from that entity.

**Second**, Plaintiff's TCPA claim arises entirely out of the alleged receipt of two text messages. Plaintiff, however, has no viable TCPA claim because Section 227(c)(5) only protects against the receipt of unlawful *telephone calls*. Although Congress has had more than 30 years to amend the language of Section 227(c) to apply to both telephone calls and text messages, Congress has not chosen to do so.

Thus, these claims fail on this additional basis because this Court cannot impose statutory liability beyond the boundaries Congress created.

*Third*, Plaintiff's second cause of action fails because Congress has not provided a private right of action for consumers to bring suit for violations of regulations promulgated under Section 227(d) of the TCPA. Therefore, Plaintiff's cause of action under 47 C.F.R. § 64.1200(d)(3) must be dismissed.

*Finally*, Plaintiff's allegations regarding 47 C.F.R. § 64.1200(d)(3) are conclusory as they fail to allege that Happy Cabbage did not respond to Plaintiff's "STOP" request within a reasonable time, as required by the regulation.

## PROCEDURAL HISTORY

On June 13, 2025, Plaintiff filed a class action complaint in this Court against Jane Technologies ("Jane Complaint"), claiming that Jane Technologies violated the TCPA, 47 U.S.C. §227(c)(5) and its regulations, namely 47 C.F.R. §64.1200(d)(3), by sending text messages to Plaintiff's cellphone despite its registration on the NDNCR.  (ECF No. 1.)  Then, on August 19, 2025, Plaintiff amended his Class Action Complaint, this time naming Happy Cabbage ("Complaint").  Plaintiff made the exact same allegations against Happy Cabbage as set forth in the Jane Complaint, after using the Jane Complaint as a vehicle to conduct third-party discovery.  (ECF No. 9.)

## STATEMENT OF FACTS

### I.    PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that he received a text message from (562) 753-6060 on March 9, 2022. (Compl. ¶ 29.) This text message advertised "various cannabis goods" from The Spot. (*Id.* at ¶¶ 31, 34.) The text messages contained a link to The Spot's website, which was hosted by Jane Technologies. (*Id.* at ¶ 37.) Nowhere in the text message is Happy Cabbage identified. (*See id.*) Plaintiff further alleges he texted "STOP" in response to this March 9 text. (*Id.* at ¶ 34). Then, on March 17, 2022, less than ten days later, Plaintiff alleges he received a text message from the phone number (562) 753-6372, once again advertising The Spot and containing a link hosted by Jane Technologies (*Id.* at ¶ 35). Again, nothing in this text message identified Happy Cabbage. (*See id.*). In fact, Plaintiff did not learn about Happy Cabbage until he subpoenaed a telecommunications platform on June 20, 2025, after he filed the Jane Complaint. (*Id.* at ¶ 32.)

### II.    HAPPY CABBAGE OFFERS A TEXT PLATOFRM

Happy Cabbage provides software that cannabis retailers can utilize to manage their business. (Watson Decl. ¶ 4.) One such retailer was The Spot. (*Id.* at ¶ 8.) The Spot was one of Happy Cabbage's clients until December 3, 2023. (*Id.*) The Spot ceased its operations and went out of business no later than March 2024. (*Id.* at ¶ 9.)

Happy Cabbage provided a texting platform service to its customers at the time Plaintiff allegedly received the texts at issue. (*Id.* at ¶ 5.) This texting platform was just one service in a suite of tools Happy Cabbage offered its clients to help manage their businesses. (*Id.* at ¶ 6.) The platform allowed Happy Cabbage's clients to upload a list of customers or potential customers to receive text messages. (*Id.* at ¶ 5.) Happy Cabbage required clients who utilized this service, including The Spot, to affirm that it would only use Happy Cabbage to facilitate communications with customers who expressly consented to receive text advertisements. (*Id.* at ¶ 10.) The Spot agreed to those terms. (*Id.* at ¶ 11.)

A customer utilizing Happy Cabbage's text platform drafts the language of each communication, selects the customers who would receive the text message, and selects when to send the text message. (*Id.* at ¶ 12.) Happy Cabbage did not exercise any control over how its clients communicated with their customers beyond requiring each customer to represent that they would obtain any legally required consent. (*Id.* at ¶ 13.) Its clients, not Happy Cabbage, bear the responsibility for maintaining their customer lists, including maintaining an internal do-not-call list. (*Id.* at ¶ 14.) Happy Cabbage merely provided a texting platform which its clients could utilize to advertise to their customers.

## STATEMENT OF QUESTIONS INVOLVED

1.   Does Plaintiff lack Article III standing to bring this claim because his injury is not traceable to Happy Cabbage's conduct?

2.   Does section 227(c)(5) of the TCPA apply to text messages?

3.   Does 47 C.F.R. § 64.1200(d)(3) provide a private right of action?

4.   If 47 C.F.R. § 64.1200(d)(3) provides a private right of action, did Plaintiff properly allege his claim under this regulation?

## ARGUMENT

## I.    PLAINTIFF LACKS ARTICLE III STANDING

To have standing, a plaintiff must satisfy a three-part test: (1) plaintiff must have suffered an injury in fact; (2) plaintiff's injury must be fairly traceable to defendant's alleged conduct; and (3) a decision in plaintiff's favor would likely redress plaintiff's injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). With respect to traceability, an injury is traceable to defendant's conduct where plaintiff demonstrates a "causal connection between the injury and the conduct complained of." *Id.* at 560.  Specifically, the injury must "not [be] the result of the independent action of some third party not before the court." *Id.* at 560 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)).

A jurisdictional attack under Rule 12(b)(1) can either be facial or factual. *See Animal Science Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011).  To resolve a factual attack, the district court may review evidence

6

beyond the pleadings. *Id.* ("[W]hile a court generally looks only to the face of the plaintiff's complaint, must accept all alleged facts to be true, and is not permitted to make any findings of fact when deciding a Rule 12(b)(6) motion, a court may examine evidence and resolve factual disputes on a Rule 12(b)(1) motion."). Because it is a plaintiff's burden to establish that the court has subject matter jurisdiction to hear this claim, this Court does not need to presume the truthfulness of Plaintiff's allegations. *Shoemaker v. Zeitlin*, No. 1:21-cv-1668, 2023 WL 3826460, at \*2 ("[P]arties may levy a 'factual' attack, arguing one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdictional ken."). Where a plaintiff fails to establish any element of Article III standing, a court should dismiss Plaintiff's claim. *Id.*

### A. PLAINTIFF'S ALLEGED INJURY IS NOT "FAIRLY TRACEABLE" TO DEFENDANT'S CONDUCT

#### 1. Traceability Requires There to be a Causal Connection Between Plaintiff's Injury and Defendant's Conduct

The traceability element of Article III standing is necessary to "ensure that there is a genuine nexus between a plaintiff's injury and a defendant's illegal conduct." *Scruggs v. CHW Grp., Inc.*, No. 2:20-cv-48, 2020 WL 9348208, at \*4 (E.D. Va. Nov. 12, 2022) (internal citation omitted). A nexus exists where there is a "'substantial likelihood' that defendant's conduct cause[d] plaintiffs' harm." *Pub. Int. Rsch. Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 72 (3d

Cir. 1990) (citing *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 75, n.20 (1978)). Although traceability does not require that a plaintiff prove but-for causation, there still must be some "causal connection between the claimed injury and the challenged conduct." *See Duke Power Co.*, 913 F.2d at 72.; *see also Lujan*, 504 U.S. at 560. Furthermore, an "injury is not fairly traceable to the actions of a defendant if caused by the 'independent action of some third party not before the court.'" *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019) (quoting *Swann v. Secretary*, 668 F.3d 1285, 1288 (11th Cir. 2012)).

### 2.     Defendant Maintains a Text Platform and Did Not Send Texts to Plaintiff

To sustain a TCPA action, a "plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the [texts] to plaintiff's phone." *Smith v. Am.-Amicable Life Ins. Co. of Te*xas, No. CV 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022) (quoting *Smith v. Direct Bldg. Supplies, LLC*, No. CV 20-3583, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021). Courts in this Circuit have found that a plaintiff has met this burden when a complaint alleges that the calls or texts identify the party contacting the plaintiff. *See, e.g.*, *Am-Amicable Life Ins.*, 2022 WL 1003762, at *2. Additionally, courts have found that a plaintiff lacks standing "if an independent source would have caused him to suffer the same injury." *Cordoba*, 924 F.3d at 1272 (finding class members who did not tell caller

to place them on their internal do-not-call list could not trace their injury to the caller).

Plaintiff cannot trace any alleged injury to Happy Cabbage because Happy Cabbage is a texting platform—not a texter—and any injury Plaintiff allegedly experienced was caused by The Spot, an independent third-party that, assuming Plaintiff can otherwise prove a TCPA violation, would have injured Plaintiff irrespective of the software used to send the text messages. To find a texting platform like Happy Cabbage liable for violating the TCPA, a plaintiff must allege that the platform controls the "manner and means of the text message campaign they conducted." *Sheski v. Shopify (USA) Inc.*, No. 19-cv-06858, 2020 WL 2474421, at *4 (N.D. Cal. May 13, 2020); *Linlor v. Five9, Inc.*, No. 17-cv-218, 2017 WL 2972447, at *3 (S.D. Cal. July 12, 2017).

In *Franklin v. Upland Software, Inc.*, a court denied plaintiff's motion for summary judgment where the text platform only stored consent records of a business's customers and where the business utilizing the platform drafted the campaign, chose the time the texts should be sent, and selected a list of customers (who had opted-in to solicitation) to receive the text campaign. No. 1-18-CV-00236, 2019 WL 433650, at *2 (W.D. Tex. Feb. 1, 2019), *adopting R. & R.*, No. 1:18-CV-236, 2019 WL 274578 (W.D. Tex. Mar. 12, 2019). Like here, in *Franklin*, a business

could only utilize the defendant's platform to send texts to consenting customers. *Franklin,* 2019 WL 433650, at *2; (Watson Decl. ¶ 10).

Happy Cabbage did not send the text messages to Plaintiff. (*See* Watson Decl. ¶ 12.) Nor did Happy Cabbage instruct or control how The Spot sent text messages to Plaintiff. (*See id.* at ¶ 13.) Therefore, there is not a "substantial likelihood" that Defendant's conduct caused Plaintiff's injury. *See Pub. Int. Rsch. Grp. of N.J., Inc.*, 913 F.2d at 72. Further, no amount of discovery will show that Defendant sent the text messages Plaintiff allegedly received. (*See* Watson Decl. ¶ 13.) Thus, Plaintiff cannot show that his injury is fairly traceable to Defendant's conduct of providing a texting platform The Spot used to text its customers. (*See id.* at ¶¶ 13–14.)

The context of this claim confirms this result. Specifically, The Spot—the business that allegedly caused Plaintiff's injury—is no longer operating. Now, Plaintiff is suing an attenuated third-party software provider instead because, more than three years after the texts at issue were allegedly sent, The Spot is out of business. (*Id.* at ¶ 10.) Happy Cabbage simply provided a platform for The Spot to use, just as Jane Technologies provided a platform for The Spot to host links. And just as Plaintiff realized Jane Technologies could not be held liable for Plaintiff's alleged injury, Plaintiff cannot hold Happy Cabbage liable for an alleged injury to which Happy Cabbage did not contribute. Because Plaintiff has failed to establish

the traceability element of Article III standing, this Court should dismiss Plaintiff's

Complaint.

## II.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Under the Federal Rules of Civil Procedure, a court must dismiss a complaint

where plaintiff fails to "state a claim to relief that is plausible on its face." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Santiago v. Warminster Twp.*, 629

F.3d 121, 128 (3d. Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678 (2009)). When

deciding a motion to dismiss, a court in the Third Circuit must engage in a three-part

inquiry: (1) identify the elements plaintiff must plead to state a claim; (2) strike

conclusory allegations; and (3) looking only at the well-pleaded components,

evaluate whether all elements are identified are sufficiently alleged. *Malleus v.*

*George*, 641 F.3d 560, 563 (3d Cir. 2011). Thus, while Rule 12(b)(6) requires a

Court to generally accept well-pled factual allegations as true, it "need not credit the

non-movant's conclusions of law or unreasonable factual inferences." *Curay-*

*Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 133 (3d Cir.

2006).

## A.    SECTION 227(C)(5) OF THE TCPA APPLIES ONLY TO TELEPHONE CALLS TO RESIDENTIAL SUBSCRIBERS

Plaintiff asserts two causes of action under 227(c)(5) of the TCPA. But this section only provides a private right of action to individuals who received "more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations" promulgated under this Section. 47 U.S.C. § 227(c)(5) (emphasis added); *see also Cunningham v. Politi*, No. 4:18-cv-00362, 2019 WL 2519702, at *4 (E.D. Tex. Apr. 26, 2019), *adopting R. & R.*, 2019 WL 2526536 (E.D. Tex. June 19, 2019); *Jones v. Blackstone Med. Servs., LLC*, __ F. Supp. 3d ___, 2025 WL 2042764 (C.D. Ill. July 21, 2025). Congress granted the FCC authority under Section 227(c), to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy." 47 U.S.C. § 227(c)(1). The corresponding federal regulation—47 C.F.R. § 16.1200(c)—provides "[n]o person or entity shall initiate a telephone solicitation to . . . [a] residential telephone subscriber who has his or her telephone number on the [NDNCR.]" 47 C.F.R. §16.400(c)(2).

Here, Plaintiff's action concerns two text messages sent to his cellphone. Text messages are not telephone calls, and a cellphone user is not a residential telephone subscriber.[1] *Davis v. CVS Pharmacy, Inc.*, __ F. Supp. 3d __, 2025 WL 2491195, at

---

[1]     Last year, this District published *Jackson v. Direct Bldg. Supplies LLC*, which understood "residential telephone subscriber" to encompass cellphones. No.

*4 (N.D. Fla. Aug. 26, 2025). Indeed, courts have recognized that "[a] cellular phone and a residential phone are not the same thing," *Moore v. Triumph CSR Acquisition, LLC*, No. 1:23-cv-04659, 2023 WL 8601528, at *2 (N.D. Ill. Dec. 12, 2023); *accord Gaker v. Q3M Ins. Sols.*, No. 3:22-cv-00296, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023). Because Plaintiff cannot plausibly allege that his claim is based on the receipt of "telephone calls" or that he is a "residential telephone subscriber," his Complaint should be dismissed. *See Davis*, 2025 WL 2491195, at *2–4.

1.    **The Do-Not-Call Provisions of the TCPA Do Not Apply to Text Messages**

Under the plain language of Section 227(c)(5), a text message cannot be a telephone call. "[W]hen a statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 588 (3d Cir. 2020) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank,*

---

4:23-CV-01569, 2024 WL 184449, at *7 (M.D. Pa. Jan. 17, 2024). However, this decision predates the Supreme Court's decision in *McLaughlin Chiropractic Assocs., Inc., v. McKesson Corp.*, 606 U.S. 146, 152 (2025). Thus, the Court could revisit the *Jackson* precedent and find that the tools of statutory interpretation illustrate that cellphone numbers are not residential telephone subscribers under the TCPA. This Court need not address this question to dismiss Plaintiff's claim by finding text messages are not telephone calls under the TCPA. *See Davis*, 2025 WL 2491195, at *1 ("Finding a text message is not a telephone call makes it unnecessary for the court to address the separate (and more difficult) question of whether a cell phone subscriber is a "residential telephone subscriber.").

*N.A.*, 530 U.S. 1, 6 (2000) (cleaned up)). As the court in *Davis* found, Section 227(c)(5) only applies to telephone calls:

> No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that manner.

*Davis*, 2025 WL 2491195, at *1.

Other courts, especially in the wake of the Supreme Court's decisions in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) and *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), have dismissed TCPA claims based on text messages where the subsections invoked applied to only residential subscribers or required the receipt of "telephone calls" to bring a private right of action. For example, the district court in *Jones v. Blackstone* granted defendant's motion to dismiss and noted:

> Section 227(c)(5) simultaneously explicitly refers to a "telephone call," a term not defined in the statute itself, and remains silent as to its application to text messages. Text messaging was not an available technology in 1991, and thus "telephone call" would not have included text messages or SMS messages. *See id.* ("We find words' ordinary, contemporary, common meaning by looking at what they meant when the statute was enacted ...."); Alex Fitzpatrick, How Text Messages Are Being Killed and Replaced, TIME (Dec. 3, 2014), https://time.com/3612277/text-message-history-future/ ("The world's very first text message, sent Dec. 3, 1992, was a cheerful, if early, holiday greeting: 'Merry

Christmas,' it read, short and sweet."). Moreover, in today's American parlance, "telephone call" means something entirely different from "text message." Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages. *See West v. Hoy*, 126 F.4th 567, 575 (7th Cir. 2025) (stating a court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (quoting *BedRoc Ltd., LLC v. U.S.*, 541 U.S. 176, 183, 124 S. Ct. 1587, 158 L. Ed. 2d 338 (2004)); *Melvin*, 948 F.3d at 852 ("If the statutory language's plain meaning is unambiguous, [the court's] inquiry ends there.").

2025 WL 2042764, at *4.

Further, the other subsections of the TCPA show that Congress could have referenced a "text message" in Section 227(c)(5) if Congress intended the do not call provisions to apply to text messages. The TCPA has been amended many times since 1991, but it was not until 2008 that "text message" first was defined. *See* § 227(e)(8)(C). Congress specifically defined "text message" to "not include . . . a real time, two-way voice . . . communication." 47 U.S.C. § 227(e)(8)(C)(iii).

Despite defining "text message" as to include telephone calls, Congress did not change the definition of "telephone solicitation," the receipt of which are required to trigger the protections of Section 227(c)(5) to include texts, as opposed to calls. Nor does any part of Section 227(c) reference a "text message." By not amending Section 227(c) even though Congress addressed text messages in other subsections of the TCPA, Congress understood and intended the term "call" to be interpreted in plain, ordinary use to mean a voice telephone call. *See Davis*, 2025

15

WL 2491195, *2–3. Because Plaintiff is only bringing claims for text messages and not telephone calls, his Complaint should be dismissed.

### 2. The Court Need Not Defer to FCC Guidance

The Supreme Court in *Loper Bright* directed courts to interpret statutes to achieve "the reading the court would have reached if no agency were involved." *Loper Bright*, 603 U.S. at 400 (internal quotation omitted); *see also Mclaughlin Chiropractic Assocs., Inc.*, 606 U.S. at 155. As established above, the term "telephone call" is not ambiguous and does not contemplate text messages. As the Supreme Court has made clear, neither courts nor the FCC can creatively read a term into the TCPA. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 407. Instead, courts, not the FCC, must use traditional tools of statutory interpretation to enforce the statutes as passed by Congress. *See Loper Bright*, 603 U.S. at 412 (noting "legal interpretation" is the province of the judiciary). Because Congress did not intend the TCPA to cover text messages when it drafted the TCPA in 1991 and failed to include text messages in Section 227(c) in any subsequent amendment of the TCPA, this Court should find that text messages are not covered by the TCPA and dismiss Plaintiff's claims.

III.  **PLAINTIFF'S SECOND CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE SECTION 227(d) OF THE TCPA DOES NOT PROVIDE FOR A PRIVATE CAUSE OF ACTION**

Even if this Court does not dispose of Plaintiff's entire Complaint, this Court should dismiss Plaintiff's second cause of action as the TCPA does not provide a private right of action for technical violations promulgated under 47 C.F.R. § 64.1200(d). More still, Plaintiff's second cause of action is deficient as Plaintiff fails to allege that Happy Cabbage did not honor his "STOP" request within a "reasonable" timeframe.

### A.  NO PRIVATE RIGHT OF ACTION EXISTS FOR PLAINTIFF'S SECOND CAUSE OF ACTION

"The TCPA . . . does not create a private right of action for every violation of its provisions, but instead creates such a right only in specific circumstances." *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 90 (D.D.C. 2006). Congress did not create a private right of action for individuals to bring suit for a company's alleged violation of technical regulations, like maintenance of an internal do-not-call list. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Private rights of action to enforce federal law must be created by Congress."). Although Plaintiff purports to bring his second cause of action under Section 227(c)(5) of the TCPA, the regulation at issue—47 C.F.R. §64.1200(d)—was promulgated under § 227(d) of the TCPA, for which there is no private right of action.

17

Because a Plaintiff can only bring a cause of action for a violation when Congress has created a private right of action, it is imperative to first determine under which section of the TCPA and its enabling regulations a Plaintiff brings his claims. For example, Section 227(b)(3) of the TCPA provides a private right of action for individuals to bring suit for violations of the TCPA's automatic telephone dialing systems and pre-recorded voice prohibitions. *See* 47 U.S.C. §227(b)(3)(A). Similarly, Section 227(c)(5) provides a private right of action for "regulations prescribed under *this* subsection" concerning privacy rights to avoid receiving telephone solicitations and establishing the NDNCR. *Id.* at § 227(c)(5)(A) (emphasis added).

In contrast with subsections (b) and (c), Section 227(d) concerns "technical and procedural standards," such as how a company must identify itself. *See* 47 C.F.R. § 64.1200(d)(4); *Braver v. NorthStar Alarm Servs., LLC*, No. 5:17-cv-0383, 2019 WL 3208651, at * 15 (W.D. Okla. July 16, 2019); *see also Luckau v. Sunrun, Inc.*, No.25-cv-01661-JST, 2025 WL 2780784, at *1–2 (N.D. Ca. Sept. 30, 2025). Congress did not create a private right of action under Section 227(d), rather Congress granted the FCC the power to promulgate regulations creating these technical standards, which can be enforced by the FCC. Reading the TCPA in its entirety shows that Congress knew how to create a private right of action, yet it chose not to provide one for Section 227(d) and regulations promulgated under it (like 47

C.F.R. § 64.1200(d)(3)). *Holmes v. Back Drs, Ltd.*, 695 F. Supp. 2d 843, 854 (S.D. Ill. 2010); *Kopff*, 425 F. Supp. 2d at 90–91 (finding no right of action under §227(d)); *Adler v. Vision Lab Telecomm., Inc.*, 393 F. Supp. 2d 35, 37–39 (D.D.C. 2005) (same).

Therefore, Plaintiff cannot use Section 227(c)(5)'s private right of action to recover for a violation of a regulation promulgated under subsection (d). *See Wilson v. PL Phase One Operations L.P.*, 422 F. Supp. 3d 971, 98182 (D. Md. 2019) ("[T]he requirements of §64.1200(d) set forth the procedural standards for telemarketers to maintain their own, company-specific, do-not-call lists and, consequently, appear to fall under the aegis of subsection *d* of the TCPA," rather than 47 U.S.C. § 227(c) (quoting *Worsham v. Travel Options, Inc.*, No. 1:14-cv-02749, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017)). Thus, this Court should dismiss Plaintiff's second cause of action because there is no private right of action under § 64.1200(d)(3).

### B. PLAINTIFF'S COMPLAINT FAILS TO ALLEGE ANY STOP REQUEST WAS NOT HONORED WITHIN A "REASONABLE" TIME FRAME

Even if Congress created a private right of action for a violation of Section 64.1200(d)(3), Plaintiff's Complaint fails to plead facts that plausibly allege Plaintiff's "STOP" request was not honored within a reasonable time. Section 64.1200(d)(3) states that "[n]o person or entity shall initiate . . . any call for

19

telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive [telemarketing calls] made by or behalf of that person or entity." 47 C.F.R. § 64.1200(d). Under 47 C.F.R. § 64.1200(d)(3), prior to April 11, 2025, a defendant was required to comply with an internal do-not-call request within 30 days. 47 C.F.R. § 64.1200(d)(3); *see also Orsatti v. Quicken Loans, Inc*., No. 2:15-cv-09380, 2016 WL 7650574, *7 (C.D. Cal. 2016) (explaining that § 64.1200(d)(3) "allows the Defendant a reasonable [time] to honor the [do-not-call] request, not to exceed 30 days" and operates as a "safe harbor provision" barring liability unless subsequent communications are "outside of the 30 day window"); *Simmons v. Charter Comm's, Inc*., 222 F. Supp. 3d 121, 140 (D. Conn. 2016) (no liability, even though plaintiff "received three additional calls" after making do-not-call request, because the defendant "honored Simmons' request within 30 days").[2]

Here, Plaintiff alleges he received the first text message on March 9, 2022, and that he sent a "STOP" request the same day. (Compl. ¶¶ 31, 34.) Plaintiff alleges he received the second text message on March 17, 2022—only eight days after he

---

[2]    Although the FCC recently amended § 64.1200(d)(3) timeframe to 10 days, the 30-day reasonable timeframe controls because the texts at issue were allegedly sent in March of 2022. *See* FCC, Strengthening the Ability of Consumers To Stop Robocalls, 89 FED. REG. 82518-01 (Oct. 11, 2024) (to be codified at 47 C.F.R. pt. 64). Even still, the two text messages at issue here were received only eight days apart.

sent his "STOP" request. (*Id.* at ¶ 35.) Because the text messages at issue were both allegedly sent within 30 days of each other, Plaintiff fails to plausibly allege that his "STOP" request was not honored within a reasonable timeframe. For the foregoing reasons, Plaintiff's second cause of action must be dismissed.

## **CONCLUSION**

For the reasons set forth above, Happy Cabbage respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety, or in the alternative, dismiss Plaintiff's second cause of action.

Dated: November 4, 2025            Respectfully submitted,

*/s/ Steven W Schlesinger*
Steven W Schlesinger (PA Bar No. 332869)
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich St
New York, NY 10007
Tel.: (212) 808-7740
SSchlesinger@KelleyDrye.com

Whitney M. Smith (*pro hac vice* forthcoming)
**KELLEY DRYE & WARREN LLP**
7 Giralda Farms, Suite 340
Madison, New Jersey 07940
Tel.: (973) 503-5900
WSmith@KelleyDrye.com

*Counsel for Happy Cabbage Analytics, Inc.*

## **CERTIFICATE OF NON-CONCURRENCE**

I hereby certify that on October 31, 2025, counsel for Happy Cabbage Analytics, Inc. outlined the bases for the foregoing motion, and counsel for Plaintiff advised that they do not concur in the relief requested.

Dated: November 4, 2025

*/s/ Steven W Schlesinger*
Steven W Schlesinger


## **CERTIFICATE OF WORD COUNT**

I hereby certify that this brief contains 4,922 words in accordance with Local Rule 7.8(b)(2).

Dated: November 4, 2025

*/s/ Steven W Schlesinger*
Steven W Schlesinger

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing to be served via the Court's

Electronic Case Filing (ECF) system upon the following:

**Andrew Roman Perrong, Esq.**
Perrong Law LLC
2657 Mount Caramel Avenue
Glenside, Pennsylvania 19038
Tel.: (215) 225-5529
a@perronglaw.com

**Anthony I. Paronich**
Paronich Law, P.C.
350 Lincoln St., Suite 2400
Hingham, MA 02043
Tel.: (617) 485-0018
Anthony@paronichlaw.com

*Counsel for Plaintiff*

Dated: November 4, 2025

*/s/ Steven W Schlesinger*
Steven W Schlesinger