# INDEX OF UNPUBLISHED CASES

**Argentina v. Wells Fargo, Not Reported in Fed. Supp. (2022)**

2022 WL 3337728

2022 WL 3337728
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Alexander ARGENTINA, Plaintiff,

v.

WELLS FARGO, Defendant.

CIVIL NO: 1:22-CV-00374
|
Signed June 16, 2022

**Attorneys and Law Firms**

Alexander Argentina, Pittsburgh, PA, Pro Se.

William P. Reiley, Pro Hac Vice, Ballard Spahr LLP, Mount Laurel, NJ, Michael Jm Fausey, Philadelphia, PA, for Defendant.

**REPORT AND RECOMMENDATION**

Susan E. Schwab, United States Magistrate Judge

**I. Introduction.**

 **\*1** Before the court is the motion of the plaintiff Alexander Argentina ("Argentina") to remand this action to the Court of Common Pleas of Dauphin County, Pennsylvania. Argentina contends that this court lacks subject-matter jurisdiction. For the reasons set forth below, we recommend that Argentina's motion to remand the case be denied.

**II. Background and Procedural History.**

Argentina filed this action in the Dauphin County Court of Common Pleas on February 16, 2022. *See doc. 4* at 2. He names Wells Fargo ("Wells Fargo") in his complaint as the defendant, alleging an intentional tort and violations of his civil rights. *Id.* at 2, 8, 9. According to Argentina, when he tried to cash a check at the Harrisburg branch of Wells Fargo, he was denied tender of payment in the full amount of $25,000. *Id.* at 9. He alleges this was due to discrimination based on his race. *Id.* Argentina seeks as damages the outstanding balance from the transaction, as well as emotional damages, totaling $10,000,000. *Id.* at 11.

On March 14, 2022, Wells Fargo removed the case to this court. *See doc. 1.* The next day, Wells Fargo moved for an extension of time to respond to Argentina's complaint. *See*

*doc. 2.* We entered a scheduling order that same day staying Wells Fargo's deadline to respond to the complaint until after a status conference scheduled for April 27, 2022. *Doc. 3.* Following the conference, we granted Argentina leave to file an amended complaint on or before May 31, 2022. *Doc. 7.*

On April 28, 2022, Argentina sent an *ex parte* communication via email to the undersigned's courtroom deputy attempting to have his case remanded. *See doc. 9.* Following a court order instructing him that a motion is the proper method to seek an order from the court, Argentina filed the instant motion to remand on May 9, 2022. *See docs. 9, 10.* In his brief in support of the motion, Argentina argues that a "CAFA exception applies," and that the court should find that "the amount in controversy does not exceed $5 million." *Doc. 10* at 2. [1] Wells Fargo filed a brief in opposition to Argentina's motion on May 16, 2022, arguing that the court has diversity jurisdiction and thus, the removal was appropriate. *See doc. 11.* Although as noted, Argentina was granted leave to file an amended complaint, Argentina has not filed an amended complaint. [2]

Finally, we note that Wells Fargo filed a motion to dismiss this case for failure to state a claim on June 13, 2022. *Doc. 13.* That motion will be addressed by a separate Report and Recommendation issued in due course after the motion has been fully briefed by both parties.

**III. Discussion.**

 **\*2** 28 U.S.C. § 1447, which governs the remand of cases to state courts, reads in pertinent part:

> (c) A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by

Argentina v. Wells Fargo, Not Reported in Fed. Supp. (2022)
2022 WL 3337728

Case 1:25-cv-01083-JPW    Document 27-2    Filed 11/14/25    Page 3 of 24

the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

28 U.S.C. § 1447(c). Argentina asserts that because this court lacks subject-matter jurisdiction, the case should be remanded, and in the alternative, he contends that should his case remain in federal court he should be granted jurisdictional discovery. *Doc. 10* at 2. Wells Fargo in its brief in opposition argues that the parties have complete diversity because the parties are citizens of different states (Pennsylvania and South Dakota, respectively) and the amount in controversy exceeds $75,000. *See doc. 11.* Wells Fargo also contends that Argentina did not plead sufficient facts to warrant jurisdictional discovery. *Id.*

**A. This court has subject-matter jurisdiction over this matter.**

"Federal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994), and "they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986). The court has an obligation to satisfy itself that it has subject-matter jurisdiction. *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77-78 (3d Cir. 2003). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The party who removed the case to federal court bears the burden of showing that the court has subject-matter jurisdiction, and the removal statute is "strictly construed against removal." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 219 (3d Cir. 2005).

Wells Fargo removed this case, asserting that this court has diversity jurisdiction. *See doc. 1.* [3] In diversity jurisdiction cases, the party asserting diversity jurisdiction bears the burden of proof. *McNutt v. General Motors Acceptance Corporation*, 298 U.S. 178, 189 (1936); *Samuel–Bassett v. KIA Motors American, Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). United States District Courts have diversity jurisdiction over civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between *inter alia* citizens of different states. 28 U.S.C. § 1332. Section 1332 requires complete diversity. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). There is complete diversity only when "the

citizenship of each plaintiff is diverse from the citizenship of each defendant." *Id.*

**\*3** A natural person is a citizen of the state in which they are domiciled. *See Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008) (citing *Gilbert v. David*, 235 U.S. 561, 569 (1915)). Domicile is legally defined as the person's state of residence accompanied by the intent to remain there indefinitely. *Krasnov v. Dinan*, 465 F.2d 1298, 1300–01 (3d Cir. 1972). A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c); *see also Wachovia Bank v. Schmidt*, 546 U.S. 303, 306–07 (2006) ("[A] bank's citizenship is determined by the place designated in the bank's articles of association as the location of its main office[.]").

Here, Wells Fargo alleges that Argentina is a citizen of the Commonwealth of Pennsylvania and domiciled therein. *See doc. 1* at ¶ 4. Wells-Fargo is incorporated and has its main office in South Dakota (*see doc. 1* at ¶ 5) and thus is a citizen of South Dakota. Thus, there is complete diversity in this matter.

"In removal cases, determining the amount in controversy begins with a reading of the complaint filed in the state court." *Samuel-Bassett*, 357 F.3d at 398. There is a "broad good faith requirement" in a plaintiff's complaint regarding the amount in controversy. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938); *Golden v. Golden*, 382 F.3d 348, 354–55 (3d Cir. 2004). 28 U.S.C. § 1446(c)(2) reads, in pertinent part, that "[i]f removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). In other words, "[i]f the complaint demands relief solely in the form of a specific sum and the case was removed from a state court ... then the demanded sum in the complaint constitutes the amount in controversy unless the removing defendant shows the demand was made in bad faith." *Manhattan Telecommunications Corp. v. Granite Telecommunications, LLC*, 500 F. Supp. 3d 255, 261 (D. Del. 2020).

Here, Argentina's requests damages of $10,000,000 (*see docs. 10, 12*). We do not find that there is an adequate factual basis for this amount of damages. Nevertheless, we do not find that Argentina cannot recover less than $75,000 in damages to a legal certainty.

2022 WL 3337728

**B. Jurisdictional discovery is unwarranted.**

Jurisdictional discovery may be appropriate in some cases. *See Lincoln Ben. Life Co. v. AEI Life*, LLC, 800 F.3d 99 (3d Cir. 2015); *see also Fameco Real Estate, L.P. v. Bennett*, 2013 WL 1903490, *6 n. 8 (D. N.J. May 7, 2013). Here, however, Argentina has not shown that jurisdictional discovery is appropriate.

"Generally, when parties dispute facts necessary to establish jurisdiction, district courts allow jurisdictional discovery unless the claim is 'clearly frivolous.' " *Huffman v. Granite Servs. Int'l, Inc.*, No. 4:21-CV-01184, 2022 WL 821424 (M.D. Pa. Mar. 17, 2022). Such discovery is made available in motions for remand as well as motions under Federal Rule of Civil Procedure 12(b)(1). *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016) ("Because a motion to remand shares an essentially identical procedural posture with a challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), it is properly evaluated using the same analytical approach."). In these circumstances, jurisdictional discovery should be narrowly tailored, and oftentimes "a few responses to interrogatories will ... suffice." *Lincoln Ben Life Co.*, 800 F.3d at 109.

 **\*4** Here, Argentina seeks discovery to destroy diversity jurisdiction. But that is not a permissible use of jurisdictional discovery. *See Witasick v. Hambrecht*, 2013 WL 1222680, *6 n. 10 (D. N.J. Mar. 25, 2013) ("[T]his Court knows of no case where jurisdictional discovery is sought to defeat, not establish, jurisdiction."). Finally, Argentina's contention that the amount in controversy does not exceed $75,000, despite pleading that the amount in controversy was $ 10,000,000, is "clearly frivolous," and jurisdictional discovery is not warranted under these circumstances.

**IV. Recommendation.**

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that Argentina's motion to remand (*doc. 10*) be **DENIED.**

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings,

recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **16 th** day of **June, 2022.**

**All Citations**

Not Reported in Fed. Supp., 2022 WL 3337728

## Footnotes

1    Under the Class Action Fairness Act of 2005 ("CAFA"), the amount in controversy must exceed $ 5,000,000. Since CAFA only applies to limited class actions, Argentina's reference to CAFA is puzzling. His claim does not fall under its purview because he is a single plaintiff under § 1332(a).

2    Argentina cannot merely amend his complaint to remove diversity jurisdiction, as the Third Circuit has held that "a plaintiff following removal cannot destroy federal jurisdiction simply by amending a complaint that initially satisfied the monetary floor." *Angus v. Shiley Inc.*, 989 F.2d 142, 145 (3d Cir. 1993).

3    Because Wells Fargo asserts only that the court has diversity jurisdiction, we address only diversity jurisdiction here. The nature of Argentina's claims are not clear. Although Argentina contends that he was discriminated against because of his race, he has not specified whether he is asserting a state race-based claim, a federal race-based claim, or both. That issue can be addressed in connection with the pending motion to dismiss for failure to state a claim.

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01083-JPW    Document 27-2    Filed 11/14/25    Page 6 of 24

Brown v. Marler, Not Reported in Fed. Supp. (2020)

2020 WL 1975064
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Timothy BROWN, et al., Petitioners,

v.

Sean MARLER, Respondent.

CIVIL ACTION No. 20-1914
|
Filed 04/24/2020

**Attorneys and Law Firms**

Linda Dale Hoffa, Dilworth Paxson LLP, Philadelphia, PA, for Petitioners.

**MEMORANDUM**

ANITA B. BRODY, J.

**\*1** On April 15, 2020, three detainees in the Philadelphia Federal Detention Center ("FDC")—Timothy Brown, Myles Hannigan, and Anthony Hall ("Petitioners")—filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging conditions of confinement at the FDC in light of the current COVID-19 outbreak. They seek to represent a class of all current and future FDC detainees, including pretrial detainees, convicted detainees awaiting sentence, and sentenced detainees. They argue that their confinement in the FDC violates the Fifth and Eighth Amendments. They ask the Court to (1) release all medically vulnerable detainees to home confinement; (2) order the FDC to take steps that will mitigate the COVID-related risks for those detainees who remain confined; and (3) appoint a Special Master to chair a Coronavirus Release Committee, which would make recommendations on release decisions and mitigation of prison conditions. Respondent Sean Marler—the FDC warden—has filed a motion to dismiss the petition under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). He argues that the Court lacks subject-matter jurisdiction under § 2241 and that the petition is meritless. Petitioners disagree.

Before the Court can reach the parties' merit-based arguments, it must determine the threshold question of whether it has subject-matter jurisdiction. District courts have the authority to order limited jurisdictional discovery when facts related to subject matter jurisdiction are in dispute.

Petitioners seek discovery as to the conditions of the FDC, including an on-site inspection from a neutral investigator. Respondent objects to this inspection request, arguing that the Court lacks jurisdiction under § 2241, and thus lacks the power to order an inspection or any other discovery. More importantly, Respondent also argues that any on-site inspection could have dangerous consequences by disrupting the careful measures the BOP has put in place to prevent a COVID-19 outbreak from occurring at the FDC.

Because the Court has not yet determined whether it has jurisdiction, it certainly is premature to consider an on-site inspection. [1] *Limited* jurisdictional discovery as to the FDC's conditions is appropriate at this stage, however, to evaluate whether "extraordinary circumstances" justify exercising § 2241 jurisdiction over the pretrial detainees at the FDC. *See Reese v. Warden Philadelphia FDC*, 904 F.3d 244, 246 n.2 (3d Cir. 2018) (recognizing that "exceptional circumstances" may—in rare situations—justify consideration of a federal detainee's pretrial § 2241 petition).

**I. Discussion**

**\*2** A large portion of the detainees at the Federal Detention Center are awaiting trial. Resp't. Mot. to Dismiss, at 24 n.12 (ECF No. 12-2). As a general rule, a "federal detainee's request for release pending trial can only be considered under the Bail Reform Act and not under a § 2241 petition for habeas relief." *Reese*, 904 F.3d at 245 (3d Cir. 2018). Respondent cites *Reese* to argue that this Court lacks § 2241 jurisdiction over the FDC's pretrial detainees. [2] However, "[t]he Supreme Court has suggested that pretrial habeas relief might be available to a federal defendant in 'exceptional circumstances.' " *Id.* at 246 n.2 (citations omitted). As the Third Circuit has explained:

Neither the Supreme Court nor this Court has delineated the circumstances that might qualify as "exceptional" in this context.... We have ruled that a state prisoner may pursue a pretrial § 2241 petition without exhausting state remedies in "extraordinary circumstances," which might exist when there is a showing of "delay, harassment, bad faith, or other intentional activity" on the part of the state. *Moore v. DeYoung*, 515 F.2d 437, 447 n.12 (3d Cir. 1975). We need not delimit the precise bounds of any exception here....

*Reese*, 904 F.3d at 246 n.2. [3]

Brown v. Marler, Not Reported in Fed. Supp. (2020)

Case 1:25-cv-01083-JPW    Document 27-2    Filed 11/14/25    Page 7 of 24

**\*3**  To be sure, this exception is extremely rare. *See id.* ("If a federal prisoner is ever entitled to relief under § 2241 based on something that happened before trial, the circumstances are so rare that they have apparently not yet arisen." (quoting *Medina v. Choate,* 875 F.3d 1025, 1026 (10th Cir. 2017))). "But the unfolding global pandemic and health crisis ... are anything but typical." *Hope v. Warden York Cty. Prison,* —— F.3d ——, 2020 WL 1922372, at \*2 (3d Cir. Apr. 21, 2020). "These ... are not ordinary times.... [T]he COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts...." *United States v. Roeder,* —— F. App'x. ——, 2020 WL 1545872, at \*3 (3d Cir. Apr. 1, 2020).

COVID-19 has forced courts across the country to grapple with elusive legal standards that ask whether "extraordinary and compelling" or "exceptional" circumstances exist. In two recent opinions, the Third Circuit has provided thoughtful and important guidance on how to carry out that task. In *United States v. Raia,* the Third Circuit stated that "the *mere existence* of COVID-19 in society and the possibility that it may spread to a particular prison *alone* cannot independently justify compassionate release" under 18 U.S.C. § 3852(c)(1)(A), which allows for such release if "extraordinary and compelling" circumstances exist. —— F.3d ——, 2020 WL 1647922, at \*2 (3d Cir. Apr. 2, 2020) (emphasis added). Similarly, in *United States v. Roeder,* the Court stated that "[t]he existence of some health risk to every federal prisoner as a result of this global pandemic does not, *without more,* provide the *sole basis* for granting release to each and every prisoner within our Circuit." —— F. App'x. ——, 2020 WL 1545872, at \*3 n.16 (3d Cir. Apr. 1, 2020) (emphasis added).

Applied to this case, the lessons of *Raia* and *Roeder* are clear: the abstract specter of COVID-19 alone is not enough—this Court must engage in a careful and fact-specific assessment of whether "exceptional circumstances" at the FDC justify the exercise of § 2241 jurisdiction over the FDC's pretrial detainees. But both sides must have a chance to present facts to inform the Court's decision on this question.

It is well-established that "[d]istrict courts have the authority to allow discovery in order to determine whether subject-matter jurisdiction exists." *Lincoln Ben. Life Co. v. AEI Life, LLC,* 800 F.3d 99, 108 (3d Cir. 2015). "[P]arties should be granted a fair opportunity to engage in jurisdictional discovery so as to adequately define and submit to the court facts necessary for a thorough consideration" of preliminary issues relating to subject matter jurisdiction. *Federal Ins.*

*Co. v. Richard I. Rubin & Co., Inc.,* 12 F.3d 1270, 1284 n.11 (3d Cir. 1993); *see also Maqaleh v. Hagel,* 738 F.3d 312, 325-26 (D.C. Cir. 2013), *vacated in part on unrelated grounds sub nom. al-Najar v. Carter,* 575 U.S. 908 (2015) (noting—in the context of a § 2241 habeas petitioner's request for jurisdictional discovery—that the "district court has discretion to allow discovery if it could produce [facts] that would affect [its] jurisdictional analysis" alterations in original) (internal quotation marks omitted); Rules Governing Section 2254 Cases, Rule 6(a) (amended Dec. 1, 2019) ("A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."). [4] As Respondent himself recognizes, "the Court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction." Resp't. Mot. to Dismiss, at 5 (ECF No. 12-2) (internal quotation marks omitted). [5]

**\*4**  For the pretrial detainees in Petitioners' proposed class, a key jurisdictional question under *Reese* is whether "exceptional circumstances" exist at the FDC that justify the exercise of § 2241 jurisdiction. The parties paint drastically different pictures of the FDC, and depending on which is credited, the case for exercising jurisdiction strengthens or weakens. Respondent says that the FDC currently has no positive COVID-19 cases and that no inmates are exhibiting symptoms; Petitioners say that since the FDC is not testing inmates for COVID-19, there is no way to know if this claim is true. [6] Respondent says that, despite a full lockdown that bars attorneys from entering the FDC, all pretrial detainees have adequate access to counsel and are able to effectively file individual motions for relief under the Bail Reform Act; Petitioners say that detainees cannot access counsel or the court so as to effectively utilize Bail Reform Act motions. [7]

The FDC is on lockdown and is not allowing lawyers in or out of the facility. Without limited jurisdictional discovery, there is no way for Petitioners to respond to Respondent's factual assertions that no "extraordinary circumstances" exist at the FDC. In our adversarial system, basic considerations of procedural fairness require that both sides "be granted a fair opportunity to engage in jurisdictional discovery so as to adequately define and submit to the court facts necessary for a thorough consideration" of "critical preliminary determination[s]" related to jurisdictional disputes. *Federal Ins. Co.,* 12 F.3d at 1284 n.11. The existence of a public health emergency cannot lead the Court to abandon this principle.

Case 1:25-cv-01083-JPW    Document 27-2    Filed 11/14/25    Page 8 of 24

**Brown v. Marler, Not Reported in Fed. Supp. (2020)**

The Court appreciates Respondent's prompt effort to provide information on the FDC's efforts to respond to COVID-19 and recognizes the monumental challenge that the disease has presented to the BOP, as well as the around-the-clock effort that the BOP appears to have engaged in so far throughout this crisis. But the Court cannot rely on one party's word without giving the other party a fair chance to rebut it. That is especially important here, where "[d]ue to continuously changing circumstances surrounding the COVID-19 pandemic, it is unclear to what extent [the BOP's] measures have been or will be effective...." *Roeder*, 2020 WL 1545872, at \*2. Just as the FDC deserves a chance to argue that no "extraordinary circumstances" justify pretrial exercise of § 2241 jurisdiction, Petitioners should have the chance to make an opposing argument. Without limited jurisdictional discovery, they cannot do so.

## II. Conclusion

The Court will allow Petitioners to engage in limited discovery—on an expedited basis—to gain more information relevant to the jurisdictional question of whether "extraordinary circumstances" exist at the FDC. Given the concerns Respondent has raised over allowing an in-person, on-site inspection, the Court will not order such an inspection. The Court reserves decision on Respondent's motion to dismiss.

## All Citations

Not Reported in Fed. Supp., 2020 WL 1975064

---

## Footnotes

1    The Court appreciates the Respondent's willingness to provide prompt information as to the conditions of the FDC, and his recognition that "both this Court and the public deserve to know ... that federal prison officials are taking all steps in their power to fulfill their duty both to protect the public and to preserve the health and safety of the inmates in their charge." Resp't. Mot. to Dismiss, at 1 (ECF No. 12-2). It also takes seriously Respondent's concern that making exceptions to the FDC's no-visitor policy could affect the prison's ability to execute its strategy for containing the virus.

2    Respondent assumes that under *Reese*'s rule, courts *lack jurisdiction* over pretrial § 2241 habeas petitions. That is likely mistaken. The same general rule—that absent exceptional circumstances, courts should not entertain pretrial § 2241 habeas petitions—exists in the state-prisoner context. Third Circuit and Supreme Court cases discussing the rule in that context make clear that courts *do* possess pretrial habeas jurisdiction. They also make clear that the rule stems *not* from a lack of jurisdiction but rather from equitable considerations that counsel against *exercising* that jurisdiction. *See, e.g., Ex parte Royall*, 117 U.S. 241, 247, 251 (1886) (recognizing that a federal court "ha[d], by the express words of the [habeas corpus statute,] jurisdiction" over a state prisoner's pretrial habeas petition, but concluding that the court "is not bound in every case to exercise such a power"); *Fay v. Noia*, 372 U.S. 391, 418-(1963) (noting that the *Royall* decision "plainly stemmed from considerations of comity rather than power" and led to a line of cases "fashion[ing] a doctrine of abstention," that do not "defin[e] power but [instead] ... relate[ ] to the appropriate exercise of power" (citations and internal quotation marks omitted)); *Moore v. DeYoung*, 515 F.2d 437, 442-43 (3d Cir. 1975) (discussing *Royall* and *Noia* and concluding that "federal courts *have 'pre-trial' habeas corpus jurisdiction*," but also that this jurisdiction "should not be *exercised* at the pre-trial stage unless extraordinary circumstances are present." (emphasis added)). Section 2241(c)(3)'s words—and Congress's textual grant of jurisdiction—are the same when a federal prisoner uses them as they are when a state prisoner uses them. *Cf. Medina v. Choate*, 875 F.3d 1025, 1027 (10th Cir. 2017) ("[I]t is not surprising that a respect for federal-court procedure—similar to the respect for state-court procedures expressed in *Ex parte Royall*—has led to decisions rejecting the use of habeas corpus by federal prisoners awaiting federal trial." (citations omitted)). But the Court need not fully resolve this question here. If *Reese*'s rule is not based on a lack of jurisdiction, the Court

Brown v. Marler, Not Reported in Fed. Supp. (2020)

Case 1:25-cv-01083-JPW    Document 27-2    Filed 11/14/25    Page 9 of 24

may order limited discovery to inform the exercise of power that it possesses. If the rule is jurisdictional, the Court may order limited discovery to determine whether jurisdiction exists in the first place.

3    For the relevant language of the Supreme Court cases *Reese* references, *see Jones v. Perkins*, 245 U.S. 390, 391 (1918) ("It is well settled that *in the absence of exceptional circumstances* in criminal cases the regular judicial procedure should be followed and habeas corpus should not be granted in advance of at trial." (emphasis added)); *Johnson v. Hoy*, 227 U.S. 245, 247 (1913) ("The writ of habeas corpus is ... not available to a defendant before trial, *except in rare and exceptional cases*...." (emphasis added)); *see also Riggins v. United States*, 199 U.S. 547, 551 (1905) (vacating order granting pretrial habeas relief to federal detainees because there was "nothing in this record to disclose that there were *any special circumstances which justified a departure* from the regular course of judicial procedure" (emphasis added)).

4    Rule 6 applies to § 2241 proceedings. *See* Rules Governing Section 2254 Cases, Rule 1(b) (amended Dec. 1, 2019) ("The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a) [which covers § 2254]."); *Levi v. Holt*, 192 F. App'x 158, 162 (3d Cir. 2006) ("Rule 6 ... appl[ies] ... to 2241 cases.") (citing Rule 1(b)); *see also Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987) ("Under Rule 6(a) ... the district court has discretion to decide the extent to which discovery is appropriate."); *Maqaleh*, 738 F.3d at 325-26 (D.C. Cir. 2013) (stating the same in support of proposition that district courts have discretion to allow jurisdictional discovery (citations omitted)). Petitioners have shown "good cause" to justify limited jurisdictional discovery for the reasons expressed in the body of this opinion. They have also complied with Rule 6(b)'s procedural requirements. *See* Rule 6(b) (requiring requesting party to provide reasons for discovery request that includes proposed interrogatories, requests for admission, and requests for specific documents); *see also* Pet'rs' Resp. Br., at 28-30 (ECF No. 17) (setting forth reasons why "good cause" exists for discovery); *id.*, Ex. A (ECF No. 17-1) (specific interrogatory requests); *id.*, Ex. B, at 5-7 (ECF No. 17-2) (specific document requests). The Court has not yet ruled on the *specifics* of these discovery requests. In light of this opinion, the parties will have the chance to present a new, tailored jurisdictional discovery plan. Of course, the Court will also review any specific objections, and is holding a telephone conference on Monday, April 27, 2020, at 3:00pm.

5    Only "factual" challenges, not "facial" challenges, permit consideration of evidence beyond the face of the pleadings on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial challenge does not dispute the facts in the complaint, whereas a factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or otherwise present[ing] competing facts." *Id.* (alteration in original) (internal quotation marks omitted). Respondent makes clear that he is raising a factual challenge to the Court's jurisdiction. *See* Resp't. Mot. to Dismiss, at 14 (arguing that no "exceptional circumstances" exist to justify exercising pretrial § 2241 habeas jurisdiction); *id.* at 1-2, 6-13 (providing a detailed factual rebuttal to Petitioner's version of the facts); *id.* at 5 (arguing that the Court may consider facts beyond Petitioner's complaint to resolve Respondent's jurisdictional challenge).

6    Additionally, although Respondent states that "[n]o in inmate has required testing, and no inmate appears to be exhibiting symptoms," he never states whether the FDC has tests available to it, and if so, how many. Marler Decl., ¶ 4 (ECF No. 12-5).

7    This consideration may be paramount. Respondent argues that habeas is inappropriate because another avenue of relief exists: individual review under the Bail Reform Act. If COVID-19 is preventing detainees from properly and promptly accessing counsel or the court, that fact would weigh in favor of finding that "extraordinary circumstances" may justify exercising pretrial § 2241 jurisdiction. On the other hand, if Respondent is correct that detainees are adequately able to access counsel and the court under the current circumstances, that would cut the other way.

**Brown v. Marler, Not Reported in Fed. Supp. (2020)**

Case 1:25-cv-01083-JPW    Document 27-2    Filed 11/14/25    Page 10 of 24

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01083-JPW   Document 27-2   Filed 11/14/25   Page 11 of 24
Colbert v. Allstate Property and Casualty Insurance Company, Not Reported in Fed....
2020 WL 6922653

2020 WL 6922653
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Terrance A. COLBERT, et al., Plaintiffs
v.
ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY, et al., Defendants

CIVIL ACTION NO. 3:20-CV-1066
|
Signed 10/23/2020

**Attorneys and Law Firms**

I Terrance C. Colbert, New York, NY, for Plaintiffs.

Hal H. Harris, Bushkill, PA, pro se.

Bonnie S. Stein, Curtin & Heefner LLP, Morrisville, PA,
Thomas L. Mueller, Lucas and Cavalier, LLC, Philadelphia,
PA, for Defendants.

ORDER

William I. Arbuckle, U.S. Magistrate Judge

**\*1** On October 7, 2020, Defendants Allstate Property
and Casualty Insurance Company and Debra Colucci
("Defendants") filed a Motion to Stay Discovery (Doc. 14),
pending the resolution of Defendants' Motion to Dismiss
(Doc. 6). On October 21, 2020, Plaintiffs Terrance A. Colbert
and Hal H. Harris ("Plaintiffs") filed a response. (Doc. 15).

Under Rule 26(c) of the Federal Rules of Civil Procedure, a
court has discretion to stay discovery "for good cause shown."
Fed. R. Civ. P. 26(c). This discretion extends to staying
discovery pending the resolution of a motion to dismiss. *In re
Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 365
(3d Cir. 2001), *as amended* (Oct. 10, 2001); *see also Mann
v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010) ("[I]t may
be appropriate to stay discovery while evaluating a motion to
dismiss where, if the motion is granted, discovery would be
futile.").

A stay of discovery is appropriate when "the likelihood that
[a pending] motion [to dismiss] may result in a narrowing
or an outright elimination of discovery outweighs the likely
harm to be produced by the delay." *19th St. Baptist Church v.*

*St. Peters Episcopal Church*, 190 F.R.D. 345, 349 (E.D. Pa.
2000) (quotation omitted). It is also appropriate when "the
motion [to dismiss] appears to have substantial grounds or,
stated another way, does not appear to be without foundation
in law." *See Johnson v. New York Univ. Sch. of Educ.*, 205
F.R.D. 433, 434 (S.D.N.Y. 2002) (quotation omitted). But
the Court need not form an opinion on the merits of the
Motion to Dismiss; it need only decide whether the Motion
may "potentially lead" to either termination of the case or
to a determination of which claims are viable, allowing the
parties to tailor discovery. *See Perelman v. Perelman*, 2011
WL 3330376, at \*1 (E.D. Pa. 2011).

Defendants argue that discovery will be unnecessary if their
Motion to Dismiss is granted. (Doc. 14-2, p. 8). They further
argue that, "[b]ased on the extensive and mostly irrelevant
allegations contained in the Complaint, that discovery is
expected to be burdensome, expensive, and time-consuming."
*Id.* Lastly, they argue that the stay will not prejudice Plaintiffs,
as Plaintiffs already "chose to wait nearly six years to file this
litigation." *Id.* at p. 9.

Plaintiffs argue that Defendants' Motion to Stay Discovery
"is an attempt to unjustly prevent Plaintiffs from obtaining
the evidence (i.e. documents and deposition testimony) that
will enable this This Court's [sic] to deny Defendants' Motion
To Dismiss." (Doc. 15, pp. 2-3). Plaintiffs request that
Defendants' Motion "be denied in its entirety or at least in
part so Plaintiffs can conduct discovery limited to obtaining
evidence to show Allstate [sic] actions resulted in estoppel of
the one (1) year suit limitation clause in The Policy." [1] (Doc.
15, p. 11). Plaintiffs further propose that

> discovery should be limited to
> Plaintiffs' discovery of information,
> communication and documents related
> to the following; 1) Defendants' and
> Couttien's actions, communications
> and correspondence related to the
> issuance of, and changes to
> The Policy 2) Defendants' actions,
> communications and correspondence
> relating to Allstate's denial of Colbert's
> claim 3) Defendants' investigation
> related to Colbert's claim and 4) all
> communications and correspondence
> between Defendants and Couttien and/

Case 1:25-cv-01083-JPW    Document 27-2    Filed 11/14/25    Page 12 of 24

Colbert v. Allstate Property and Casualty Insurance Company, Not Reported in Fed....

2020 WL 6922653

or Defendants and any of Couttien's representatives.

**\*2**  (Doc. 15, pp. 13-14).

A brief review of the standards governing a court's consideration of a motion to dismiss is appropriate in addressing Plaintiffs' arguments. When ruling on a motion to dismiss under Rule 12(b)(6), the Court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The Court "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Id.* at 229. If a court considers matters outside of those listed above, Rule 12(d) of the Federal Rules of Civil Procedure requires instead that "the motion must be treated as one for summary judgment under Rule 56."

Although Plaintiffs argue that Defendants' Motion to Stay Discovery is an attempt to shield documentary and deposition evidence "that proves Defendants action and unclean hands serves to estop Defendants [from asserting a] one year suit commencement [defense]," (Doc. 15, p. 13), Plaintiffs also argue that they should prevail against the Motion to Dismiss based on documents already attached as exhibits to their Complaint (*see* Doc. 15, pp. 12-13) and certain facts alleged in the Complaint that they assert Defendants have not denied

(*see* Doc. 15, p. 3). The additional documents Plaintiffs seek in discovery are not necessary to decide Defendants' Motion to Dismiss. Further, such discovery would be outside the proper scope of this Court's review of a motion to dismiss. *See Mayer*, 605 F.3d at 230; Fed. R. Civ. P. 12(d).

Based on a preliminary review of Defendants' pending Motion to Dismiss, consideration of the likelihood that the Motion will narrow or eliminate discovery, and the likely harm caused by a delay in discovery, *see 19th St. Baptist Church*, 190 F.R.D. at 349, I find that the balance favors granting a stay of discovery pending resolution of Defendants' Motion to Dismiss (Doc. 6). The Motion to Dismiss does not appear to be "without foundation in law." *See Johnson*, 205 F.R.D. at 434. If granted, the Motion, which is ripe for resolution, would be dispositive of the case against Defendants, thereby eliminating the need for discovery. Further, there is no showing that the stay would prejudice Plaintiffs, given the scope of this Court's review of the Motion to Dismiss and the materials already properly within that scope. I therefore will grant Defendants' Motion to Stay Discovery (Doc. 14), pending the resolution of Defendants' Motion to Dismiss (Doc. 6).

**\*3**  IT IS HEREBY ORDERED that the discovery deadlines and further discovery be STAYED pending the resolution of Defendants' Motion to Dismiss (Doc. 6).

### All Citations

Not Reported in Fed. Supp., 2020 WL 6922653

---

## Footnotes

1    Defendants base their Motion to Dismiss in part on a one-year suit-limitation clause in the at-issue insurance policy with Plaintiff Colbert. (*See* Doc. 6, pp. 9-13).

---

2024 WL 4372307
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Michael FERNSLER, Plaintiff,

v.

SWATARA TOWNSHIP POLICE
DEPARTMENT, et al., Defendants.

Civil No. 1:24-CV-1253
|
Signed October 2, 2024

**Attorneys and Law Firms**

Michael Fernsler, Coal Township, PA, Pro Se.

Anthony R. Sherr, Sherr Law Group, LLC, Norristown, PA, for Defendants Swatara Township Police Department, Darrell Reider, Timothy Shatto.

Scott P. Stedjan, Killian & Gephart, LLP, Harrisburg, PA, for Defendant Robert Daniels.

Coryn D. Hubbert, Donald L. Carmelite, Marshall Dennehey, P.C., Camp Hill, PA, for Defendant Deanna Muller.

Benjamin P. Novak, Gregory S. Hirtzel, Fowler, Hirtzel, McNulty & Spaulding, LLP, Lancaster, PA, for Defendant Gerry Cassel.

**MEMORANDUM AND ORDER**

Daryl F. Bloom, Chief United States Magistrate Judge

**I. Introduction**

 **\*1** Pending before the court are several discovery motions and motions for default judgment filed by the plaintiff (Docs. 24, 35-37, 40, 42), as well as a motion to stay discovery filed by one of the defendants. (Doc. 38). For the following reasons, we will grant the motion to stay discovery, and the plaintiff's motions will be denied.

**II. Discussion**

This is a civil action initially filed in the Court of Common Pleas of Dauphin County and removed to this Court. (Doc. 1). The plaintiff, Michael Fernsler, is a state inmate incarcerated in the Pennsylvania Department of Corrections ("DOC").

He filed this action in county court against the defendants, asserting claims of civil rights violations pursuant to 42. U.S.C. § 1983.

The case was removed to this Court (Doc. 1), and Fernsler filed an amended complaint. (Doc. 21). [1] The amended complaint alleges violations of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as violations of the Pennsylvania Constitution and state law defamation claims arising from his state criminal convictions for Involuntary Deviate Sexual Intercourse with a Child and other related crimes. *See Commonwealth v. Fernsler*, CP-22-CR-0002173-2006. [2] All but one of the defendants have filed motions to dismiss the amended complaint. (Docs. 27, 29, 31, 33). For his part, Fernsler has filed various motions seeking discovery from the defendants, as well as two identical motions for default judgment. (Docs. 24, 35-37, 40, 42). Additionally, Defendant Cassel has filed a motion to stay discovery until the pending motions to dismiss are resolved. (Doc. 38).

We first address the defendant's motion to stay discovery. In determining whether a stay of discovery is appropriate, courts typically consider the following factors:

> (1) "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party"; (2) "whether denial of the stay would create a clear case of hardship or inequity for the moving party"; (3) "whether a stay would simplify the issues and the trial of the case"; and (4) "whether discovery is complete and/or a trial date has been set."

*Clarity Sports International LLC v. Redland Sports*, 400 F. Supp. 3d 161, 182 (M.D. Pa. 2019) (quoting *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014) (internal quotation marks and citations omitted)). A decision to stay discovery lies within the broad discretion of the Court, given "the [C]ourt's 'inherent power to conserve judicial resources by controlling its own docket.' " *Id.* (quoting *Peschke Map Techs., LLC v. J.J. Gumberg Co.*, 40 F. Supp. 3d 393, 395-96 (D. Del. 2014) (internal quotation marks omitted)).

 **\*2** While the filing of a dispositive motion does not automatically entitle the defendants to a stay, "[i]n certain circumstances it may be appropriate to stay discovery while evaluating a motion to dismiss where, if the motion is granted, discovery would be futile." *Mann v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010) (collecting cases). Additionally, "a

stay is proper where the likelihood that such motion may result in a narrowing or an outright elimination of discovery outweighs the likely harm to be produced by the delay." *19th Street Baptist Church v. St. Peters Episcopal Church,* 190 F.R.D. 345, 349 (E.D. Pa. 2000) (citation and internal quotation marks omitted).

Here, we find that these factors weigh in favor of staying discovery in this matter until the pending motions to dismiss are resolved. The amended complaint was filed on September 6, 2024, and the motions to dismiss were filed shortly thereafter. All of the pending motions move, in part, to dismiss this action on statute-of-limitations grounds. Thus, we conclude that a stay is appropriate because, not only has discovery not yet begun at this early stage, but resolution of these pending motions is likely to reduce or eliminate the need for discovery if the motions are granted. *See e.g., North American Communications, Inc. v. InfoPrint Solutions Co., LLC,* 2011 WL 4571727, at *3-4 (W.D. Pa. July 13, 2011); *McLafferty v. Deutsche Lufthansa A.G.,* 2008 WL 4612856, at *2 (E.D. Pa. Oct. 15, 2008). This is so particularly given the statute of limitations arguments raised by the defendants. We further conclude that a brief stay pending resolution of the dispositive motions will not prejudice the plaintiff. *See Baquero v. Mendoza,* 2019 WL 13250988, at * n.3 (D.N.J. March 13, 2019) (finding that a stay of discovery after the "case only recently commenced" would not prejudice the plaintiff and, rather, "would simplify issues for discovery because a ruling on the pending motion to dismiss may streamline the scope of discovery.")

Because we have determined that a stay of discovery would be appropriate in this case, it follows that the plaintiffs' pending motions to compel discovery (Docs. 24, 35-37) must be denied. However, these motions will be denied without prejudice to the plaintiff refiling any appropriate motions after the resolution of the pending motions to dismiss.

Finally, we address Fernsler's motions for default judgment. (Docs. 40, 42). These motions appear to request a default judgment against many of the defendants who have filed motions to dismiss, arguing that "no answer or other defense has been filed by the defendants[.]" (Doc. 40 at 1; Doc. 42 at 1). At the outset, we note for the plaintiff that prior to moving for a default judgment, there must be an entry of default against the defendants. *See* Fed. R. Civ. P. 55(a); *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.,* 175 F. App'x 519, 521 n.1 (3d Cir. 2006) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or

Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a).") (internal citation and quotation marks omitted). While Fernsler's motions contend that "default was entered in the civil docket of the office of this clerk on the 4th day of August, 2024[,]" the docket shows no such entry of default by the clerk.

More fundamentally, however, an entry of default or a default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]" Fed. R. Civ. P. 55(a). Here, with the exception of Defendant Dauphin County Court, all of the defendants have filed motions to dismiss the amended complaint. Accordingly, as to these defendants, Fernsler has no basis to request an entry of default or default judgment.

**\*3** With respect to Defendant Dauphin County Court, no appearance has been entered on behalf of this defendant, despite service of the Notice of Removal of this action by Defendant Cassel. (*See* Doc. 1 at 6). Accordingly, as to Defendant Dauphin County Court, we will order this defendant to show cause as to why a default should not be entered against it in this matter pursuant to Federal Rule of Civil Procedure 55(a).

### III. Order

Accordingly, IT IS HEREBY ORDERED THAT:

1. Defendant Cassel's motion to stay discovery (Doc. 38) is GRANTED, and discovery will be stayed pending the resolution of the motions to dismiss;

2. Fernsler's motions to compel discovery and for miscellaneous relief (Docs. 24, 35-37) are DENIED without prejudice to Fernsler filing appropriate discovery motions following the resolution of the pending motions to dismiss;

3. Fernsler's motions for default judgment (Docs. 40, 42) are DENIED;

4. Defendant Dauphin County Court is ordered to show cause **on or before October 11, 2024,** as to why a default should not be entered against it in this matter pursuant to Federal Rule of Civil Procedure 55(a); and

5. Fernsler's request for an extension of time to respond to the pending motions to dismiss (Doc. 43) is GRANTED,

and the plaintiff shall respond to these motions **on or before October 21, 2024**.

SO ORDERED, this 2nd day of October 2024.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4372307

---

## Footnotes

1    The plaintiff obtained leave of court to file an amended complaint, but subsequently, filed a second amended complaint without leave of court or consent of the parties. Accordingly, his second amended complaint (Doc. 25) will be stricken. Fed. R. Civ. P. 15(a)(2).

2    A review of the state court docket indicates that in 2008, Fernsler pleaded guilty to Involuntary Deviate Sexual Intercourse with a Child, Indecent Assault Person Less than 13 Years of Age, two counts of Corruption of Minors, and Unlawful Contact with a Minor.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01083-JPW    Document 27-2    Filed 11/14/25    Page 16 of 24

Fouad v. Milton Hershey School and School Trust, Not Reported in Fed. Supp. (2020)

2020 WL 8225445
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

F. Frederic FOUAD, Plaintiff,
v.
The MILTON HERSHEY SCHOOL
AND SCHOOL TRUST, et al., Defendant.

Civil No. 1:19-CV-00253
|
Signed 02/06/2020

**Attorneys and Law Firms**

F. Frederic Fouad, New York, NY, pro se.

Joseph H. Jones, Jr., Williamson, Friedberg & Jones, Pottsville, PA, Michael J. Willner, Allman, Lelly & Willner, LLC, Paoli, PA, for Plaintiff.

Andrew S. Gordon, Saul Ewing Arnstein & Lehr LLP, Harrisburg, PA, Alexander R. Bilus, James A. Keller, Saul Ewing Arnstein & Lehr LLP, Philadelphia, PA, Christine M. Wechsler, Elliott Greenleaf & Siedzikowski, PC, Blue Bell, PA, Colleen Fox, Pro Hac Vice, Saul Ewing Arnstein & Lehr LLP, Princeton, NJ, for Defendant The Milton Hershey School And School Trust.

Timothy T. Myers, Kyle M. Elliott, Thomas B. Helbig, Jr., Elliott, Greenleaf & Siedzikowski, Blue Bell, PA, Jarad W. Handelman, Elliott Greenleaf, P.C., Harrisburg, PA, Perry M. Amsellem, Pryor Cashman LLP, New York, NY, for Defendants Elliott Greenleaf, P.C., Jarad W. Handelman.

Andrew S. Gordon, Saul Ewing Arnstein & Lehr LLP, Harrisburg, PA, Alexander R. Bilus, James A. Keller, Saul Ewing Arnstein & Lehr LLP, Philadelphia, PA, Colleen Fox, Pro Hac Vice, Saul Ewing Arnstein & Lehr LLP, Princeton, NJ, for Defendants Peter Gurt, Ralph Carfagno, Robert Heist, Velma Redmond, David Saltzman, James W. Brown, M. Diane Koken, James M. Meade, Melissa L. Peeples-Fullmore, Jan Loeffler Bergen, Andrew S. Cline, James C. Katzman.

Joe H. Tucker, Leslie M. Greenspan, Tucker Law Group, LLC, Sharon Piper, Bardsley Benedict + Cholden, LLP, Philadelphia, PA, for Defendant Navada Hatfield.

**ORDER**

JENNIFER P. WILSON, United States District Court Judge

**\*1** Before the court is an appeal from a non-dispositive stay order issued by United States Magistrate Judge Martin C. Carlson. For the reasons that follow, the appeal is denied.

**FACTUAL BACKGROUND
AND PROCEDURAL HISTORY**

This case began when Plaintiff F. Frederic Fouad ("Fouad") filed a complaint in New York state trial court. (*See* Doc. 1.)[1] The case was removed to this court on June 21, 2018. (*Id.*) On August 20, 2019, Fouad filed an amended complaint. (Doc. 171.) Three groups among the sixteen defendants responded by filing motions to dismiss and/or strike the amended complaint. (*See* Docs. 173, 174, 229.)

On December 3, 2019, Fouad filed a motion for sanctions against all Defendants connected to Defendant Milton Hershey School and School Trust ("Milton Hershey") and Defendant Elliott Greenleaf, P.C. ("Elliott Greenleaf"). (Doc. 241.) Fouad's motion for sanctions alleges that the Defendants misappropriated his confidential communication in 1999, and have subsequently misused the misappropriated communication in this and related litigation.[2] (*Id.*) The motion requests, among other things, that the Defendants' pending motions to dismiss be stricken from the record. (*Id.*)

On November 18, 2019, the case was reassigned to the undersigned pursuant to a verbal order from Chief United States District Judge Christopher C. Conner. Shortly thereafter, Fouad filed a motion to extend all case management deadlines. (Doc. 233.) As part of that motion, Fouad requested a status conference with the court to discuss the possible extension. (*Id.*) The court granted Fouad's request and scheduled a status conference with the parties for December 30, 2019. (Doc. 239.)

However, On December 3, 2019, the court referred the case to Judge Carlson for the purpose of resolving all pending and future discovery disputes. (Doc. 238.) Judge Carlson then issued an order on December 20, 2019, staying all discovery pending the court's resolution of the Defendants' motions to dismiss. (Doc. 272.) On December 30, 2019, shortly

Case 1:25-cv-01083-JPW   Document 27-2   Filed 11/14/25   Page 17 of 24

Fouad v. Milton Hershey School and School Trust, Not Reported in Fed. Supp. (2020)

before the status conference on his motion for extension of time was scheduled to begin, Fouad filed a letter to the court seeking clarification as to whether his sanctions motion was being treated as a dispositive motion that would be ruled on by the undersigned or as a discovery motion that would be ruled on by Judge Carlson. (Doc. 278.) Recognizing the potential confusion identified by Fouad's letter, the undersigned informed the parties during that day's status conference that the case would be referred to Judge Carlson for all pretrial management. (Doc. 281.) The case was officially referred to Judge Carlson for that purpose on January 3, 2020. (Doc. 282.)

**\*2** Later that day, Fouad filed the instant appeal along with a supporting brief, seeking the district court's review of Judge Carlson's December 20, 2019 stay order. (Docs. 283–84.) On January 10, 2020, Fouad filed a request to stay resolution of the Defendants' motions to dismiss pending the district court's review of his appeal. (Doc. 289.) The court granted that request on January 13, 2020. (Doc. 294.) On January 17, 2020, Defendant Navada Hatfield ("Hatfield"), the Elliott Greenleaf Defendants, [3] and the Milton Hershey Defendants [4] filed separate briefs in opposition to Fouad's appeal. (Docs. 298–300.) Fouad filed reply briefs on January 24, 2020, making the appeal ripe for the court's review. (Docs. 305–07.)

### STANDARD OF REVIEW

When a party appeals from a non-dispositive order issued by a United States Magistrate Judge, a district court must "modify or set aside any part of the order that is clearly erroneous or contrary to law." *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (quoting Fed. R. Civ. P. 72(a)). "This standard requires the District Court to review findings of fact for clear error and to review matters of law de novo." *Id.* (citing *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992)). The party appealing the non-dispositive order has the burden of proof to establish that the order was clearly erroneous or contrary to law. *See NLRB v. Frazier*, 966 F.2d 812, 816 (3d Cir. 1992) (noting that under 28 U.S.C. § 636, "a district judge may reconsider a magistrate judge's decision where it has been shown to be clearly erroneous or contrary to law"); *accord Haines*, 975 F.2d at 91 (citing 28 U.S.C. § 636(b)(1)(A)).

### THE STAY ORDER

In the stay order at issue in this appeal, Judge Carlson stayed all discovery pending the court's resolution of the Defendants' motions to dismiss. (Doc. 272 at 7.) The stay was based on Judge Carlson's conclusion that resolution of the motions to dismiss could significantly alter the case by eliminating certain parties and claims. (*Id.* at 2–4.) Judge Carlson noted that the court possesses far-reaching discretion on matters related to the scope and conduct of discovery. (*Id.* at 4–5.) This discretion, Judge Carlson noted, allows the court to delay or defer discovery while it considers potentially dispositive motions. (*Id.* at 5–6.)

While all the parties in this case agreed prior to Judge Carlson's order that some stay of discovery was appropriate, Judge Carlson noted that Fouad had sought a limited exception to the stay that would allow him to pursue discovery relating to his sanctions motion during this case. (*Id.* at 6.) Judge Carlson denied Fouad's request, noting that such an "asymmetrical" discovery request would "create an uneven playing field" for the parties. (*Id.*)

### THE PARTIES' ARGUMENTS ON APPEAL [5]

Fouad argues that Judge Carlson's stay order should be modified or set aside because the order misconstrues Fouad's motion for sanctions as a discovery motion rather than as a potentially dispositive motion that should be decided before the motions to dismiss. (Doc. 284 at 8.) Fouad further argues that the order should be modified or set aside because it erroneously stayed discovery that was necessary for resolution of the motion for sanctions. (*Id.* at 9.) Fouad therefore requests an order from the district court requiring (1) that the motion for sanctions be decided before the motions to dismiss; (2) that the stay of discovery be lifted to the extent necessary to permit discovery relating to the motion for sanctions; and (3) that disposition of the motions to dismiss be stayed pending disposition of the motion for sanctions. (*Id.* at 16.)

**\*3** In his brief in opposition to Fouad's appeal, Defendant Hatfield argues that Fouad has not provided any legal basis for lifting the stay to permit further discovery or for treating the motion for sanctions as preemptive of the motions to dismiss. (Doc. 298 at 8–11.)

Case 1:25-cv-01083-JPW    Document 27-2    Filed 11/14/25    Page 18 of 24

Fouad v. Milton Hershey School and School Trust, Not Reported in Fed. Supp. (2020)

The Elliott Greenleaf Defendants similarly argue Fouad has not established that the stay of discovery is contrary to law or clearly erroneous. (Doc. 299 at 18–20.) The Elliott Greenleaf Defendants further argue that Fouad is not prejudiced by Judge Carlson's order staying discovery because Fouad's sanctions motion fails as a matter of law. (*Id.* at 21–27.)

The Milton Hershey Defendants argue that Fouad's appeal should be denied because United States Magistrate Judges are granted broad discretion to manage discovery and Judge Carlson's order did not constitute an abuse of that discretion. (Doc. 300 at 13–14.) The Milton Hershey Defendants additionally argue that Fouad has not cited to a single case supporting the proposition that a sanctions motion must be decided before motions to dismiss. (*Id.* at 15–17.) Finally, the Milton Hershey Defendants argue that Fouad has not established that he is prejudiced by Judge Carlson's stay order. (*Id.* at 18–20.)

In his reply briefs, Fouad argues that his motion for sanctions presents a prima facie case for the imposition of sanctions and that the motion should therefore be decided before the Defendants' motions to dismiss. (*See* Doc. 305 at 5–9; Doc. 306 at 2–3, 14–15; Doc. 307 at 12–14.) Fouad argues that his prima facie case for sanctions as well as the Defendants' arguments opposing the sanctions motion show that sanctions discovery is needed. (*See* Doc. 305 at 10–18; Doc. 306 at 12–14; Doc. 307 at 16–19.) He also argues that Judge Carlson erred in issuing the stay order because the filing of a motion to dismiss is not by itself sufficient to stay discovery. (Doc. 305 at 9–10; Doc. 306 at 9–12.)

## DISCUSSION

Fouad's appeal raises two issues: (1) whether his sanctions motion preempts the Defendants' motions to dismiss such that the sanctions motion must be decided before the motions to dismiss, and (2) whether Judge Carlson erred by staying discovery related to the motion for sanctions. The court will consider these issues seriatim.

### A. The Motion for Sanctions Does Not Preempt the Motions to Dismiss

Decisions on the scope and conduct of discovery are left to the discretion of the district court. *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987) (citing *Marroquin-Manriquez v. Immigration & Naturalization Serv.*, 699 F.2d

129, 134 (3d Cir. 1983)). This discretion extends to United States Magistrate Judges, who are granted wide discretion to determine the proper scope and conduct of discovery. *Cartagena v. Serv. Source, Inc.*, 328 F.R.D. 139, 142 (M.D. Pa. 2018); *Forrest v. Corzine*, 757 F. Supp. 2d 473, 477 (D.N.J. 2010).

Although they have wide discretion in managing discovery, "district courts must resolve any issues about imposition of sanctions prior to, or contemporaneously with, entering final judgment." *Gary v. Braddock Cemetery*, 517 F.3d 195, 202 (3d Cir. 2008); *accord Aardvark Child Care & Learning Ctr., Inc. v. Township of Concord*, 288 F. App'x 16, 20 (3d Cir. 2008). This rule promotes judicial economy by eliminating or reducing the possibility of "piecemeal appeals" from a district court's decision. *See Gary*, 517 F.3d at 201 (citing *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 92 (3d Cir. 1988)). Because the rule is motivated by judicial economy, there is no requirement that a sanctions motion be decided before other motions where contemporaneous review of the motions would accomplish the goal of "avoid[ing] unnecessarily segmented review." *Keister v. PPL Corp.*, 257 F. Supp. 3d 693, 713 (M.D. Pa. 2016).

**\*4** In his appeal, Fouad argues that his motion for sanctions preempts the Defendants' motions to dismiss and that resolution of the motions to dismiss should therefore be stayed pending the court's resolution of the motion for sanctions. (Doc. 284 at 5.) Fouad cites to no controlling case law to support this proposition, and the court's review of relevant authority shows that the court is only required to decide the motion for sanctions either "prior to, or contemporaneously with" the entry of final judgment. *Gary*, 517 F.3d at 202.

The court will therefore deny Fouad's appeal to the extent he argues that the motion for sanctions preempts the Defendants' motions to dismiss. Judge Carlson may address the motion for sanctions and the motions to dismiss in whatever order he deems proper while ensuring that resolution of the motion for sanctions occurs either "prior to, or contemporaneously with" the entry of final judgment in the case. *Gary*, 517 F.3d at 202.

### B. Judge Carlson Did Not Abuse His Discretion by Staying Discovery on the Motion for Sanctions

Decisions on whether to stay discovery are committed to the sound discretion of the district court. *Ferguson v. USAA Gen. Indem. Co.*, —— F.R.D. ——, No. 1:19-CV-00401, 2019 WL 6614208, at *1 (M.D. Pa. Dec. 5, 2019). This discretion,

Case 1:25-cv-01083-JPW    Document 27-2    Filed 11/14/25    Page 19 of 24

Fouad v. Milton Hershey School and School Trust, Not Reported in Fed. Supp. (2020)

like a district court's general discretion to manage discovery, extends to decisions by United States Magistrate Judges. *See Harman v. Datte*, 427 F. App'x 240, 243 (3d Cir. 2011) (finding that magistrate judge did not abuse discretion in staying discovery).

A decision on whether to grant a stay typically rests on the following considerations: " 'whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party'; (2) 'whether denial of the stay would create a clear case of hardship or inequity for the moving party'; (3) 'whether a stay would simplify the issues and the trial of the case'; and (4) 'whether discovery is complete and/or a trial date has been set.' " *Clarity Sports Int'l LLC v. Redland Sports*, 400 F. Supp. 3d 161, 182 (M.D. Pa. 2019) (quoting *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014)).

A district court has the discretion to stay discovery pending resolution of a motion to dismiss. *See, e.g., Harman*, 427 F. App'x at 243. In particular, a stay of discovery pending resolution of a motion to dismiss may be appropriate where "discovery would be futile" if the motion to dismiss were granted. *Mann v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009)). A stay of discovery, however, "is not appropriate solely because a motion to dismiss is pending." *Pennsylvania v. Navient Corp.*, 348 F. Supp. 3d 394, 401 (M.D. Pa. 2018) (quoting *Babalola v. Donegal Mut. Ins. Co.*, No. 1:08-CV-00621, 2008 WL 5278393, at *1 (M.D. Pa. Dec. 18, 2008)).

In this case, Judge Carlson considered the circumstances surrounding the Defendants' motions to dismiss and concluded that a stay of discovery pending the court's resolution of the motions would be appropriate because the motions appeared to present substantial grounds for dismissal. (Doc. 272 at 7.) He also denied Fouad's request to permit discovery on the issues raised in the sanctions motion, finding that such discovery would create "an uneven playing field" for the parties. (*Id.* at 6.) The court finds that Judge Carlson adequately explained the reasoning behind his decision to stay discovery and that he did not abuse his discretion in making such a decision. Accordingly, the court will deny Fouad's appeal to the extent that it attacks Judge Carlson's decision to stay discovery.

## CONCLUSION

**\*5**  For the foregoing reasons, **IT IS ORDERED** that Fouad's appeal (Doc. 283) is **DENIED**. This case is remanded to Judge Carlson for further proceedings consistent with this order.

## All Citations

Not Reported in Fed. Supp., 2020 WL 8225445

## Footnotes

1    Because this case has an extremely long and complicated procedural history, the court will confine its summary of the procedural history to that which is immediately relevant to the instant appeal.

2    Nothing in this opinion shall be construed as ruling or otherwise commenting on the merits of Fouad's motion for sanctions.

3    The Elliott Greenleaf Defendants are Elliott Greenleaf and Jarad W. Handelman.

4    The Milton Hershey Defendants are the Milton Hershey School, the Hershey Trust Company, Peter Gurt, Ralph Carfagno, Robert Heist, Velma Redmond, David Saltzman, James C. Katzman, James W. Brown, M. Diane Koken, James M. Mead, Melissa L. Peeples-Fullmore, and Andrew Cline.

5    The court notes that the parties' briefs frequently stray into discussion of the merits of Fouad's motion for sanctions. Because the motion for sanctions is not currently before the court, this summary of the parties' briefs shall disregard any arguments on the merits of the motion for sanctions.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Kolesar v. Pro-Source Performance Products, Inc., Not Reported in Fed. Supp. (2023)

2023 WL 2527297

2023 WL 2527297
Only the Westlaw citation is currently available.
United States District Court, W.D. Pennsylvania.

Ronald C. KOLESAR, Plaintiff,

v.

PRO-SOURCE PERFORMANCE
PRODUCTS, INC., Defendant.

Civil Action No. 1:22-cv-122
|
Filed March 15, 2023

**Attorneys and Law Firms**

R. Bruce Carlson, Carlson Brown, Sewickley, PA, Nicholas
Colella, Lynch Carpenter, LLP, Pittsburgh, PA, for Plaintiff.

Ryan T. Benson, Pro Hac Vice, O'Hagan Meyer LLC,
Chicago, IL, for Defendant.

RE: ECF No. 13

**MEMORANDUM OPINION**

 **\*1** Before the Court is a motion to dismiss filed by
Defendant Pro-Source Performance Products, Inc. pursuant
to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil
Procedure.[1] ECF No. 13. Plaintiff Ronald C. Kolesar has
filed a memorandum in opposition to the motion to dismiss.
ECF No. 15. Defendant has filed a reply brief. ECF No. 16.
The matter is now ripe for disposition.

**I. Standards of Decision**

Pro-Source moves to dismiss under Rule 12(b)(1) arguing that
this case is moot, and in the alternative, pursuant to Rule 12(b)
(6) contending that Kolesar has failed to state a claim. Kolesar
opposes dismissal of the amended complaint without a period
of jurisdictional discovery to show his case is not moot. The
standards which guide the Court's decision on motions under
Rules 12(b)(1) and 12(b)(6) differ. The contours of these
standards have been succinctly set out by this Court in recent
opinions, as follows. See Douglass v. Blendjet Inc., 2022 WL
4386636, at \*1–2 (W.D. Pa. Sept. 22, 2022).

**A. Rule 12(b)(1)**

Motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1)
challenge the Court's "very power to hear the case." See
Mortenson v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884,
891 (3d Cir. 1977). As the party asserting jurisdiction, Mr.
Kolesar "bears the burden of showing that [his] claims are
properly before the district court." Dev. Fin. Corp. v. Alpha
Housing & Health Care, 54 F.3d 156, 158 (3d Cir. 1995).
In reviewing a motion to dismiss pursuant to Rule 12(b)(1),
this Court must distinguish between facial attacks and factual
attacks. See Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d
Cir. 2006).

A facial attack challenges the sufficiency of the pleadings,
and the Court accepts a plaintiff's allegations as true. Id.
A defendant who attacks a complaint on its face "[asserts]
that considering the allegations of the complaint as true, and
drawing all reasonable inferences in favor of [plaintiff], the
allegations of the complaint are insufficient to establish a
federal cause of action." Mullen v. Thompson, 155 F. Supp.
2d 448, 451 (W.D. Pa. 2001). On a Rule 12(b)(1) motion,
dismissal is appropriate only when "the claim clearly appears
to be immaterial and made solely for the purpose of obtaining
jurisdiction or ... is wholly insubstantial and frivolous." Kehr
Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir.
1991) quoting Bell v. Hood, 327 U.S. 678, 682 (1946). A
factual attack challenges subject matter jurisdiction without
disputing the complaint's factual allegations, and requires the
court to "consider the allegations of the complaint as true."
Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2015) quoting
Petruska, 462 F.3d at 302 n.3. See also Kraemer v. Rostraver
Twp., 2023 WL 2206565, at \*3 (W.D. Pa. Feb. 24, 2023).

 **\*2** Here, Pro-Source's motion is best understood as a factual
attack on this Court's subject matter jurisdiction. With respect
to a factual attack, "no presumptive truthfulness attaches to
plaintiff's allegations, and the existence of disputed material
facts will not preclude the trial court from evaluating for itself
the merits of jurisdictional claims." Petruska, 462 F.3d at
302, quoting Mortenson, 549 F.2d at 891. When reviewing a
factual attack on the Court's jurisdiction, a court is permitted
to "weigh and consider evidence outside the pleadings."
Kraemer, 2023 WL 2206565, at \*3 n.3 (citations omitted).
Kolesar has the burden of proving that jurisdiction exists, and
the court "is free to weigh the evidence and satisfy itself as
to the existence of its power to hear the case." Id., quoting
Mortenson, 549 F.2d at 891. See also United States ex rel.
Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir.
2007).

Case 1:25-cv-01083-JPW    Document 27-2    Filed 11/14/25    Page 22 of 24

Kolesar v. Pro-Source Performance Products, Inc., Not Reported in Fed. Supp. (2023)

2023 WL 2527297

## B. Rule 12(b)(6)

Pro-Source's motion also moves to dismiss for a failure to state a claim. The standard applicable to motions brought under Rule 12(b)(6) differs from a subject matter jurisdiction challenge. The Federal Rules of Civil Procedure require notice pleading, as opposed to the heightened standard of fact pleading. That is, Rule 8(a)(2) requires only " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds on which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) *quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957). Furthermore, the Court of Appeals for the Third Circuit instructed that district courts are to engage in a three-step inquiry in order to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) *quoting Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).

At the third step requires, the Court must consider the specific nature of the claims presented and determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2013).

A complaint cannot be dismissed simply because it appears unlikely or improbable that a plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563, n.8. Instead, the appropriate inquiry is whether the facts alleged raise a reasonable expectation that

discovery will reveal evidence of the necessary elements. *Id. at 556*. Generally, a complaint that provides adequate facts to establish "how, when, and where" will survive a motion to dismiss brought under Rule 12(b)(6). *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009).

With these standards in mind, the Court turns now to a review of Mr. Kolesar's amended complaint and the pending motion to dismiss it.

## II. Discussion

### A. Factual Background

Mr. Kolesar is legally blind and/or visually impaired. Pro-Source has an online store that sells items such as protein powder and dietary products as well as other merchandise and accessories. In order to research its offerings or to make a purchase, consumers such as Kolesar must visit the website. Kolesar did just that but was unable to investigate products and/or make a purchase because the site was not built with appropriate "screen-reader" programs. He explains that screen reader programs "translate[ ] the visual internet into an auditory equivalent ... the software reads the content of a webpage to the user." ECF No. 12, ¶ 3, *citing Andrews v. Blick Art Materials*, 286 F. Supp.3d 365, 374 (E.D.N.Y. 2017). Kolesar asserts that by Pro-Source's failure to make its website compatible with screen reader software, the company "denies approximately 7.4 million Americans who have vision difficulties access to its online store." *Id.*, ¶ 7.

**\*3** Kolesar's complaint asserts claims that Pro-Source violated Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.*, ("Title III"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* He claims that a permanent injunction is required in order to ensure Pro-Source's website will become, and will remain, accessible to Kolesar and other blind or visually impaired individuals.

With regard to the permanent injunction, Kolesar seeks an order requiring that Pro-Source retain an Approved Accessibility Consultant to assist in improving accessibility of the website, ensure accessibility training to employees, perform accessibility audits, perform end-user accessibility testing, create a written accessibility policy to be posted on website and distributed to all client service agents, and accompany the accessibility policy statement with an accessible means to submit accessibility-related questions and problems. Additionally, Pro-Source would be required to post a notice and link on its website to solicit feedback about

2023 WL 2527297

accessibility, train client service agents to escalate calls from users with disabilities, and modify existing bug fix policies and practices. Kolesar seeks to have himself, his counsel, and his experts monitor the website for up to two years after the Approved Accessibility Consultant validates that the website is free of accessibility errors and violations. ECF No. 12, ¶ 11. Moreover, Kolesar seeks, inter alia, a declaratory judgment that Pro-Source violated both the ADA and the Rehabilitation Act, a permanent injunction directing Pro-Source to bring its website into compliance with the ADA, and nominal damages. *Id.* at page 18.

**B. The Rule 12(b)(1) motion to dismiss**
Although Pro-Source moves to dismiss for failure to state a claim, and then alternatively for lack of jurisdiction, jurisdiction is a threshold inquiry in the federal courts and must be addressed at the outset.

"When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), aff'd 39 F.3d 61 (3d Cir. 1994). The Court of Appeals for the Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 348-49 (3d Cir. 2014). "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.' " *Id.* at 350, *quoting Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 899 (3d Cir. 1987). "In this vein, when a case raises a disputed factual issue that goes both to the merits and jurisdiction, district courts must 'demand less in the way of jurisdictional proof than would be appropriate at a trial stage.' " *Id.* (citation omitted). These cases make clear "dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly." *Id.*

Pro-Source moves to dismiss Kolesar's amended complaint as moot because the company has already "made efforts to comply with the WCAG [2] standards to make and keep their website accessible to the visually impaired," and because the website "has undergone small updates and since the updates have been completed the alleged, deficiencies claimed by

the Plaintiff ... no longer exist." ECF No. 14, p. 15. The company asserts that any barriers to the visually impaired that existed on its website have now been removed and that it is committed to "keeping the website up to date with accessibility standards." *Id.*, p. 18. In support of its motion, it has submitted declarations from Pro-Source's website designer, Robert Chiney, and from Robert Kingett, a visually impaired individual who was hired by Pro-Source to test its website after modifications had been made. *See* ECF Nos. 14-2, 14-3. The company has additionally submitted an audio/video recording of Mr. Kingett using the website in question. ECF No. 11.

**\*4** In opposition, Kolesar argues that since Pro-Source's Rule 12(b)(1) motion is supported by these declarations, and since he has not had an opportunity to examine these witnesses, he should be permitted a period of limited discovery to allow him to better rebut the company's factual attack on this Court's jurisdiction. *See* ECF No. 15, 16. The Court agrees.

"When parties dispute facts necessary to establish jurisdiction, district courts allow jurisdictional discovery unless the claim is 'clearly frivolous.' " *Argentina v. Wells Fargo*, 2022 WL 3337728, at *3 (M.D. Pa. June 16, 2022). Such discovery is appropriate in connection with motions brought under Rule 12(b)(1). *See, e.g., Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016). That is, the Court is authorized to order jurisdictional discovery in order to determine whether subject matter jurisdiction exists. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 (3d Cir. 2015); *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 197 (3d Cir. 2003) (allowing jurisdictional discovery to determine facts relating to subject matter jurisdiction). Such discovery should be narrowly tailored and often "a few responses to interrogatories will ... suffice." *Lincoln Ben. Life*, 800 F.3d at 108.

To resolve this dispute then, the Court will allow limited discovery on the issue of subject matter jurisdiction, specifically evidence regarding Pro-Source's mootness argument and the declarations submitted in support thereof. Accordingly, Pro-Source's motion to dismiss pursuant to Rule 12(b)(1) will be denied without prejudice to its renewal after jurisdictional discovery is completed.

**C. The Rule 12(b)(6) motion to dismiss**
In the alternative, Pro-Source has moved to dismiss under Rule 12(b)(6), contending that its website is not a "place

**Kolesar v. Pro-Source Performance Products, Inc., Not Reported in Fed. Supp. (2023)**

2023 WL 2527297

of public accommodation" and therefore, Kolesar has failed to state a claim as a matter of law. Pro-Source contends that because it does not have a physical "brick and mortar" storefront, its website alone cannot be considered a "place" of accommodation. It acknowledges, however, that there is a split of authority on this question. *See* ECF No. 14., p. 12.

However, given that subject matter jurisdiction is a threshold inquiry which the Court must address before getting to the merits of the case, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1988), the Court will deny this alternative ground for the motion to dismiss without prejudice to its renewal once the period of jurisdictional discovery is concluded. *See, e.g., Quintillion Subsea Operations, LLC v. Maritech Project Servcs., Ltd.*, 2023 WL 139663 (S.D. Tex. Jan. 6, 2023) (denying Rule 12(b)(6) motion without prejudice to refiling upon the completion of jurisdictional discovery).

### III. Conclusion

In light of the foregoing, Pro-Source's motion to dismiss the amended complaint [ECF No. 13] will be denied without prejudice. A limited and targeted period of jurisdictional discovery will be permitted.

An appropriate order follows.

### All Citations

Not Reported in Fed. Supp., 2023 WL 2527297

---

## Footnotes

1    Plaintiff filed his original complaint on April 4, 2022. Defendant filed a motion to dismiss. ECF No. 8. In response thereto, Plaintiff filed an amended complaint. ECF No. 11. Defendant's motion to dismiss the original complaint will be dismissed as moot in light of the filing of the amended complaint.

2    Web Content Accessibility Guidelines 2.0/2.1. ECF No. 14, p. 9.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.