2025 WL 2686984
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

Cassandra Bonair BOSLEY,
individually and on behalf of all
others Similarly situated, Plaintiff,

v.

A BRADLEY HOSPITALITY LLC
d/b/a La Mesa Miami, Defendant.

Case No. 25-cv-22336-BLOOM/Elfenbein
|
Signed September 18, 2025
|
Entered September 19, 2025

**Attorneys and Law Firms**

Andrew John Shamis, Shamis & Gentile P.A., Miami, FL,
Scott Adam Edelsberg, Edelsberg Law PA, Aventura, FL, for
Plaintiff.

Matthew Eric Ladd, Coral Gables, FL, for Defendant.

## ORDER ON MOTION TO DISMISS AND/OR STRIKE COMPLAINT

BETH BLOOM, UNITED STATES DISTRICT JUDGE

**\*1  THIS CAUSE** is before the Court upon Defendant
Bradley Hospitality LLC's ("Defendant") Motion to Dismiss
and/or Strike Complaint. ECF No. [9]. Plaintiff filed
a Response in Opposition ("Response"), ECF No. [10].
Defendant did not file a reply. For the reasons that follow,
Defendant's Motion to Dismiss and/or Strike Complaint is
denied.

## I. BACKGROUND

This case arises from a series of purportedly unsolicited text
messages Defendant sent to Plaintiff as a part of Defendant's
marketing campaign. The Complaint asserts the following
allegations: Plaintiff is the subscriber and sole user of
a residential cellphone number ending in 9198 that was
registered and continues to be registered on the national
do-not-call registry. ECF No. [1] at ¶¶ 32-34. "Defendant

is a hospitality group that operates a restaurant franchise
in Florida." ECF No. [1] at ¶ 3. To promote its business,
Defendant relies on telephone sales calls and text messages
"with no regard[ ] for consumers' rights under the [Telephone
Consumer Protection Act] ["]TCPA["], even after customers
request Defendant to stop texting them." *Id.* at ¶ 34. "At no
point in time [has] Plaintiff provide[d] Defendant with her
express written consent to be contacted," nor does Plaintiff
have an "existing business relationship with Defendant." *Id.*
at ¶¶ 28-30.

Beginning on December 11, 2024, Defendant "sent multiple
telemarketing text messages to Plaintiff's cellular telephone
number ending in 9198, from Defendant's 786-746-9484
number." *Id.* at ¶¶ 13, 21.[1] After receiving several of these
telemarketing[2] messages, Plaintiff responded to Defendant
on January 2, 2025, "with the message 'No stop,' using
standard opt out language, in an attempt to opt-out of any
further text message communications with Defendant." *Id.* at
¶ 14. Notwithstanding Plaintiff's opt-out request, Defendant
continued to bombard Plaintiff with more unwanted text
messages until at least March 2025. *Id.* at ¶ 15. During that
time, Plaintiff sent additional opt-out text messages, but to no
avail. *See id.* at ¶ 16. Although Defendant had the "capability
of immediately complying with opt-out requests,...Defendant
fai[led] to ensure that requests by Plaintiff...to opt-out of
future communications [were] honored within a reasonable
time." *Id.* at ¶¶ 17-18. Specifically, Defendant does not
"maintain a master optout list" or "maintain internal polices
to sufficiently honor the opt-out requests[.]" *Id.* at ¶ 19.

Plaintiff alleges that "Defendant's unwanted telemarketing
text messages caused Plaintiff actual harm, including
invasion of her privacy, aggravation, annoyance, intrusion on
seclusion, trespass, and conversion." *Id.* at ¶ 37. Specifically,
Plaintiff alleges that each message caused her to stop what
she was doing to review the message, wasting fifteen to thirty
seconds reviewing each message. *Id.* at ¶ 38.

**\*2**  Based on the alleged misconduct, Plaintiff filed a
Complaint asserting two separate Telephone Communication
Protection Act ("TCPA") claims. Count I alleges that
Defendant "violated 47 U.S.C. § 227(c)(5) because Plaintiff
received more than one telephone call in a 12-month period
made by or on behalf of Defendant in violation of 47 C.F.R.
§ 64.1200[(c), which prohibits an entity from "initiating, or
causing to be initiated telephone solicitations to telephone
subscribers such as Plaintiff...who registered their respective
telephone numbers on the National Do Not Call Registry."

*Id.* at ¶¶ 57-58. Count II alleges that Defendant violated 47 U.S.C. § 227(c)(5) because Defendant sent messages to Plaintiff despite not having "instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf [of Defendant], pursuant to 47 C.F.R. § 64.1200(d)," and after Plaintiff had made requests to Defendant not to receive calls from Defendant." *Id.* at ¶¶ 66-67.

## II. LEGAL STANDARD

### A. Article III Standing

Under Article III of the Constitution, federal courts are limited to adjudicating only "Cases and Controversies." U.S. Const. Art. III § 2; *see Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc.*, 524 F.3d 1299, 1232 (11th Cir. 2008). For a case or controversy to exist, the Plaintiff must have standing to bring the action. *See I.L. v. Alabama*, 739 F.3d 1273, 1278 (11th Cir. 2014) ("Standing is one of the Article III case or controversy requirements."). "To have standing, the plaintiff[ ] must demonstrate injury in fact, causation, and redressability." *Id.* All three must exist before a federal court may exercise jurisdiction over the case. *See Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 484 F. Supp. 3d 1215, 1225 (S.D. Fla. 2020). "The 'foremost' standing requirement is injury in fact." *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 99 (1998)). "An injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *I.L.*, 739 F.3d at 1278; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "A 'concrete' injury must be 'de facto'—that is, it must be 'real, and not abstract.'" *Trichell*, 964 F.3d at 996 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). However, an injury need not yet have occurred to constitute an injury in fact. A harm yet to occur will still satisfy the case and controversy requirement if it is "sufficiently substantial and imminent." *DiPierro v. Fla. Health Sci. Center, Inc.*, Case No: 8:23-cv-01864-KKM-NHA, 2024 WL 3051320, at *5 (M.D. Fla. June 18, 2024). A harm is imminent if there is "a realistic danger of sustaining a direct injury as a result" of the challenged conduct. *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1161 (11th Cir. 2008) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).[3]

### B. Failure to State a Claim for Relief

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils–Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, No. 09–495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on " 'naked assertion[s] devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

*3 "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019). In considering a motion to dismiss, the court is limited to the facts contained in the complaint and attached exhibits. *See Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

## III. DISCUSSION

Defendant asserts several arguments to support dismissing Plaintiff's Complaint. Defendant explains that "[t]he allegations before the court are that the text messages sent [by Defendant] qualify as an 'advertisement' without express consent in violation of 47 CFR 64.1200." ECF No. [9] at 5-6. However, Plaintiff "does not and cannot establish Article III Standing" to assert her TCPA claims because the text messages Defendant sent to Plaintiff were not "advertisements." *Id.* at 5. According to Defendant, the "TCPA defines 'advertisements' as any material advertising the commercial availability or quality of any property, goods, or services." *Id.* at 6. Defendant claims the content of the

seven messages it sent were as follows: (1) the first text messages "merely announces that there is [a] movie night and comedy without providing a date, time, or price;" (2) the second text messages is the same announcement as the first but does not contain a "call to action; (3) "[t]he third message provides a date, and announcement that a table will be given away on Feb. 14 for free to VIP clients;" and (4) "[t]he last four texts are also merely announcements without any 'call to action.' " *Id.* at 5. Accordingly, because the "seven text messages do not specify the availability or quality of the 'shows' being advertised," Defendant argues the messages are "not 'advertisements' " but mere informational messages. *Id.* at 6.

Defendant further argues that Plaintiff has failed to allege a concrete injury as a result of the text messages because merely alleging "actual harm," "invasion of privacy," and "annoyance" are too conclusory to establish a concrete injury. *Id.* Moreover, Defendant maintains that taking a few seconds to read a few small text messages over the span of months is insufficient to constitute a concrete harm. *Id.*

Lastly, Defendant addresses Plaintiff's allegation that she "responded to Defendant's 786-746-9484 number with the message 'No stop,' using standard opt-out language, in an attempt to opt-out of any further text message communications with Defendant." ECF No. [1] at 3. According to Defendant, the phrase "No stop" does not amount to an "unequivocal opt-out request." *Id.* at 4. Defendant points out that pursuant to 47 C.F.R. § 64.1200(a) (10):

> A called party may revoke prior express consent, including prior express written consent, to receive calls or text messages made pursuant to paragraphs (a)(1) through (3) and (c)(2) of this section by using any reasonable method to clearly express a desire not to receive further calls or text messages from the caller or sender. Any revocation request made using an automated, interactive voice or key press-activated opt-out mechanism on a call; using the words "stop," "quit," "end," "revoke," "opt out," "cancel," or "unsubscribe" sent in reply to an incoming text message; …. If a called party uses any such method to revoke consent, that consent is considered definitively revoked and the caller may not send additional robocalls and robotexts. If a reply to an incoming text message uses words other than "stop," "quit," "end," "revoke," "opt out," "cancel," or "unsubscribe," the caller must treat that reply text as a valid revocation request if a reasonable person would understand those words to have conveyed a request to revoke consent.

**\*4** While Defendant acknowledges that the regulation provides that texting the word "stop" is an appropriate means of opting out of unwanted text message solicitations, Defendant argues that "No stop" is not. According to Defendant, that is especially the case here, where Plaintiff concedes she was specifically "directed to type 'STOP to end' if she wanted the text messages to stop," but instead said "No stop." ECF No. [9] at 7. Defendant contends that under the circumstances, "No stop" reasonably conveyed to Defendant that it not stop, "but rather continue." *Id.* Accordingly, "Plaintiff's directive to Defendant" not to stop "implied to Defendant an express consent to 'keep going' or continue providing the text messages." *Id.* Defendant therefore insists that this express consent to receive subsequent messages "precludes the Plaintiff's recovery." *Id.*[4]

Plaintiff responds that Defendant's standing argument "relies on outdated case law and ignores unfavorable, but controlling, Eleventh Circuit precedent." ECF No. [10] at 2. Plaintiff argues that "a plaintiff who receive[s] 'a *single* unwanted, illegal telemarketing text message suffere[s] a concrete injury.' " *Id.* (quoting *Drazen v. Pinto*, 74 F.4th 1336, 1339 (11th Cir. 2023) (emphasis added by Plaintiff)). Therefore, because Plaintiff has alleged that "Defendant sent or caused to be sent," more than one unwanted telemarketing text message to Plaintiff's 9198 Number, she has adequately alleged a concrete injury in fact. *Id.* at 6.

Regarding Defendant's argument that the text messages were not "advertisements," Plaintiff contends the argument is irrelevant because "neither cause of action alleged by Plaintiff (violations of 47 C.F.R. § 64.1200(c) and (d)) even alleges the text messages were advertisements but instead argue that the messages constitute "telephone solicitations" and "telemarketing." *Id.* at 3. As such, any failure to establish that the text messages were advertisements is not dispositive.

Plaintiff also disputes the notion that her text stating ' "No stop' in response to [the] 'STOP to end' [messages from Defendant] was an expression of consent to the messages." *Id.* According to Plaintiff, such an interpretation of her messages "defies not only logic, but also the text of 47 C.F.R. § 64.1200(a)(10), which provides that prior express consent may be revoked 'by using any reasonable method to clearly express a desire not to receive further text messages or calls from the caller or sender.' " *Id.* Plaintiff maintains that her "No stop" messages constituted a reasonable and unambiguous desire for Defendant to cease sending further text messages.[5]

2025 WL 2686984

Moreover, even assuming they did not, "Plaintiff's Complaint establishes that she never provided prior express consent to be called or texted by Defendants, that she did not have an established business relationship, and that her 9198 Number was listed on the National Do Not Call Registry." *Id.* at 11. Accordingly, the text messages sent to Plaintiff before her "No stop" messages were "without consent and in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2)." *Id.*

The Court finds that Plaintiff has standing to bring her claims and has adequately stated claims upon which relief may be granted. Defendant's first argument that there is no concrete harm sufficient to establish standing for either claim is without merit. The Eleventh Circuit has stated unequivocally that "the receipt of an unwanted text message causes a concrete injury," thereby providing a plaintiff with standing to bring a TCPA claim. *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023); *see also Eisenband v. Schumacher Auto., Inc.*, No. 18-CV-80911, 2018 WL 7820549, at *2 (S.D. Fla. Oct. 23, 2018) (finding allegations of receipt of a single text message sufficient to establish a concrete injury necessary to establish standing). Therefore, because Plaintiff has adequately alleged that Defendant sent her at least one unwanted text message as outlined under the TCPA, she has established Article III standing.[6]

**\*5** Defendant is also unable to demonstrate that Plaintiff has failed to state a claim upon which relief may be granted. To plausibly assert a TCPA violation under 47 U.S.C. § 227, "a plaintiff must allege '(1) receipt of more than one telephone call within any 12-month period; (2) by or on behalf of the same entity; and (3) in violation of the regulations promulgated by the FCC.'" *Perischett v. T-Mobile USA, Inc.*, 479 F. Supp. 3d 1333, 1339 (N.D. Ga. 2020) (quoting *Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp. 3d 1193, 1197 (M.D. Fla. 2014)); *Lawson v. Visionworks of Am., Inc.*, 741 F. Supp. 3d 1251, 1253 (M.D. Fla. 2024). There is no dispute that Plaintiff has adequately alleged the first two elements for both Counts I and II, given that a text message constitutes a "call" under the TCPA and the text messages were alleged to have been sent over the course of several months. *See Eldridge v. Pet Supermarket Inc.*, 446 F. Supp. 3d 1063, 1067-68 (S.D. Fla. 2020) ("A text message to a cell phone qualifies as a 'call' under the TCPA.") (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), *as revised* (Feb. 9, 2016); *Legg v. Voice Media Grp., Inc.*, 990 F. Supp. 2d 1351, 1354 (S.D. Fla. 2014) (noting that the TCPA and the accompanying federal regulations "apply with equal force to conventional telephone calls and text

messages, as a text message qualifies as a 'call' within the meaning of the TCPA."); *Pariseau v. Built USA, LLC*, 619 F. Supp. 3d 1203, 1206 (M.D. Fla. 2022) ("In several rules, the FCC reiterates that the TCPA affords text messages 'the same consumer protections...as voice calls.'") (internal quotations omitted). Therefore, Defendant's Motion solely concerns the third element—whether there are allegations sufficient to establish that Defendant's text messages to Plaintiff violated FCC regulations.

Plaintiff asserts two regulatory violations here. In Count I, Plaintiff alleges a violation of 47 C.F.R. § 64.1200(c), which "prohibits entities from making 'telephone solicitations' to '[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." *Lawson*, 741 F. Supp. 3d at 1254. "The term telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services...." *Id.* (quoting 47 C.F.R. § 64.1200(f)(15)). In the Complaint, Plaintiff alleges that she "registered her phone number with the national do-not-call registry on November 11, 2009, and has been registered at all times relevant to this action." ECF No. [1] at ¶ 34. Additionally, Plaintiff alleges that Defendant sent multiple telemarketing messages to her, encouraging "the future purchase or investment in property, goods, or services," by "promoting Defendant's restaurant and entertainment services." *Id.* at ¶ 22. According to Plaintiff, these messages contained both "discounts and promotions" with the intent to drive customers to Defendant's business. The allegations are sufficient to establish a § 64.1200(c) violation as Plaintiff has adequately alleged that (1) her residential phone number was on a do-no-call registry and (2) she received "telephone solicitations" from Defendant.[7] *See Klassen, v. Protect My Car Admin Servs., Inc.*, 599 F. Supp. 1243, 1246 (M.D. Fla. 2021) (finding that allegations that the plaintiff's number was on the Do Not Call Registry and that the defendant subsequently called the plaintiff "for solicitation purposes" was "sufficient to plead a violation of Section 227(c)").

Defendant argues that the messages sent to Plaintiff did not violate § 64.1200(c) because they were not advertisements. However, even if true, that fact would not undermine the validity of Plaintiff's TCPA claim. Under § 64.1200(c), a plaintiff does not need to establish that the messages she received constituted advertisements, but only that they amounted to telephone solicitations. Plaintiff adequately alleges that the text messages were for the purposes of

Case 1:25-cv-01083-JPW    Document 31-3    Filed 12/05/25    Page 5 of 76

solicitation and thus has adequately alleged a violation of §
64.1200(c).

**\*6** Defendant's only other argument regarding Count I
is that Plaintiff effectively consented to the text messages
because she sent multiple text messages with the words
"No stop." The Court need not consider whether the "No
Stop" message could reasonably be construed as Plaintiff's
affirmative consent to receive additional messages for the
purposes of evaluating the sufficiency of Count I. Plaintiff
alleges that the first "No stop" message was sent in *response*
to Defendant after she had received multiple text message
solicitations. *See* ECF No. 1 at ¶¶ 14-15. Therefore, even
assuming that Plaintiff's "No stop" message constituted
approval by Plaintiff to receive more solicitations, the initial
messages from Defendant were necessarily sent to Plaintiff
without prior consent or approval.[8] Therefore, because there
need only be "more than one" unwanted text message sent
to a phone number on the Do Not Call Registry in order to
establish a violation, consent to receive subsequent messages
does not defeat the claim that Defendant violated § 64.1200(c)
when it sent the initial two messages. *See Perishett*, 479 F.
Supp. 3d at 1339 (explaining that there simply needs to be
more than one unwanted call to establish a TCPA violation).

Defendant's arguments regarding Count II are similarly
unpersuasive. In Count II, Plaintiff alleges a violation of 47
C.F.R. § 64.1200(d), which provides "that '[n]o person or
entity shall initiate any call for telemarketing purposes to a
residential telephone subscriber unless such person or entity
has instituted procedures for maintaining a list of persons
who request not to receive telemarketing calls made by or
behalf of that person or entity.' " *Persichetti*, 479 F. Supp.
3d at 1338 (quoting 47 C.F.R. § 64.1200(d)). "The term
telemarketing means the initiation of a telephone call or
message for the purpose of encouraging the purchase or rental
of, or investment in, property, goods, or services, which is
transmitted to any person." 47 C.F.R. § 64.1200(f)(13). The
procedures instituted by the party must meet the following
standards:

(1) Written policy. Persons or entities making calls
for telemarketing purposes must have a written policy,
available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing.
Personnel engaged in any aspect of telemarketing must be
informed and trained in the existence and use of the do-not-
call list.

(3) Recording, disclosure of do-not-call requests. If a
person or entity making a call for telemarketing purposes
(or on whose behalf such a call is made) receives a request
from a residential telephone subscriber not to receive calls
from that person or entity, the person or entity must record
the request and place the subscriber's name, if provided,
and telephone number on the do-not-call list at the time
the request is made. Persons or entities making calls for
telemarketing purposes (or on whose behalf such calls
are made) must honor a residential subscriber's do-not-
call request within a reasonable time from the date such
request is made. This period may not exceed thirty days
from the date of such request. If such requests are recorded
or maintained by a party other than the person or entity on
whose behalf the telemarketing call is made, the person or
entity on whose behalf the telemarketing call is made will
be liable for any failures to honor the do-not-call request. A
person or entity making a call for telemarketing purposes
must obtain a consumer's prior express permission to share
or forward the consumer's request not to be called to a
party other than the person or entity on whose behalf a
telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person
or entity making a call for telemarketing purposes must
provide the called party with the name of the individual
caller, the name of the person or entity on whose behalf the
call is being made, and a telephone number or address at
which the person or entity may be contacted. The telephone
number provided may not be a 900 number or any other
number for which charges exceed local or long-distance
transmission charges.

**\*7** 47 C.F.R. § 64.1200(d)(1)-(4).

Plaintiff has adequately alleged that Defendant violated 47
C.F.R. § 64.1200(d). There is no dispute that Plaintiff has
adequately alleged that she received text messages to her
residential[9] phone number from Defendant. Furthermore,
Defendant does not challenge or otherwise dispute Plaintiff's
allegations that Defendant "failed to maintain a master opt-
out list" or that Defendant "does not have a written policy for
maintaining an internal do not call list pursuant to 47 [C.F.R.]
§ 64.1200(d)(1)." ECF No. [1] at ¶¶ 19-24. Instead, Defendant
argues that, notwithstanding those allegations, Count II still
fails to state a claim because Plaintiff has not established
that the messages Defendant sent were "advertisements," and
because Plaintiff acknowledges that she consented to the text
messages by responding with text messages saying "No stop."

Defendant's argument that it did not send "advertisements" fails as to Count II for the same reasons the argument failed with respect to Count I. As Plaintiff correctly points out, she alleges that she received "telemarketing" messages from Defendant, not advertisements. The operative regulation, 47 C.F.R. § 64.1200(d), does not require that the text messages amount to "advertisements," and therefore, Plaintiff's allegations that the messages were "telemarketing" messages as opposed to "advertisements" is not fatal to her claim. Plaintiff properly alleges that the messages were more than informational and thus constituted "telemarketing" messages as the messages were sent to promote Defendant's restaurant and entertainment services and informed recipients of Defendant's discounts and promotions. *See Lawson*, 741 F. Supp. 3d at 1254-55 (finding that a message amounted to telemarketing because "[s]imply put, the message was not purely informational, and Defendant did stand to gain financially from a transaction with Plaintiff if he acted on the message.").

Defendant's final argument concerns the "No stop" text messages Plaintiff sent to Defendant in response to its telemarketing messages. Plaintiff alleges that her repeated text messages to Defendant stating "No stop" were clear directives to Defendant to stop sending telemarketing text messages to her phone number. As Plaintiff correctly points out, it may be inferred that "internal do-not-call procedures are deficient when calls to an individual who has requested not to be called continue." 47 C.F.R. § 64.1200(d); *see e.g.*, *Menin v. Star Markets Co., Inc.*, No. 23-CV-11918-DJC, 2024 WL 4123522, at *3 (D. Mass. Sept. 9, 2024) (citing *Eagle v. GVG Cap., LLC*, No. 22-cv-00638-SRB, 2023 WL 1415615, at *4 (W.D. Mo. Jan. 31, 2023); *Adam v. CHW Grp., Inc.*, No. 21-cv-19-LRR, 2021 WL 7285905, at *2, 9 (N.D. Iowa Sept. 9, 2021)). Therefore, since Defendant purportedly continued to send messages after receiving the "No stop" replies from Plaintiff, she has provided sufficient allegations that Defendant failed to "institute procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of [Defendant]." 47 C.F.R. § 64.1200(d).

**\*8** Defendant contends that pursuant to 47 C.F.R. 64.1200(a)(1), there can be no TCPA violation where a plaintiff expressly consents to receiving the text and has not otherwise revoked that consent since that individual would no longer be on the entity's do-not-call list. Defendant argues that the phrase "No stop" indicated to the Defendant that it should continue to send the telemarketing messages to Plaintiff's phone number and therefore it did not need to put Plaintiff

on its internal do-not-call list. The Court finds Defendant's argument unpersuasive.

Plaintiff's "No stop" messages do not conclusively establish that Plaintiff consented to future telemarketing messages from Defendant. The provision Defendant cites to—47 C.F.R. § 64.1200(a)(10)—provides that any prior consent to receive text messages may be revoked by either "using the word stop, quit, end, revoke, opt-out, cancel, or unsubscribe' sent in reply to an incoming message" or "by using any reasonable method to clearly express a desire not to receive further text messages or calls from the caller or sender." Here, Plaintiff alleges that she texted the word "stop" in response to Defendant's telemarketing messages, creating a reasonable inference that she revoked any potential prior consent to receive telemarketing messages from Defendant. *See* 47 C.F.R. § 64.1200(a)(10) ("Any revocation request made...using the words 'stop,'...sent in reply to an incoming text message; or pursuant to a website or telephone number designated by the caller to process opt-out requests constitutes a reasonable means per se to revoke consent. If a called party uses any such method to revoke consent, that consent is considered definitively revoked and the caller may not send additional robocalls and robotexts."); *see also Persichetti*, 2020 WL 4811003 at *1340 (finding claim was sufficient where there was a reasonable "inference that Defendant failed to honor Plaintiff's do-not-call request"). Although the word "No" precedes the word "stop" in the messages sent to Defendant, the Court finds that when viewing the allegations as true, a reasonable person would likely understand "No stop" to mean stop sending the receipt messages, not "continue" sending messages. *See* 47 C.F.R. § 64.1200(a)(10) ("If a reply to an incoming text message uses words other than 'stop,' 'quit,' 'end,' 'revoke,' 'opt out,' 'cancel,' or 'unsubscribe,' the caller must treat that reply text as a valid revocation request if a reasonable person would understand those words to have conveyed a request to revoke consent."); *see also Legg v. Voice Media Grp., Inc.*, 990 F. Supp. 2d 1351, 1354 (S.D. Fla. 2014) ("[B]ecause the TCPA is a consumer protection statute that is remedial in nature, it should be construed liberally in favor of consumers."). This is especially true given Plaintiff's allegations that she was already on the national do-not-call registry and sent the "No stop" messages on multiple occasions. Under the circumstances, the phrase "No stop" cannot reasonably be understood as an invitation for continued solicitations. Moreover, Defendant offers no case law or other authority suggesting that the phrase "No stop" is an expression of consent such that the Court should dismiss Plaintiff's claims. Therefore, because there is no basis

Case 1:25-cv-01083-JPW    Document 31-3    Filed 12/05/25    Page 7 of 76

to dismiss either of Plaintiff's claims, Defendant's Motion is denied.

**IV. CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss, **ECF No. [9]**, is **DENIED**.

2. Defendants shall file an answer to the Complaint no later than **October 2, 2025**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on **September 18, 2025**.

**All Citations**

Slip Copy, 2025 WL 2686984

Footnotes

1    Plaintiff alleges none of these messages were for an emergency purpose or to collect a debt. ECF No. [1] at ¶ 27.

2    According to Plaintiff, "Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., promoting Defendant's restaurant and entertainment services." ECF No. [1] at ¶ 22. Specifically, the "information contained in the text message[s] advertise[ ] Defendant's various discounts and promotions, which Defendant sends to promote its business." *Id.* at ¶ 23.

3    "*Merriam–Webster* defines 'imminent' in its online dictionary to mean 'ready to take place; *especially*:

     hanging threateningly" and provides as an example the "*imminent* danger of being run over[.]" https://www.merriam-webster.com/dictionary/imminent." *See Taylor v. Fred's, Inc.*, 285 F. Supp. 3d 1247, 1259 (N.D. Ala. 2018).

4    While Defendant characterizes his Motion in part as a motion to strike, Defendant makes no argument in favor of striking any portion of the Complaint. *See generally* ECF No. [9].

5    Plaintiff also notes that while Defendant's Motion purports to also be a motion to strike, Defendant fails to identify any portion of the Complaint it seeks to have stricken. *See* ECF No. [10] at 3.

6    Defendant's argument that Plaintiff's failure to establish that the text messages were advertisements is not a standing argument but rather an argument that Plaintiff has failed to state a claim. As such, the Court will discuss the issue in the failure to state a claim section of the Opinion.

7    The Court notes that "[c]alls that 'violat[e] the do-not-call requirements'...'need not be automated to violate the regulations." ' *Klassen v. Protect My Car Admin Servs., Inc.*, 599 F. Supp. 3d 1243, 1245 (M.D. Fla. 2021); *Somogyi v. Freedom Mortg. Corp.*, No. CV 17-6546 (JBS/JS), 2018 WL 3656158, at *4 (D.N.J. Aug. 2, 2018).

8    As Plaintiff points out, the Complaint alleges that Plaintiff never provided any prior consent to receive text messages from Defendant. She did not "express written consent," and she "had no existing business relationship with Defendant." ECF No. [1] at ¶¶ 28,31.

9    *See* ECF No. [1] at ¶ 9 (describing her telephone number ending in 9198 as her "residential telephone number").

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2855393
Only the Westlaw citation is currently available.
United States District Court, D. Colorado.

Jay CONNOR, individually and on behalf
of all others similarly situated, Plaintiff,

v.

SERVICEQUICK INC., d/b/a Zing
Business Management Software,
and Woosender, INC. Defendants.

Civil Action No. 1:24-cv-02286-CNS-NRN
|
Signed October 8, 2025

**Attorneys and Law Firms**

Anthony I. Paronich, Paronich Law, P.C., Hingham, MA,
Andrew Roman Perrong, Perrong Law LLC, Glenside, PA,
for Plaintiff.

Philip Daniel Summa, Summa Law Firm LLC, Charleston,
SC, for Defendant Servicequik Inc.

H. David Kraut, Timothy M. Knowles, Warren McGraw &
Knowles LLC, for Defendant Woosender Inc.

**ORDER**

Charlotte N. Sweeney, United States District Judge

**\*1** Before the Court are Defendant ServiceQuik Inc. d/
b/a/ Zing Business Management Software (ServiceQuik's)
Motion to Dismiss, ECF No. 38, and Defendant Woosender
Inc.'s (Woosender's) Motion to Dismiss Plaintiff's Second
Amended Class Action Complaint Under Federal Rules of
Civil Procedure 12(b)(1) and 12(b)(6), ECF No. 52. For
the following reasons, the Court DENIES ServiceQuik's
and Woosender's motions. In doing so, the Court presumes
familiarity with the allegations contained in Plaintiff's Second
Amended Class Action Complaint, ECF No. 35, as well as the
legal standard governing the Court's analysis of the parties'
dismissal motions, *see, e.g., Clinton v. Sec. Benefit Life Ins.
Co.*, 63 F.4th 1264, 1274–75 (10th Cir. 2023).

**I. ANALYSIS**

**A. ServiceQuik's Motion**
The core argument advanced in ServiceQuik's dismissal
motion is that Plaintiff fails to state a claim for relief under
Section 227(c) of the Telephone Consumer Protection Act
(TCPA) because despite pleading that Plaintiff received two
text messages from Defendants while his phone number
was listed on the national Do-Not-Call (DNC) registry,
Plaintiff actually received only one text message that was
approximately 227 characters in length. ECF No. 38 at
3–5; *see also* ECF No. 35 (Second Amended Compl.)
at 6 ¶¶ 30–31. ServiceQuik argues that Plaintiff's phone
records reflect the receipt of two messages due to "invisible
technical processes" used to transmit text messages that
exceed the standard, 160-character limit for SMS messages.[1]
*Id.* at 5. ServiceQuik contends that despite these back-
end technological processes, Plaintiff's TCPA claim fails
because only one message actually "appear[ed]" on Plaintiff's
phone, as evidenced by a screenshot submitted by Plaintiff
in a related state-court action.[2] ECF No. 38 at 5. In
response, Plaintiff argues that even if his cell phone combined
Defendants' messages "for the ease of reading," he has plainly
alleged the receipt of more than one text message from
Defendants within a twelve-month period in violation of 47
U.S.C. § 227(c)(5), as evidenced by the entries on Plaintiff's
phone bill. ECF No. 47 at 14–16 (citing ECF No. 35 at 6, 7
¶¶ 30–32). The Court agrees that Plaintiff sufficiently pleaded
his TCPA claim.

**\*2** The TCPA provides a private right of action for "[a]
person who has received more than one telephone call [or text
message] within any 12-month period by or on behalf of the
same entity," when that person's phone number is listed on the
DNC registry. 47 U.S.C.A. § 227(c)(5).[3] Here, Plaintiff not
only pleads allegations regarding the text contained in each
of the two messages, ECF No. 35 at 6 ¶¶ 30, 31, Plaintiff's
allegations are supported by an excerpt from his phone
records, which reflect his receipt of two separate messages,
*id.* at 7 ¶ 32. Other courts have relied on billing records
in determining the number of contacts plaintiffs received
when evaluating TCPA claims. *See, e.g., Hinman v. M &
M Rental Ctr., Inc.*, 596 F. Supp. 2d 1152, 1156 (N.D. Ill.
2009) (acknowledging that "billing records...provide some
information about each job billed" and that "client invoices
indicate how many faxes were sent"). While the screenshot of
Plaintiff's phone appears to reflect one continuous message,
*see* ECF No. 38-2, that does not necessarily refute or "utterly
contradict[ ]" Plaintiff's allegation that he received two
separate messages, particularly given Plaintiff's allegations

regarding his billing records and the complexities of the background technological processes at work. *See Flores v. City of Aurora*, No. 1:20-cv-00618-RBJ, 2021 WL 4033117, at *7 (D. Colo. Sept. 3, 2021) (citation omitted). At this stage, where Plaintiff is entitled to have his properly alleged facts accepted as true and enjoy all reasonable inferences drawn from those facts, these allegations are sufficient for Plaintiff's claim to survive. *See Est. of Hebert by & through Bourgeois v. Marinelli*, No. 1:22-cv-02582-CNS-STV, 2023 WL 4744927, at *12 (D. Colo. July 25, 2023) (denying a motion to dismiss even where it "[was] a close call" that plaintiff "alleged enough factual content" to set forth claim).

In addition to the above, ServiceQuik advances two additional arguments in support of its dismissal motion. At this stage, neither is persuasive. First, ServiceQuik argues that Plaintiff fails to state a claim under the TCPA because Plaintiff's allegation that he was contacted on a "residential telephone number" (as opposed to a business telephone line which is not entitled to the same TCPA protections) is a "legal conclusion couched as a factual allegation" that the Court need not accept. ECF No. 38 at 6. The Court disagrees. ServiceQuik's contention that Plaintiff's phone number is "listed online as the main phone line of a business" on Google, ECF No. 38 at 6, raises a factual dispute—and not a legal one— that is inappropriate for the Court to analyze at this stage. Plaintiff has plainly alleged that he received the at-issue text messages on a "residential telephone number," ECF No. 35 at 5 ¶ 20, that he uses for "personal, residential, and household reasons," *id.* at 6 ¶ 25, and which he pays for with his "personal financial accounts," *id.* at 6 ¶ 24. Plaintiff also pleads that he "does not use [his] number for business reasons or business use and the number is not registered in the name of a business." *Id.* at 6 ¶ 26. Alleging that Plaintiff's phone number, which is listed "on the DNC" registry, "is not associated with a business and is used for personal purposes," is sufficient to establish that Plaintiff is a "residential telephone subscriber," and not a business, under the TCPA. *Tsolumba v. SelectQuote Ins. Servs.*, No. 5:22-cv-00712, 2023 WL 6146644, at *5 (N.D. Ohio Sept. 20, 2023); *see also id.* ("Because Plaintiff's number is on the DNC Registry, the FCC's presumption that she is a residential telephone subscriber applies.").

Second, ServiceQuik argues that Plaintiff's TCPA claim should be dismissed pursuant to Rule 12(b)(1) for lack of Article III standing because by "fishing for telemarketing violations" and "effectively seeking TCPA lawsuits," Plaintiff "does not have the privacy interest that the TCPA is intended to protect" and "has not suffered an injury in-fact." *See* ECF No. 38 at 6–7. In support of its argument, ServiceQuik contends that Plaintiff has previously "initiated hundreds of lawsuits in relation to telemarketing." *Id.* at 7; *see also id.* at 2 (citing ECF No. 38-4 (Ex. D)). This would perhaps be relevant if Plaintiff were alleging only a "generalized interest in punishing telemarketers," *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 323 (3d Cir.2015), or if Plaintiff had "admitted" that his "sole purpose" in purchasing his phone was to "receive more calls, thus enabling [him] to file TCPA lawsuits," *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 802 (W.D. Pa. 2016). However, that is not the case here.

**\*3** Plaintiff has pleaded that he (i) received two text messages from Defendants, ECF No. 35 at 6 ¶¶ 29–32; (ii) never consented to receiving messages from Defendants, *id.* at 6 ¶ 27; and (iii) has never done business with Defendants, *id.* at 10 ¶ 49. Plaintiff also alleges that he personally placed his phone number on the DNC registry, *id.* at 5 ¶ 22, and that each message he received from Defendants was nonconsensual, *id.* at 9 ¶ 50. Taken together, Plaintiff's allegations are sufficient to meet his burden of establishing Article III standing because they establish that Plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The Court further agrees with Plaintiff that ServiceQuik has offered no evidence to support its contention that Plaintiff uses his phone to run a TCPA litigation "business," as opposed to using it for personal and household use. ECF No. 47 at 13. Accordingly, the Court determines that Plaintiff's allegations are sufficient to bring him "within the zone of the privacy rights the TCPA protects" and establish Article III standing. *Barrett v. Vivint, Inc.*, No. 2:19-cv-00568-DBB-CMR, 2020 WL 2558231, at *5 (D. Utah May 20, 2020).

For the foregoing reasons, ServiceQuik's Motion to Dismiss, ECF No. 38, including its request for oral argument, ECF No. 58, is DENIED, along with its request that ServiceQuik's dismissal motion "be converted to a motion for summary judgment," *id.* at 7. The foregoing analysis of ServiceQuik's arguments makes clear that there are several factual disputes to be addressed during discovery. However, upon review of the docket and in light of the October 1, 2025 discovery deadline, *see* ECF No. 67, the parties should immediately review the Court's procedures for filing a summary judgment motion. *See* CNS Civ. Standing Order Regarding Federal Rule of Civil Procedure 56 Motions. Any party seeking to

file a motion for summary judgment must email Chambers, copying opposing counsel, to inform the Court of their intent to file such motion no later than October 14, 2025.

**B. Woosender's Motion**

In addition to joining and incorporating ServiceQuik's motion to dismiss, *see* ECF No. 52 at 8, the primary argument advanced in Woosender's dismissal motion is that Plaintiff's claims against Woosender should be dismissed because "Plaintiff does not allege that Defendant Woosender directly sent the text message at issue in this case," *id.* at 4. Woosender contends that Plaintiff's allegations acknowledge that the text messages at issue were "sent by ServiceQuik," *id.* (citing ECF No. 35 at 6, 7 ¶¶ 29, 34), and that Plaintiff merely alleges that "Woosender is liable as a platform for initiating the text message," because Woosender was " 'involved in the calling conduct,' " *id.* (citing ECF No. 35 at 9 ¶ 45). In response, Plaintiff contends that it has sufficiently alleged that Woosender is directly liable under the TCPA because, as a "third-party text messaging platform" utilized by ServiceQuik, ECF No. 35 at 7 ¶ 36, Woosender "physically sent the messages at issue" from Woosender's phone number, ECF No. 55 at 5, 6. The Court agrees with Plaintiff.

Pursuant to FCC regulation 47 C.F.R. § 64.1200(c)(2), under Section 227(c) of the TCPA, "no person or entity is permitted to '*initiate* any telephone solicitation...to any residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry.' " *In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (Tcpa) Rules*, 28 F.C.C. Rcd. 6574, 6575 (2013) (citing 47 C.F.R. § 64.1200(c)(2)) (emphasis added). An entity directly "initiate[s]" a call or text message "when it takes the steps necessary to physically place a telephone call." *Id.* at 6583. Here, Plaintiff has sufficiently alleged that Woosender directly initiated the at-issue text messages. Plaintiff not only pleads that he received two texts messages "sent using [Woosender's] platform at Defendant ServiceQuik's direction," ECF No. 35 at 6 ¶ 29, he also alleges that Woosender's messaging service "goes [f]ar beyond merely providing the platform that enables them to send messages" and includes "actually setting up and providing intimate support for their customers' campaigns and strategies," *id.* at 8 ¶ 40. Plaintiff further alleges that ServiceQuik "used the services provided by Defendant [Woosender] to send out the text message blasts, such as the one Plaintiff received" *id.* at 8 ¶ 41, and that it was Woosender

that actually "sent" the texts at issue, *id.* at 8 ¶ 44. These allegations are sufficient to establish a "direct connection" between Woosender and the transmission of the at issue texts Plaintiff received. *In re Dish Network*, 28 F.C.C. Rcd. at 6575. Woosender's request to dismiss Plaintiff's TCPA claim is DENIED.

**\*4** In addition to seeking dismissal, Woosender's motion also requests that the Court strike Plaintiff's allegation regarding Woosender's use of "automated calling" software. *See* ECF No. 52 at 7–8 (citing ECF No. 35 at 7 ¶ 38). For the reasons outlined below, the court declines to do so. Under Rule 12(f) (which Woosender neglects to invoke in its motion), "[t]he court may strike from a pleading...any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike, however, are "viewed with disfavor," *Griffie v. Allstate Fire & Cas. Ins. Co.*, No. 19-cv-02647-PAB-MEH, 2020 WL 4474800, at *2 (D. Colo. Aug. 3, 2020), and are "usually only granted when the allegations have no bearing on the controversy and the movant can show that he has been prejudiced," *Sierra Club v. Young Life Campaign, Inc.*, 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001). As such, the moving party's "burden of proof is a heavy one." *Holzberlein v. OM Fin. Life Ins. Co.*, No. 08-cv-02053-LTB, 2008 WL 5381503, at *1 (D. Colo. Dec. 22, 2008).

Here, Woosender requests that the Court strike Plaintiff's allegation that "Defendant WooSender hosts all the requisite computer software to enable illegal automated calling." *See* ECF No. 52 at 7–8 (citing ECF No. 35 at 7 ¶ 38). However, Woosender does not argue that Plaintiff's allegation is redundant, immaterial, impertinent, scandalous, or prejudicial, or that it has no bearing on the instant controversy. Instead, Woosender contends that Plaintiff "provides no factual support for its bare assertion that Defendant Woosender used an automated system." *Id.* at 7. Even if true, without more, this is not sufficient to strike an allegation. *See, e.g.*, *Beltran v. InterExchange, Inc.*, No. 14-cv-03074-CMA-KMT, 2015 WL 7253286, at *2 (D. Colo. Nov. 16, 2015) (denying a motion to strike where "no prejudice has been shown against the defendants merely by the inclusion of factual allegations in the Complaint" as those allegations "must ultimately be proved or disproved after the discovery period"); *Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.*, 173 F.R.D. 275, 285 (D. Colo. 1997) ("Even where the challenged allegations fall within the categories set forth in [Rule 12(f)], a party must usually make a showing of prejudice before the court will grant a

motion to strike."); *see also United States ex rel. Schroeder v. Medtronic, Inc.,* No. 17-2060-DDC-BGS, 2024 WL 1095664, at *4 (D. Kan. Mar. 13, 2024) ("[A] rule 12(f) motion is not the appropriate method to challenge the factual support for an allegation."). Moreover, Plaintiff is not required to put up evidence in support of every allegation at the pleading stage. *See Cochran v. City of Wichita,* 771 F. App'x 466, 469 n.3 (10th Cir. 2019) ("In a complaint[,] the plaintiff need not present evidence, but he or she must plead facts and cannot rely on conclusory allegations.") (citing *Tal v. Hogan,* 453 F.3d 1244, 1252 (10th Cir. 2006)). In light of its failure to explain how Paragraph 38 meets any of the bases for striking an allegation under Rule 12(f), Woosender's request to strike is DENIED.

## II. CONCLUSION

Consistent with the analysis above, Defendant ServiceQuik's Motion to Dismiss, ECF No. 38, and Defendant Woosender's Motion to Dismiss Plaintiff's Second Amended Class Action Complaint Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), ECF No. 52, are DENIED. Additionally, any party seeking to file a motion for summary judgment is instructed to immediately review the Court's procedures for filing a summary judgment motion and must email Chambers no later than October 14, 2025, copying opposing counsel, to inform the Court of their intent to file a summary judgment motion.

### All Citations

Slip Copy, 2025 WL 2855393

## Footnotes

1   ServiceQuik describes the technology likely used to transmit the text messages at issue:

    SMS messages, when using the default GSM 7-bit character encoding, are technically limited to 160 characters per segment—a standard set in the 1980s when data transmission was less advanced. However, modern messaging technology makes this limit largely invisible to users. When a message exceeds 160 characters, devices and networks automatically split it into multiple segments using 'concatenated SMS,' which adds a small header to each segment so the recipient's device can seamlessly reassemble them. While each segment is transmitted separately, the end user sees only one continuous message, exactly as the sender intended.

    ECF No. 38 at 3–4 (citations omitted).

2   In support of its dismissal motion, ServiceQuik attaches a screenshot purportedly showing Plaintiff's receipt of a single message on Plaintiff's phone. *See* ECF No. 38-2 (Ex. B). The Court is permitted to consider Exhibit B at this stage as it is part of a publicly filed court record central to Plaintiff's claims. *See Equal Emp. Opportunity Comm'n v. 'Murica, LLC,* 694 F. Supp. 3d 1356, 1365 (D. Colo. 2023) (when considering a motion to dismiss under Rule 12(b)(6), "the Court may consider documents incorporated by reference, documents referred to in the complaint that are central to the claims, and matters of which a court may take judicial notice," including "[p]ublicly filed court records.") (internal citations omitted).

3   The Federal Communications Commission (FCC), which has been delegated authority to implement the TCPA's requirements, has interpreted the TCPA's reference to a "telephone call" to include text messages. *See, e.g., Melito v. Experian Mktg. Sols., Inc.,* 923 F.3d 85, 88–89 (2d Cir. 2019) ("Although text messages are not explicitly covered under the TCPA, the FCC has interpreted the Act to cover them.") (citing *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 7 FCC Rcd. 14014, 14115 (July 3, 2003); *Campbell-Ewald Co. v. Gomez,* 136 S.Ct. 663, 667 (2016)).

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01083-JPW    Document 31-3    Filed 12/05/25    Page 12 of 76
JOE ESQUIVEL, on behalf of himself and all others similarly..., Slip Copy (2025)

2025 WL 3275607

2025 WL 3275607
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

JOE ESQUIVEL, on behalf of himself
and all others similarly situated, Plaintiff,

v.

MONA LEE, INC., Defendant.

Case No.: 3:25-cv-00607-H-BLM
|
Filed 11/24/2025

**Attorneys and Law Firms**

Adrian R. Bacon, Todd M. Friedman, Law Offices of Todd M.
Friedman, Calabasas, CA, Max Scott Morgan, Pro Hac Vice,
The Weitz Firm, LLC, Philadelphia, PA, for Plaintiff.

Jonathan Joannides, Digital Frontier Law, APC, San Jose,
CA, for Defendant.

**ORDER DENYING DEFENDANT'S MOTION TO
DISMISS**

MARILYN L. HUFF, District Judge UNITED STATES
DISTRICT COURT

*1  On March 14, 2025, Plaintiff Joe Esquivel filed a
complaint against Defendant Mona Lee Inc. (Doc. No. 1,
Complaint.) On July 28, 2025, Defendant filed a motion to
dismiss. (Doc. No. 17.) On July 30, 2025, Plaintiff filed a
first amended class action complaint ("FAC"). (Doc. No. 19,
FAC.) On August 1, 2025, Defendant responded to Plaintiff's
FAC with a second motion to dismiss. (Doc. No. 20.) On
August 4, 2025, the Court denied Defendant's first motion
to dismiss as moot and vacated the hearing set for that
motion. (Doc. No. 21.) On August 25, 2025, Plaintiff filed its
opposition. (Doc. No. 22.) On August 26, 2025, Defendant
filed its reply. (Doc No. 23.) On October 7, 2025, the Court
took Defendant's second motion to dismiss under submission.
(Doc. No. 26.) For the reasons set forth below, the Court
**DENIES** Defendant's motion.

**Background**

As alleged in the FAC, Plaintiff Joe Esquivel is a citizen
and resident of California and Defendant Mona Lee Inc.
is a Delaware corporation headquartered in Massachusetts.
(Doc. No. 19, FAC, ¶¶ 8–10.) On February 2, 2024, Plaintiff
allegedly registered his telephone number ending in 4489 on
the national do-not-call registry. (Doc. No. 19, FAC, ¶ 35.)
From November 5, 2024 to November 22, 2024, Defendant
sent Plaintiff text messages regarding its solar products
and services. (Doc. No. 19, FAC, ¶ 39.) These messages
included responses to inquiries, prompts to schedule phone
consultations, reminders for scheduled phone consultations,
and an advertisement for Black Friday deals. (Doc. No. 19,
FAC, Ex. A.) Plaintiff further alleges that Defendant either
did not have written do-not-call policies, had policies that did
not comply with the minimum requirements of the TCPA,
47 C.F.R. § 64.1200(d), or did not properly implement such
policies at the time of the texts. (Doc. No. 19, FAC, ¶ 47.)

Defendant moves to dismiss on the ground that Section
227(c)(5) of the TCPA does not provide a private right of
action for Plaintiff because text messages are not "telephone
solicitations" or "calls" under the TCPA. (Doc. No. 20.)
Additionally, in the alternative, Defendant argues that the
text messages are responses to inquiries within the scope
of an "established business relationship." (Doc. No. 20.)
Plaintiff's opposition argues that Section 227(c)(5) grants him
a private right of action because text messages constitute
"telephone solicitations" and "calls" under the TCPA. In
addition, Plaintiff also alleges that he sufficiently pled
facts regarding Defendant's solicitation and that Defendant's
factual arguments are premature for a motion to dismiss.
(Doc. No. 22.) The Court addresses each argument in turn.

**Discussion**

**I. Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) authorizes the
dismissal of claims for "failure to state a claim upon which
relief can be granted." Fed. R. Civ. P. 12(b)(6). A court may
grant a Rule 12(b)(6) motion to dismiss only if the motion
lacks "enough facts to state a claim to relief that is plausible
on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544,
570 (2007). A complaint sufficient on its face need not give
"detailed factual allegations," but it must provide more than
"labels and conclusions, and a formulaic recitation of the
elements of a cause of action." Id. at 555. When considering
a motion to dismiss, the court must accept all allegations of
material fact as true and construe those facts in the light most

Case 1:25-cv-01083-JPW    Document 31-3    Filed 12/05/25    Page 13 of 76
JOE ESQUIVEL, on behalf of himself and all others similarly..., Slip Copy (2025)
2025 WL 3275607

favorable to the non-movant. Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017). However, a court need not accept legal conclusions as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## II. Scope of Section 227 and Text Messages

**\*2** Defendant argues under statutory construction that a text message does not constitute a telephone solicitation or call under the TCPA. (Doc. No. 20.) In opposition, Plaintiff cites case law including Ninth Circuit authority and FCC guidance that a text message constitutes a telephone solicitation and call under the TCPA. (Doc No. 22.)

Congress enacted the TCPA "to address a growing number of telephone marketing calls and certain telemarketing practices thought to be an invasion of consumer privacy ..." In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14018 (June 26, 2003). To that end, Section 227(c) "protect[s] residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Section 227(c)(5) provides a private right of action against solicitations violating the national do-not-call registry to any person who receives "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of" 47 C.F.R. § 64.1200(c). 47 U.S.C. § 227(c)(5); see Barton v. JMS Assoc. Mktg., LLC, 2023 WL 2009925 (9th Cir. Feb. 15, 2023) (finding a private right of action under Section 227(c)(5) for violation of Section 64.1200(c)(2)). Both Section 227(a)(4) and Section 64.1200(f)(15) define telephone solicitation as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(f)(15).

Supreme Court and Ninth Circuit precedent conclude that text messages qualify as calls under the TCPA. The Supreme Court explicitly held in Campbell-Ewald Co. v. Gomez that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." 577 U.S. 153, 156 (2016). Ninth Circuit precedent echoes the same, such as in Satterfield v. Simon & Schuster, Inc. where the panel held that "a text message is a 'call' within the meaning of the TCPA." 569 F.3d 946, 952 (9th Cir. 2009). The Ninth Circuit elaborated on this in Van Patten v. Vertical Fitness Group, LLC, where it explained that "telemarketing text messages [ ], absent consent, present the precise harm and infringe the same privacy interests Congress sought to

protect in enacting the TCPA." 847 F.3d 1037, 1043 (9th Cir. 2017) ("Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients."). More recently, the Ninth Circuit has held that unwanted text messages qualify as an injury in fact sufficient to confer standing for a TCPA claim. See Hall v. Smosh Dot Com, Inc., 72 F.4th 983, 988 (9th Cir. 2023); Van Patten, 847 F.3d at 1043; Chennette v. Porch.com, Inc., 50 F.4th 1217, 1221 (9th Cir. 2022). Plaintiff has alleged in its FAC that Defendant's text messages were in contravention of both Plaintiff's do-not-call registration and repeated requests to stop. (Doc. No. 19, FAC, ¶¶ 1–3, 36–47; Ex. A.)

Additionally, FCC guidance states that text messages constitute calls under the TCPA. Within both Section 227(b) and Section 227(c), Congress codified a grant of authority to the FCC to prescribe regulations guiding the enforcement of the TCPA. 47 U.S.C. §§ 227(b)(2); 227(c)(1)–(4). A 2024 FCC regulation explicitly confirmed that Section 227(c) applies to text messages, stating "[t]he Commission adopts the proposal to codify the National DNC Registry's existing protections to text messages. Texters must have the consumer's express invitation or permission before sending a marketing text to a wireless number in the DNC Registry." Targeting and Eliminating Unlawful Text Messages, Implementation of the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls, 89 Fed. Reg. 5098, 5101 (Jan. 26, 2024). The adoption came shortly after, effective March 26, 2024, amending Section 64.1200(e) to state that "paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers ..." 47 C.F.R. § 64.1200(e); Targeting and Eliminating Unlawful Text Messages, 89 Fed. Reg. at 5099.

**\*3** Defendant states that "[a]s the Supreme Court reaffirmed in Loper Bright, the judiciary—not the executive branch —must interpret statutes in accordance with their text, and that while courts once deferred to the Federal Communications Commission's expansive interpretation of 'call,' such deference is no longer required." (Doc. No. 20 (citing Loper Bright Enters. v. Raimondo, 603 U.S. 369 (2024); McLaughlin Chiropractic Assocs. v. McKesson Corp., 606 U.S. 146 (2025).).) Loper Bright and McLaughlin did not wholly abrogate FCC guidance. And significantly, McLaughlin did not examine the issue in this motion of whether a text message qualifies as a call under the TCPA. See

Case 1:25-cv-01083-JPW    Document 31-3    Filed 12/05/25    Page 14 of 76
JOE ESQUIVEL, on behalf of himself and all others similarly..., Slip Copy (2025)

2025 WL 3275607

McLaughlin, 606 U.S. at 146 (holding that "[t]he Hobbs Act does not bind district courts ... to an agency's interpretation of a statute.").

Although FCC guidance is no longer binding on district courts, its regulations can still inform a district court's analysis. Before its 2024 clarification, the FCC issued at least two regulations stating that texts are covered under the TCPA. See 2003 Rules & Reguls., 18 F.C.C. Rcd. at 14115 ("We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number ... [t]his encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls"); In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961 ¶ 107 (July 10, 2015) ("Glide raises the issue of whether SMS text messages are subject to the same consumer protections under the TCPA as voice calls. We reiterate that they are.").

Given the language of the TCPA, precedent, and FCC regulatory guidance, the Court concludes that Plaintiff's allegations regarding Defendant's text messages rise to a cause of action under Section 227(c)(5).

### III. Section 227(a)(4) Exception

Defendant also argues that the text messages at issue do not constitute telephone solicitations because they fall under one of Section 227(a)(4)'s exceptions. Section 227(a)(4)(B) states that "telephone solicitation" "does not include a call or message to ... any person with whom the caller has an established business relationship." 47 U.S.C. § 227(a)(4)(B). Section 64.1200(f)(5) elaborates that an established business relationship is a "prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration ... on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call." 47 C.F.R. § 64.1200(f)(5).

In opposition, Plaintiff argues that Defendant's factual arguments misconstrue the allegations in the complaint and are premature in a motion to dismiss. (Doc. No. 22.) Plaintiff cites to the allegations of the FAC the requests it made to Defendant to cease communication:

- "Stop"

- "Mona Lee stop sending me messages."

- "Stop I don't appreciate it."

- "I didn't request any appointments with your company so stop sending me messages please, the time that you message me it's too early, please have considerations of others, and why do you want with my utility bill? That's private [information] and not for me to discuss with you!! Who are you looking for? Can you disconnect every communication with your Company because I have no business with you at all. Did someone send you to bother me with your texts?"

- "Unsubscribe me please, I didn't request any inquiries on your business."

**\*4** - "Unsubscribe me, I never signed up for your text, so stop."

(Doc. No. 22 (quoting Doc. No. 19, FAC, Ex. A).)

When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. Los Angeles Lakers, 869 F.3d at 800. Defendant argues that all its text messages to Plaintiff were sent pursuant to their established business relationship. (Doc. No. 20.) To support this, Defendant points out that the content of its automated text messages "support[s] a reasonable inference that they were sent in response to a ... inquiry or application." (Doc. No. 20 (emphasis removed).) Defendant's argument that such messages were sent in response to Plaintiff's inquiries is not apparent from the allegations in the FAC. And Plaintiff alleges in the FAC that he continuously received text messages from Defendant despite requesting that Defendant stop. (Doc. No. 19, FAC, ¶ 36–47.) The precise nature and context of the text messages is a factual matter for discovery and better suited for a motion for summary judgment when the record is more developed.

### Conclusion

For the foregoing reasons, the Court **DENIES** Defendant Mona Lee Inc.'s motion to dismiss. The Court orders Defendant to file an answer within 30 days of the date of this order.

JOE ESQUIVEL, on behalf of himself and all others similarly..., Slip Copy (2025)

2025 WL 3275607

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 3275607

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Gill v. Align Technology Inc., Not Reported in Fed. Supp. (2022)

Case 1:25-cv-01083-JPW    Document 31-3    Filed 12/05/25    Page 16 of 76

2022 WL 1540016

2022 WL 1540016
Only the Westlaw citation is currently available.
United States District Court, E.D. Wisconsin.

Anna GILL, Plaintiff,
v.
ALIGN TECHNOLOGY INC., Defendant.

Case No. 21-CV-631-JPS-JPS
|
Signed 05/16/2022

**Attorneys and Law Firms**

Avi R. Kaufman, Coral Gables, FL, Stefan Coleman, Law Offices of Stefan Coleman, Miami, FL, for Plaintiff.

Erin M. Cook, Godfrey & Kahn SC, Milwaukee, WI, I. Jennifer I. Virostko, King & Spalding LLP, Atlanta, GA, Livia M. Kiser, King & Spalding, Chicago, IL, Peter Schmidt, King & Spalding LLP, Washington, DC, for Defendant.

**ORDER**

J. P. Stadtmueller, U.S. District Judge

 **\*1** This case comes before the Court on Defendant Align Technology, Inc. ("Align")'s motion to dismiss Plaintiff's first amended complaint, which alleges a violation of the Telephone Consumer Protection Act (the "TCPA"). ECF Nos. 10, 16. For the reasons explained below, the Court will deny the motion.

**1. RELEVANT FACTS**
In December 2020 or January 2021, Plaintiff visited the Invisalign website, www.invisalign.com (the "Website") to learn more about Invisalign's orthodontal products and services. Plaintiff voluntarily answered a few questions to determine if Invisalign would be a good option for her. As part of this quiz, she provided her email address and phone number, and agreed to "receive information about Invisalign from Align" and consented to Align contacting her "solely for the purposes of assisting ... in finding an Invisalign provider and scheduling an appointment." ECF No. 10 ¶ 17. Plaintiff requested some information from Invisalign through the website, and, in return, received a number of emails. On

the morning of April 29, 2021, Plaintiff unsubscribed to these emails because she was no longer interested in Invisalign.

At 10:35 a.m., very shortly after opting out of the emails, Plaintiff received a text message from Invisalign inviting her to visit an Invisalign provider. Plaintiff opted out of further text message communication by replying "STOP." At around 11:15 a.m., Plaintiff received a phone call from Invisalign. On the other end of the line, an employee introduced the company and tried to book Plaintiff with an Invisalign provider. Plaintiff told this employee that she had already tried to opt out of further communications by text and email. This appears to be the last time Invisalign contacted Plaintiff.

Based on these two post-opt-out communications, Plaintiff alleges that Invisalign has a policy of contacting consumers who opt out of communications with Invisalign in a last-ditch effort to market Invisalign. Plaintiff further alleges that her injuries include annoyance, invasion of privacy, disturbances in "the use and enjoyment of her phone," and some (presumably negligible) wear and tear on the phone's hardware and memory.

**2. LEGAL STANDARD**
Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." Kubiak v. City of Chicago, 810 F.3d 476, 480 (7th Cir. 2016) (internal citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." Olson v. Champaign County, 784 F.3d 1093, 1099 (7th Cir. 2015) (internal citations and quotations omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." Kubiak, 810 F.3d at 480–81. However, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009) (internal citations and quotations omitted).

Case 1:25-cv-01083-JPW    Document 31-3    Filed 12/05/25    Page 17 of 76

Gill v. Align Technology Inc., Not Reported in Fed. Supp. (2022)

2022 WL 1540016

## 3. ANALYSIS

### 3.1 Overview

**\*2** Title 47 C.F.R. § 64.1200(d) requires businesses who engage in telemarketing to maintain a do-not-call list for people who request not to be called for telemarketing purposes. The regulations include a set of minimum requirements for such businesses, including that the business "must record the request [to opt out of telemarketing calls] and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made." *Id.* § 64.1200(d)(3). If a person makes a do-not-call request, the business must "honor" that request "within a reasonable time from the date such request is made," but, in any event, no later than "thirty days from the date of such request." *Id.*

### 3.2 Private Right of Action for § 64.1200(d) violations

The TCPA confers standing for a private right of action upon anyone who receives more than one phone call within a twelve-month period by a business that violates any of the enabling regulations. 47 U.S.C. § 227(c)(5). There is a minor split in authority as to whether § 64.1200(d) arises under § 227(c), and thus may be prosecuted by private action, or under § 227(d), which prescribes technical and procedural standards for automatic dialing systems, fax machines, and artificial or prerecorded systems, but does not support a private action. *Compare Bilek v. Nat'l Congress of Employers, Inc.*, 470 F. Supp. 3d 857, 862–63 (N.D. Ill. 2020) *with Wilson v. PL Phase One Operations L.P.*, 422 F.Supp.3d 971, at \*6 (D. Md. 2019).

Although the Seventh Circuit has yet to weigh in on the issue, district courts in this circuit, as well as the Sixth and Eleventh Circuits, recognize a private right of action arising from violations of Section 64.1200(d). *Sorsby v. TruGreen Ltd. P'ship*, No. 20-cv-2601, 2020 WL 7641288, at \*5 (N.D. Ill. Dec. 23, 2020). "Taken as a whole, section 64.1200(d) implements section 227(c)'s command to protect the privacy rights of telephone subscribers to avoid receiving telephone solicitations to which they object." *Bilek*, 470 F. Supp. 3d at 862–63. Notably, § 227(d)(3) is "limited to artificial or prerecorded voice systems, whereas section 64.1200(d) applies to all telemarketing calls." *Id.* at 863. Thus, because § 64.1200(d) reflects the concerns embraced by section 227(c)—i.e., to protect consumers from phone solicitations to which they have already objected—it is reasonable to conclude that § 64.1200(d) was promulgated pursuant to § 227(c) and permits a private right of action for violations.

### 3.3 TCPA Applies to Align's Communication with Plaintiff

The TCPA's regulations define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). Courts consider "the purpose of the calls" when evaluating their telemarketing character. *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015) (elaborating that telemarketing "occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services").

Plaintiff alleges that Align called her to encourage her to meet with an Invisalign provider—i.e., in order to facilitate a sale of Invisalign. Unlike a prompt text message that confirms a restaurant reservation or reminds a patron to complete an order, Align's communications sought to initiate a transaction months after Plaintiff first expressed interest —not to confirm or complete it. *C.f. MacKinnon v. Hof's Hut Rests., Inc.*, No. 2:17-CV-01456-JAM-DB, 2017 WL 5754308, at \*2 (E.D. Cal. Nov. 28, 2017) (holding that a text message from a restaurant to confirm a reservation is informative and non-telemarketing in nature, even if it included a link to a specials list); *Wick v. Twilio Inc.*, No. C16-00914RSL, 2017 WL 2964855, at \*5 (W.D. Wash. July 12, 2017) (concluding that a text message from a website prompting a customer to complete an order that he initiated was not telemarketing). Align's telemarketing purpose is highlighted by the fact that Align does not sell its products or services directly to consumers—rather, it operates through a network of specially-trained orthodontists, including the ones with whom it attempted to schedule an appointment for Plaintiff during the call.[1] Thus, Plaintiff has plausibly alleged that Align's calls were to telemarket Invisalign.

### 3.4 TCPA Applies to Calls Made to Plaintiff's Cell Phone

**\*3** The TCPA and its enabling regulations also apply to wireless telephone numbers such as Plaintiff's, which were personal use, not associated with any business, and registered on the National Do Not Call Registry. 47 C.F.R. § 64.1200(e) (explaining that the rules in subsections (d) apply to "telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02–278, FCC 03–153, "Rules and Regulations

Gill v. Align Technology Inc., Not Reported in Fed. Supp. (2022)

2022 WL 1540016

Implementing the Telephone Consumer Protection Act of 1991"); In re Rules & Regs. Implementing the TCPA of 1991, 18 FCC Rcd. 14014, 14038, ¶¶ 33, 36 (July 3, 2003) ("[W]ireless subscribers should not be excluded from the protections of the TCPA, particularly the option to register on a national-do-not-call list .... we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.' ").

Align's arguments that Plaintiff must put forth evidence that proves that her phone qualifies as "residential use" is entirely premature; the single case it cites in support is an order on a motion for summary judgment. Stevens-Bratton v. TruGreen, Inc., 437 F. Supp. 3d 648, 655–57 (W.D. Tenn. 2020) (concluding that there was a genuine issue of material fact on the issue of whether the plaintiff's cell phone was a residential use phone). The parties have yet to reach the fact-finding portion of this matter. At this stage, Plaintiff's allegations that her wireless phone is a non-business, personal use phone that is registered on the do-not-call list is sufficient to allege that the phone was residential use. See In re Rules & Regs. Implementing the TCPA of 1991, 18 FCC Rcd. at 14038, ¶ 36; Izor v. Abacuz Data Sys., No. 19-CV-01057-HSG, 2019 WL 3555110, at *2 (N.D. Cal. Aug. 5, 2019).

### 3.5 Plaintiff Sufficiently Alleged that Align Did Not Honor Her Request; the Reasonableness of Align's Efforts to Honor the Do Not Call Request is a Question for the Jury

Align argues that one call within an hour of requesting to be on a do-not-call list does not violate the TCPA as a matter of law. See Orsatti v. Quicken Loans, Inc., No. 215CV09380SVWAGR, 2016 WL 7650574, at *7 (C.D. Cal. Sept. 12, 2016) (referring to § 64.1200(d)(3)'s thirty-day limit to honor do-not-call requests as a "safe harbor provision"); Mattson v. Quicken Loans, Inc., No. 3:18-CV-00989-YY, 2018 WL 5255228, at *3 (D. Or. Oct. 22, 2018) (inferring a "lack of adequate internal procedures" sufficient to sustain a claim under 47 C.F.R. 64.1200(d) where a plaintiff alleged that he was "repeatedly called beyond 30 days after a specific request not to be called"); but see Delgado v. Emortgage Funding, LLC, No. 21-CV-11401, 2021 WL 4776774, 2021 U.S. Dist. LEXIS 196785 (E.D. Mich. Oct. 13, 2021)

("Although § 64.1200(d)(3) states that a thirty-day delay in honoring do not call requests is per se unreasonable, it does not state that any shorter delay is per se reasonable.").[2]

**\*4** Plaintiff does not contend that Align lacks appropriate protocol—rather, it contends that Align's protocol does not "honor" a subscriber's "do-not-call request" because its internal protocol requires a phone call immediately after a person asks to be placed on a do-not-call list. See 47 C.F.R. § 64.1200(d)(3). In support of this claim, Plaintiff alleges that she initially requested information about Align and received it via email. After four months, she unsubscribed from receiving such information, and promptly received a text message doing the exact opposite of what she requested. When she formally requested to be placed on a do-not-call list, she received a phone call. This escalation in contact, seemingly in direct response to Plaintiff's requests to *stop* contact, plausibly indicates that Align violated the TCPA's regulations by failing to honor Plaintiff's do-not-call requests within a reasonable amount of time. See Nece v. Quicken Loans, Inc., No. 8:16-cv-2605-T-23CPT, 2018 WL 1326885, at *7 (M.D. Fla. Mar. 15, 2018) (concluding that there was a genuine dispute of material fact as to whether a business honored a plaintiff's do-not-call request in a reasonable amount of time, and the reasonableness of the business's response was for the jury to decide). Indeed, if Align's system was such that it could easily and immediately remove a person from a call list, then perhaps a jury would find that it was unreasonable to call that person within an hour of their do-not-call request. In any case, it is an issue for the fact-finding stage of this matter.

### 4. CONCLUSION

For the reasons explained above, Align's motion to dismiss is denied.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss, ECF No. 16, be and the same is hereby **DENIED**.

### All Citations

Not Reported in Fed. Supp., 2022 WL 1540016

Footnotes

1    The Court takes judicial notice of Align's website, where it explains how potential consumers can obtain Invisalign. Denius v. Dunlap, 330 F.3d 919, 926 (7th Cir. 2003) (quoting Federal Rule of Evidence 201, which permits a court to take judicial

**Gill v. Align Technology Inc., Not Reported in Fed. Supp. (2022)**

Case 1:25-cv-01083-JPW    Document 31-3    Filed 12/05/25    Page 19 of 76

2022 WL 1540016

notice of facts that are "not subject to reasonable dispute" and which are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

2    Align cites to *Charavat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 592 (S.D. Ohio 2011) because that case noted that "the regulations do not specifically proscribe actually calling an individual after the individual has requested placement on a do-not-call list." This phrasing is somewhat parsimonious—the regulations do not "specifically proscribe" making additional calls, but they do require companies to stop calling individuals within a reasonable time of the do-not-call request, and they create a private right of action for violations of that regulation. 47 C.F.R. § 64.1200(d)(3). Similarly, the regulations may not "specifically proscribe failing to record an individual's request to be placed on a do-not-call list," *Charavat,* 781 F. Supp. 2d at 592, but they unequivocally state that a business "*must* record the request and place the subscriber's name ... on the do-not-call list at the time the request is made," 47 C.F.R. 64.1200(d)(3).

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

2025 WL 1677071
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Joseph HULETT, individually, and on
behalf of others similarly situated, Plaintiff,

v.

EYEBUYDIRECT, INC., Defendant.

1:24-cv-996 (AMN/MJK)
|
Signed June 13, 2025

**Attorneys and Law Firms**

ZANE C. HEDAYA, ESQ., THE LAW OFFICES OF
JIBRAEL S. HINDI, 1515 NE 26th Street, Wilton Manors,
FL 33305, Attorneys for Plaintiff.

ANDREW J. WELLS, ESQ., CARLA M. VARRIALE -
BARKER, ESQ., SEGAL McCAMBRIDGE SINGER &
MAHONEY, LTD., 777 Third Avenue – Suite 2400, New
York, NY 10017, Attorneys for Defendant.

WILLIAM E. RANEY, ESQ., COLIN T. GREGORY, ESQ.,
COPILEVITZ, LAM & RANEY, P.C., 310 W. 20th Street
– Suite 300, Kansas City, MO 64108-2025, Attorneys for
Defendant.

**MEMORANDUM-DECISION AND ORDER**

Anne M. Nardacci, United States District Judge:

**I. INTRODUCTION**

**\*1** On August 13, 2024, Plaintiff Joseph Hulett commenced
this action against Eyebuydirect, Inc., ("Eyebuydirect")
pursuant to the Telephone Consumer Protection Act, 47
U.S.C. §§ 227, et seq. ("TCPA"). *See* Dkt. No. 1
("Complaint"). On October 23, 2024, Eyebuydirect moved to
dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6),
*see* Dkt. No. 11, and on October 24, 2024, Plaintiff filed an
amended complaint as a matter of course pursuant to Fed.
R. Civ. P. 15, which bolstered certain factual allegations.
*See* Dkt. No. 12 ("Amended Complaint"). On November 7,
2024, Eyebuydirect renewed its motion to dismiss. *See* Dkt.
No. 27 ("Motion"). On November 8, 2024, Plaintiff filed a
response in opposition to the Motion, *see* Dkt. No. 29, and

on December 5, 2024, Eyebuydirect filed a reply in further
support of the Motion, *see* Dkt. No. 30. The Motion is now
ripe for adjudication.

For the reasons that follow, the Motion is granted.

**II. BACKGROUND**

Unless otherwise noted, the following facts are drawn from
the Amended Complaint, its attachments, or materials it
incorporates by reference. *See Chambers v. Time Warner, Inc.,*
*282 F.3d 147, 152 (2d Cir. 2002)* (On a motion to dismiss,
"the complaint is deemed to include any written instrument
attached to it as an exhibit or any statements or documents
incorporated in it by reference."). The allegations are assumed
to be true for purposes of ruling on the Motion, *see Div.*
*1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund*
*v. N.Y.C. Dep't of Educ.,* 9 F.4th 91, 94 (2d Cir. 2021) (*per*
*curiam*), or are otherwise matters of public record, *Williams v.*
*N.Y.C. Hous. Auth.,* 816 Fed. Appx. 532, 534 (2d Cir. 2020).

**A. Allegations**

Plaintiff is a citizen and resident of Saratoga County, New
York. Dkt. No. 12 at ¶ 6. Eyebuydirect is a Texas corporation
with its headquarters in Dallas, Texas. *Id.* at ¶ 7. On or about
March 11, 2024, after receiving at least one text message,
Plaintiff requested to opt-out of Eyebuydirect's text messages
by replying with a "stop" instruction. *Id.* at ¶ 9. In response,
Plaintiff received another message which read, "You've opted
out and will no longer receive messages from Eyebuydirect."
*Id.* at 3.[1]

Despite this confirmation, Plaintiff received additional text
messages from Eyebuydirect on March 15, March 18, and
March 20, 2024. *Id.* at ¶ 10. Each of the text messages
Plaintiff received advertised and promoted Eyebuydirect's
products. *Id.* at 4. Plaintiff alleges that Eyebuydirect "had
the ability to immediately opt Plaintiff out of further
communications but chose not to do so." *Id.* at ¶ 11. Plaintiff
also alleges that Eyebuydirect's failure to honor the opt-out
request "demonstrates that [Eyebuydirect] has not instituted
procedures for maintaining a list of persons who request not to
receive text messages[,]" that Eyebuydirect "does not provide
training to its personnel engaged in telemarketing[,]" and that
Eyebuydirect "does not maintain a standalone do-not-call-
list." *Id.* at ¶¶ 15-17.

**B. TCPA**

**\*2** Plaintiff alleges that Eyebuydirect violated the TCPA and sues pursuant to 47 U.S.C. § 227(c), which provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection ...." 47 U.S.C. § 227(c)(5). One such regulation, 47 C.F.R. § 64.1200(d), limits the ability of telemarketers to call residential telephone subscribers without first implementing a set of do-not-call procedures.[2] Under 47 C.F.R. § 64.1200(d):

> No person or entity shall initiate any artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity.

*Id.* The regulation provides a set of minimum requirements for a party's internal do-not-call procedures, including as relevant to Plaintiff's claims: having a written policy which is available to consumers upon demand, training personnel as to the existence and use of the internal do-not-call list, recording and honoring do-not-call requests within a reasonable period, and maintaining records of do-not-call requests that must be honored for five years. 47 C.F.R. § 64.1200(d)(1)-(6).[3] Of particular importance to this case, 47 C.F.R. § 64.1200(d)(3) provides, in part:

> Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed 30 days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request.[4]

*Id.* Put simply, § 64.1200(d)(3) requires that a party implement procedures that enable it to honor an opt-out request within a "reasonable" timeframe. *Id.*

### C. The Lawsuit and the Motion

**\*3** Plaintiff alleges that Eyebuydirect violated the TCPA and its regulations by continuing to send text messages to Plaintiff after he opted-out of further communications, by lacking a do-not-call list, by failing to maintain the required

written policies, and by failing to train personnel engaged in telemarketing. Dkt. No. 12 at ¶¶ 46-50. Plaintiff also seeks to represent a class of individuals who, "within the four years prior to the filing of this lawsuit ... received two or more text messages within any 12-month period, from or on behalf of [Eyebuydirect] ... after communicating to [Eyebuydirect] that they did not wish to receive text messages by replying with a 'stop' or similar opt-out instruction." Dkt. No. 12 at ¶ 27 (the "proposed class"). The Amended Complaint seeks class certification, statutory damages, declaratory relief, and an injunction barring further violations of 47 C.F.R. § 64.1200(d) ("§ 64.1200(d)"). *Id.* at 12.

Defendant's Motion is brought pursuant to Fed. R. Civ. P. 12(b)(6), asserting various arguments as to why the claims set forth in Plaintiff's Amended Complaint should be dismissed. *See generally* Dkt. No. 27-1. First, Eyebuydirect argues that Plaintiff has failed to plausibly allege that Eyebuydirect lacks a written "do-not-call" policy and has failed to implement the required procedures under § 64.1200(d). *Id.* at 3-4. Second, Eyebuydirect argues that the Amended Complaint, in fact, shows that Eyebuydirect honored Plaintiff's request within a reasonable timeframe by halting further text messages seven business days and nine total days after Plaintiff's opt-out request. *Id.* at 5-7.

### III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor. *See ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This presumption, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted).

Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

**IV. DISCUSSION**

**A. Plausibility and § 64.1200(d) Claims**

**\*4** First, as a preliminary issue, the Court addresses what is required to plausibly assert a claim under § 64.1200(d). Eyebuydirect characterizes Plaintiff's allegations of Eyebuydirect's internal procedural failures as "conclusory" and asserts that they represent no more than "threadbare recitals of the elements of a cause of action." Dkt. No. 27-1 at 3-4. Eyebuydirect also points to Plaintiff's failure to allege that "he requested a copy of Eyebuydirect's 'do-not-call' policy" as weighing in favor of dismissal, *id.* at 4, though it asserts that the Amended Complaint is fatally deficient even without considering that purported shortcoming. *See* Dkt. No. 30 at 2. In response, Plaintiff argues that requesting a defendant's do-not-call policy is not a prerequisite for bringing a claim under § 64.1200(d). Dkt. No. 29 at 7. Plaintiff also asserts that "a plaintiff cannot factually allege that something does not exist by saying much more than that it does not exist[.]" *Id.* at 10. Put differently, Plaintiff argues that the Amended Complaint could not have provided additional factual support for its claim under § 64.1200(d) "because the specific facts [at issue] are peculiarly in [Eyebuydirect's] possession and control." *Id.* Instead, Plaintiff argues, "all a plaintiff is required to do is allege [the relevant facts] in good faith, and on information and belief." *Id.* at 3.

To successfully plead a TCPA claim under § 64.1200(d), a Plaintiff must plausibly allege, "that the entity placing the calls failed to institute the proper procedures *prior* to the initiation of the call." *Barr v. Macys.com, LLC*, 1:22-cv-07867 (ALC), 2023 WL 6393480, at \*4 (S.D.N.Y. Sep. 29,

2023) (emphasis in original) (quoting *Simmons*, 222 F. Supp. 3d at 131). A plaintiff "may request a copy of defendant's Internal [policies] to bolster his claim[,]" but the nature of the claim otherwise limits a plaintiff's ability to allege the required elements with factual specificity. *Id.* (citing *Perrong v. Brief Call Inc.*, No. 22-CV-04128 (PGG)(SN), 2023 WL 6005963, at \*4 (S.D.N.Y. Aug. 7, 2023)).[5] At issue, then, is whether, *at the pleading stage*, and in the absence of concrete information as to a defendant's internal procedures, a complaint's allegation that a defendant continued to message a plaintiff after an opt-out request, alone, supports the inference that the defendant lacked the internal procedures and policies required by § 64.1200(d).

When faced with this predicament, a majority of courts have recognized that, generally, allegations of continued contact after an alleged opt-out may be sufficient to plausibly suggest that the defendant did not implement the required internal procedures prior to contacting the plaintiff. *See, e.g.*, *Menin v. Star Markets Co., Inc.*, No. 23-cv-11918-DJC, 2024 WL 4123522, at \*3 (D. Mass. Sep. 9, 2024) (denying motion to dismiss based on allegations of continued telemarketing); *Eagle v. GVG Capital, LLC*, No. 22-cv-00638-SRB, 2023 WL 1415615, at \*4 (W.D. Mo. Jan. 31, 2023) ("it is reasonable to infer that [d]efendant did not have internal procedures" based on allegations of continued telemarketing; *Adam v. CHW Grp., Inc.*, No. 21-cv-19-LRR, 2021 WL 7285905, at \*2, 9 (N.D. Iowa Sept. 9, 2021) (denying a motion to dismiss where "[plaintiff] requested that [defendant] stop calling him, [defendant] did not, and based on [defendant's] failure to stop calling him, [plaintiff] alleges that [defendant] violated the procedures required in 47 C.F.R. § 64.1200(d)"); *Gill v. Align Tech. Inc.*, No. 21-CV-631-JPS, 2022 WL 1540016, at \*9 (E.D. Wis. May 16, 2022) (finding that contact after an opt-out request "plausibly indicates that [defendant] violated the TCPA's regulations by failing to honor [p]laintiff's do-not-call requests within a reasonable amount of time."). At base, these "[c]ourts have inferred that internal do-not-call procedures are deficient when calls to an individual who has requested not to be called continue." *Mattson v. Quicken Loans. Inc.*, No. 3:18-CV-00989-YY, 2018 WL 5255228, at \*6 (D. Or. Oct. 22, 2018). Plaintiff construes these cases as suggesting that *any* allegations of continued messages after a plaintiff's opt-request are sufficient to state a claim.

**\*5** There is a dearth of relevant cases in the Second Circuit. However, at least one district court in this Circuit has suggested that allegations similar to those alleged here may be insufficient to survive a motion to dismiss. In *Barr*

*v. Macys.com, LLC*, the court found that a plaintiff had failed to plausibly allege a violation of § 64.1200(d) after finding that "there [was] no evidence Plaintiff made [ ] a request [for the written policy]" and that plaintiff's allegations of deficient internal procedures were based solely on plaintiff's receipt of text messages one business day after an opt-out request. 2023 WL 6393480, at *5-6. The court characterized the plaintiff's allegations of procedural deficiencies as "conclusory" and found that they "failed to adequately dispute the existence of [d]efendant's internal [do-not-call] list and policies, or that Defendant's procedures were lacking in any way." *Id.*; *see also Rahimian v. Adriano*, No. 2:20-cv-00189-GMN-VCF, 2022 WL 798371, at *3 (D. Nev. Mar. 16. 2022). Thus, Eyebuydirect contends that *Barr* stands for the proposition that parties relying solely on allegations of continued text messages in violation of opt-out requests, like Plaintiff, have failed to plausibly allege a violation of § 64.1200(d).

Though it acknowledges the apparent gap between *Barr* and the cases identified by Plaintiff, the Court finds that these decisions can largely be reconciled. First, and most importantly, the Court notes that the plausibility standard applied at the motion to dismiss stage, "does not prevent a plaintiff from 'pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible[.]' " *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal citations and quotation marks omitted). Second, the Court notes that the court in *Barr* was ultimately swayed by facts particular to that case: a relatively short period of continued telemarketing and the plaintiff's failure to request the defendant's do-not-call policy. 2023 WL 6393480, at *5-6. Considering these unique weaknesses in the allegations, the court in *Barr* implicitly found that the complaint lacked a sufficient basis to support the remaining allegations of internal procedural failures. *Id.* Thus, *Barr* does not appear to mandate dismissal of all complaints which rely on allegations of internal procedures pled on information and belief, but instead, merely suggests dismissal is appropriate in especially weak cases where the facts which are alleged in non-conclusory terms do not provide the necessary "heft" to establish plausibility. *Twombly*, 550 U.S. at 557.

Read in this light, the Court adopts the reasoning in *Barr*. Certainly, allegations of continued telemarketing calls *may be* sufficient to plausibly suggest a defendant is liable, particularly where the alleged period of continued telemarketing is arguably unreasonable or where other facts

tip the scales in favor of plausibility. *See, e.g., Menin*, 2024 WL 4123522, at *3 (denying dismissal where allegations included *21 days* of continued messaging after *two* opt-out requests (emphasis added)); *Gill*, 2022 WL 1540016, at *9 (pointing to an "*escalation*" in contact after an opt-out as sufficient (emphasis added)); *Adam*, 2021 WL 7285905, at *2 (denying dismissal where telemarketing continued *more than two months later*); *Mattson*, 2018 WL 5255228, at *6 ("With the additional fact that he was repeatedly called *beyond 30 days* after a specific request not to be called, this court can infer the lack of adequate internal procedures[.]" (emphasis added)). However, in other cases, allegations which demonstrate that a plaintiff's opt-out request was honored *within a reasonable period* may undermine the complaint's ability to support an inference of § 64.1200(d) liability, especially when paired with a plaintiff's failure to request a defendant's internal policy. Because of the particularities of the case, *Barr* falls into the latter category. For similar reasons, as discussed below, this case does, as well.

*6 To be clear, the Court's decision should not be read to universally foreclose future actions under § 64.1200(d) which rely in part on allegations pled on information and belief. Such a broadly applicable rule would violate the Court's obligation to draw reasonable inferences in favor of plaintiffs, especially considering the lack of information available to Plaintiff discussed herein. Instead, courts must consider the facts which *are* concretely alleged, alongside those pled on information and belief, and assess whether the allegations as a whole plausibly suggest liability under § 64.1200(d)(3).

**B. Plausibility of Plaintiff's Allegations**
Applying this clarified approach, Plaintiff has failed to plausibly allege that Eyebuydirect is liable. The Amended Complaint, boiled down to its core allegations, asserts that Eyebuydirect sent three text messages to Plaintiff over a period of seven business days (and nine days total) after Plaintiff requested to opt-out of future text messages. *See generally* Dkt. No. 12. Absent more, these allegations are insufficient to tip the scales in favor of plausibility because, as a matter of law, they do not allege an unreasonable delay in honoring Plaintiff's opt-out request.

As discussed above, § 64.1200(d)(3), one of several procedural requirements imposed under § 64.1200(d), requires that, "[p]ersons or entities making [telemarketing] calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a

reasonable time from the date such request is made. This period may not exceed 30 days from the date of such request." *Id.* Defendant interprets this provision to provide for a 30-day safe harbor, meaning that a defendant cannot be held liable so long as their internal procedures ultimately honor a plaintiff's do-not-call request within 30 days. Dkt. No. 27-1 at 6; Dkt. No. 30 at 5. Plaintiff argues that the 30-day period serves to establish that delays of more than 30 days are unreasonable, but that shorter periods can also establish liability so long as the defendant's timing was "unreasonable" under the specific circumstances of the case. Dkt. No. 29 at 4-7.

Plaintiff correctly points out that the majority of district courts that have addressed this question appear to interpret § 64.1200(d)(3) as establishing that delays of more than 30 days are unreasonable, rather than establishing a safe harbor for delays under 30 days. These courts have found that whether a defendant honored a do-not-call request within a reasonable period is a question of fact best left to the jury in most circumstances where the period is less than 30 days. *See, e.g., Delgado v. eMortgage Funding, LLC*, No. 21-CV-11401, 2021 WL 4776774, at \*5 (E.D. Mich. Oct. 13, 2021) ("Although § 64.1200(d)(3) states that a thirty-day delay in honoring do not call requests is per se unreasonable, it does not state that any shorter delay is per se reasonable .... The Court cannot determine the reasonableness of this delay on the pleadings alone."); *Nece v. Quicken Loans, Inc.*, No. 8:16–cv–2605–T–23CPT, 2018 WL 1326885, at \*7 (M.D. Fla. Mar. 15, 2018) ("a jury must decide whether Quicken honored [plaintiff's] do-not-call request in a reasonable time"); *Buja v. Novation Cap., LLC*, No. 15-81002-CIV-MARRA, 2017 WL 10398957, at \*6 (S.D. Fla. Mar. 31, 2017) ("this Court cannot conclude at this time that [d]efendants' taking two or three weeks to honor a DNC request is reasonable as a matter of law"); *Martin v. Comcast Corp.*, No. 12 C 6421, 2013 WL 6229934, at \*6 (N.D. Ill. Nov. 26, 2013) (declining to decide as a matter of law that one or two weeks to honor a plaintiff's do-not-call request was a reasonable amount of time as a matter of law).

 **\*7** Eyebuydirect, in turn, incorrectly asserts that the court in *Barr* interpreted the same provision to provide for a definitive 30-day safe harbor. *See* Dkt. No. 30 at 5. The court in *Barr* does indeed note that "a defendant must comply with a [do-not-call] request within 30 days." 2023 WL 6393480, at \*6. But there is a distinction between a regulation which requires compliance within 30 days, and one which permits non-compliance for 30 days. Rather than declare the plaintiff's claim dead-on-arrival for alleging a delay of less than 30 days,

the court in *Barr* went on to note that it "struggle[d] to see how failure to comply with [the plaintiff's] [do-not-call] request within one business day could be unreasonable." *Id.* (citing *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 292 (N.D. Ill. 2014)). Indeed, the court in *Barr* explicitly stated that "[t]here is no statutory safe harbor for a violation of the requirement to have procedures in place prior to the initiation of a call." *Id.* at \*5 (quoting *Simmons*, 222 F. Supp. 3d at 131). Thus, in contrast to Eyebuydirect's assertion, *Barr* does not interpret § 64.1200(d)(3) to provide for a strict cut-off of 30 days, but instead, used the regulation's reference to a 30-day period as a starting point for assessing whether the alleged delay was reasonable. Accordingly, the fact that Plaintiff does not allege a gap of over 30 days does not, alone, warrant dismissal.

However, though the remaining inquiry of whether a delay in honoring an opt-out request was unreasonable is often best left to a jury, Plaintiff's allegations present the rare scenario in which dismissal at the pleadings stage is warranted, at least in this Circuit. Here, Plaintiff alleges a delay of seven business days and nine days total. *See generally* Dkt. No. 12 at ¶¶ 9-10. The Court finds that this alleged delay was reasonable under § 64.1200(d)(3). In so finding, the Court follows the relevant cases in this Circuit. In *Simmons v. Charter Commc'ns, Inc.*, a decision affirmed via summary order by the Second Circuit, the court found, *"as a matter of law"* that a 15-day delay in honoring an opt-out request was "reasonable." 222 F. Supp. 3d at 140 n.14 (emphasis added), *aff'd*, 686 F. App'x 48. Similarly, in *Barr*, the court found that the alleged three-day delay, admittedly shorter than that alleged here, was reasonable at the pleadings stage. 2023 WL 6393480, at \*6. These cases suggest that even though § 64.1200(d)(3) does not create a definitive safe harbor for delays under 30 days, especially short delays may be found to be reasonable on the pleadings alone, without a fact-intensive inquiry. The Court sees no reason to depart from the relevant precedent in this Circuit, and therefore, finds that the Amended Complaint fails to allege an unreasonable delay in honoring Plaintiff's request.

Taking heed of the numerous cases which left the issue of reasonableness to be determined at a later stage, Plaintiff contends that dismissal at this stage is premature. Dkt. No. 29 at 1 (asserting the question of whether Eyebuydirect "acted reasonably" should be deferred until "after discovery"). Indeed, *Simmons* was decided upon a motion for summary judgment, after the opportunity for discovery. But dismissal at the motion to dismiss stage is warranted where a plaintiff's allegations fail as a matter of law. Though assessing claims at

the motion for summary judgment stage, the *Simmons* court's finding that a lengthier delay than the one alleged here was reasonable *as a matter of law* was untethered to the facts adduced in discovery. 222 F. Supp. 3d 140 n.14. And the Court in *Barr* determined that the alleged delay warranted dismissal at the pleadings stage. 2023 WL 6393480, at *6. Because discovery could not unveil facts that alter the alleged delay in honoring Plaintiff's opt-out request, Plaintiff has failed to state a claim and dismissal is appropriate.

Plaintiff also argues that, because Eyebuydirect's contact of Plaintiff was through an automated system, Eyebuydirect "could have immediately stopped texting[,]" and thus, the continuing text messages were unreasonable under § 64.1200(d)(3). Dkt. No. 29 at 6. But, as the court in *Simmons* noted, this argument reads into the regulation a requirement that a do-not-call request be honored "as soon as practicable." 222 F. Supp. 3d 140 n.14. No such language exists, and thus, whether a defendant was technically capable of honoring a request sooner is not determinative of whether the defendant honored the request within a reasonable period.

**\*8** Finally, the Court acknowledges that § 64.1200(d)(3) is not the sole procedural requirement alleged to have been lacking in this case. But as discussed above, to successfully plead a claim under any of the requirements of § 64.1200(d), a complaint must contain some facts which at least plausibly support the inference that a defendant lacked the required procedures. Here, Plaintiff's allegation that Eyebuydirect failed to honor the do-not-call request is the only relevant allegation pled with any degree of factual specificity. *See* Dkt. No. 12 at 1. The remainder of the allegations, as discussed above, use the alleged delay in honoring Plaintiff's request *to draw inferences* as to Eyebuydirect's internal procedures. *See, e.g., id.* at ¶¶ 15-18 (alleging that Eyebuydirect's "refusal to honor Plaintiff's opt-out requests *demonstrates that …*"

Eyebuydirect lacked the other required procedures (emphasis added)); *id.* at ¶ 23 (same). Because this Court has found that the period alleged is reasonable as a matter of law, the remainder of the Amended Complaint similarly fails to pass muster. Without an unreasonable delay, and without a request for Eyebuydirect's internal policy, the Court has no basis for drawing the inference that Eyebuydirect lacked the required procedures prior to messaging Plaintiff, a necessary component for any § 64.1200(d) claim.

Therefore, the Amended Complaint must be dismissed.

## V. CONCLUSION
Accordingly, the Court hereby

**ORDERS** that Defendant's Motion, Dkt. No. 27, is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion to dismiss the original Complaint, Dkt. No. 11, is denied as moot; and the Court further

**ORDERS** that the Amended Complaint is **dismissed without prejudice**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules and close the case.

**IT IS SO ORDERED.**

## All Citations

Slip Copy, 2025 WL 1677071

---

## Footnotes

1    Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

2    The parties do not dispute that the TCPA covers the alleged telemarketing text messages. *See Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the statute]." (citation omitted)).

3    In his response to the Motion, Plaintiff points to a purported additional internal failing of Eyebuydirect: that it "has no policies or procedures in place to determine whether the telephone numbers it is soliciting are registered on the National Do-Not-Call [list]." Dkt. No. 29 at 8. In addition to laying out requirements for maintaining an internal do-not-call list, the TCPA and its accompanying regulations also provide that an entity engaged in telemarketing must honor a national do-not-call registry. Claims based on an entity's failure to adhere to the national do-not-call list involve unique considerations that are not relevant here. *Compare* 47 C.F.R. § 64.1200(c) *with* 47 C.F.R. § 64.1200(d); *see also Simmons v. Charter*

2025 WL 1677071

*Commc'ns, Inc.*, 222 F. Supp. 3d 121, 129-31 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017) (describing key distinctions). Despite his contentions in response to the Motion, the Amended Complaint does not mention the national do-not-call registry, let alone allege that Eyebuydirect has failed to comply with any regulations pertaining to it. *See* Dkt. No. 12 at ¶¶ 14-18. Thus, the Court cabins its analysis to Eyebuydirect's obligation to implement procedures as to its own internal do-not-call list.

4    Though the parties do not raise the issue, the Court is aware that the Federal Communications Commission has recently amended § 64.1200(d)(3) to provide that a period of delay may not exceed 10 business days, rather than 30 days. *See Strengthening the Ability of Consumers To Stop Robocalls*, 89 Fed. Reg. 15756-01, 15758, 2024 WL 915454, at *1 (Mar. 5, 2024). The relevant amendment went into effect on April 11, 2025. *See Strengthening the Ability of Consumers To Stop Robocalls*, 89 Fed. Reg. 82518-01, 82518, 2024 WL 4458803 (Oct. 11, 2024). As the parties acknowledge in their briefing, the 30-day period applies to Plaintiff's claims.

5    The requirement that a defendant have a written policy, available on demand, is only one of several requirements created by § 64.1200(d), and thus, the Court agrees with Plaintiff that such a request is generally not a prerequisite for asserting a claim under the regulation. However, as discussed below, courts can consider a plaintiff's failure to make such a request in its broader assessment of whether a complaint plausibly suggests a defendant's liability.

---

**End of Document**                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

2024 WL 184449

2024 WL 184449
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Gerard JACKSON, Plaintiff,

v.

DIRECT BUILDING
SUPPLIES LLC, Defendant.

No. 4:23-CV-01569
|
Signed January 17, 2024

**Attorneys and Law Firms**

Anthony I. Paronich, Broderick Law, P.C., Hingham, MA, Jeffrey M. Bower, Bower Law Associates, PLLC, State College, PA, for Plaintiff.

Brian J. Murren, Kevin L. Hall, Tucker Arensberg, P.C., Camp Hill, PA, for Defendant.

**MEMORANDUM OPINION**

Matthew W. Brann, Chief United States District Judge

**I. BACKGROUND**

 **\*1** In October 2023, Plaintiff, Gerard Jackson, filed a one-count amended complaint against Defendant, Direct Building Supplies, doing business as Renu Solar.[1] In November 2023, Direct Building Supplies filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[2] It also moves to strike Jackson's class allegations pursuant to Federal Rule of Civil Procedure 12(f).[3] The motion is now ripe for disposition; for the reasons that follow, it is denied.

**II. DISCUSSION**

 **A. Motion to Dismiss Standard**

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[4] and *Ashcroft v. Iqbal*,[5] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.' "[6] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[ ] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[7]

When deciding a motion to dismiss, a court generally considers only the allegations in the complaint, exhibits attached thereto, and facts of public record.[8] Normally, to go consider anything beyond those sources, a motion to dismiss must be converted to a motion for summary judgment.[9] But consideration of materials outside the complaint is not completely barred on a 12(b)(6) motion. Courts may consider any documents that are integral or explicitly relied upon in the complaint.[10] "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[11] "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[12] It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document.[13]

 **\*2** In this matter, Direct Building Services has attached an email described in the Amended Complaint to its Reply Brief to substantiate its allegations that Jackson may actually have solicited Direct Building Services' call.[14] But while Jackson references this email in his amended complaint,[15] this Court cannot find that it is "integral" to the amended complaint. This email only adds context to support the plausibility that Jackson received calls from Direct Building Services, and is not actually necessary to establishing his TCPA claims. Jackson does not reference the contents of this email; he references the simple fact that Direct Building Services' employee emailed him, in support of his allegation that Direct Building Services contacted him to solicit the sale of solar panels.[16] Nor does this proposition hinge solely upon the email; Jackson also alleges that the number from which he received a prior call was advertised as Direct Building Services' phone number.[17]

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

2024 WL 184449

Direct Building Services also inspects various TCPA lawsuits filed by Jackson which it asserts were filed with different phone numbers listed for Jackson.[18] Direct Building Services points to the suit against it in the Court of Common Pleas of Centre County, alleging calls to (814) 238-5007; this lawsuit, alleging calls to (814) 876-XXXX; and three separate class actions filed before this Court in 2020, 2021, and 2023, alleging calls to (814) 238-XXXX, (814) 876-XXXX, and (814) 238-XXXX.[19] Direct Building Services contends that these "inconsistencies" concerning which telephone constitutes Jackson's residential number make Jackson an inadequate class representative.[20]

However, Direct Building Services' attempt to insert new factual matter into the amended complaint is inconsistent with the purpose of a motion to dismiss, which inspects the adequacy of the *pleadings*. While the Court recognizes that Direct Building Services has based its argument solely on Court filings, only one of these filings relates to the allegations in Jackson's amended complaint at all.[21] And this filing is not "integral" to the complaint, which is based on the calls placed *after* Jackson filed his initial lawsuit against Direct Building Services; it only contextualizes and supports the plausibility of Jackson's assertion that he received unsolicited calls from Direct Building Services. Some courts have found at summary judgment that a TCPA plaintiff who owns multiple cellphones specifically for the purpose of orchestrating TCPA litigation does not have standing to sue, but such a finding is only appropriate after discovery.[22] Even considering Jackson's prior filing against Direct Building Services, all it shows is that Jackson has had two cellphone numbers at different points in time. This Court must still assume the truth of Jackson's allegation that the cellphone number specified in this complaint is his actual residential phone number.

Believing it has laid the groundwork to cast doubt upon whether Jackson's phone number is in fact residential, Direct Building Services disputes Jackson's allegation that his phone bill proves the residential character of his cellphone number.[23] As Jackson alleges this fact without attaching the phone bill, Direct Building Services "requests that this Court require Plaintiff provide his phone bill to substantiate his otherwise bald allegations concerning the residential nature of the phone number (814) 876-XXXX as part of its consideration of the instant Motion."[24] But Jackson's phone bill is also not integral to his complaint, and the Court may

take his assertion about the phone bill to be true for purposes of dismissal.

Finally, based on an audio recording of Jackson's call which is purportedly in its possession, Direct Building Services states that Jackson gave express written consent to receive its calls under the false name "Barry Johnson."[25] These allegations are based upon evidence outside the scope of the complaint and fall far outside of the scope of dismissal. If true, Direct Building Services' allegations are significant to its affirmative defense, but that affirmative defense is irrelevant here. A motion to dismiss evaluates the sufficiency of the *plaintiff's* allegations, and no defense of consent is apparent from the face of Jackson's complaint.[26]

**\*3** All the documents referenced by Direct Building Services' Reply Brief are only tangentially related to Jackson's amended complaint. Therefore, this Court will not consider the attached email, referenced court filings or the allegations which Direct Building Services' bases upon its supposed recording of Jackson's call.

### B. Facts Alleged in the Amended Complaint

The facts alleged in the amended complaint, which this Court must accept as true for the purposes of this motion, are as follows.

Gerard Jackson, a Pennsylvania resident, placed his number on the National Do Not Call Registry.[27] Jackson alleges that his telephone number is residential, used for personal calls only, and not associated with a business or registered to a business.[28] He further alleges that the telephone bill for this number only lists his own name.[29]

Direct Building Services offers solar services,[30] and makes telemarketing calls to consumers to generate leads.[31] Because Jackson received telemarketing calls from Direct Building Services despite placing his name on the Do Not Call Registry, he filed suit against it in early 2021.[32] But this only marked the beginning of this dispute. Direct Building Services placed five more telemarketing calls to Jackson from August 9, 2021, through September 28, 2021.[33] Each call which was answered followed a similar script: the caller advertised residential solar electric product and installation services offered by Direct Building Services.[34]

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

2024 WL 184449

Case 1:25-cv-01083-JPW    Document 31-3    Filed 12/05/25    Page 29 of 76

Jackson highlights a particular call in his amended complaint.[35] According to Jackson, a September 2, 2021 call using a "spoofed Caller ID" began with a similar telemarketing pitch, from someone identifying himself as "Edmund."[36] After Jackson answered Edmund's questions, he was transferred to someone identifying himself as "Jacob."[37] This person continued to discuss the sale of solar panels with Jackson until the phone disconnected.[38] Jacob then immediately called Jackson back that same day, which transmitted Direct Building Services' advertised telephone number to Jackson.[39] Jackson then received an email from the telemarketer, "Jacob Dimpsey," which confirmed that the call was attributable to Direct Building Services.[40]

Jackson again filed suit.[41] Yet still, he received four more calls from Direct Building Services on July 5, July 19, August 1, and September 8, 2023.[42] These calls, like the previous ones, followed a similar script advertising Direct Building Services' solar products.[43] Jackson states that "the calls were clearly sent by the Defendant promoting their goods as counsel for the Defendant provided a recording of the final call to counsel for the Plaintiff."[44] Jackson alleges that he never consented to any of these calls.[45]

Based on these facts, Jackson brings a class action suit against Direct Building Services for violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227.[46] He seeks to represent a class tentatively defined as follows:

> All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of the Defendant (3) within a 12-month period, (4) from four years prior the filing of the Complaint.[47]

### C. Analysis

**\*4** Direct Building Services argues that claims under TCPA section 227(c)'s private right of action are statutorily unavailable for calls placed to cellphones, and that in any case Jackson has failed to plausibly allege a violation of the TCPA. This Court rejects both arguments.

The TCPA sought to curb the invasion of privacy caused by abusive telemarketing practices.[48] One of the TCPA's reforms provides for the Do Not Call registry, a "consumer-driven process" to limiting telemarketing calls.[49] Any "residential telephone subscriber" may place his name on the National Do Not Call Registry, and placing a call to any "residential telephone subscriber" whose name is on the National Do Not Call registry is an abusive telemarketing act.[50] Consumers may then bring suit through 47 U.S.C. § 227(c)'s private right of action if two telemarketing calls are made within a twelve-month period.[51]

In support of its motion to dismiss, Direct Building Services argues that cellphone numbers are not "residential."[52] But while our Court of Appeals has not expressly decided this issue, it is far from a novel question. The weight of existing authority indicates that cellphone users may be considered residential telephone subscribers, although whether a cellphone is used for residential purposes involves a more fact-intensive question. In addition to this persuasive authority, subsection 227(c) and the TCPA's text, structure, and purpose all belie Direct Building Services' reading.

The Eastern District of Pennsylvania has recently opined that "[t]he consensus in this Circuit is that Do Not Call claims may apply to cell phones."[53] This consensus is well-founded. Regulations implemented shortly after the TCPA was passed further define residential subscribers to include a "subscriber to a telephone exchange service that is not a business subscriber," a definition which plainly does not distinguish between cellphones and landline phones.[54] Therefore, the Federal Communications Commission, which was empowered to implement the TCPA's Do Not Call provisions through administrative rulemaking,[55] has explicitly noted that because "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections ... wireless subscribers may participate in the national do-not-call list."[56]

**\*5** The United States Court of Appeals for the Fourth Circuit has applied the logical next step from this rulemaking decision: a number placed on the Do Not Call Registry is presumptively residential for purposes of section 227(c)'s private right of action, else it would not have been registered in the first place.[57] The United States Court of Appeals for the First Circuit has likewise opined: "[the] argument that cell phone users are not 'residential telephone subscribers' runs

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01083-JPW    Document 31-3    Filed 12/05/25    Page 30 of 76

2024 WL 184449

headlong into the FCC's express statements to the contrary."[58] Other courts have found similarly.[59]

The contrary authority cited by Direct Building Services relies on two ill-founded textual arguments. In *Shelton v. Fast Advance Funding, LLC*, which predated *Dudley v. Vision Solar*, the Eastern District of Pennsylvania opined on the term "residential telephone" in dicta.[60] It first noted that "residential" means "used as a residence or by residents," and "resident" means "living in a place for some length of time," or "one who resides in a place."[61] Therefore, that court stated that the "plain language" of the term "residential telephone" limits that term to phones exclusively used in a residence, and therefore excludes "a cellular telephone, which can be used anywhere."[62] However, "plain language" is not a magical incantation. A statute's "plain language" is indeed decisive, but only when that language is susceptible to just one meaning—that is what makes the language "plain." Otherwise, appealing to plain language when attempting to define ambiguous terms takes the conclusion for granted.

"Slicing a statute into phrases while ignoring their contexts" is a "formula for disaster"[63] because "[t]he full body of a text contains implications that can alter the literal meaning of individual terms."[64] *Shelton v. Fast Advance Funding, LLC*, articulates a wooden reading of the TCPA's text which obscures its ambiguity by fixating on the word "residential" alone, rather than placing it in semantic context. Section 227(c)(1) does not merely use the term "residential" or "residential telephone;" in describing the Do Not Call registry, it refers to a "residential telephone subscriber."[65] While this language is facially ambiguous, the best reading of the word "residential" is not that it modifies the "telephone," but rather that "residential" and "telephone" *both* modify the "subscriber." So instead of describing a "subscriber" who owns a "residential telephone," Section 227(c)(1) describes a "telephone subscriber" who has subscribed for "residential," *i.e.*, personal, purposes.[66] "Residential" is therefore used in the broader sense of "relating to a resident" to distinguish such a subscriber from a business or commercial telephone subscriber, who cannot be added to the Do Not Call registry.

**\*6** The structure of subsection 227(c) itself supports the point. The subsection never references any such thing as a "residential telephone;" only "telephone subscribers" and "residential subscribers."[67] When Congress authorizes the F.C.C. to create the Do Not Call registry in section 227(c)(3),

it describes a list of "telephone numbers" held by "residential subscribers:" "a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations."[68] Congress again refers to "residential subscribers" rather than "residential telephones" in section 227(c)(3)(E). Finally, in a subsequent amendment which seems to endorse the F.C.C.'s understanding of a "residential subscriber" as a non-business subscriber rather than defying that distinction, section 227(a)(1)(2)(A) distinguishes between a "business subscriber" and a "residential subscriber."[69]

Contrary to *Shelton*'s reasoning, the TCPA's broader structure supports rather than undermines this reading of the term "residential telephone subscriber." *Shelton*'s second textual argument relies on the *expressio unius* canon, which reasons that the expression of one thing implies the exclusion of others. The fact that the TCPA references "cellular telephone service" in the prior subsection supposedly "evidenc[es] that both Congress and the FCC were aware of the distinction between a cellular telephone and a residential telephone and purposely protected only 'residential telephone subscribers' under § 227(c)."[70] But "[t]he *expressio unius* canon applies only when 'circumstances support a sensible inference that the term left out must have been meant to be excluded.'"[71] As Congress also referred to a "residential telephone *line*" in section 227(b),[72] this same logic can be turned on its head. Had Congress wished to limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that the registry is limited to a "residential telephone *line*," as Congress used that term in the preceding subsection.[73]

**\*7** Section 227(c)'s focus on the telephone subscriber demonstrates that the term "residential" is a "functional term not tethered to a particular technology,"[74] focusing instead on the subscriber's privacy rights. This is in stark contrast to other sections of the statute, describing technology such as a "telephone facsimile machine," a "cellular telephone service," and indeed, a "residential telephone *line*."[75] Section 227(c)'s focus on the "telephone subscriber" who uses his telephone for "residential" purposes is underscored by the full context of section 227(c)(1), which draws attention to the subscriber's privacy rights rather than his telephone's technological capabilities. "The Commission shall initiate a rulemaking proceeding concerning the need to protect

residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."[76]

This reading is confirmed by the only reference to "residential telephone subscribers" in the TCPA's Congressional findings, which speaks broadly to privacy interests: "evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy."[77] As was true in 1991 and as is more true today, cellphones are often used in the residence for personal purposes as well as in other locations, and indeed many exclusively use cellphones in their residence and do not own landline phones.[78] If anything, telemarketing calls to personal cellphones pose a *greater* invasion of privacy to telephone subscribers than do telemarketing calls to landline phones, because they can invade one's privacy at any time and in any place.

"The TCPA cannot be read to regulate unsolicited telemarketing only when it affects the home."[79] As the Third Circuit has instructed, "because the TCPA is a remedial statute, it should be construed to benefit consumers."[80] Indeed the Third Circuit has stated in a different context that "[a]lthough it is true that the TCPA placed particular emphasis on intrusions upon the privacy of the home in 1991, this expression of particular concern for residential calls does not limit—either expressly or by implication—the statute's application to cell phone calls."[81]

Because of the F.C.C. contrary regulations, *Shelton*'s burden was not to offer the best interpretive argument, but to offer section 227(c)'s only plausible construction. Yet the statute's language is ambiguous at best, and therefore the F.C.C.'s interpretation is at least a "permissible construction of the statute."[82] There is little reason to doubt the interpretation adopted by the majority of courts and the F.C.C. In light of contrary regulations, the statutory argument proffered by Direct Building Services has been rightly maligned as relying on "isolated authority" contrary to "common sense."[83]

**\*8** Direct Building Services' remaining arguments against Jackson hinge on whether he has plausibly alleged himself to be a residential telephone subscriber. These arguments can be dismissed in short order because they all demand more from Jackson's amended pleading than is appropriate at the dismissal stage. Ironically, Direct Building Services' assertion

that Jackson's status as a residential telephone subscriber is "unsupported" and "conclusory"[84] is itself unsupported and conclusory. Jackson's allegations that his cellphone is for personal use, and that it is registered on the Do Not Call Registry, are presumptively sufficient for his allegation to be plausible.[85] It is not clear what else Direct Building Services would require of Jackson's complaint for it to survive dismissal.

### D. Motion to Strike Analysis

#### 1. Law

When pleadings contain "redundant, immaterial, impertinent, or scandalous matter," a party may move to strike under Federal Rule of Civil Procedure 12(f).[86] The narrow purpose of a motion to strike is to "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters."[87] District Courts have broad discretion in granting a Rule 12(f) motion to strike.[88] However, striking pleadings is a "drastic remedy" to be used "sparingly."[89]

"District courts within the Third Circuit typically conclude that motions to strike class action allegations filed before plaintiffs move for class certification are premature."[90] Because "the shape and form of a class action evolves only through the process of discovery,"[91] "courts rarely grant motions to strike under Rule 12(f) or Rule 23(d)(1)(D) prior to class discovery, doing so only where '[n]o amount of additional class discovery will alter th[e] conclusion' that the class is not maintainable."[92]

#### 2. Fail-Safe Class

One rare instance in which courts do grant motions to strike prior to class discovery is where a plaintiff has alleged a "fail-safe class." "A fail-safe class is one that defines its members by the plaintiff's liability – all individuals wronged by the defendant, in the classic formulation."[93] "[S]uch a class impermissibly skirts the bar of *res judicata*" because "either the class members win or, if the defense prevails, no class exists, and the putative class members, unbound by any judgment, are free to pursue individual claims."[94]

2024 WL 184449

**\*9** Direct Building Services states that Jackson's class depends on whether someone received a "telemarketing or 'solicitation call,' " and points out that "telephone solicitation" is statutorily defined to include only persons who received such calls without consent.[95] But Direct Building Services is mistaken. The term "solicitation" does not appear anywhere within Jackson's class definition.[96] As Jackson points out in his Brief in Opposition, he intentionally used the term "telemarketing" to ensure that no analysis of consent was contained within his class definition.[97] Instead, he intended telemarketing to "mean what it says, which is 'selling or advertising by telephone.' "[98] So there is no basis to claim that he has proffered a fail-safe class.

As Jackson notes, his case is then indistinguishable from *Jackson v. Meadowbrook Financial Mortgage Bankers Corp.*[99] In *Jackson v. Meadowbrook*, I refused to strike an identical TCPA class definition offered by this same plaintiff alleging this same cause of action.[100] Therefore, minimal analysis is required; as many courts within this Circuit have found, Jackson has avoided the fail-safe concerns posed by *Zarichny v. Complete Payment Recovery Services* by defining his class without reference to whether the class members first consented to be called.[101]

**3. Class Action Requirements**

Even if a class is not fail-safe, class allegations may be struck where "no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23."[102] To be certified, a class must satisfy predominance and superiority under Rule 23(b)(3). This requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy."[103] A successful class must also meet the following four prerequisites:

(1) the class is so numerous that joinder of all members is impracticable [numerosity];

(2) there are questions of law or fact common to the class [commonality];

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and

(4) the representative parties will fairly and adequately protect the interests of the class [adequacy of representation].[104]

But again, "a motion for class certification is a more appropriate vehicle for arguments about class propriety."[105] Here, Direct Building Services contests the commonality and numerosity requirements.

Direct Building Services first argues that Jackson "has not alleged that these calls were placed at the same time, by the same caller, or featured the same conversation."[106] Somehow, counsel has made the same argument, in the exact same language, that I already rejected in *Jackson v. Meadowbrook*.[107] I reject it here for the same reasons; issues concerning the relationship between an alleged telemarketer and putative class members are "difficult to resolve without discovery," and it is too early in the litigation to make any such judgment.[108] Moreover, "[c]ommonality does not require an identity of claims or facts among class members; instead, the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."[109]

**\*10** Direct Building Services also argues that Jackson's pleadings cannot possibly satisfy the numerosity requirement, which is generally satisfied when at least 40 class members are present,[110] because the "[t]he Complaint is devoid of any other allegations of unwanted calls being made to anyone other than plaintiff."[111] *Jackson v. Meadowbrook* also rejected this argument.[112] Once again, discovery is needed. The mere fact that a plaintiff received an unsolicited telemarketing call renders plausible the assertion that at least 40 other individuals did as well.[113] Requiring Jackson to list other class members who Direct Building Services called *before* he has access to such names, which are currently within the exclusive possession of Direct Building Services, would likely result in nearly all class actions being stricken before discovery.

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

2024 WL 184449

### 4. Individualized Fact Finding

Direct Building Services' last argument concerns individualized fact-finding. As our Court of Appeals has explained, class certification is inappropriate where a class cannot be ascertained "without extensive and individualized fact-finding or 'mini-trials.' "[114] Direct Building Services argues that extensive individualized fact-finding would be required to determine whether an individual received more than one telemarketing call.[115] But this twisted logic would mean that TCPA class actions can never be brought. "Had Congress wanted to preclude aggregation of individual TCPA claims, it could have so provided in the TCPA itself or in CAFA [Class Action Fairness Act]."[116] Nor does it appear difficult to determine how many telemarketing calls were placed to class members, assuming Direct Building Services keeps records of its business calls; this fact can easily be ascertained through a company database.[117]

Direct Building Services also points to Jackson's inclusion of persons called by its agents or third parties as requiring individualized fact-finding.[118] But this is as simple as the fact-finding involved in determining whether someone has received more than one telemarketing call from Direct Building Services itself. Such class members are likely ascertainable from the company databases of any agents or third parties advertising for Direct Building Services, which can be obtained during discovery,[119] and otherwise involves the same or similar claims under the TCPA. That is sufficient for the class to remain intact at this point in the litigation.

### III. CONCLUSION

Defendant's motion to dismiss pursuant to Rule 12(b)(6), and Defendant's motion to strike pursuant to Rule 12(f), are denied.

An appropriate Order follows.

### All Citations

Not Reported in Fed. Supp., 2024 WL 184449

### Footnotes

1   Doc. 20.

2   Doc. 22.

3   *Id.* at 5-6.

4   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

5   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

6   *Id.* at 678 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

7   *Connelly v. Lane Construction Corp.,* 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

8   *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010).

9   *See* Fed. R. Civ. P. 12(d).

10  *Schmidt v. Skolas,* 770 F.3d 241, 249 (3d Cir. 2014).

11  *Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir. 2006).

12  *Id.*; *see also Kaempe v. Myers,* 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001).

13  *Faulkner,* 463 F.3d at 134.

14  Doc. 24-1.

Case 1:25-cv-01083-JPW    Document 31-3    Filed 12/05/25    Page 34 of 76

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

2024 WL 184449

15    Doc. 20 ¶32.

16    *Id.* ¶¶24-32.

17    *Id.*¶31.

18    Doc. 25 at 3-5.

19    *Id.*

20    *Id.* at 5.

21    *Id.* at 2.

22    *Stoops v. Wells Fargo Bank, N.A.*, 197 F.Supp. 782, 800 (W.D. Pa. 2016).

23    Doc. 25 at 6.

24    *Id.* at 7.

25    Doc. 25 at 3 ("To the extent any call was placed to Plaintiff to (814) 476-XXXX, it was made after Defendant received express written consent for contact from an individual named "Barry Johnson" to contact that number ... it would appear 'Barry Johnson,' is in fact the Plaintiff in this matter. From these facts and inferences that can be deduced therefrom, Plaintiff cannot adequately represent his proposed putative class.").

26    *See Rosenberg v. LoanDepot.com LLC*, 435 F.Supp. 3d 308, 318 (D. Mass. 2020); *see also Bethel v. Jendoco Constr. Corp.*, 570 F.3d 1168, 1175 (explaining that affirmative defenses such as a statute of limitations may only be considered on a motion to dismiss if the bar is "apparent on the face of the complaint.").

27    Doc. 20 ¶¶6, 18.

28    *Id.* ¶19-21.

29    *Id.* ¶22.

30    *Id.* ¶15.

31    *Id.* ¶16.

32    *Id.* ¶23.

33    *Id.* ¶24

34    *Id.* ¶¶25-26.

35    *Id.* ¶¶27-31.

36    *Id.* ¶27.

37    *Id.* ¶28.

38    *Id.* ¶29.

39    *Id.* ¶31.

40    *Id.* ¶32.

41    *Id.* ¶33.

Case 1:25-cv-01083-JPW   Document 31-3   Filed 12/05/25   Page 35 of 76

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

2024 WL 184449

42   *Id.* ¶¶33-35.

43   *Id.* ¶¶36-37.

44   *Id.* ¶38.

45   *Id.* ¶40.

46   *Id.* at 10.

47   *Id.* ¶43.

48   *Barr v. Am. Ass'n of Political Consultants*, —— U.S. ——, 140 S.Ct. 2335, 2343, 207 L.Ed.2d 784 (2020); *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 132 S.Ct. 740, 181 L.Ed.2d 881 (2012).

49   *Krakauer v. D.I.S.H. Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

50   47 U.S.C. § 227(c)(3); 47 C.F.R. §§ 64.1200(c)(2).

51   47 U.S.C. § 227(c)(5).

52   Doc. 23 at 16.

53   *Dudley v. Vision Solar, LLC*, No. 21-659, 2021 WL 3077557 at *——, 2021 U.S. Dist. LEXIS 135608 at *13 (E.D. Pa. July 21, 2021); *see also Atkinson v. Choice Home Warranty*, No. 22-04464, 2023 WL 166168 at *——, 2023 U.S. Dist. LEXIS 5570 at *12-13 (D.N.J. Jan. 11, 2023).

54   47 C.F.R. § 64.2305(d).

55   47 U.S.C. § 227(c)(1).

56   *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,18 F.C.C. Rcd. 14014, at *63-64 (F.C.C. July 3, 2003); *see also Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("considerable weight should be accorded" to an agency's "construction of a statutory scheme it is entitled to administer").

57   *Krakauer*, 925 F.3d 643, 657 (4th Cir. 2019).

58   *Murray v. Grocery Delivery E-Servs.*, 55 F.4th 340, 348 (1st Cir. 2022).

59   *See, e.g., Chennette v. Porch.com, Inc.*, 40 F.4th 1217, 1223-24 (9th Cir. 2022) (finding that cellphone used for both business and personal purposes was not residential, but noting that "During oral argument, defendants conceded that cell phones can be 'residential' for purposes of § 277(c)"); *Strange v. ABC Co.*, No. CV 19-1361, 2021 WL 798870 at *——, 2021 U.S. Dist. LEXIS 38882 at *10-11 (W.D. La. Mar. 1, 2021).

60   *See Shelton v. Fast Advance Funding, LLC*, 378 F.Supp. 3d 356, 362 n.7 (E.D. Pa. 2019), *aff'd*, No. 19-2265, 2020 WL 1027802, 2020 U.S. App. LEXIS 6676 (3d Cir. Mar. 3, 2020). Other decisions have relied upon the same "plain language" interpretation in *Shelton. See Gaker v. Q3M Ins. Sols.*, No. 3:22-CV-00296-RJC-DSC, 2023 U.S. Dist. LEXIS 44919, at *6-7 (W.D.N.C. Feb. 7, 2023) (Cayer, M.J.) (citing *Shelton* for its interpretation of this language); *Cunningham v. Politi*, No. 4:18-CV-00362-ALM-CAN, 2019 U.S. Dist. LEXIS 102447, at *10-11 (E.D. Tex. Apr. 30, 2019) (Nowak, M.J.), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 102050 (E.D. Tex. Apr. 30, 2019); *Cunningham v. Britereal Mgmt.*, No. 4:20-cv-144-SDJ-KPJ, 2020 WL 7391693 at *——, 2020 U.S. Dist. LEXIS 236135 at *16-17 (E.D. Tex. Nov. 20, 2020) (Johnson, M.J.), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 235956 (Dec. 16, 2020).

61   *Id.* (citing *Residential*, https://www.merriam-webster.com/dictionary/residential *and Resident*, https://www.merriam-webster.com/dictionary/resident).

Case 1:25-cv-01083-JPW    Document 31-3    Filed 12/05/25    Page 36 of 76

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

2024 WL 184449

62    *Id.*

63    *Hermann v. Cencom Cable Assocs.*, 978 F.2d 979, 982 (7th Cir. 1992) (Easterbrook, J.).

64    Antonin Scalia & Brian A. Garner, Reading Law 356. *See also Yates v. United States*, 574 U.S. 528, 536, 135 S.Ct. 1074, 191 L.Ed.2d 64 (2015) (Ginsburg, J.).

65    47 U.S.C. § 227(c)(1).

66    *See Mantha v. Quotewizard.com, LLC*, No. 19-12235-LTS, 2022 WL 325722 at *——, 2022 U.S. Dist. LEXIS 19502 at *13 (D. Mass. Feb. 3, 2022) ("[T]he inquiry to determine whether a phone number qualifies as a 'residential telephone subscriber' focuses on whether the subscriber has and uses the phone for residential purposes.").

67    47 U.S.C. §§ 227(c)(2) ("telephone subscribers"), 227(c)(3) ("residential subscribers"), 227(c)(3)(E) ("residential subscriber"), 227(c)(3)(C) ("telephone subscriber"). The broader term "telephone subscriber" is never used to describe the persons placed on the Do Not Call registry, but instead is used when describing notice and comment procedures for the F.C.C.'s administrative rulemaking.

68    47 U.S.C. § 227(c)(3).

69    47 U.S.C. § 227(a)(2)(A) ("The term 'established business relationship' ... shall include a relationship between a person or entity and a business subscriber subject to the same terms applicable under such section to a relationship between a person or entity and a residential subscriber."). Although this subsection explicitly notes that it applies "for purposes only of subsection (b)(1)(C)(i)," it nevertheless demonstrates Congress' ratification of the F.C.C.'s residential subscriber —business subscriber dichotomy. *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 78, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) (Scalia, J., Concurring) (opining that while Title IX's implied private right of action may not have originally permitted monetary damages, subsequent legislation demonstrated Congress's understanding of this reading and therefore ratified it).

70    *Shelton*, 378 F.Supp. 3d at 363 n.7; *Gaker*, 2023 U.S. Dist. LEXIS 44919, at *6-7; *Cunningham v. Britereal Mgmt.*, 2020 U.S. Dist. LEXIS 236135, at *16-17; 47 U.S.C. § 227(b)(1)(A)(iii)., (b)(2)(C), (b)(2)(H).

71    *N.L.R.B. v. SW General, Inc.*, 580 U.S. 288, 137 S.Ct. 929, 197 L.Ed.2d 263 (2017).

72    47 U.S.C. § 227(b)(1)(B) (emphasis added).

73    Alternatively, one district court reads the term "residential" to describe a subscriber's "telephone" but concludes that "residential" telephones, rather than standing in contrast to cellular telephones, are a broad category that subsumes the term. *See Tessu v. AdaptHealth, LLC*, No. SAG-23-0364, 2023 WL 5337121, 2023 U.S. Dist. LEXIS 145211 (D. Md. Aug. 17, 2023) ("[The TCPA does not] draw an express distinction between a residential telephone and a cellular telephone. It simply makes reference at different points to each, but does not provide that one could not be subsumed within the other.").

74    *Mantha*, 2022 U.S. Dist. LEXIS 19502, at *8-9.

75    *Id.* at 8-9 (citing 47 U.S.C. §§ 227(d)(2), (b)(2)(c)); 47 U.S.C. § 227(b)(1)(B).

76    47 U.S.C. § 227(c)(1).

77    Act Dec. 20, 1991, Pub. L. 102-243, § 2, 105 Stat. 2394.

78    *See In re Rules*, 18 F.C.C. Rcd. at 14038-39 ("wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones"); *Klassen v. Solid Quote LLC*, No. 23-cv-00318-GPG-NRN, 2023 WL 7544185 at *——, 2023 U.S. Dist. LEXIS 203237 at *5-6 (D. Colo. Nov. 14, 2023) ("By the end of 2022, over seventy percent of adults [were] estimated to reside in wireless-only households") (citing Stephen J. Blumberg and Julian V. Lake,

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)
Case 1:25-cv-01083-JPW    Document 31-3    Filed 12/05/25    Page 37 of 76
2024 WL 184449

National Center for Health Statistics, Wireless Substitution: Early Release of Estimates from the National Health Interview Survey, January-June 2022, at 1 (2022)).

79    *Cranor v. 5 Star Nutrition*, 998 F.3d 686, 691 (5th Cir. 2021) (ruling upon section 227(b)).

80    *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

81    *Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d Cir. 2017).

82    *See Chevron*, 467 U.S. at 843, 104 S.Ct. 2778; 47 U.S.C. § 227(c)(2) (authorizing the Federal Communications Commission to prescribe regulations "to implement methods and procedures for protecting the privacy rights described"); 47 C.F.R. § 64.2305(d) (defining "residential telephone subscribers").

83    *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 131 (N.D. Tex. 2020). Even if this Court were to accept this statutory interpretation argument, Direct Building Services has not explained why the F.C.C.'s ruling would not prohibit such a holding. *See Tessu*, 2023 U.S. Dist. LEXIS 145211, at *10-13.

84    Doc. 23 at 15.

85    *In re Rules*, 18 F.C.C. Rcd. at 14038-39; *Krakauer*, 925 F.3d at 649-50; *Barton v. Temescal Wellness*, LLC, No. 4:20-cv-40114-TSH, 525 F.Supp.3d 195, 2021 WL 858402 at *——, 2021 U.S. Dist. LEXIS 42211 at *13-14 (D. Mass. Mar. 8, 2021).

86    Federal Rule of Civil Procedure 23(d)(1)(D) also authorizes courts to strike pleadings relating to class actions by stating that in evaluating class actions, the court may issue orders that "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly.").

87    *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F.Supp. 2d 393, 402 (E.D. Pa. 2002).

88    *Wirt v. Bon-Ton Stores, Inc.*, 134 F.Supp. 3d 852, 857 (M.D. Pa. 2015).

89    *Dann v. Lincoln Nat'l Corp.*, 274 F.R.D. 139, 142 (E.D. Pa. 2011).

90    *Reed v. Friendly's Ice Cream, LLC*, No. 15-0298, 2015 WL 7941217, 2016 U.S. Dist. LEXIS 62197, at * (M.D. Pa. May 11, 2016).

91    *Abdallah v. The Coca-Cola Co.*, No. 1:98-CV-3679, 1999 U.S. Dist. LEXIS 23211, at *6 (N.D. Ga. July 19, 1999).

92    *Goode v. LexisNexis Risk & Info. Analytics*, 284 F.R.D. 238, 244 (E.D. Pa. 2012) (citing *P.V. ex rel. Valentin v. Sch. Dist. of Phila.*, No. 2:11-CV-04027, 2011 U.S. Dist. LEXIS 125370, at *12 (E.D. Pa. Oct. 31, 2011) *and Thompson v. Merck & Co., Inc.*, Nos. 01-1328, 01-3011, 2004 WL 62710 at *——, 2004 U.S. Dist. LEXIS 540 at *9 (E.D. Pa. Jan. 6, 2004)).

93    *Zarichny v. Complete Payment Recovery Servs.*, 80 F.Supp. 3d 610, 624 (E.D. Pa. 2015).

94    *Id.*

95    Doc. 34 at 13 (citing 47 U.S.C. § 227(a)(4)).

96    *See* Doc. 20 ¶43.

97    Doc. 24 at 14-15.

98    *Id.* at 15-16.

99    No. 4:22-CV-01659, , 2023 WL 2472606, 2023 U.S. Dist. LEXIS 41211 (M.D. Pa. Mar. 10, 2023).

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01083-JPW    Document 31-3    Filed 12/05/25    Page 38 of 76
2024 WL 184449

100    *Compare* Complaint, Doc. 1 ¶31, *Jackson v. Meadowbrook Fin. Mortg. Bank,* No. 4:22-CV-01659 (M.D. Pa.), *with* Doc.
20 ¶43.

101    *See Abella v. Student Aid Center,* No. 15-3067, 2015 U.S. Dist. LEXIS 147299, at *12 (E.D. Pa. Oct. 30, 2015); *Johnson
v. Ally Financial Inc.,* No. 1:16-CV-1100, 2017 WL 3433689, 2017 U.S. Dist. LEXIS 126817 (M.D. Pa.), *O.P. Schuman
& Sons, Inc. v. DJM Advisory Grp., LLC,* No. 16-3563, 2017 WL 634069 at *——, 2017 U.S. Dist. LEXIS 22402 at *13,
(E.D. Pa. Feb. 16, 2017).*

102    *Luciano v. Teachers' Ins. and Annuity Ass'n of Am. – Coll. Ret. Equities Fund,* No. 15-6726 (ZNQ) (DEA), 2022 WL
1044969 at *——, 2022 U.S. Dist. LEXIS 64671 at *3 (D.N.J. Apr. 7, 2022).*

103    Fed. R. Civ. P. 23(b)(3).

104    Fed. R. Civ. P. 23(a).

105    *Luciano,* 2022 U.S. Dist. LEXIS 64671, at *3.

106    Doc. 23 at 10.

107    2023 U.S. Dist. LEXIS 41211, at *16 ("Meadowbrook contends that Jackson's class allegations do not satisfy the typicality
requirement because although he alleges that Meadowbrook 'made potentially thousands of separate calls to separate
potential class members,' he 'has not alleged that these calls were placed at the same time, by the same caller, or
featured the same conversation.' ").

108    *Id.* at *17 (quoting *Landsman & Funk PC v. Skinder-Strauss Assocs.,* 640 F.3d 72, 93-94 (3d Cir. 2011), *opinion reinstated,*
Nos. 09-3105/09-3532/09-3793, 2012 U.S. App. LEXIS 11946 (3d Cir. Apr. 17, 2012)).

109    *Jackson v. Locust Med., LLC,* No. 4:22-CV-00424, 2022 WL 16540675 at *——, 2022 U.S. Dist. LEXIS 197057 at *5
(M.D. Pa. Oct. 28, 2022) (quoting *Johnston v. HBO Film Mgmt., Inc.,* 265 F.3d 178, 184 (3d Cir. 2001)).

110    *In re NFL Players Concussion Injury Litig.,* 821 F.3d 430, 427 (3d Cir. 2016) ("There is no magic number of class members
needed for a suit to proceed as a class action. We have set a rough guidepost in our precedents, however, and stated
that numerosity is generally satisfied if there are more than 40 class members.").

111    Doc. 23 at 11.

112    *Jackson v. Meadowbrook Fin. Mortg. Bank,* 2023 U.S. Dist. LEXIS 41211, at *17 n.76.

113    *See id.* ("his factual allegations—namely, that he received three telemarketing calls on the same day, all of which followed
a script, al of which came after his attorney sent Meadowbrook a cease-and-desist letter, 'make clear [the] *en masse*
nature of the calling.' ") (citations omitted).

114    *Marcus v. BMW of N. Am., LLC,* 687 F.3d 583, 593 (3d Cir. 2012).

115    Doc. 23 at 12.

116    *Landsman,* 640 F.3d at 95.

117    *See Marcus,* 687 F.3d at 593 (collecting cases requiring proposed classes to be ascertainable from a company database).

118    Doc. 23 at 9; *see Gomez v. Campbell-Ewald Co.,* 768 F.3d 871, 879 (9th Cir. 2014), *aff'd,* 577 U.S. 153, 136 S.Ct. 663,
193 L.Ed.2d 571 (2016).

119    *See, e.g., Jackson v. Aragon Adver., LLC,* No. 4:23-MC-00812, 2023 WL 7413332, 2023 U.S. Dist. LEXIS 201988 (M.D.
Pa. Nov. 9, 2023).

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

2024 WL 184449

Case 1:25-cv-01083-JPW     Document 31-3     Filed 12/05/25     Page 39 of 76

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01083-JPW   Document 31-3   Filed 12/05/25   Page 40 of 76

Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)

2020 WL 14028040

2020 WL 14028040
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Robert D. KLINE, Plaintiff,

v.

ADVANCED INS. UNDERWRITERS,
LLP, Jason Wyman, and
Marilyn E. Morillo, Defendants.

CIVIL ACTION NO. 1:19-CV-00437
|
Signed June 23, 2020

**Attorneys and Law Firms**

Robert D. Kline, McClure, PA, Pro Se.

Leonard Fornella, Babst, Calland, Clements & Zomnir, P.C., Pittsburgh, PA, Timothy Allan Schoonover, Babst, Calland, Clements & Zomnir, P.C., State College, PA, for Defendants.

**REPORT AND RECOMMENDATION**

KAROLINE MEHALCHICK, United States Magistrate Judge

**\*1** *Pro se* plaintiff Robert D. Kline commenced this action on February 4, 2019, in the Mifflin County Court of Common Pleas, asserting claims against Florida-based defendants Advanced Insurance Underwriters, LLP (AIU), Jason Wyman, and Marilyn E. Morillo (collectively, "Defendants") for violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 (TCPA). (Doc. 1-2). After Defendants removed the action to federal court, the Court granted their motion to dismiss Kline's first amended complaint for lack of personal jurisdiction. (Doc. 2; Doc. 11). With the Court's permission, Kline filed a second amended complaint, which Defendants now move to dismiss, or for more specific pleadings or a transfer of venue. (Doc. 12; Doc. 13; Doc. 14). Despite two lapsed deadlines and a Court order directing him to respond to Defendants' motion and brief in support,[1] Kline has not filed a brief in opposition. (*See* Doc. 17).

For the following reasons, the Court recommends that Defendants' motion to dismiss (Doc. 14) be **GRANTED**, that Kline's second amended complaint (Doc. 12) be **DISMISSED WITHOUT PREJUDICE** to Kline's refiling his complaint in the Southern District of Florida, and that the Clerk of the Court be directed to **CLOSE** this case.

**I. Background and Procedural History**

In his first amended complaint, Kline alleged that he received several calls from a Pennsylvania area code both before and after he asked the callers, who identified themselves as agents of the Health Registration Center (the "Center"), to stop calling him. (Doc. 5, at 9-10). He knew the calls were made using an automatic telephone dialing system (ATDS) because when he answered, he heard silence and an electronic "blip" before connecting with a live caller – and when he called the numbers back, he was unable to reach anyone. (Doc. 5, at 12). In June 2017, Kline received an ATDS call from Erica, a purported agent of the Center, who transferred Kline to defendant Marylin Morillo, who attempted to sell Kline insurance. (Doc. 5, at 12). Kline's own research revealed that Morillo "was part of the organization with the other Defendants in this lawsuit." (Doc. 5, at 12).

Defendants moved to dismiss the amended complaint for lack of personal jurisdiction based on defendant Jason Wyman's affidavit in which he averred, *inter alia*, that all Defendants are Florida-based, and none of them ever directed any calls or business into the state of Pennsylvania. Because Kline provided no counter affidavit and instead relied on references to allegations in his unverified amended complaint, the motion to dismiss was granted pursuant to Rule 12(b)(2). (Doc. 11; Doc. 10, at 8 (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984) ("A Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies."))). The undersigned's recommendation, which the District Judge adopted, noted that Kline's allegations did not appear to state a claim for relief as to some of his causes of action.

**\*2** In his second amended complaint, Kline alleges essentially the same set of facts. Beginning in April or May 2017, callers purporting to be agents of the Center began calling his personal cellphone, which was registered on the federal do-not-call registry. (Doc 12, at 10). Most of the calls originated from the same Pennsylvania area code as Kline's cellphone number, i.e., 507. (Doc. 12, at 10-11). When Kline answered, he heard a few seconds of "dead air" or silence, an electronic "blip," and then a live agent who would begin

Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)

2020 WL 14028040

to discuss health insurance. (Doc. 12, at 11-12). The Center continued to call Kline even after he told its agents to stop calling him, and none of the agents could answer Kline's numerous inquiries about the Center's do-not-call policy. (Doc. 12, at 12-13). Kline's research revealed that the calls were originating from "spoof" numbers. (Doc. 12, at 13). In June 2017,[2] Kline received a call from Erica, an agent of the Center, originating from a number that Kline later verified to be a "spoof" number. (Doc. 12, at 13). Kline "answered [Erica's] questions relating to health insurance in sufficient detail that she transferred him to Defendant Morillo who indicated that she could sell insurance" to him. (Doc. 12, at 13). Through his own research, Kline discovered that Morillo "was part of the organization with the other Defendants in this lawsuit." (Doc. 12, at 13-14).

Kline asserts nine causes of action: (1) negligent violation of the TCPA's ATDS prohibition; (2) knowing and/or willful violation of the TCPA's ATDS prohibition; (3) negligent violation of the TCPA "Sales CALL/DNC" prohibition; (4) knowing and/or willful violation of the TCPA's "Sales CALL/ DNC" prohibition; (5) negligent violation of the TCPA's "Do-Not-Call Policy" requirement; (6) knowing and/or willful violation of the TCPA's "Do-Not-Call Policy" requirement; (7) negligent violation of the TCPA's "Do-Not-Call List" requirement; (8) knowing and/or willful of the TCPA's "Do-Not-Call List" requirement; and (9) a state law trespass-to-chattels claim.

Kline seeks $500 for every negligent violation of the above statutes and regulations and $1,500 for every knowing or willful violation of the same. (Doc. 12, at 21). For his claims of trespasses to chattels, Kline seeks $1 for every sales call made to his cellular phone. (Doc. 12, at 21). Kline does not allege the specific date and time of every call for which he seeks damages but asserts that the exchange of discovery will reveal these details. (Doc. 12, at 21). Kline also seeks punitive damages in the amount of $100,000 to "deter others who may otherwise engage in similar willful illegal and deliberate tortuous [sic] conduct ...," prejudgment interest, and litigations costs. (Doc. 12, at 21).

## II. Discussion

Defendants move to dismiss the second amended complaint for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure and failure to state a claim under Rule 12(b)(6). (Doc. 15, at 3-11). Alternatively, Defendants move for a more definite statement under Rule 12(e), or a transfer of venue to the United State District Court for the Southern District of Florida, Ft. Lauderdale Division, pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). (Doc. 15, at 11).

### A. The TCPA

The Telephone Consumer Protection Act "was intended to combat, among other things, the proliferation of automated telemarketing calls (known as 'robocalls') to private residences, which Congress viewed as a nuisance and an invasion of privacy." *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 325 (3d Cir. 2015). At issue here are subdivisions (b) and (c) of the Act. Subdivision (b) makes it unlawful to use an ATDS to call any cell phone number "other than a call made for emergency purposes or made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1) (A)(iii). The statute provides for a private right of action that permits "a 'person or entity' [ ] [to] bring an action to enjoin violations of the statute and recover actual damages or $500 in statutory damages per violation." *Leyse*, 804 F.3d at 322 (quoting 47 U.S.C. § 227(b)(3)(A)-(B)). Willful or knowing violations may give rise to treble damages, "increas[ing] the amount of the award to an amount equal to not more than 3 times the amount available" for actual or statutory damages. (47 U.S.C. § 227(b)(3)).

**\*3** Subdivision (c) of the Act directs the Federal Communications Commission (FCC) to prescribe regulations pursuant to which the FCC implemented a national do-not-call registry and set forth a requirement that telemarketers institute procedures for maintaining lists of individuals who request not to receive calls. 47 U.S.C. § 227(c); *see* 47 C.F.R. § 64.1200(c)–(d).[3] These regulations make it unlawful to initiate a telephone solicitation to a residential telephone subscriber "who has registered his or her telephone number on the national do-not-call registry," or when the person or entity making the call failed to institute procedures for maintaining a do-not-call list. 47 C.F.R. § 64.1200(c)(2), (d). A "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation" of these regulations may bring an action to enjoin such violation and recover the greater of actual loss or $500 in statutory damages for each violation. 47 U.S.C. § 227(c) (5)(A)-(B). Subsection (c) also authorizes treble damages for willful or knowing violations of the regulations. 47 U.S.C. § 227(c)(5).

### B. Personal Jurisdiction

Case 1:25-cv-01083-JPW  Document 31-3  Filed 12/05/25  Page 42 of 76

Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)

2020 WL 14028040

Rule 12(b)(2) authorizes a defendant to move to dismiss a complaint for lack of personal jurisdiction. Generally, courts "reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). If, however, the plaintiff's "allegations are contradicted by an opposing affidavit," the plaintiff "must present similar evidence in support of personal jurisdiction." *In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d 367, 381–382 (M.D. Pa. 2009). Under long-standing Third Circuit precedent, "at no point may a plaintiff rely on the bare pleadings alone in order to withstand" such a motion. *Patterson v. FBI*, 893 F.2d 595, 603–604 (3d Cir. 1990) (quoting *Time Share Vacation Club*, 735 F.2d 61) (internal quotation marks omitted). As such, "[g]eneral averments in an unverified complaint or response without the support of 'sworn affidavits or other competent evidence' are insufficient to establish jurisdictional facts." *Harris v. Trans Union, LLC*, 197 F. Supp. 2d 200, 203 (E.D. Pa. 2002) (quoting *Time Share Vacation Club*, 735 F.2d at 66, n.9) (internal quotation marks omitted). "Once [a] Rule 12(b) (2) motion is made, [the] plaintiff must respond with actual proofs, not mere allegations." *Patterson*, 893 F.2d at 603.

Generally, a district court exercises personal jurisdiction "to the extent allowed under the law of the forum state." *Allaham v. Naddaf*, 635 F. App'x 32, 37 (3d Cir. 2015) (internal quotation marks omitted) (citing Fed. R. Civ. P. 4(k)(1)(A) (providing for "personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located")). Because the Pennsylvania long-arm statute "allows the exercise of personal jurisdiction to the full extent permitted by the Constitution," the standard for a federal court sitting in diversity in Pennsylvania is whether a defendant has "minimum contacts" with it such that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted); *see* 42 Pa.C.S.A. § 5322. "Having minimum contacts with another state provides 'fair warning' to a defendant that he or she may be subject to suit in that state." *Kehm Oil v. Texaco, Inc.*, 537 F.3d at 290, 299–300 (3d Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). As such, personal jurisdiction under the Due Process Clause depends upon "the relationship among the defendant[s], the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

**\*4** Two types of personal jurisdiction exist over non-resident defendants: general and specific. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). General jurisdiction may be asserted when a non-resident defendant has maintained "systematic and continuous contacts with the forum state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."). When subject to the general jurisdiction of a state, "that [defendant] can be called to answer any claim against [it], regardless of whether the subject matter of the cause of action has any connection to the forum." *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).

On the other hand, "[s]pecific jurisdiction exists when the claim arises from or relates to [a defendant's] conduct purposely directed at the forum state." *Marten*, 499 F.3d at 296 (citing *Helicopteros*, 466 U.S. at 414-415 n.9). To determine whether specific jurisdiction over a defendant exists, courts must engage in a three-part inquiry. *O'Connor*, 496 F.3d at 317. First, a court must consider whether a defendant "purposefully directed [its] activities" at the forum state. *O'Connor*, 496 F.3d at 317 (quoting *Burger King*, 471 U.S. at 472). Second, "the litigation must 'arise out of or relate to' at least one of those activities." *O'Connor*, 496 F.3d at 317 (quoting *Helicopteros*, 466 U.S. at 414). Third, if the prior requirements are met, the court "may consider additional factors to ensure that exercising jurisdiction would be consistent with notions of 'fair play and substantial justice.' " *O'Connor*, 496 F.3d at 317 (quoting *Burger King*, 471 U.S. at 476).

Defendants move to dismiss Kline's claim for lack of personal jurisdiction given Defendants' Florida residences, AIU's principal place of business, and Wyman's affidavit. In his affidavit, Wyman avers that (1) he and defendant Morillo reside in Florida and have resided in Florida during all relevant times; (2) AIU is a limited liability company with a principal place of business located in Florida; (3) Wyman is a "member" of AIU, and Morillo was employed by AIU as a commercial lines manager from about 2013 to 2016; (4) none of AIU's officers, directors, or employees ever resided in

Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)

2020 WL 14028040

Pennsylvania; (5) AIU's Board of Directors and shareholders have never conducted meetings in Pennsylvania; (6) AIU has not appointed an agent for service of process in Pennsylvania; (7) AIU has never conducted any business in Pennsylvania nor directed any advertising in publications directed primarily at Pennsylvania; (8) neither AIU nor anyone acting on its behalf ever directed any telephone calls into Pennsylvania for the purpose of soliciting insurance business or contracted with a telephone marketing company to make unsolicited sales calls into Pennsylvania; and (9) neither AIU nor anyone acting on its behalf ever made or directed anyone to make a telephone sales call to Kline at any time. (Doc. 4, at 2-3).

In recommending dismissal of Kline's first amended complaint, the Court noted that to overcome Wyman's affidavit, Kline was required to "respond with actual proofs, not mere allegations," and "at no point may [he] rely on the bare pleadings alone in order to withstand" a Rule 12(b)(2) motion. (Doc. 10, at 6) (quoting *Patterson*, 893 F.2d at 603 (internal quotation marks omitted)). Kline did not provide any proof in response to Defendants' motion to dismiss to first amended complaint, and he has failed to respond entirely to the instant motion. As such, Kline relies "on the bare pleadings alone," which is prohibited under Rule 12(b)(2) and related case law. *See, e.g., Turner v. Prince George's Cty. Pub. Sch.*, 694 F. App'x 64, 65 (3d Cir. 2017) (affirming Rule 12(b)(2) dismissal where the District Court "granted the [Rule 12(b)(2)] motion after [plaintiff] failed to respond for nearly five months" and "dismissed her complaint without prejudice" for failure "to produce any competent evidence to support personal jurisdiction").

**\*5** Even if the Court treated the second amended complaint as if it were an affidavit submitted in response to Defendants' motion, Kline still would not prevail. The requirement that the Court accept as "true all of the allegations in the complaint" in deciding a Rule 12(b)(2) motion no longer applies when "those allegations are contradicted by the defendants' affidavits." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012). Kline verified the second amended complaint, but a pleading can serve as an affidavit only to the extent the allegations therein are made upon person knowledge. *See* 10B Wright, Miller & Kane, Federal Practice and Procedure § 2738 (4th ed.) ("Although a verified pleading, like any pleading, may be presented to the court in a summary-judgment proceeding, it will not be accorded the probative force of an affidavit unless it meets the requirements of Rule 56(c)(4)."); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a

motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Many of Kline's allegations are made upon information and belief or with reference to Kline's unspecified research. The non-conclusory allegations made upon personal knowledge are that the Center called Kline several times; on one call, Erica from the Center transferred Kline to defendant Morillo, who then tried to sell him insurance; and Kline was unable to reach anyone at the Center. There are no non-conclusory allegations that AIU, Morillo, or Wyman initiated any calls to Kline, and his attempts to tie the calls from the Center to Defendants are bare and unsupported. For example, Kline believes that "Defendants have [a] direct relationship with [the] Center and therefore have vicarious liability for the illegal, ultra vires activities that related to telemarketing directed toward [Kline]," but he provides no non-conclusory support for that belief and omits reference to the source from which he obtained that information, if any. (Doc. 12, at 13-14). Kline refers to research he conducted, but he does not specify what the research entailed or what he uncovered that led to his conclusions.

Accordingly, on record before the Court, there does not appear to be an adequate basis for invoking general or specific jurisdiction over Defendants. Regarding general jurisdiction, Kline does not specify the number of calls he allegedly received from Defendants to his mobile phone number. Even if Kline had pleaded the number of calls with specificity, there is no indication that the calls were of a continuous and systematic nature such that exercising jurisdiction over Defendants would comport with the demands of due process. *See, Abramson v. CWS Apartment Homes, LLC*, No. CV 16-426, 2016 WL 6236370, at \*2 (W.D. Pa. Oct. 24, 2016) (finding no basis for general jurisdiction in TCPA claim against defendant with a Texas principal place of business and no other ties to Pennsylvania); *Hugo v. Galant*, No. CIV. A. 86-3776, 1987 WL 4810, at \*1 (E.D. Pa. Apr. 29, 1987) ("[O]ne visit and a number of phone calls do not constitute the 'continuous and systematic' contacts necessary to justify general jurisdiction."). Significantly, the allegations are that *the Center* called Kline several times, one such occasion being when Kline was transferred to Morillo, not that Defendants called Kline several times.

It is true that that in TCPA cases, "courts generally find that *specific* personal jurisdiction exists when a defendant

Case 1:25-cv-01083-JPW    Document 31-3    Filed 12/05/25    Page 44 of 76

Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)

2020 WL 14028040

sends a message into the forum state by targeting a phone number in that forum." *Shelton v. Nat'l Gas & Elec., LLC,* No. CV 17-4063, 2019 WL 1506378, at *7 (E.D. Pa. Apr. 5, 2019) (emphasis added); *see also Abramson, LLC,* 2016 WL 6236370, at *4 ("District courts across the country have found purposeful direction based on allegations that a defendant sent its telemarketing call to a number bearing the state's area code."). This case, however, does not involve a defendant who directly initiated a call to a plaintiff in violation of the TCPA, and the conclusory assertions in the complaint, without any further response from Kline in opposition to the Rule 12(b) (2) motion, fall short of establishing that Morillo purposefully directed her conduct at Kline.

**\*6** In short, Kline has failed to meet his "ultimate burden ... to demonstrate the existence of jurisdiction by a preponderance of the evidence." *See LaSala v. Marfin Popular Bank Pub. Co.,* Ltd., 410 F. App'x 474, 476 (3d Cir. 2011). It is therefore recommended that Defendants' Rule 12(b)(2) motion to dismiss be granted and Kline's second amended complaint be dismissed for lack of personal jurisdiction.

C. Motion to Dismiss or for a More Definite Statement
Because the Court lacks jurisdiction over this claim, the undersigned will not opine on the merits of Defendants' motion to dismiss for failure to state a claim under Rule 12(b) (6) and motion for a more definite statement under Rule 12(e). Regarding the motion for a more definite statement, because this is Kline's third amended complaint, it does not appear that granting a Rule 12(e) motion would yield a different outcome.

D. Motion to Transfer
Alternatively, Defendants move to transfer this case to the Southern District of Florida. Although the Court lacks personal jurisdiction over Defendants in Pennsylvania, it must consider whether transferring the instant action to another forum is a proper alternative to dismissal. If a district court determines that it lacks personal jurisdiction over an action, it shall either dismiss the action, or, "if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed." 28 U.S.C. § 163117; *see D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.,* 566 F.3d 94, 110 (3d Cir. 2009) (directing the district court on remand to consider transfer pursuant to § 1631 where personal jurisdiction was lacking). Generally, transfer is the option of choice; however, this presumption may be rebutted under consideration of the

following three factors: (1) whether transfer would unfairly benefit the proponent; (2) whether transfer would impose an unwarranted hardship on the objector; and (3) whether transfer would unduly burden the judicial system. *Pac. Employers Ins. Co. v. AXA Belgium S.A.,* 785 F. Supp. 2d 457, 475 (E.D. Pa. 2011) (citing *Britell v. United States,* 318 F.3d 70, 74 (1st Cir. 2003)). However, "[t]ransfer decisions fall to the discretion of the District Court," and "may involve undertaking some 'limited review of the merits' of the underlying claims. *United States v. Foy,* 803 F.3d 128, 137–38 (3d Cir. 2015) (citing *Phillips v. Seiter,* 173 F.3d 609, 611 (7th Cir. 1999)); *Sidari v. Caesar's Pocono Resorts,* 29 F. App'x 845, 847 (3d Cir. 2002). Indeed, "[e]ven though there is a presumption in favor of transfer ... if an action or appeal is fanciful or frivolous, it is in the interest of justice to dismiss it rather than to keep it on life support." *Patchen v. McGuire,* No. CIV.A. 11-5388, 2012 WL 4473233, at *14 (E.D. Pa. Sept. 27, 2012) (citing *Britell,* 318 F.3d at 74).

Upon consideration of these interests, the Court finds that transfer to another district would not be in the interest of justice, particularly given Kline's recent failure to comply with the Court's order directing him to file a brief in opposition. "A court is authorized to consider the consequences of transfer before deciding whether to transfer; that is implicit in the statute's grant of authority to make such a decision, and implies in turn that the court can take a peek at the merits, since whether or not the suit has any possible merit bears *significantly* on whether the court should transfer or dismiss it." *Phillips,* 173 F.3d at 610-11 (emphasis added) (citing *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 818 (1988)); *see also United States v. Holland,* No. 1:01-CR-195-06, 2016 WL 3387170, at *1 (M.D. Pa. June 20, 2016) ("[A]lthough a lack of jurisdiction prevents a court from considering the merits when deciding whether to dismiss the motion, the merits may inform a court's determination of whether the interest of justice warrants a transfer.") (internal citations omitted).

**\*7** The Court finds little merit in Kline's claims. His claims against Wyman in his capacity as an officer of AIU do not appear to be a cognizable theory of liability under the TCPA. Kline asserts that Wyman is *personally liable* "under the 'participation theory' of liability because Wyman is the controlling manager of [AIU]" (Doc. 12, at 7-8), but "a corporate officer is not liable under the TCPA under common law personal liability principles." *See KHS Corp. v. Singer Fin. Corp.,* 376 F. Supp. 3d 524, 530 (E.D. Pa. 2019) (citing *City Select Auto Sales, Inc. v. David*

Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)

2020 WL 14028040

*Randall Assocs., Inc.*, 885 F.3d 154, 160 (3d Cir. 2018) ("We doubt as well, however, whether such common-law personal-participation liability is available against corporate officers under the TCPA."))*. Kline has not sufficiently alleged that Wyman "directly participated in any unlawful conduct. Instead, [Kline]'s allegations against [Wyman] appear to be based solely on Wyman's position as [a member or officer] of [AIU]." *See Zelma v. Penn LLC*, No. CV 19-8725, 2020 WL 278763, at *4 (D.N.J. Jan. 17, 2020); *see also Bartkowski v. Foni*, No. CIV. A. 07-1018, 2007 WL 2728844, at *3 (E.D. Pa. Sept. 17, 2007) ("It is well-established that personal jurisdiction 'does not exist simply because [defendants] are agents or employees of organizations which presumably are amenable to jurisdiction in' a particular forum." (quoting *Nicholas v. Saul Stone & Co.*, LLC, 224 F.3d 179, 184 (3d Cir. 2000))); *Cunningham v. Capital Advance Sols., LLC*, No. CV 17-13050, 2018 WL 6061405, at *5 (D.N.J. Nov. 20, 2018) ("[T]o the extent that the TCPA provides a basis for filing suit against a corporate officer in that officer's individual capacity, Plaintiff's allegations in support thereof fail to demonstrate that the Individual Defendants were more than 'tangentially involved' with the complained of telemarketing calls."). The same is true of Morillo, to the extent Kline has asserted the she is liable under a participation theory for being a "conspiratorial agent who received the phone calls from the lead generation agent." (Doc. 12, at 9).

Moreover, it is not clear that Kline has alleged an agency relationship giving rise to vicarious liability. One of his claims appears to be that Morillo and Wyman, through AIU, conspired together to create a "spoof" or "sham" entity to make calls in violation of the TCPA. Kline apparently believes that because the Center handed off one call to Morillo, who then tried to sell Kline health insurance, all Defendants therefore controlled the Center and are therefore vicariously liable under agency principles.[4] Given the slim allegations and conclusory references to unknown sources in Kline's complaint, this claim has dubious merit. *See, e.g., Kline v. Elite Med. Labs., Inc.*, No. 1:19-CV-1043, 2019 WL 6828590, at *6 (M.D. Pa. Dec. 13, 2019) ("There is no allegation that Defendant Arriviello directed the callers to call Plaintiff on his behalf, or that Defendant Arriviello caused the callers to reasonably believe that they had the authority to call Plaintiff on Defendant Arriviello's behalf.... Plaintiff has not alleged enough facts to show that the callers were agents of Defendant."); *cf. Hartley-Culp v. Green Tree Servicing, LLC*, 52 F. Supp. 3d 700, 704 (M.D. Pa. 2014) (vicarious-liability TCPA claim stated against Fannie Mae where the direct caller's recorded messages indicated they were sent "on behalf of Fannie Mae").

Based on the above, the Court finds it is not in the interest of justice to transfer this matter to the District Court in Florida.

E. Leave to Amend

Finally, although The Third Circuit has instructed that district courts generally must permit a curative amendment if a complaint filed *pro se* is vulnerable to dismissal for failure to state a claim, amendment is not required if it would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Despite being on notice of the defects in his complaints, Kline has failed to address or correct them with each successive filing, and in the end, has failed to file any response to Defendants' present motion to dismiss. As such, the Court finds that further leave to amend would be futile.

III. Recommendation

Based on the foregoing, it is recommended that:

1. Defendants' motion to dismiss (Doc. 14) Kline's second amended complaint (Doc. 12) be **GRANTED** for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2);

**\*8** 2. Kline's second amended complaint be **DISMISSED WITH PREJUDICE** and without leave to amend; and

3. The Clerk of the Court be directed to **CLOSE** this case.

NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **June 23, 2020**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all

Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)

2020 WL 14028040

parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 14028040

---

Footnotes

1    Throughout their brief in support, Defendants repeatedly incorporate by reference arguments made in their previous filings in this matter. Counsel is reminded that Local Rule 7.8 precludes such incorporation, specifically stating "No brief may incorporate by reference all or any portion of any other brief."

2    Kline alleges this call was the first of the many he received from the Center during which he had sufficient cellular reception to engage in a meaningful inquiry. (Doc. 12, at 12).

3    The procedures instituted require that the person or entity maintain "a written policy, available upon demand, for maintaining a do-not-call-list" and record a subscriber's do-not-call "request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made." 47 C.F.R. § 64.1200(d)(1), (3).

4    In additional to alleging that Defendants actively participated in specific TCPA violations, Kline also alleges that Defendants are personally liable for failing to "supervise agents and subordinates." (Doc. 12, at 7).

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 5497082
Only the Westlaw citation is currently available.
United States District Court,
N.D. Georgia, Atlanta Division.

Barry LOURIE, individually and on behalf
of all others similarly situated, Plaintiff,

v.

PAPA JOHN'S INTERNATIONAL,
INC., Defendant.

CIVIL ACTION FILE NO. 1:23-CV-4320-MHC
|
Signed June 25, 2024

**Attorneys and Law Firms**

Andrew J. Shamis, Shamis & Gentile P.A., Cartersville, GA, for Plaintiff.

Eric J. Troutman, Pro Hac Vice, Puja Amin, Tori L. Guidry, Pro Hac Vice, Troutman Amin, LLP, Irvine, CA, Patrick J. Fitzgerald, Watstein Terepka LLP, Atlanta, GA, for Defendant.

**ORDER**

MARK H. COHEN, United States District Judge

**\*1** This case comes before the Court on Defendant Papa John's International, Inc.'s Motion to Dismiss Plaintiff Barry Lourie ("Lourie")'s First Amended Complaint [Doc. 18] and Motion to Strike Class Allegations [Doc. 19].

**I. BACKGROUND**[1]

Lourie filed the above-styled lawsuit asserting a single claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., arising out of three telemarketing text messages Defendant sent him in July 2023. Am. Compl. ¶¶ 10-13. Lourie alleges that he responded to the first text message on July 17, 2023, by requesting that Defendant "STOP," in an attempt to opt-out of receiving any additional messages. Id. ¶ 12. Subsequently, on July 21 and 24, 2023, Lourie received telemarketing text messages. Id. ¶ 13. Based on the foregoing, Plaintiff filed the above-styled one-count

complaint, alleging a violation of 47 U.S.C. § 227(c) on behalf of himself and

> [a]ll persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message from Defendant or anyone on Defendant's behalf, to said person's residential telephone number after making a request to Defendant to not receive future text messages. Id. ¶¶ 33, 44-55.

**II. LEGAL STANDARDS**

**A. Motion to Dismiss – Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), a complaint will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 548 (2007). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted). Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all the well-pleaded facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). Not only must the court accept the well-pleaded allegations as true, they must be construed in the light most favorable to the pleader. Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011). Documents attached to the complaint are considered part of the complaint. Fed. R. Civ. P. 10(c). But the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires the Court to assume the truth of well-pleaded factual

2024 WL 5497082

allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

### B. Motion to Strike – Fed. R. Civ. P. 12(f)

**\*2** A court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). "However, striking class allegations at the pleading stage is the functional equivalent of denying class certification." Arkin v. Innocutis Holdings, LLC, 188 F. Supp. 3d 1304, 1311 (M.D. Fla. 2016) (citing Fed. R. Civ. P. 23). "While It is sometimes possible to decide the propriety of class certification from the face of the complaint ... the determination usually should be predicated on more information than the complaint itself affords." Herrera v. JFK Med. Ctr. Ltd. P'ship, 648 F. App'x 930, 934 (11th Cir. 2016) (internal citations omitted).[2] A court should not determine the appropriateness of class action treatment at the motion to dismiss stage "where the class certification issue cannot be readily resolved by the complaint alone." Mills v. Foremost Ins. Co., 511 F.3d 1300, 1309 (11th Cir. 2008) ("[T]he parties' pleadings alone are not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified.").

## III. DEFENDANT'S MOTION TO DISMISS

The TCPA was enacted in 1991 "to protect consumer privacy by placing limits on telemarketing calls and granting individuals who unlawfully receive calls permission to sue." Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1264 (11th Cir. 2019). The TCPA prohibits certain telemarketing practices such as the use of artificial voice systems to call a party without their prior express consent; it also "authorized the [Federal Communications Commission ("FCC")] to promulgate regulations 'concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.' " Id. at 1265 (quoting 47 U.S.C. § 227(c)(1)). The FCC has "promulgated a regulation requiring telemarketers to maintain lists of individuals who have asked not to receive calls from particular callers -- so-called 'internal do-not-call lists.' " Id. at 1264.

More specifically, the regulation provides that no entity shall initiate any telemarketing call unless the entity "has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person

or entity." 47 C.F.R. § 64.1200(d). Such procedures must be in writing, and they must require telemarketers to train their personnel on the existence and use of the internal do-not-call list, put people on the list when requested, and refrain from calling individuals on the list for five years after a request is made. Cordoba, 942 F.3d at 1265 (citing 47 C.F.R. § 64.1200(d)). The regulation requires that telemarketers "must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made," which "period may not exceed 30 days from the date of such request." 47 C.F.R. § 64.1200(d)(3).

"The TCPA creates a private right of action for anyone who receives more than one call within a year from the same entity in violation of these regulations." Cordoba, 942 F.3d at 1265 (citing 47 U.S.C. § 227(c)(5)). "The statute provides an affirmative defense for defendants who 'established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations,' but it also makes available treble damages against a defendant who 'willfully or knowingly violated the regulations.' " Id.

**\*3** "To state a claim under section 227(c)(5) of the TCPA, a plaintiff must allege (1) receipt of more than one telephone call within any 12-month period (2) by or on behalf of the same entity (3) in violation of the regulations promulgated by the FCC." Wagner v. CLC Resorts & Developments, Inc., 32 F. Supp. 3d 1193, 1197 (M.D. Fla. 2014) (citing 47 U.S.C. § 227(c)(5)). Lourie alleges that Defendant violated the FCC regulation by (1) not honoring his do-not-call request, and (2) failing to institute written procedures for maintaining the do-not-call list. Am. Compl. ¶¶ 49-50. Defendant moves to dismiss Lourie's Amended Complaint, arguing that his TCPA claim fails as a matter of law because: (1) Defendant stopped sending text messages to Lourie within the reasonable time afforded by law, (2) Lourie has not alleged facts demonstrating that Defendant failed to implement the requisite safeguards prescribed by 47 C.F.R. 64.1200(d), and (3) Lourie failed to adequately allege that his cell phone is a residential line.

### A. Defendant's compliance with Lourie's do-not-call request within 30-days does not establish that Defendant's action was reasonable as a matter of law based on the pleadings alone.

Lourie alleges that, following his July 17, 2023, request to be placed on Defendant's internal do-not-call list, Defendant sent two telemarketing additional text messages within the next

Case 1:25-cv-01083-JPW    Document 31-3    Filed 12/05/25    Page 49 of 76

Lourie v. Papa John's International, Inc., Not Reported in Fed. Supp. (2024)

2024 WL 5497082

week: one on July 21, and the other on July 24. Am. Compl. ¶¶ 12-13. Defendant argues that Plaintiff's allegations are insufficient as a matter of law because the alleged unlawful telemarketing text messages occurred within the thirty-day "safe harbor" provision in the regulation. Def.'s Br. at 4-7 (citing 47 C.F.R. § 64.1200(d)(3)). Defendant's argument that Lourie's allegations are insufficient as a matter of law is based on an erroneous interpretation of 47 C.F.R. § 64.1200(d)(3); namely, that it is presumptively reasonable for a telemarketer to initially fail to comply with a request to be placed on the do-not-call list so long as the telemarketer eventually complies within thirty days of the request. Def.'s Br. at 4-5 (citing Orsatti v. Quicken Loans, Inc., No. 2:15-CV-09380-SVW-AGR, 2016 WL 7650574, at *7 (C.D. Cal. Sept. 12, 2016)).

A plain reading of 47 C.F.R. § 64.1200(d)(3) makes clear that the regulation does not establish a period within which compliance is reasonable as a matter of law, as Defendant interprets the regulation, but instead establishes a period outside of which compliance is unreasonable as a matter of law. See Nece v. Quicken Loans, Inc., 292 F. Supp. 3d 1274, 1282 n.7 (M.D. Fla. 2018), superseded on other grounds, No. 8:16-CV-2605-T-23CPT, 2018 WL 1326885 (M.D. Fla. Mar. 15, 2018), and vacated on other grounds, No. 8:16-CV-2605-T-23CPT, 2018 WL 4279803 (M.D. Fla. Mar. 15, 2018) (rejecting the defendant's argument "that Section 64.1200 establishes conclusively the reasonableness of a call less than thirty days after a do-not-call request," and instead holding that the regulation "establishes as a matter of law only the converse (that is, the unreasonableness of a call more than thirty days after the request).") (citing cases); see also Delgado v. eMortgage Funding, LLC, No. 21-CV-11401, 2021 WL 4776774, at *5 (E.D. Mich. Oct. 13, 2021) ("Although § 64.1200(d)(3) states that a thirty-day delay in honoring do not call requests is per se unreasonable, it does not state that any shorter delay is per se reasonable. Here, plaintiff allegedly received fourteen additional calls over the four-day period immediately following her request that the calls stop. The Court cannot determine the reasonableness of this delay on the pleadings alone.").

The FCC has issued the following interpretive Report and Order concerning the amount of time telemarketers are permitted to process do-not-call requests, which reveals that the determination of what is a "reasonable" time to honor the subscriber's request depends in some part on the telemarketer's capability of processing the request:

**\*4** We note that the Commission's rules require that entities must record company-specific do-not-call requests

and place the subscriber's telephone on the do-not-call list at the time the request is made. Therefore, telemarketers with the capability to honor such company-specific do-not-call requests in less than thirty days must do so. We believe this determination adequately balances the privacy interests of those consumers that have requested not to be called with the interest of the telemarketing industry. Consumers expect their requests not to be called to be honored in a timely manner, and thirty days should be the maximum administrative time necessary for telemarketers to process that request.

In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C.R. 14014, 14,069, ¶ 94 (July 3, 2003) (footnotes omitted).

Because the Court must accept as true Lourie's allegation that "Defendant has the capability of immediately complying with Plaintiff's [do-not-call] request," Am. Compl. ¶ 14, at this stage of the dispute, the Court must infer that Defendant could have immediately complied with the request prior to the transmittal of the two telemarketing text messages in the week following Lourie's request. Accordingly, even though Defendant complied within a week of Lourie's request, Lourie's allegations sufficiently allege that Defendant failed to honor Lourie's do-not-call request within a reasonable time. Gill v. Align Tech. Inc., No. 21-CV-631-JPS-JPS, 2022 WL 1540016, at *4 (E.D. Wis. May 16, 2022) (denying a motion to dismiss TCPA claim based on allegations that the telemarketer contacted the plaintiff on the day she requested to be put on the do-not-call list, finding that if the telemarketer's process "was such that it could easily and immediately remove a person from a call list, then perhaps a jury would find that it was unreasonable to call that person within an hour of their do-not-call request."); Delgado, 2021 WL 4776774, at *5 (denying a motion to dismiss where the plaintiff alleged that she received fourteen calls over the four days immediately following her request, holding that the court could not "determine the reasonableness of this delay on the pleadings alone."); Nece v. Quicken Loans, Inc., No. 8:16-CV-2605-T-23TBM, 2017 WL 2865047, at *2 (M.D. Fla. Jan. 3, 2017) ("Whether Quicken stopped calling Nece within a 'reasonable' time is a factual dispute resolved with the benefit of evidence."); Martin v. Comcast Corp., No. 12-06421, 2013 WL 6229934, at *6 (N.D. Ill. Nov. 26, 2013) (denying a motion to dismiss based on the inability to decide as a matter of law that one or two weeks for a telemarketer to honor a plaintiff's do-not-call request was a reasonable amount of time as a matter of law).

Case 1:25-cv-01083-JPW   Document 31-3   Filed 12/05/25   Page 50 of 76

Lourie v. Papa John's International, Inc., Not Reported in Fed. Supp. (2024)

2024 WL 5497082

The Court concludes that Lourie's Amended Complaint states a plausible claim for relief under the TCPA's internal do-not-call provision and **DENIES** Defendant's Motion to Dismiss based on Defendant's alleged compliance within thirty days of Lourie's request.

**B. Lourie sufficiently states a Section 227(c)(5) TCPA claim based on a violation of 47 C.F.R. § 64.1200(d).**

Defendant argues that Lourie's Section 227(c)(5) TCPA claim fails as a matter of law because he has failed to sufficiently allege a violation of the regulations promulgated by the FCC. Def.'s Br. at 7-9. Specifically, Defendant contends that the isolated failure to record or honor Lourie's do-not-call request is not sufficient to demonstrate a violation of 47 C.F.R. § 64.1200(d). Id. (citing Nece v. Quicken Loans, Inc., No. 8:16-CV-2605-T-23CPT, 2018 WL 1326885, at *8 (M.D. Fla. Mar. 15, 2018) ("An isolated failure to timely record a do-not-call request establishes no genuine dispute whether Quicken called Nece before instituting a sufficient do-not-call policy."); Simmons v. Charter Commc'ns, Inc., 222 F. Supp. 3d 121, 139 (D. Conn. 2016), aff'd, 686 F. App'x 48 (2d Cir. 2017) ("Thus, in order to prove a subsection (d)(3) violation, a plaintiff cannot rely solely on the fact that a provider failed to record or honor an individual's request to be placed on a DNC list."); and Buia v. Novation Capital, LLC, No. 15-81002-CIV-MARRA, 2017 WL 10398957, at *4 (S.D. Fla. Mar. 31, 2017) (same)). The Court disagrees and need look no further than to the law cited by Defendant to demonstrate that Defendant's argument is without merit.

**\*5** A Section 227(c)(5) TCPA claim alleging a violation of 47 C.F.R. § 64.1200(d)(3) is based on the initiation of the phone call without having implemented the minimum procedures prescribed by the regulation. Wagner, 32 F. Supp. 3d at 1198; see also Benzion v. Vivint, Inc., No. 12-61826-CIV, 2014 WL 11531368, at *5 (S.D. Fla. Jan. 17, 2014) ("A plain reading of § 64.1200(d) reveals that any cause of action under it must include allegations that the consumer received a phone call from the telemarketer when the telemarketer did not have proper procedures in place to make such a phone call."). 47 C.F.R. § 64.1200(d) requires that a telemarketer have six basic procedures in place before placing a telemarketing call: "(1) written policy for maintaining DNC list, available on demand, (2) adequate training of personnel, (3) recording, disclosure, and honoring of DNC requests, (4) identification of sellers/telemarketers, (5) application of DNC requests to affiliated entities, [and] (6) maintenance of records of a DNC list." Buia, 2017 WL 10398957, at *5 (citing 47 C.F.R. § 64.1200(d)).

Two of the cases cited by Defendant were decided on summary judgment where the only evidence produced in support of the Section 227(c)(5) TCPA claim was an isolated failure to comply with a do-not-call request. In Nece, the Court noted that "[t]hrough thirteen months of discovery (including several depositions of Quicken's corporate representatives)," the plaintiff "uncovered no evidence that Quicken failed to implement a do-not-call procedure compliant with Section 64.1200(d)(3)." Nece, 2018 WL 1326885, at *8 (finding that the evidence adduced at summary judgment consisted of the failure to comply with "one unambiguous [do-not-call] request" which was insufficient to establish a genuine issue of material fact to save the plaintiff from summary judgment). Similarly, in Simmons, the evidence showed that, although the plaintiff was not placed on the defendant's do-not-call list immediately, his request was honored within thirty days and the telemarketer established that it had the requisite policies in place. Simmons, 222 F. Supp. 3d at 140 (holding that "evidence of a single violation of an entity's recording policy does not establish a complete failure to implement such a policy" where the plaintiff did not put forward any evidence to dispute the existence of the telemarketer's policy or that his do-not-call request was honored within 30 days).

The third case cited by Defendant, Buia v. Novation Capital, LLC, is also instructive.[3] In that case, the court analyzed whether a proposed amended complaint would be futile under the Rule 12(b)(6) motion to dismiss standard as well as the Rule 56 motion for summary judgment standard. Buia v. Novation Capital, LLC, No. 15-81002-CIV-MARRA, 2017 WL 10398957, at *3 (S.D. Fla. Mar. 31, 2017). The Buia Court found that the Section 227(c)(5) TCPA claim in the proposed amended complaint would survive the motion to dismiss as well as the motion for summary judgment. Id., 2017 WL 10398957, at *4-5. As it relates to the motion to dismiss standard relevant here, the court noted that the plaintiff sufficiently alleged that the defendants called persons who asked to be placed on the do-not-call list and that "Defendants did not have reasonable practices and procedures in place to effectively prevent telephone solicitations ... as evidenced by its calls to Plaintiff who repeatedly requested Defendants stop calling." Id., at *5. The court found that "[t]hese factual allegations are sufficient to raise a right to relief above the speculative level and state a plausible DNC claim." Id.

Case 1:25-cv-01083-JPW    Document 31-3    Filed 12/05/25    Page 51 of 76

Lourie v. Papa John's International, Inc., Not Reported in Fed. Supp. (2024)

2024 WL 5497082

**\*6** In this case, Lourie has alleged that Defendant (1) sent telemarketing messages to Lourie after he requested to be placed on the do-not-call list, (2) failed to ensure that do-not-call requests are honored within a reasonable time, (3) failed to properly maintain master do-not-call lists, (4) did not have a written policy for maintaining internal do-not-call lists, and (5) did not inform and train its personnel engaged in telemarking in the existence and the use of any internal do-not-call lists. Am. Compl. ¶¶ 13, 15-16, 21-22. The Court finds that Lourie's allegations are sufficient to state a Section 227(c)(5) TCPA claim alleging a violation of 47 C.F.R. § 64.1200(d)(3). See Buja, 2017 WL 10398957 at \*5; see also Wagner, 32 F. Supp. 3d at 1198 (holding that the allegations that the defendant made telemarketing calls without instituting procedures that comply with regulatory standards was sufficient to survive the motion to dismiss).

**C. Lourie sufficiently pleads the use of a "residential" telephone.**

Defendant argues that Lourie's Amended Complaint should be dismissed because he fails to sufficiently plead that the telephone to which Defendant allegedly sent the telemarketing text messages was residential. Def.'s Br. at 9-10. Defendant is correct that the relevant TCPA regulations only prohibit calls to "residential telephone subscriber[s]." 47 C.F.R. § 64.1200(c)(2). However, Plaintiff alleges in the Amended Complaint that his cell phone number at issue in this case "is his residential telephone number that is used for personal purposes." Am. Compl. ¶ 28. "This allegation, coupled with the TCPA's presumption that wireless subscribers who ask to be put on the national do-not-call list [are] 'residential subscribers,' is sufficient to allege that Plaintiff is a residential telephone subscriber under the TCPA." Becker v. Pro Custom Solar LLC, No. 2:19-CV-535-FtM-2-9NPM, 2020 WL 474647, at \*8 (M.D. Fla. Jan. 29, 2020) (internal citation and quotation omitted). Accordingly, Defendant's argument that Lourie has not sufficiently alleged the use of a residential telephone line is without merit.

**IV. DEFENDANT'S MOTION TO STRIKE**

Defendant argues that this Court should strike Lourie's class allegations because the class definition is overly broad and lacks commonality. Mot. to Strike at 5-14. Specifically, Defendant argues that the class as pleaded does not account for the reasonableness of the time period within which Defendant honored any do-not-call request, fails to exclude potential members who re-consented to receiving messages after their initial revocation, and is not limited to individuals

who received multiple text messages that were made for telemarketing purposes. Id. at 7-12. Defendant also argues that the class as pleaded fails to meet the Rule 23(a) commonality requirement for the same reasons that it is overly broad. Id. at 7, 12-14. Defendant's argument is rooted in the contention that the class pleaded by Lourie does not meet the requirements of Rule 23, but Lourie has not yet moved for class certification. Nonetheless, Defendant asks the Court to consider the merits of Lourie's class allegations under Federal Rule of Civil Procedure 23 at this early juncture.

The Court is mindful that striking class allegations at the pleading stage "is an extreme remedy appropriate only where a defendant demonstrates from the face of the complaint that it will be impossible to certify the classes alleged by the plaintiff regardless of the facts the plaintiff may be able to prove." Fitzer v. Am. Inst. of Baking, No. CV 209-169, 2016 WL 4223612, at \*11 (S.D. Ga. Aug. 9, 2016). See also Gill-Samuel v. Nova Biomedical Corp., 298 F.R.D. 693, 699 (S.D. Fla. 2014) (stating such motions are "drastic remed[ies]" and viewed "with disfavor"). Indeed, courts in this Circuit routinely find such motions at this stage of proceedings to be "premature, preferring Instead to address issues raised in the motion in a response filed in opposition to a motion for class certification. Snover v. Publix Super Markets, Inc., No. 8:15-cv-2434-T-26-AAS, 2016 WL 11581804, at \*1 (M.D. Fla. Oct. 24, 2016).

**\*7** Although there is authority supporting the proposition that class allegations can be dismissed at the pleading stage pursuant to Rule 23 before a motion to certify is filed, see, e.g., Vandenbrink v. State Farm Mut. Auto. Ins. Co., No. 8:12-cv-897-T-30-TBM, 2012 WL 3156596, at \*3 (M.D. Fla. Aug. 3, 2012), recent decisions from courts in this Circuit have taken the opposite view, choosing to instead "view the Rule 23 factors through the lens of the Rule 12(f) standard for motions to strike." Gill-Samuel, 298 F.R.D. at 700; Snover, 2016 WL 11581804, at \*1. The Court agrees with the latter approach, as "it does not necessarily follow that the presence of class allegations in a motion to strike somehow alters Rule 12(f)'s clear legal standard for striking material from a pleading." Desmond v. Citimortgage, Inc., No. 1:12-cv-23088, 2015 WL 845571, at \*5 (S.D. Fla. Feb. 25, 2015). Thus, the Court will treat Defendant's Motion to Strike pursuant to Rule 12(f), not Rule 23.

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial,

Case 1:25-cv-01083-JPW    Document 31-3    Filed 12/05/25    Page 52 of 76

Lourie v. Papa John's International, Inc., Not Reported in Fed. Supp. (2024)

2024 WL 5497082

impertinent, or scandalous matter." The Court finds nothing redundant, immaterial, impertinent, or scandalous about Lourie's allegations defining the class in this case. Since none of the concerns listed in Rule 12(f) are present, the class allegations are best tested under Rule 23 on a motion for class certification after the collection and presentation of evidence. McCabe v. Daimler AG, No. 1:12-cv-2494-TCB, 2013 WL 6283657, at *1 (N.D. Ga. Dec. 2, 2013) ("[T]his motion [to strike class allegations] is premature and the Court will wait until a motion for class certification is filed to determine whether this case can proceed as a class action.... The shape and form of a class action evolves only through the process of discovery, and it is premature to rule on class certification before the claim has taken form.") (internal punctuation omitted). Because it is inappropriate to make a determination

regarding class certification at this time, Defendant's motion to strike is **DENIED**.

## V. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant Papa John's International, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 18] and Motion to Strike Class Allegations [Doc. 19] are **DENIED**.

**IT IS SO ORDERED** this 25th day of June, 2024.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 5497082

---

Footnotes

1    Because this case is before the Court on a motion to dismiss, the facts are presented as alleged in Lourie's First Amended Complaint ("Am. Compl.") [Doc. 12]. Silberman v. Miami Dade Transit, 927 F.3d 1123, 1128 (11th Cir. 2019) (citation omitted).

2    See also Abdallah v. Coca-Cola Co., No. 1:98CV3679-RW, 1999 WL 527835, at *1 (N.D. Ga. July 16, 1999) (noting the defendant's argument that "no matter what forms Plaintiffs' class claims take, they are not maintainable in a class action," and responding that "the shape and form of a class action evolves only through the process of discovery, and it is premature to draw such a conclusion before the claim has taken form").

3    Despite being one of the three cases Defendant relies upon for the proposition that Lourie has failed to state a claim, in its reply brief, Defendant argues that Buja is "inapplicable" and "carries no weight" because it was decided at the summary judgment stage. Def.'s Reply in Supp. of its Mot. to Dismiss [Doc. 23] at 5.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 3140725
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Sana MUJAHID, Plaintiff,

v.

NEWITY, LLC, Defendant.

No. 25 C 8012
|
Signed November 10, 2025

**Attorneys and Law Firms**

Anthony Paronich, Paronich Law, P.C., Hingham, MA, for
Plaintiff.

Aaron Paul Heeringa, Manatt, Phelps & Phillips, LLP,
Chicago, IL, Joshua James Cauhorn, Burke, Warren, Mackay
& Serritella, P.C., Chicago, IL, for Defendant.

**MEMORANDUM OPINION AND ORDER**

JORGE L. ALONSO, United States District Judge

 **\*1** Plaintiff alleges that Newity violated 47 U.S.C. § 227(c)
(5) of the Telephone Consumer Protection Act ("TCPA")
because Plaintiff's cell phone number is on the national
do-not-call registry, and Plaintiff received at least two text
messages that identified Newity by name and promoted
Newity's financial offerings. R. 20 ¶¶ 2, 13–20. Newity moves
to dismiss on two grounds: first, that § 227(c)(5) does not
apply to text messages, and second, that Plaintiff failed to
allege a theory of liability against Newity. R. 22. Newity's
motion is denied.

**Legal Standard**

A Rule 12(b)(6) motion "tests whether the complaint states a
claim on which relief may be granted." Richards v. Mitcheff,
696 F.3d 635, 637 (7th Cir. 2012). A complaint must provide
"a short and plain statement of the claim" and must "contain
sufficient factual matter, accepted as true, to state a claim to
relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.
662, 677–78 (2009) (citations omitted). Facial plausibility
exists when the plaintiff pleads factual content that "allows

the court to draw the reasonable inference that the defendant
is liable for the misconduct alleged." Id. at 678. In deciding a
motion to dismiss, the Court "accept[s] the well-pleaded facts
in the complaint as true and draw[s] reasonable inferences in
the plaintiff's favor." Esco v. City of Chicago, 107 F.4th 673,
678 (7th Cir. 2024).

**Discussion**

 1. **Section 227(c)(5)**
The TCPA imposes restrictions on telephone solicitations.
Under § 227(b)(1)(A), for example, it is prohibited "to make
any call" using an "automatic telephone dialing system"
to "any emergency telephone line." Under § 227(b)(1)(B),
for example, it is prohibited "to initiate any telephone
call to any residential telephone line using an artificial or
prerecorded voice to deliver a message without the prior
express consent of the called party." And under § 227(c)
(5), the TCPA provides a private right of action for a
person to seek damages if she has "received more than
one telephone call within any 12-month period by or on
behalf of the same entity in violation of the regulations
prescribed under this subsection." The TCPA authorizes the
Federal Communications Commission ("FCC") to "prescribe
regulations to implement methods and procedures for
protecting the privacy rights" set forth in the TCPA. 47 U.S.C.
§ 227(c)(2). Relevant to § 227(c)(5), the FCC promulgated 47
C.F.R. § 64.1200(c)(2) which states that "[n]o person or entity
shall initiate any telephone solicitation to ... [a] residential
telephone subscriber who has registered his or her telephone
number on the national do-not-call registry of persons who do
not wish to receive telephone solicitations that is maintained
by the Federal Government."

There is no dispute that Plaintiff is a residential telephone
subscriber registered with the do-not-call registry, and that
she received at least two text messages. Newity argues that
the private right of action under § 227(c)(5) does not apply to
text messages because § 227(c) mentions "telephone call[s]"
but "does not mention text messages or SMS messages, and
nowhere does the TCPA define 'telephone call' to include
text and/or SMS messages." R. 23 at 10 (citations omitted).
In essence, Newity argues that the phrase "telephone call"
encompasses only voice calls. See id.

 **\*2** The Court finds that the phrase "telephone call," as used
in § 227(c), encompasses "text messages" for the following
reasons. First, interpreting § 227(c) to include text messages is

supported by the statute's plain language. The "starting point for interpreting a statute is the language of the statute itself." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 56 (1987) (citations omitted). And "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42 (1979). Although Newity is correct that § 227(c) does not use the term "text message," this is hardly surprising given that the statute was enacted in 1991, before the first-ever text message was sent in 1992. *See Keating v. Peterson's Nelnet, LLC,* 615 F. App'x 365, 370 (6th Cir. 2015) ("[T]he first text message was not sent until December 3, 1992, almost a full year *after* the December 20, 1991, enactment of the TCPA."). As such, the Court examines the plain meaning of the phrase "telephone call." Webster's Dictionary defines a "call" in this context as " 'to communicate with or try to get into communication with a person by a telephone.' " *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 953–54 (9th Cir. 2009) (citing Webster's Third New International Dictionary 318 (2002)). The Court finds that a text message falls within this definition.

Second, interpreting § 227(c) to include text messages is consistent with the text of § 227 as a whole. *See River Road Hotel Partners, LLC v. Amalgamated Bank,* 651 F.3d 642, 649 (7th Cir. 2011) (citations omitted) ("When interpreting statutory language, the meaning attributed to a phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis."). The Supreme Court has held that when a "text message [is sent] to a cellular telephone, it is undisputed [that it] qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 156 (2016). And the Seventh Circuit has held more broadly, though still in the context of § 227(b), that "[t]ext messages to a cellular telephone qualify as a 'call' within the meaning of the statute." *Warciak v. Subway Restaurants, Inc.,* 949 F.3d 354, 356 (7th Cir. 2020). The fact that the term "call" as used in § 227(b) encompasses "text messages," supports the interpretation that the term "call" as used in § 227(c) also encompasses "text messages." *See Pulsifer v. United States,* 601 U.S. 124, 149 (2024) ("In a given statute, the same term usually has the same meaning.").

Third, interpreting § 227(c) to include text messages is confirmed by the purpose and context of the TCPA. "The TCPA was enacted to 'protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to

facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers.' " *Satterfield,* 569 F.3d at 954 (citing S. Rep. No. 102–178, at 1 (1991)). The core of § 227(c) is its prohibition of "telephone solicitations." *See* 47 U.S.C. § 227(c)(1). And the statute defines "telephone solicitations" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4). "This language makes clear that Congress was more concerned with the purpose of the telephone communications it proscribed in the TCPA than the form in which those communications are transmitted." *Wilson v. MEDVIDI Inc.,* 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025); *see also Abboud v. Circle K Stores Inc.,* 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024) ("The purpose of a text or call determines whether it qualifies as a telephone solicitation."). Given Congress's expressly stated goal "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," 47 U.S.C. § 227(c)(1), "it strains belief to suggest that Congress silently determined that [ ] oral messages were more invasive or objectionable than written ones." *Wilson,* 2025 WL 2856295, at *3.

**\*3** Fourth, interpreting § 227(c) to include text messages is consistent with guidance from the FCC. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 606 U.S. 146, 155 (2025) ("District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation."). The FCC has stated that § 227(b) " 'encompass[es] both voice calls and text calls.' " *Sagar v. Kelly Auto. Group, Inc.,* 2021 WL 5567408, at *4 (D. Mass. Nov. 29, 2021) (citing In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C.R. 14014, 14115 (2003)). Likewise, the FCC has stated that § 227(c) includes text messages. *See In the Matter of Emanuel "Manny" Hernandez,* 2018 WL 6830220 at *1 (F.C.C. Dec. 21, 2018) (finding that Hernandez violated § 227(c) because it is "illegal for persons or entities, including advertisers and marketers, to make marketing calls to telephone numbers listed on the [do-not-call registry and this] prohibition includes both voice calls and text messages.").

Fifth, interpreting § 227(c) to include text messages is consistent with numerous decisions by other district courts on this issue. *See, e.g., Pariseau v. Built USA, LLC,* 619 F. Supp. 3d 1203 (M.D. Fla. 2022); *Wilson,* 2025 WL 2856295;

*Sagar*, 2021 WL 5567408. It is true that certain district courts have addressed this issue and found otherwise. *See, e.g., Jones v. Blackstone Med. Servs., LLC*, 2025 WL 2042764 (C.D. Ill. July 21, 2025). But other district courts have taken for granted that § 227(c) encompasses text messages without an in-depth analysis. *See, e.g., Evers v. CampaignSidekick, LLC*, 2025 WL 2896818, at *4 (N.D. Ill. Oct. 10, 2025) ("[Defendant] concedes that a text message is also a "call" for [the § 227(c)(5)] claim."); *Connor v. Servicequick Inc.*, 2025 WL 2855393, at *2 (D. Colo. Oct. 8, 2025) (citations omitted) (reading § 227(c)(5) as providing a private right of action for a "person who has received more than one telephone call [or text message]."). Ultimately, the Court's interpretation is consistent with the weight of authority.

In sum, nothing in the text, structure, or purpose of the TCPA suggests a distinction between an unsolicited voice call and an unsolicited written text message. The Court concludes that a "telephone call" as used in § 227(c) encompasses the types of text messages received by Plaintiff.

**2. Allegations of Liability**

As stated above, § 227(c)(5) of the TCPA provides a private right of action for a person to seek damages if she has "received more than one telephone call within any 12-month period *by or on behalf* of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). As alleged and as shown by a screenshot in the amended complaint, the text messages identified Newity by name and promoted Newity's financial offering by containing a link to a webpage managed by Newity. R. 20 ¶ 15. As stated above, the Court must accept well-pleaded facts as true and draw reasonable inferences in a plaintiff's favor when deciding a motion to dismiss. Here, the Court makes a reasonable inference either that Newity sent the text messages or that another entity did so on Newity's behalf.

**Conclusion**

For the reasons stated above, Defendant's motion to dismiss [22] is denied. The parties shall file a joint status report by 11/17/25 setting forth proposed next steps and dates for this case.

**SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 3140725

---

**End of Document**                © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 817485
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

James E. SHELTON, individually and
on behalf of all others similarly situated,

v.

PRO SOURCE LENDING GROUP
LLC, d/b/a Fast Fund Group, d/b/a
Fast Funds Group, and Brittney Wilson

CIVIL ACTION No. 24-4394
|
Signed March 14, 2025

**Attorneys and Law Firms**

Andrew Roman Perrong, Perrong Law LLC, Glenside, PA,
for James E. Shelton.

Jeffrey N. Rosenthal, Thomas Cialino, Blank Rome LLP,
Philadelphia, PA, for Pro Source Lending Group LLC.

Joseph R. Heffern, Lance Rogers, Rogers Counsel, Ardmore,
PA, for Brittney Wilson.

**MEMORANDUM**

McHUGH, United States District Judge

**\*1** Telemarketing calls are annoying to many consumers,
leading Congress to enact the Telephone Consumer Protection
Act ("TCPA"), which regulates telemarketing calls. The Act
is partially enforced by two federal agencies, but also through
provisions that create a private right of action rooted in strict
liability imposing a monetary penalty for each violation.

For better or for worse, the availability of a private remedy
draws both litigants and lawyers. In this case, James Shelton,
a prolific plaintiff, and his counsel, Andrew Roman Perrong,
equally prolific as a litigator under the TCPA, have joined
forces to file a class complaint against Defendants Pro Source
Lending Group LLC and Brittney Wilson, a Pro Source
employee. Plaintiff alleges, on behalf of himself and others
similarly situated, that Wilson impermissibly contacted him
eight times over a 24-hour period on behalf of Pro Source,
violating the TCPA. Both Defendants have moved to dismiss,

in part on substantive legal grounds, and in part on the basis
that as a serial litigator Plaintiff falls outside the protection
of statute. The legal arguments advanced by the defense are
unpersuasive, and the outcome of Shelton's prior litigation
does not warrant dismissal unless it binds him in this case,
which it does not. The motions will therefore be denied.

**I. Facts as Pled**

*1. Plaintiff creates his phone number, and subsequently uses
it for business purposes.*

In 2015, Plaintiff obtained his phone number and registered
it on the National Do Not Call Registry ("NDNC"). Compl.
¶ 32, ECF 12; Pl.'s Decl. ¶ 2, ECF 22-1 ("Shelton Decl.").
The phone number is a residential, non-commercial telephone
number. Compl. ¶ 23. At the time when he got the number
and registered it on the NDNC, Plaintiff contends that he used
the number for personal and household purposes. Compl. ¶¶
30-32. In 2016, however, Plaintiff formed his business, Final
Verdict Solutions,[1] at which point he began using the phone
number for both business and personal purposes. Shelton
Decl. ¶ 7.

In 2018, Plaintiff sued Target Advance LLC, alleging
violations of Section 227 of the TCPA. *See Shelton v. Target
Advance LLC*, No. 18-2070, 2019 WL 1641353 (E.D. Pa. Apr.
16, 2019). Plaintiff alleged that his phone number, the same
number at issue here, was properly registered on the NDNC,
and that Target Advance contacted Plaintiff to solicit business
in violation of the TCPA. *Id.* at *1-2. At the time Plaintiff
sued Target Advance, the phone number at issue was listed
on his business website, and Plaintiff admits that he used it
for business purposes. Shelton Decl. ¶ 7. The Court dismissed
Plaintiff's claim because Section 227 only provides a private
right of action to "residential" numbers. *Target Advance*, 2019
WL 1641353 at *6. Judge Quiñones held that because his
number was accurately categorized as mixed-use and because
Plaintiff "held his phone number out to the world as a business
phone number" he lacked standing under the TCPA on that
claim. *Id.*

*2. Plaintiff resumes exclusive personal use of his phone
number.*

**\*2** Beginning in June 2019, Plaintiff purportedly ceased all
business use of the phone number at issue. Shelton Decl. ¶¶

7-12. Plaintiff states that he obtained a separate number for exclusive business use, and began using the number at issue for only "personal, family, and household purposes." *Id.* ¶¶ 5-7. Plaintiff explains that he has not held the number at issue out to the public as a business number, nor has it appeared on any website since at least 2019. *Id.* ¶¶ 9-10.

In 2021, Plaintiff sued Pro Source Lending Group LLC,[2] a defendant in this case, for TCPA violations. Compl. ¶¶ 36-38. The parties settled and Plaintiff alleges he asked to be placed on Pro Source's internal do-not-call-list. Shelton Decl. ¶¶ 13-14. Plaintiff has never been a customer of Pro Source, nor has he ever consented to receive calls from them. Compl. ¶ 35.

*3. The July 2024 phone calls and texts.*

The calls and texts underlying the present action all occurred within the span of twenty-four hours. On July 22, 2024, Plaintiff alleges that he received a call on his personal phone number from Defendant Wilson, a Pro Source employee, seeking to sell him a loan. Compl. ¶¶ 42-44. Wilson contacted Plaintiff from her personal cell phone number. *Id.* ¶¶ 43-45. About ten minutes later, Plaintiff received an email with a proposed loan application that Plaintiff did not sign. *Id.* ¶ 50. Within five minutes, Wilson also sent Plaintiff a text stating that she was reaching out on behalf of Fast Funds Group and inviting Plaintiff to ask her questions about the loan process. *Id.* ¶ 51.

A few hours later, Plaintiff received two additional calls from Pro Source: one from an individual named "Sean," and another call from Wilson. *Id.* ¶ 52. Simultaneously, Plaintiff also received a text from Wilson asking him to call her about the loan application. *Id.* ¶ 53.

Calls and texts continued into the next day. At 10:03 AM, Wilson called Plaintiff again. *Id.* ¶ 54. Immediately after, Plaintiff emailed Wilson, stating "Hi Brittney please stop calling me thank you!" *Id.* ¶ 55. At 10:06 AM, Plaintiff received another text from Wilson, again asking him about the loan application. *Id.* ¶ 56. At 10:09 AM, Wilson responded to Plaintiff's email, stating "Will do, thank you." *Id.* ¶ 55. Later that day, Plaintiff received one final call from Pro Source. *Id.* ¶ 58.

Based on this batch of unwanted phone calls and texts, Plaintiff now brings suit on behalf of himself and a class of similarly situated individuals.

## II. Standard of Review

Defendants move for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. I construe the motion challenging subject matter jurisdiction under Rule 12(b)(1) as a facial attack, with the result that the analysis is identical for the arguments raised under both sections of the Rule. *Petruska v. Gannon Univ.*, 462 F.3d 294, 299 n.1 (3d Cir. 2006). The governing standard is set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III. Discussion

Plaintiff's class complaint contains two counts. In Count I, Plaintiff alleges that Defendants violated the TCPA by making telemarketing calls to him, despite his registration on the NDNC. 47 U.S.C. § 227(c); 47 C.F.R. 64.1200(c)(2). Count II asserts that Defendants also violated the Statute in failing to maintain statutorily adequate internal policies, including an internal do-not-call list. 47 U.S.C. § 227(c)(5); 47 C.F.R. 64.1200(d).

**\*3** Defendant Pro Source argues that Plaintiff's number is not properly registered on the NDNC, and that Plaintiff's frequent TCPA litigation places him beyond the statute's zone of interests, therein depriving him of standing. Defendant Wilson joins in those arguments, and separately argues that that individual liability is unavailable under the TCPA.

### A. Plaintiff states a claim under the Section 227(c) and Section 64.1200(c)(2).

Under Section 227 of the TCPA, an individual may register their residential telephone number[3] on a National Do Not Call Registry. A registration on the NDNC "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." 47 C.F.R. § 64.1200(c)(2). The FCC has explicitly "decline[d] to require that business and wireless numbers be removed from the Registry." Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 29 FCC Rcd. 9779, 9785 (June 17, 2008). Both Section 227 and its implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the NDNC and provide consumers with a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227 (c)(5); 47 C.F.R. § 64.1200(c)(2).

**\*4** Plaintiff purports to have registered his residential number on the NDNC in 2015, a full year prior to starting his business. Plaintiff also represents that he exclusively uses his number for personal purposes and has done so since at least 2019. Defendants have not presented any evidence to contradict Plaintiff's representation of his behavior over the past five years. Even if Plaintiff used his number for mixed purposes prior to 2019, NDNC registrations must be honored indefinitely, and the FCC has indicated that business numbers are not removed from the Registry. *See, e.g. National Do Not Call Registry FAQs*, FTC Consumer Advice, https://perma.cc/NVC5-ZNR5 ("No, your registration will never expire. The FTC will only remove your number from the Registry if it's disconnected and reassigned, or if you ask to remove it."). Given these regulations, Plaintiff's personal residential phone number is presumptively still on the NDNC.

Plaintiff therefore states a claim under Section 227(c): he alleges that he has a residential phone number on the NDNC, and that Defendants called Plaintiff on that phone number eight times over the span of 24 hours.[4]

*1. Plaintiff's prior litigation does not preclude this suit.*

Pro Source appears to argue that Plaintiff's claims are collaterally estopped, though this argument is advanced only in a footnote. Under the doctrine of collateral estoppel, a Plaintiff is precluded from relitigating a claim where (1) the identical issue was previously adjudicated, (2) that issue was actually litigated, (3) the previous determination was necessary to the decision, and (4) the party being precluded from relitigating the issue was fully represented in the prior action. *See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006).

In 2019, Plaintiff brought suit in this district alleging similar violations of Section 227 against a different entity. At that time, however, Plaintiff advertised his number on his business website and also used it for business purposes, rendering it a mixed-use number. *Target Advance*, 2019 WL 1641353 at *6. The implementing regulations of Section 227 only prohibit telephone solicitations to "residential telephone subscriber[s]" on the NDNC. *See* 47 C.F.R. § 64.1200(c)(2). This led the Court to conclude that "because Plaintiff held the Phone number out to the world as a business phone number, he could not register it on the National Do Not Call Registry for purposes of avoiding business-to-business calls, such as

those giving rise to this action," and it dismissed Plaintiff's Section 227(c) claims for lack of standing. *Target Advance*, 2019 WL 1641353, at *6.

As noted above, once registered, numbers are not removed from the NDNC, and five years have lapsed since the *Target* decision. In 2019, the phone number at issue was used for both business and personal purposes. In this action, filed in 2024, Plaintiff pleads that it is used exclusively for personal use, and has not been used for business purposes since 2019. In that respect, the issue here differs from the issue decided against Plaintiff in *Target*. And Defendants point to no legal authority supporting a conclusion that past commercial use of a number permanently eliminates standing where the number continues to be listed on the NDNC.[5] Conceptually, there is a temporal aspect to standing, as illustrated by the fact that in some cases standing is deemed not to exist because the injury alleged is hypothetical, and in other instances a case allowed to proceed is later dismissed as circumstances change.

*2. On the facts alleged, Plaintiff is not equitably estopped.*

**\*5** Pro Source argues that in modifying his usage of the number at issue since the Court ruled in 2019, Plaintiff placed Pro Source in a "gotcha" – making it impossible for Pro Source to discern when a cause of action that was previously declared unavailable became available yet again. Pro Source Mot. to Dismiss, ECF 17-1 at 13. Although once again the argument is not fully formed, I construe it as one asserting equitable estoppel. Grounded in common law, equitable estoppel prevents a party from enforcing a right against another party when the right was gained through misleading actions. The party asserting equitable estoppel must show "(1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment." *U.S. v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987).

If Plaintiff took down the number from his business website and then immediately sued Pro Source or another marketer, I would be strongly inclined to find estoppel. But nearly five years have passed during which Plaintiff avers personal use only. Such a change in circumstance, if ultimately proven to be true, is not easily categorized as a misrepresentation. And it cannot be said that Pro Source could reasonably rely on how Plaintiff engaged with the public five years earlier. Legally, the onus is on Defendant to ensure that the number they are calling is not protected by the NDNC. With the number remaining on the NDNC, Pro Source could

have checked whether Plaintiff's number was still listed on business websites or on Google as affiliated with his business before proceeding. The passage of time weighs against a finding of estoppel.

**B. Plaintiff's serial litigation does not bar standing.**
For an individual to have standing under a "statutorily created cause of action," they must fall within the relevant statute's "zone of interest." *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). The "zone of interest" inquiry considers "the Congressional intent of the statute" and whether the "complainant's interests were 'among the sorts of interests'" the statute was specifically designed to protect. *Chem Serv., Inc. v. Envtl. Monitoring Sys. Lab.-Cincinnati of U.S. E.P.A.*, 12 F.3d 1256, 1262 (3d Cir. 1993).

Seeking to remove Plaintiff from within the TCPA's zone of protected interests, Pro Source compares Plaintiff here to the plaintiff in *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016). In *Stoops*, the plaintiff purchased at least thirty-five cellphones with the specific intent of receiving telemarketing calls so that she could bring lawsuits under the TCPA. *Id.* at 788. "In her deposition testimony, the plaintiff stated that she had a 'business suing offenders of the TCPA'; that she had specifically bought the cellphones in order to manufacture TCPA claims; and that she did not use the cellphones for any other purpose." *See Target Advance*, 2019 WL 1641353 at *4 (discussing *Stoops*, 197 F. Supp.3d at 799). The *Stoops* Court found that "because Plaintiff has admitted that her only purpose in using her cellphones is to file TCPA lawsuits, ... the calls did not constitute the 'nuisance, invasion of privacy, cost, and inconvenience' from which Congress intended to protect consumers," depriving the plaintiff of standing for lack of injury-in-fact. *Stoops*, 197 F. Supp. at 800.

Plaintiff here has two phone numbers, not thirty-five. Historically, there was a distinct line between personal and business numbers. That line is eroding, but not to the point where it can be presumed that the only purpose in maintaining two numbers is to bait companies into making telemarketing calls.[6] This is especially so where the record has not yet been developed, and at this stage, there is no evidence that Plaintiff advertises his personal phone number to make it more likely to receive telemarketing calls than any other standard residential phone number.

**\*6** If Defendant contacted Plaintiff eight times over the span of 24 hours, that would seem to be conduct the TCPA is intended to address. At this juncture I cannot rule as a matter of law that he falls outside the TCPA's "zone of interest" based solely on litigation history.[7]

**C. Plaintiff states a claim under Section 227(c)(5) and Section 64.1200(d).**
In addition to the NDNC, companies must also maintain an "Internal Do Not Call" policy. 47 C.F.R. § 64.1200(d). This written policy must be available upon demand, must explain the company's plans to maintain a do-not-call list and train telemarketing personnel on its use, and must record and honor "do-not-call" requests for at least five years after a request is made. *Id.* Where an individual makes a do-not-call request, that request must be honored within a reasonable amount of time once made, up to thirty days. *Id.*

Plaintiff alleges that in 2021, Plaintiff and Pro Source reached a settlement regarding a previous batch of unwanted calls. Compl. ¶ 37. Plaintiff avers that throughout the settlement process, Plaintiff made it unambiguously clear that he no longer wished to receive calls from Pro Source, and that Defendant therefore had notice of Plaintiff's do-not-call request for two and a half years prior to its July 2024 calls.

Defendant disregards the prior dispute between the parties, and identifies July 22, 2024 as the relevant date, when Plaintiff first asked Defendant Wilson to cease contacting him with regard to the present batch of calls. By that measure, the calls are not actionable, because Pro Source would have been permitted thirty days within which to accommodate that request.

At this stage, I am obligated to accept Plaintiff's representations about the content of conversations surrounding the 2021 Settlement. Taking those allegations as true, Plaintiff should have been on Pro Source's internal do-not-call list as of two and a half years ago. Allegations that Defendants contacted Plaintiff while he was listed on their internal do-not-call list are sufficient to state a claim for violation of Pro Source's obligations under § 64.1200(d).

**D. Defendant Wilson may be held individually liable.**
Defendant Wilson argues that she may not be held liable under the TCPA. But her position ignores the plain text of the statute. Section 217 of the TCPA states: "In construing and enforcing the provisions of this chapter, the act, omission, or failure of

any officer, agent, or other person acting for or *employed by* any common carrier or user, *acting within the scope of [her] employment*, shall in every case also be deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*" (emphasis added). Plaintiff alleges that Ms. Wilson was directly involved in the communications with him, using her personal cell phone, a claim that falls within the literal terms of Section 217.

Citing a series of district court cases, the defense contends that the Third Circuit, in *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154 (3d Cir. 2018), has called into doubt whether individual liability is permitted under the TCPA. Such a broad reading of *City Select* is untenable. There, the defendants were a business consulting company that sent a series of faxes, as well as the president and owner of the company. *Id.* at 156. There was conflicting evidence as to the personal involvement of the president, and the sole issue on appeal was whether the trial court properly charged the jury about the standard for imposing liability on a corporate officer. *Id.* at 161-62. *City Select* simply did not address the type of claim raised here and certainly cannot be read as repealing the clear language of the statute that creates liability for direct personal involvement.[8]

**\*7** Plaintiff's claims against Wilson may therefore proceed.

### IV. Conclusion

For the reasons set forth above, Defendants' Motions to Dismiss will be denied. An appropriate order follows.

### All Citations

Slip Copy, 2025 WL 817485

### Footnotes

1    Defendants contend that the business existed for the purpose of generating TCPA claims. Pro Source Mot. to Dismiss, ECF 17-1 at 6.

2    Pro Source also does business as "Fast Fund(s) Group" and sells loans. Compl. ¶¶ 5, 39.

3    The FCC has yet to issue definitive guidance on numbers with a history of mixed-use, stating only that "we will review such calls as they are brought to our attention to determine whether or not the call was made to a residential subscriber." In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 ("2005 TCPA Order"), 20 FCC Rcd. 3788, 3793 (2005). A majority of other district courts, as well as the Ninth Circuit (the only circuit court to rule on this question) have found that mixed-use numbers are not per-se excluded from the TCPA's protections when registered on the NDNC, and that such numbers require a case-by-case evaluation. *See Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223-1226 (9th Cir. 2022); *see also Mattson v. New Penn Fin., LLC*, No. 18-990, 2020 WL 6270907, at *2 (D. Or. Oct. 25, 2020) ("Although [plaintiff's] use of a phone line for personal calls does not automatically transform it into a residential line for purposes of the TCPA, neither does his use of a personal line for business calls automatically transform it into a business line."); *Clements v. Porch.com, Inc.*, No. 20-3, 2020 WL 5739591, at *5 (D. Alaska Sept. 24, 2020) (holding that phones used for home-based businesses fall within the TCPA's zone of interest); *Smith v. Truman Rd. Dev., LLC*, No. 18-670, 2020 WL 2044730, at *12 (W.D. Mo. Apr. 28, 2020) (holding that a cell phone used at least 60 percent for personal purposes can be residential); *Blevins v. Premium Merch. Funding One, LLC*, No. 18-377, 2018 WL 5303973, at *2-3 (S.D. Ohio Oct. 25, 2018) ("[C]ourts have routinely looked at the facts and circumstances surrounding a particular case before deciding whether TCPA protection extended to a particular telephone number that was used for both business and residential purposes."). In *Target, supra*, a member of this Court concluded that mixed-use numbers are not residential, and therefore fall outside the Act.

I need not rule on this issue, because as this stage I must accept Plaintiff's allegation that during the relevant time frame, the phone was only used personally, and had been used exclusively so since June 2019.

4    Under the TCPA, text messages are considered "calls." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016). I will therefore address the 5 calls and 3 texts at issue as an aggregate of 8 calls.

5    On the facts as pleaded, this is not a case where Plaintiff's number was clearly a business number at the time when he registered it on the NDNC in 2015, which may raise a question as to whether his registration was void *ab initio*. Plaintiff

2025 WL 817485

instead asserts that he created the number and registered it on the NDNC in 2015 as a "residential telephone subscriber," "years prior" to forming his business in 2016, making his registration presumably proper. Compl. ¶ 32; ECF 22 at 6.

6    In fact, Plaintiff explicitly refutes this accusation in his sworn declaration, stating, "I do nothing to precipitate the illegal calls and messages which are placed to me ... I have never proactively created or found TCPA claims nor entrapped businesses." Shelton Dec. ¶¶ 17-18.

7    Congress explicitly included a private right of action within the TCPA, signifying its intention that members of the public be tasked with the Statute's enforcement. In my view, absent abuse of the statute by a serial litigant such as *Stoops*, a court's inquiry should focus on the merits of the case before it.

8    It also bears mention that the discussion of personal liability of corporate officers was pure *dicta*, as the majority's opinion acknowledged when it observed that it was "neither litigated in the District Court nor fully briefed and argued on appeal," 885 F.3d at 161, a fact emphasized by Judge Shwartz in her concurrence. *Id.* at 163.

---

**End of Document**                                            © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01083-JPW    Document 31-3    Filed 12/05/25    Page 62 of 76
Viggiano v. Lakeshore Equipment Company, Not Reported in Fed. Supp. (2018)

2018 WL 11310868

2018 WL 11310868
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Amy VIGGIANO Individually And On Behalf
Of All Others Similarly Situated, Plaintiff,

v.

LAKESHORE EQUIPMENT
COMPANY, Defendants.

Civil Action No. 17-cv-00707 (PGS)
|
Signed 01/10/2018
|
Filed 01/11/2018

## Attorneys and Law Firms

Mark W. Morris, Clark Law Firm, Belmar, NJ, for Plaintiff.

Jason C. Gavejian, Jackson Lewis P.C., Berkeley Heights, NJ,
for Defendants.

## MEMORANDUM AND ORDER

SHERIDAN, U.S.D.J.

 **\*1**  This matter comes before the Court on Defendant
Lakeshore Equipment Company's Motion to Dismiss Plaintiff
Amy Viggiano's Complaint on four separate grounds: (1)
lack of subject matter jurisdiction pursuant Federal Rule of
Civil Procedure 12(b)(1); (2) failure to state a claim pursuant
Federal Rule of Civil Procedure 12(b)(6); (3) to strike class
allegations pursuant Federal Rule of Civil Procedure 12(f);
and (4) to stay this case pending resolution of another matter
by the Federal Circuit. The case arises from promotional text
message which Plaintiff received about educational materials
that Defendant sold. The parties dispute the reasonableness
of Plaintiff's attempts to revoke her prior express consent and
whether the device used to send text messages satisfies one
of the elements of the Telephone Consumer Protection Act,
47 U.S.C. § 227 et seq. (TCPA). For the reasons stated below,
the Court denies Defendant's motions.

## Background

Plaintiff brought this suit, on behalf of herself and
similarly situated plaintiffs, alleging violations of the
TCPA by Defendant. In this putative class action, Plaintiff
alleges that in 2016 she consented to receiving automated
commercial text messages from Defendant. According to the
Complaint, Defendant used an "automatic telephone dialing
system" (ATDS) to deliver these messages. (Complaint
["Compl."] at ¶ 12). The ATDS has the ability to store or
produce telephone numbers using a random or sequential
generator. (*Id.*). After initially enrolling in Defendant's text
program, Plaintiff claims to have revoked her consent by
indicating to Defendant the following messages: "Please
take me off the list;" "Please don't send me these [texts]
anymore;" and "I've had enough! This is your last warning!
I've told you to stop several times and you haven't." (*Id.* at ¶
13). Plaintiff alleges that Defendant refused to stop sending
her text messages after she withdrew her consent. (*Id.* at ¶
14). Defendant indicated to Plaintiff that the only way to
withdraw her consent to receive unwanted text messages from
Defendant was to text "STOP." (*Id.*).

Defendant, in opposition, sets forth additional facts by way
of an affidavit from Ray Palmer, Defendant's Vice President
of Business Processes. (ECF No. 6-2, "Palmer Declaration").
These allegations focus on whether Plaintiff adequately
followed directions to "opt-out" or whether she intentionally
disregarded instructions in order to manufacture an injury.
The Palmer Declaration alleges the following. Defendant is
in the business of creating educational materials and provides
its in-store and online customers the opportunity to enroll
in Lakeshore offers and news by texting the word "JOIN"
to a program's short code. (*Id.* at ¶¶ 2-3). This program
advises consumers that by enrolling they will receive, via text
message, promotional offers and notifications; it also includes
an electronic link to the Terms & Conditions that control. (*Id.*
at ¶ 4). When customers visit Defendant's website and click
on "Sign Up" for exclusive text offers and deals, they are
presented with the following information:

 **\*2**

### How do I unsubscribe/opt out?

Simply text STOP to 39714.

(*Id.* at ¶ 5). Additionally, the terms and conditions
state, "By texting JOIN to 39714, you are agreeing to
receive promotional offers and notifications from Lakeshore
Learning Materials." (*Id.*). After a consumer sends a text
containing the keyword JOIN, he or she then receives the
following message from Defendant:

Viggiano v. Lakeshore Equipment Company, Not Reported in Fed. Supp. (2018)

2018 WL 11310868

Reply Yes to get 10 autodialed marketing msgs/month @ this #. Text opt-in not required for purchase. Msg&Data rates may apply. Bit.ly/MobileTC

(*Id.* at ¶ 7). After the consumer sends a "Yes" text response, he or she will immediately receive the following message:

Thank you for joining Lakeshore Promo Alerts! Stay tuned for great deals. Reply HELP 4 help. Reply STOP 2 cancel.

(*Id.* at ¶ 8). Once enrolled, each promotional message sent to the enrolled customer, ends with the following message: "ToCancelReplySTOP." (*Id.* at ¶ 9). Defendant's automated system also accepts the following messages to cancel future texts from Defendant: "CANCEL," "DO NOT," "DON'T," "END," "NO," "NO MORE," "OPT OUT," "QUIT," REMOVE," "TERMINATE," and "UNSUBSCRIBE." (*Id.* at ¶ 10). If, at any time, a consumer sends a text with an unrecognized word, or an invalid response, he or she will receive the following message:

Sorry, we don't recognize that word. Reply w/your keyword to opt-in. Reply HELP 4 help. Reply STOP 2 cancel. Msg&Data rates may apply. bit.ly/MobileTC

(*Id.* at ¶ 11)

According to Defendant's records, on November 18, 2016 at 8:21 p.m., Lakeshore received an inbound text message containing the keyword "JOIN" from plaintiff's phone number. (*Id.* at ¶ 14). In response to the inbound text message, Defendant's system sent the following message to Plaintiff:

Reply Yes to get 10 autodialed marketing msgs/month @ this #. Text opt-in not required for purchase. Msg&Data rates may apply. Bit.ly/MobileTC

(*Id.* at ¶ 15). Immediately thereafter, Defendant received an inbound text message from Plaintiff's number that said "Yes." The system then sent the following:

Thank you for joining Lakeshore Promo Alerts! Stay tuned for great deals. Reply HELP 4 help. Reply STOP 2 cancel.

(*Id.* at ¶¶ 16-17). On multiple occasions, Lakeshore messages advised Plaintiff that she could unsubscribe from the text-messaging program simply by texting "STOP" as a return text message. (*Id.* at ¶ 20).

Three days after enrolling, on November 21, 2016, Defendant received the following message from Plaintiff, "I've changed my mind and don't want to receive these anymore." (*Id.* at ¶ 21). The system did not recognize this message from Plaintiff, and immediately responded saying:

Sorry, we don't recognize that word. Reply w/your keyword to opt-in. Reply HELP 4 help. Reply STOP 2 cancel. Msg&Data rates may apply. bit.ly/MobileTC

(*Id.* at ¶ 22). Five days later, Defendant received another inbound text message from Plaintiff, "Please take me off this list." (*Id.* at ¶ 23). Again, the system responded with the same, "we don't recognize that word," message that also included the instruction "Reply STOP 2 cancel." (*Id.* at ¶ 24). On November 29, 2016, Lakeshore received another inbound text message from plaintiff, indicating: "Please do not send me these anymore." Again, the system responded in the manner indicating that it did not recognize the message containing the instruction, and noted to reply "STOP" to unsubscribe. (*Id.* at ¶¶ 25-26).

**\*3** Finally, on December 1, 2016, Defendant received the following inbound text message from plaintiff's number, "I've had enough! This is your last warning! I've told you to stop several times and you haven't." (*Id.* at ¶ 27). Once again the same messages followed by Defendant to Plaintiff; instructing plaintiff to reply "STOP" to unsubscribe. (*Id.* at ¶ 28). Lakeshore never received the message "STOP" from plaintiff and no other messages were sent by Plaintiff before initiating this suit. (*Id.* at ¶¶ 29-30).

**Analysis**

I. Rule 12(b)(1) Subject Matter Jurisdiction

Defendant asserts that Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because Plaintiff has not established standing to warrant federal court jurisdiction. Specifically, Defendant alleges that Plaintiff has failed to allege any concrete injury. (Def.'s Br. at 22-23). In response, Plaintiff argues that the Supreme Court in *Spokeo, Inc. v. Robins*, ―― U.S. ――, 136 S.Ct. 1540, 1549, 194 L.Ed.2d 635 (2016) recognized intangible injuries as actionable. Moreover, since a cause of action under the TCPA is essentially an intangible injury, Plaintiff claims the Court has subject matter jurisdiction. With reservation, the Court agrees.

Under Federal Rules of Civil Procedure 12(b)(1) a claim can be dismissed for "lack of jurisdiction over the subject matter." This motion to dismiss may be asserted at any time in a case. *In re Kaiser Group Int'l, Inc.*, 399 F.3d 558, 565 (3d Cir. 2005). In a motion to dismiss based on subject matter jurisdiction, "the standard ... is much more demanding

Viggiano v. Lakeshore Equipment Company, Not Reported in Fed. Supp. (2018)

2018 WL 11310868

[than the standard under 12(b)(6)].” ‘When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.’ ” *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

If the defendant's attack is facial, the court may take all allegations in the complaint as true and “may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction.” *Liu v. Gonzales*, No. 07-1797, 2007 WL 2916511, at *3, 2007 U.S. Dist. LEXIS 74611, at *7 (D.N.J. Oct. 5, 2007). The standard of review differs substantially when the challenge is factual. Then, there is no presumption of truthfulness to a plaintiff's claims in the complaint. *RLR Invs., LLC v. Town of Kearny*, No. 06-4257, 2007 WL 1797658, at *3, 2007 U.S. Dist. LEXIS 44703, at *8 (D.N.J. June 20, 2007) (citations omitted).

Thus, consideration of the motion does not have to be limited; conflicting evidence may be considered so that the court can decide factual issues that may bear on its jurisdiction. *Id.* Furthermore, “[w]hen resolving a factual challenge, the court may consult materials outside the pleadings, and the burden of proving jurisdiction rests with the plaintiff.” *Med. Soc'y of N.J. v. Herr*, 191 F. Supp. 2d 574, 578 (D.N.J. 2002) (citing *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000)). However, “[w]here an attack on jurisdiction implicates the merits of plaintiff's [f]ederal cause of action, the district court's role in judging the facts may be more limited.” *RLR Invs., LLC*, 2007 WL 1797658, at *3, 2007 U.S. Dist. LEXIS 44703, at *9 (internal citations omitted).

The Court finds Defendant's Rule 12(b)(1) arguments unpersuasive, since the present cause of action arises under a federal statute. Moreover, the Third Circuit in *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017), expressly held that a concrete injury has been pled when the complaint asserts the “very harm that Congress sought to prevent.” (internal quotation marks and citation omitted). Here, the Complaint is predicated on receiving unsolicited advertisements text messages from an automatic telephone dialing system, after Plaintiff revoked consent to receive such calls, which is “prototypical conduct proscribed by the TCPA.” *Id.*; *see also* 47 U.S.C. § 227 (b)(1)(C).

**\*4** Additionally, the allegations set forth in the Palmer Declaration are fact issues as to whether Plaintiff adequately revoked her consent. This is a defense to whether Plaintiff has demonstrated a concrete harm under *Susinno*. Defendant may re-open the issue if the evidence shows that Plaintiff manufactured her injury. That is, according to the Palmer Declaration, the present matter was manufactured by Plaintiff and that the “TCPA was not enacted to protect individuals from their own nefarious conduct.” (Def.'s Reply Br. at 1); *see also* *Stoops v. wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 801 (W.D. Pa. 2016) (“It is well settled that a plaintiff ‘cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending.” (internal quotation marks and citations omitted)). More specifically, “Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls.” *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013); *see also* 47 U.S.C. § 227. Here, it is undisputed that Plaintiff purposefully joined Defendant's program by texting J-O-I-N, and then Y-E-S to confirm. However, Defendant contends that Plaintiff, in attempting to revoke consent, intentionally chose to text long complicated sentences, instead of texting S-T-O-P, so that she could bring this lawsuit. (Def.'s Reply Br. at 4). However, as noted above, in order to decide whether Plaintiff manufactured her claim requires a factual determination that can only be determined after discovery, at which point the credibility of witnesses and the reasonableness of Plaintiff's attempts to unsubscribe can be adequately assessed.[1] As such, the Court dismisses Defendant's 12(b)(1) motion without prejudice and the parties may re-open the manufactured injury issue, if appropriate, after discovery has commenced. However, for the present motion, since Plaintiff's Complaint is grounded upon the TCPA, the Court has subject matter jurisdiction. *See* 28 U.S.C. § 1331.

## II. Rule 12(b)(6) Failure to State a Claim

Defendant next seeks dismissal of Plaintiff's TCPA claims, since she has failed to state a claim for which relief can be granted. Specifically, because Defendant provided a reasonable means for revoking consent to receive promotional test messages and did not use an ATDS, Defendant contends that Plaintiff lacks any basis for asserting claims under the TCPA. The Court disagrees, since these issues are factual disputes that are ordinarily reviewed on summary judgment, as opposed to a motion to dismiss.

On a motion to dismiss for failure to state a claim, the Court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to

Viggiano v. Lakeshore Equipment Company, Not Reported in Fed. Supp. (2018)

2018 WL 11310868

view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal,* 556 U.S. at 678-79, 129 S.Ct. 1937; *see also Morse v. Lower Merion School District,* 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium,* 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.,* 223 F.3d 165, 173 (3d Cir. 2001).

"The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.' " *Kost v. Kozakewicz,* 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (2d ed. 1990)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* As noted above, the allegations set forth in the Palmer Declaration are not asserted in the Complaint and are not documents integral to the Court's disposition of the present motion. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) (noting that a district court may consider extraneous documents, without converting a motion to dismiss into one for summary judgment, when the document is deemed "integral to or explicitly relied upon in the complaint").

**\*5** To sustain a claim under the TCPA, a plaintiff must establish three elements: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)). While it is undisputed that Plaintiff initially provided express consent, Plaintiff alleges she attempted to revoke consent, but the automated dialing system would not accept her revocation. (Pl's Br. 4-5). As such, the Court limits its focus on whether Plaintiff satisfies elements two and three.

### 1. Revocation of Express Consent

Turning to element three, Defendant, relying on the Palmer Declaration, contends that Plaintiff's attempt to revoke consent was unreasonable. In this motion, the Court focuses on the allegations of the Complaint and may not rely on integral documents. The Palmer Declaration does not fall within that standard and it is not considered.

In its 2015 Declaratory Ruling and Order, the FCC clarified how consumers may revoke consent. *See In re Rules & Regulations Implementing the TCPA of 1991,* 30 F.C.C. Rcd. 7961 (July 10, 2015) (hereinafter, "2015 Order"). The 2015 Order explained, "consumers have a right to revoke consent, using any reasonable method including orally or in writing." *Id.* at 7996 ¶ 64. The FCC also provided guidance for courts seeking to determine the reasonableness of a consumer's revocation:

> When assessing whether any particular means of revocation used by a consumer was reasonable, we will look to the facts and circumstances surrounding that specific situation, including, for example, whether the consumer had a reasonable expectation that he or she could effectively communicate his or her request for revocation ...

*Id.* at 7996 ¶ 64 n.233. Here, Defendant contends that Plaintiff's efforts to revoke consent were patently unreasonable. However, at this juncture, to determine whether Plaintiff's revocation was reasonable is beyond the scope of a Rule 12(b)(6) motion because at this stage, the review is to determine if there is a plausible claim.

### 2. Defendant's Use of an ATDS

Defendant next contends that Plaintiff's TCPA claim fails, since the Complaint does not allege sufficient facts to support her assertion that Defendant utilizes an ATDS system.

Viggiano v. Lakeshore Equipment Company, Not Reported in Fed. Supp. (2018)

2018 WL 11310868

Specifically, Defendant argues that Plaintiff has failed to state a claim since the device utilized was an "mGage," which two district courts have held is not an ATDS. *See Jenkins v. MGage, LLC*, No. 14-2791, 2016 WL 4263937, 2016 U.S. Dist. LEXIS 106769 (N.D. Ga. Aug. 12, 2016); *Dominguez v. Yahoo!, Inc.*, No. 13-1887, 2017 WL 390267, 2017 U.S. Dist. LEXIS 11346 (E.D. Pa. Jan. 27, 2017). Plaintiff maintains that the Complaint sufficiently alleged Defendant's use of an ATDS. Plaintiff focuses on the TCPA's prohibition on calls for advertising using *any* automatic telephone dialing system. (Pl.'s Br. 9) (emphasis added).

According to the TCPA, an ATDS is defined as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(l). The TCPA's prohibition on ATDSs has expanded to include "both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (quoting *In re Rules and regulations Implementing the TCPA of 1991*, 18 F.C.C. Rcrd. 14014, 14115 (July 3, 2003) (hereinafter, "2003 Order"). "The FCC orders make clear that it is the capacity of the equipment, not its present use, that is the relevant inquiry." *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 725-27 (N.D. Ill. 2011).

**\*6** Here, for purposes of this motion, the Court is satisfied that the Complaint adequately alleges Defendant's use of an ATDS. In her Complaint, Plaintiff specifically claims that Defendant has utilized an ATDS, in conflict with the TCPA regulations. While Defendant asserts that it utilizes an mGage, rather than an ATDS, that is an assertion beyond the scope of the Complaint and not appropriate for purposes of this motion. Moreover, the issue of whether the use of an mGage platform, which randomly dials and sends promotions through an automated and non-human system, falls within TCPA's prohibition is better suited to be addressed on summary judgment. Accordingly, the Court determines that the Complaint sets forth a claim upon which relief may be granted.

In sum, the Court finds that the Complaint survives Defendant's Rule 12(b)(6) Motion to Dismiss. Plaintiff's Complaint recites a short and plain statement of the claim, showing that the pleader is entitled to relief. As the Court held in *Twombly*, the pleading does not require "detailed factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation. *Twombly*, 550

U.S. at 555, 127 S.Ct. 1955. Here, the Complaint is grounded in federal statute, the TCPA, and sets forth the facts directed to the violation of this statute. That is, the Complaint sets forth the fact that Plaintiff signed up for or consented to receive advertisement offers from Defendant by texting "JOIN" to a number owned by Defendant. Three days later, Plaintiff texted the same number, indicating that she did not wish to receive additional advertisement offers, and in effect wished to unsubscribe or revoke her consent.

### III. Rule 12(f) Motion to Strike Plaintiff's Class Allegations

Defendant next seeks for the Court to strike Plaintiff's class claims since she fails to satisfy the requirements of Rule 23. Plaintiff contends Defendant's motion is premature. The Court agrees.

"In reviewing a motion for class certification, a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 168 (3d Cir. 2001). When evaluating a motion to strike allegations of a complaint, the court must accept as true all factual allegations in the complaint and view all reasonable inferences in the light most favorable to plaintiffs, just as on a motion to dismiss pursuant to Rule 12(b)(6). *Smikle v. Coca-Cola Enterprises, Inc.*, No. 03-1431, 2004 U.S. Dist. LEXIS 32028, at \*8 (D.N.J. May 17, 2004). "Generally courts do not consider whether a proposed class meets the Rule 23 class requirements until after Plaintiffs move for class certification." *6803 Blvd. E., LLC v. DIRECTV, Inc.*, No. 12-2657, 2012 WL 3133680, 2012 U.S. Dist. LEXIS 106548 (D.N.J. July 31, 2012). However, a Defendant may move to strike class action allegations prior to discovery in rare cases "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Landsman & Funk PC v. Skinder-Strauss Associates*, 640 F.3d 72, 93 n.30 (3d Cir. 2011).

In *Korman v. The Walking Co.*, 502 F. Supp. 2d 755, 762-63 (E.D. Pa. 2007), the court held that a motion to strike class allegations is premature when a Plaintiff has failed to file a motion for class certification. The court reasoned that a motion to strike class allegations under Rule 23 is, "for all practical purposes, identical to an opposition to a motion for class certification," and that "[i]t would be improper to allow Defendants to slip through the backdoor what is essentially an opposition to a motion for class certification before Plaintiffs have made such a motion and when discovery on the issue is still ongoing." *Id.* at 762; *see also Bell v. Money Resource*

Viggiano v. Lakeshore Equipment Company, Not Reported in Fed. Supp. (2018)

2018 WL 11310868

*Corp.*, No. 08-639, 2009 WL 382478, at *3 (E.D. Pa. Feb. 13, 2009).

**\*7** Defendant relies on this court's decision in *In re Paulsboro Derailment Cases.*, No. 13-784, 2014 WL 1371712 at *3, 2014 U.S. Dist. LEXIS 48209 at *14 (D.N.J. Apr. 8, 2014)* for support of its contention that Plaintiff's class allegations should be stricken. In *Paulsboro*, the court held, "[a] court should grant a motion to strike class allegations only if the inappropriateness of class treatment is evident from the face of the complaint and from incontrovertible facts." *Id.* Here, the Court determines that motion to strike class allegations is premature at the current stage of the litigation. There are so many factual issues to be determine prior to considering class certification such as (a) whether Plaintiff manufactured her cause of action; (b) whether the S-T-O-P revocation process is reasonable under the FCC 2015 Order; and (c) whether Defendants utilized an ATDS. As such, the Court sees no reason to strike Plaintiff's class allegations pursuant Rule 12(f) at this stage of litigation.

IV. Defendant's Request to Stay

Lastly, Defendant argues that the Court should stay this case while the D.C. Circuit Court of Appeals reviews the issue of revocation of consent in *ACA International v. Federal Communications Commission*, No. 15-1211, 2015 WL 6447283, 2015 U.S. App. LEXIS 18554 (D.C. Cir. July 13, 2015). Defendant summarizes that if this Court were to allow this case to proceed, "a key issue will be whether [Defendant's] system may require a specific, reasonable means (*i.e.*, a 'STOP' response to the automated system) for an individual to revoke consent previously given. (Def.'s Br. at 32).

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 708, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997); *see also Landis v. North American Co.*, 299 U.S.

248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). In determining whether to grant a stay, courts should consider the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create 'a clear case of hardship or inequity' for the moving party; (3) whether a stay would simplify the issues and the trial of the case[,]; and (4) whether discovery is complete and/or a trial date has been set." *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014) (internal quotation marks and citations omitted).

Here, the Court sees no reason to grant Defendant's request for a stay. As discussed above, there are a number of factual issues that may be crystalized through discovery. Indeed, once discovery has completed, the Court will be better suited to determine whether the pending[2] D.C. Circuit decision is dispositive of the present matter. However, in light of the competing interests of this case, Defendant's motion to stay is denied.

**Order**

It is on this 10TH day of January, 2018,

ORDERED that Defendant's Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) (ECF No. 6) are DENIED; and it is further;

ORDERED that Defendant's Motion to Strike the Class Allegations is DENIED; and it is further;

ORDERED that Defendant's Motion to Stay is DENIED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 11310868

Footnotes

1    In a supplemental brief, Defendant relies on Judge Martinotti's recent decision in *Viggiano v. Kohl's Dep't Stores, Inc.*, No. 17-0243, 2017 WL 5668000, 2017 U.S. Dist. LEXIS 193999 (D.N.J. Nov. 27, 2017), wherein the court dismissed the plaintiff's complaint with prejudice, after concluding that she failed to state a claim under the TCPA, since her attempts to revoke consent were unreasonable. *Id.* at *4, 2017 U.S. Dist. LEXIS 193999 at *9-10. However, as discussed above, at this stage of litigation, the Court finds any determination on the reasonableness of Plaintiff's revocation to be premature, and better addressed after reasonable discovery has been conducted.

**Viggiano v. Lakeshore Equipment Company, Not Reported in Fed. Supp. (2018)**

2018 WL 11310868

2    As of the date of this memorandum and order, the D.C. Circuit has yet to decide *ACA International v. Federal Communications Commission*.

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2856295
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.

Chet Michael WILSON, Plaintiff,

v.

MEDVIDI INC., Defendant.

Case No. 5:25-cv-03996-BLF
|
Signed October 7, 2025

**Attorneys and Law Firms**

Anthony I. Paronich, Pro Hac Vice, Paronich Law, P.C., Hingham, MA, Dana J. Oliver, Oliver Law Center, Inc., Rancho Cucamonga, CA, for Plaintiff.

Eric Knowles, Pro Hac Vice, Paul Stephen St. Marie Jr., Pro Hac Vice, Frier & Levitt, LLC, Pine Brook, NJ, Young Woo Choi, Pleasanton, CA, for Defendant.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**

[Re: ECF No. 14]

BETH LABSON FREEMAN, United States District Judge

**\*1** Before the Court is Defendant MEDVIDI Inc.'s motion to dismiss Plaintiff Chet Michael Wilson's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 14 ("Mot."). Plaintiff filed an opposing brief, and Defendant filed a reply. ECF No. 26 ("Opp."); ECF No. 27 ("Reply"). The Court concludes that the motion is suitable for adjudication without oral argument and VACATES the hearing scheduled for October 23, 2025. *See* Civ. L.R. 7-1(b).

For the reasons below, Defendant's motion is GRANTED WITH LEAVE TO AMEND.

**I. BACKGROUND**
On May 7, 2025, Plaintiff filed this instant two-count class action complaint against Defendant alleging violations

of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), and implementing regulations 47 C.F.R. 64.1200(c), (d). ECF 1 ("Compl."). Plaintiff alleges that he registered his phone number on the National Do Not Call Registry, did not consent to receive calls from Defendant, and received multiple telemarketing text messages from Defendant in 2022 and 2024. *Id.* ¶¶ 18–22. Defendant alleges that he continued to receive text messages even after replying "STOP" in 2022. *Id.* ¶ 22.

Count I of the complaint alleges that Defendant violated the TCPA by making telemarketing calls to numbers on the Do Not Call Registry under 47 C.F.R. 64.1200(c)(2). *Id.* ¶ 39. Count II of the complaint alleges that that Defendant violated the TCPA by "sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop." *Id.* ¶ 44.

**II. LEGAL STANDARD**
Dismissal is appropriate under Rule 12(b)(6) "if the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim." *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023). The task when ruling on a motion to dismiss "is to evaluate whether the claims alleged [plausibly] can be asserted as a matter of law." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Upon granting a motion to dismiss for failure to state a claim, a court has discretion to allow leave to amend the complaint pursuant to Rule 15(a). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear ... that the complaint could not be saved by amendment." *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). In deciding whether to grant leave to amend, the Court considers the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). The Ninth Circuit in *Eminence Capital* identified several factors to consider, including (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue

prejudice to the opposing party, or (5) futility of amendment. *Id.* at 1052.

## III. DISCUSSION

**\*2** Defendant argues that section 227(c)(5) does not cover text messages, and that even if it did cover them, Plaintiff has not sufficiently pleaded factual allegations establishing direct or vicarious liability under the TCPA. The Court considers each argument in turn.

### A. Regulation of Text Messages Under Section 227(c)

The TCPA prohibits certain unsolicited telephone solicitations, including calls using automatic telephone dialing systems, *see* 47 U.S.C. § 227(b), and calls sent to residential telephone subscribers who have registered their phone numbers on the national Do Not Call registry, *see id.* § 227(c). The TCPA authorizes the Federal Communications Commission ("FCC") to prescribe regulations implementing the requirements of its prohibitions. *Id.* § 227(b)(2), (c)(2). Section 227(c) creates a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." *Id.* § 227(c)(5). 47 C.F.R. § 64.1200(c) prohibits the initiation of telephone solicitations to residential telephone subscribers who have registered their telephone numbers on the national do-not-call registries maintained by the federal government, and 47 C.F.R. § 64.1200(d) prohibits the initiation of "any artificial or prerecorded-voice telephone call pursuant to [enumerated exemptions] ... unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls."

Defendant argues that section 227(c) does not apply to text messages because the phrases "text message" and "SMS" message do not appear in the statutory text, asserting that Congress's choice to use the terms "telephone call" and "artificial or prerecorded-voice telephone call" manifest an affirmative intent to preclude liability for text messages. Mot. at 8. The Court disagrees. As a preliminary matter, it is unsurprising that the statute does not use the term "text message" because, as Plaintiff points out, the statute was enacted in 1991, before the first-ever text message was sent in 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). In determining whether section 227(c) applies to text messages, the Court looks to the plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991 at the time of the

TCPA's passage. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998).

Construing the provisions of a statute requires the Court to begin with its language—the inquiry begins and ends with the text if it is clear and unambiguous. *McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th Cir. 2008). The TCPA itself does not define the term "call," which is a "request, demand, or command, [especially] to come or assemble." Call, Black's Law Dictionary (12th ed. 2024). This definition makes clear that a "call" is distinguished from other communications such as a "lesson" or "message" by the meaning it conveys, not the form it takes. The Ninth Circuit has already held that the term refers to both oral and written communications. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir. 2009) (explaining that the "ordinary, contemporary, common meaning" of the "call" is "to communicate or try to get into communication with a person by a telephone" (internal quotation marks and citation omitted)).[1]

**\*3** This common-sense interpretation is confirmed by the purpose and structure of the TCPA, which was enacted to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers." S. Rep. No. 102-178, at 1 (1991). The core of section 227(c) is its prohibition of certain "telephone solicitations," which are defined by the statute as "the initiation of a telephone call or message *for the purpose of* encouraging the purchase or rental of[ ] ... property, goods, or services." 47 U.S.C. § (a)(4), (c)(1) (emphasis added). This language makes clear that Congress was more concerned with the purpose of the telephone communications it proscribed in the TCPA than the form in which those communications are transmitted. *See Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024) ("The purpose of a text or call determines whether it qualifies as a telephone solicitation[.]").

Given Congress's stated goal "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," 47 U.S.C. § 227(c)(1), it strains belief to suggest that Congress silently determined that such oral messages were more invasive or objectionable than written ones. *See also Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 799 (9th Cir. 2017) ("When Congress passed the [TCPA] it sought to protect individuals against invasions of privacy, in the form of unwanted calls

(and now text messages) using automatic telephone dialing systems."). Defendant's invitation to inject a distinction between written and oral telephone solicitations is contrary both to the remedial bent of the TCPA and precedent. *See, e.g.,* *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' ...."); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 985–86 (9th Cir. 2023) ("We have held that the receipt of unsolicited phone calls or text messages in violation of the TCPA is 'a concrete injury in fact sufficient to confer Article III standing.' " (citation omitted)); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) ("Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients."); *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1040 (N.D. Cal. 2017) ("A text message is a 'call' within the meaning of the TCPA.").

Defendant nonetheless seeks to overcome the plain meaning of the statute by suggesting that the FCC, in implementing regulations pursuant to its section 227(b) authority to proscribe certain calls made using automatic telephone dialing systems, somehow ratified Defendant's interpretation of the term "call" in section 227(c) as being limited to voice calls. Mot. at 8. In 47 C.F.R. § 64.1200(a)(9), the FCC specifically explained that "the term 'call' includes a text message, including a short message service (SMS) call." According to Defendant, "by limiting this definition and intent to regulate text messages outlined in Section 64.1200(a), the FCC clearly indicated that, unless otherwise specified, a 'call' does not include a 'text message' or 'SMS message.' " Mot. at 8. This tortured reasoning provides no basis to depart from the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage.

To begin with, the Court disagrees with the premise that, by defining "call" with reference to section 227(b) the FCC somehow signaled its position that the term "call" has a different meaning in section 227(b) and section 227(c), an interpretation which in any case would be disfavored by failing to give consistent meaning to the same term. *See* *United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023) ("[A] word or phrase is presumed to bear the same meaning throughout a text ...."). Moreover, it is unsurprising that the FCC first articulated its interpretation of "call" with reference to section 227(b) because that provision, which relates to autodialer and robocall prohibitions, uses the standalone term "call" much more extensively. It makes sense that the FCC

first defined the term "call" with respect to section 227(b) because the term is more directly relevant. In any case, even if the FCC had intended to make this distinction, it could not rewrite the statute contrary to the text's plain meaning— as the Supreme Court has recently instructed, courts have an independent constitutional duty to construe the terms of the TCPA independent of the FCC's regulations. *See* *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 162 (2025).

**\*4**  In short, nothing in the text, structure, or purpose of the TCPA suggests the distinction between written and oral communications that Defendant urges the Court to adopt. The Court concludes that a "telephone call" as used in 47 U.S.C. § 227(c) encompasses the types of text messages Plaintiff complains of.

**B. Allegations Set Forth in the Complaint**

To state a claim under the TCPA, a plaintiff must allege that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). A plaintiff establishes direct liability under the TCPA by pleading that the defendant itself actually sent the offending telephone communication. *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. 2014), *aff'd*, 577 U.S. 153 (2016). On the other hand, "[a] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship ... between the defendant and a third-party caller." *Id.* at 879. Defendant argues that the factual allegations contained in the complaint fail to plausibly establish that Defendant sent the text messages directly or through a third party. Mot. at 10–11. The Court agrees.

The complaint does not plead sufficient facts to plausibly allege that Defendant was the party directly responsible for sending the alleged improper communications. Despite Plaintiff's conclusory allegation that the text messages were sent by Defendant, *see* Compl. ¶ 19, the complaint provides no factual details plausibly suggesting that Defendant actually sent them. There is no discussion, for example, of any investigation Plaintiff conducted to form the understanding that Defendant operated the separate phone numbers from which these messages were sent. Similarly, while alleging that "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA," *id.* ¶ 39, the complaint fails to allege any agency relationship or identify any third parties that could have sent

the text messages. Such "unadorned labels" are insufficient as a matter of law to allege any agency relationship. *Armstrong v. Investor's Bus. Daily, Inc.*, No. 18-cv-182134-MFW, 2018 WL 6787049, at *1 (C.D. Cal. Dec. 21, 2018).

Agreeing with Defendant that the complaint fails to allege direct or vicarious liability, the Court turns to Defendant's argument that the complaint should be dismissed without leave to amend. Mot. at 12. Defendant argues that "granting leave to amend would be futile as there is no indication that Plaintiff could cure these fundamental deficiencies through further amendment." *Id.* at 13. The Court disagrees. While the Court finds that amendment would be futile if the Court had agreed with Defendant's first argument that section 227(c) does not apply to text messages, for the reasons above, the Court concludes that section 227(c) does apply to text messages. Amending the complaint to provide additional factual allegations concerning the circumstances in which the text messages were sent and the identities of any third parties may be sufficient to state a claim for relief under TCPA and would assist the parties in clarifying the legal issues in this

case. Moreover, there is no indication of any undue delay, bad faith on the part of Plaintiff, or undue prejudice to Defendant, and this would be the first time Plaintiff has amended the complaint.

## IV. ORDER

**\*5** For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Defendant's motion to dismiss is GRANTED.

(2) The complaint is DISMISSED WITH LEAVE TO AMEND. Defendant shall have twenty-eight days from the date of this order to file an amended complaint. Amendment is limited to curing the factual deficiencies identified in this order. No new claims or parties may be added without leave of court.

**All Citations**

Slip Copy, 2025 WL 2856295

Footnotes

1    The *Satterfield* court's conclusion was based in part on *Chevron* deference. *Id.* at 1041. Although *Chevron* has since been overruled, the Supreme Court has instructed that precedents relying on *Chevron* remain fully intact. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2029274
Only the Westlaw citation is currently available.
United States District Court, D. Oregon,
Eugene Division.

Chet WILSON, individually and on behalf
of all others similarly situated, Plaintiff,

v.

SKOPOS FINANCIAL, LLC d/
b/a Reprise Financial, Defendant.

Case No. 6:25-cv-00376-MC
|
Signed July 21, 2025

**Attorneys and Law Firms**

Neal Weingart, Neal Weingart, Attorney at Law, Portland, OR, Patrick Harry Peluso, Pro Hac Vice, Peluso Law LLC, Denver, CO, for Plaintiff.

Nicholas L. Dazer, Nicholas Dazer PC, Clackamas, OR, Charles Dunham Biles, Pro Hac Vice, Biles Wilson, PLLC, Heath, TX, for Defendant.

OPINION AND ORDER

Michael McShane, United States District Judge

**\*1** Plaintiff Chet Wilson brings this putative class action against Defendant Skopos Financial d/b/a Reprise Financial, alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA") by sending solicitous text messages to phone numbers, like Plaintiff's, on the national do-not-call registry ("DNC Registry"). Compl. ¶ 30–36, ECF No. 1. Defendant now moves to dismiss the Complaint, arguing that the messages at issue are not "solicitations" under the TCPA and that the protections of the DNC Registry should not apply to text messages. Def.'s Mot. Dismiss 2, ECF No. 11. Defendant's Motion is DENIED, for the reasons explained below.

**BACKGROUND**[1]

Plaintiff is a resident of Florence, Oregon. Compl. ¶ 3. Defendant is an auto-loan lender based in Texas. *Id.* at ¶ 8. At least 30 days after Plaintiff registered his phone number on the DNC Registry, that number received the following four text messages from Defendant. *Id.* at ¶ 9.

> On November 14, 2024: "... BRIAN, this is Julie with Reprise Financial. We received your loan request through LendingTree. Please log in at RepriseFinancial.com to complete ..."

> On November 15, 2024: "... BRIAN, this is Julie with Reprise Financial. We received your loan request through LendingTree. Please log in at RepriseFinancial.com to complete ..."

> On November 20, 2024: "... Brian, this is Jamie with Reprise Financial with a reminder to complete your application. Please log in at RepriseFinancial.com to review ..."

> On November 22, 2024: "... Brian, this is Jamie with Reprise Financial. Just a reminder to log in at RepriseFinancial.com to complete your application and review next ..."

*Id.* at ¶ 15. Plaintiff has been the sole customary user of this phone number for at least five years, but "Brian" is not Plaintiff's name. *Id.* at ¶¶ 9, 16. Plaintiff believes Defendant sent the messages "intending to reach someone other than Plaintiff," as he has never provided his number to Defendant, never had a business relationship with Defendant, and never opted-in to receive text messages from Defendant. *Id.* at ¶ 16–19.

Plaintiff filed his Complaint on March 4, 2024, alleging that Defendant violated the TCPA by sending those four text messages to a number on the DNC Registry. *Id.* at ¶¶ 30–36. The Complaint further alleges that, "[a]s part of its business practice, Defendant sends telemarketing solicitations via text message to consumers in hopes that they will apply for auto loans through Defendant." *Id.* at ¶ 13. Without providing individual examples, Plaintiff contends that Defendant conducts "a wide-scale telemarketing campaign" where it "repeatedly sends unsolicited telemarketing text messages to consumers," including those on the DNC Registry. *Id.* at ¶¶ 14, 20. Plaintiff seeks to bring a class action on that basis, claiming the unauthorized messages caused him and others harm, like aggravation, nuisance and invasion of privacy, wear and tear on their telephones, consumption of battery life, lost cellular minutes, and loss of value. *Id.* at ¶ 21.

## LEGAL STANDARD

**\*2** To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## DISCUSSION

Plaintiff's Complaint asserts one cause of action under 47 U.S.C. § 227(c)(5) for violation of 47 C.F.R. § 64.1200(c). Compl. ¶¶ 30–36. Section 227(c)(5) provides a private right of action to any person who receives "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of" § 64.1200(c). § 227(c)(5); *see also Barton v. JMS Assoc. Mktg., LLC*, No. 21-35836, 2023 WL 2009925 (9th Cir. Feb. 15, 2023) (finding a private right of action under § 227(c)(5) for violation of § 64.1200(c)(2)). Section 64.1200(c) provides that "[n]o person or entity shall initiate any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do -not-call registry." § 64.1200(c)(2). "The term *telephone solicitation* means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." § 64.1200(f)(15); § 227(a)(4) (emphasis in the original). It does not include calls or messages sent to someone with their "prior express invitation or permission." *Id.*

Defendant moves to dismiss the Complaint, arguing Plaintiff has failed to state a claim for relief because: (1) the text messages at issue do not constitute "telephone solicitations" as defined by the TCPA and (2) § 227(c) creates a cause of action for "telephone calls," not text messages. Taking each argument in turn, the Court denies Defendant's Motion. Def.'s Mot. 8–11.

### I. The Complaint sufficiently alleges that Plaintiff received "telephone solicitations."

Whether a contact is a "solicitation" turns "on the purpose of the message." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) (citing *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14098 ¶ 141 (June 26, 2003)). Courts are to "approach the problem with a measure of common sense." *Id.* In *Chesbro*, the plaintiff received "robot-calls" that "urged the listener to 'redeem' his Reward Zone points, directed him to a website where he could further engage with the [points], and thanked him for 'shopping at Best Buy.' " *Id.* The Ninth Circuit concluded that the messages were solicitations because, although there was no explicit mention to buy a good or service, the context of messages clearly implied an encouragement to make future purchases, as the points had no other use. *Id.* Contrarily, in another Ninth Circuit case, the plaintiff received an automated text asking him to enter a validation code on the defendant's website to complete a registration that the plaintiff had initiated. *Aderhold v. car2go N.A. LLC*, 668 F. App'x 795, 796 (9th Cir. 2016). The Ninth Circuit ultimately dismissed the claims due to consent, but in so holding, the Ninth Circuit explained that the message did not constitute "telemarketing" because it "contain[ed] no content encouraging purchase of [the defendant's] services. The message was directed instead to completing the registration process initiated by [plaintiff] and to validating personal information." *Id.* The Ninth Circuit agreed with "the FCC's determination that such messages, 'whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender are not advertisements.' " *Id.* (quoting *In re Rules & Regs. Implementing the Tel. Consum. Prot. Act of 1991*, 21 FCC Rcd. 3787, 3812 ¶ 49 (Apr. 6, 2006)).

**\*3** Defendant here argues that "every word of the text messages at issue demonstrates that their purpose is to facilitate the completion of a loan application that was previously begun by a customer." Def.'s Mot. 8. Defendant contends that the only plausible inference from the Complaint is that it sent the messages trying to complete an application that a consumer had previously initiated; consequently, nothing indicates that the messages were sent with the purpose of securing new business. Plaintiff even acknowledges that he believed Defendant placed the texts intending to reach someone other than him. Compl. ¶ 16. Therefore, because the texts were sent to inform the recipient

on how to complete his loan, they cannot be considered solicitations, according to Defendant.

The Court disagrees. Defendant's argument relies implicitly on the recipient's consent to convert an otherwise solicitous messages into a "purely informational" message. Here, however, the recipient did not consent. The Complaint alleges that Plaintiff has no relationship with Defendant, has never provided his number to Defendant, has never had a business relationship with Defendant, and did not opt-in to receive any text messages from Defendant. There is nothing to indicate that Defendant had some existing account or ongoing transaction with Plaintiff. Assuming the truth of those allegations, the natural inference is that Defendant sent the messages to Plaintiff's phone number, pretextually referencing a loan application in order to promote its loan services to Plaintiff. The Court sees no other reason—and, notably, Defendant proffers no alternative reason—for why an auto-loan lender would reach out to a phone number on the DNC Registry that it has no existing relationship with and direct it to its website. As highlighted by Plaintiff, *Whittaker v. Freeway Ins. Servs. Am., LLC*, No. CV-22-8042-PCT-DGC, 2023 WL 167040 (D. Ariz. Jan. 12, 2023) presents a similar dispute. In *Whittaker*, the plaintiff received voicemails purporting to be following up on a request for an insurance quote and asking plaintiff to call back to hear more about how to save money on car insurance. The district court explained that "[e]xcept for encouraging the purchase of its products, it is hard to imagine why an insurance company would contact a consumer not already insured by it and state that it looked forward to saving the consumer money." *Id.* at *2. Granted, this matter differs from *Whittaker* in that Defendant here did not mention anything about saving money or promote any specific products. Beyond encouraging Plaintiff to complete a loan application through Defendant's website, the messages did not include an explicit encouragement to buy anything, they did not contain any price quotes, and they did not refer the recipient to another entity for purposes of selling anything. Nonetheless, "[n]either the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context." *Chesbro*, 705 F.3d at 918. Here, common sense dictates suspicion. It is plausible that the messages, although informational on their face, were a part of a larger marketing scheme. The Court is reluctant to hold otherwise, as it could permit entities to circumvent the DNC Registry by addressing some unidentifiable person in the communication and claiming he or she initiated contact. With some preliminary discovery, the true purpose

and intended recipient of the text messages will be better evaluated.

The Court therefore declines to dismiss the Complaint, finding that it plausibly alleges Defendant initiated the text messages to a number listed on the DNC Registry "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."

## II. Text messages are "calls" for purposes of § 227(c)(5).

**\*4** Defendant raises a secondary argument in favor of dismissal. It contends that, because § 227(c)(5) explicitly references "telephone calls" in its cause of action, it does not allow for plaintiffs to bring TCPA claims based on text messages sent in violation of the DNC Registry. Specifically, Defendant argues that only Congress has the authority to dictate who has a cause of action under the TCPA and "there is absolutely no basis for the FCC's conclusion that Congress (in 1991) meant the term 'call' to mean 'text call.' " Def.'s Reply 7. Defendant is incorrect. The cause of action provided in § 227(c)(5) includes text messages.

The TCPA generally targets two types of unsolicited phone calls: those made using automatic dialers, 42 U.S.C. § 227(b), and those made in contravention of do-not-call registries, 42 U.S.C. § 227(c). For both, Congress explicitly conferred on the FCC the authority to promulgate implementing regulations. *See* §§ 227(b)(2), 227(c)(1)–(4). Through those regulations, the FCC has expanded the TCPA to apply to text messages. First, § 227(b)'s protections against automatic dialers were clarified as applying to both telephone calls and text messages issued without the recipient's consent. *See 2003 Rules & Reguls.*, 18 F.C.C. Rcd. at 14115 ("We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number.... This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls .... Congress found that automated or prerecorded telephone calls were a greater nuisance and invasion of privacy than live solicitation calls."); *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 ¶ 107 (July 10, 2015) ("Glide raises the issue of whether SMS text messages are subject to the same consumer protections under the TCPA as voice calls. We reiterate that they are."); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("a text message is a 'call' within the meaning of the TCPA"); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message

to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."). Recently, the FCC clarified "that text messages are included in the TCPA prohibitions and the private right of action in § 227(c)(5)." *See Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO) (JEP), 2024 WL 4190513, at *8 (M.D.N.C. Aug. 12, 2024), *report and recommendation adopted*, No. 1:23-CV-486, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024). Indeed, in 2024, the FCC explained: "The Commission adopts the proposal to codify the National DNC Registry's existing protections to text messages. Texters must have the consumer's prior express invitation or permission before sending a marketing text to a wireless number in the DNC Registry." *Targeting and Eliminating Unlawful Text Messages, Implementation of the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls*, 89 Fed. Reg. 5098, 5101, 5099 (Jan. 26, 2024). Defendant's argument that the FCC lacks authority to do so is undermined by the statutory structure of the TCPA, which explicitly delegates such authority, as well as the vast applicable case law which abides by the FCC's regulations and guidance.

Moreover, the FCC's decision to include text messages is congruent with Congress's overarching goals for the TCPA. Congress enacted the TCPA "to address a growing number of telephone marketing calls and certain telemarketing practices thought to be an invasion of consumer privacy and even a risk to public safety." *2003 Rules & Reguls.*, 18 F.C.C. Rcd. at 14018. Section 227(c) specifically targets "the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." § 227(c)(1). With those goals in mind, the "basis" for the FCC's conclusion becomes abundantly clear: unsolicited text messages invade the privacy and disturb the solitude of their recipients. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). They should therefore be included within the purview of the DNC Registry's protections. The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support. On the contrary, as technology has developed over the years, so too has our understanding of the TCPA's protections. *See 2003 Rules & Reguls.*, 18 F.C.C. Rcd. at 14017 ("significant changes in the technologies and methods used to contact consumers ... warrant modifications to our existing rules, and adoption of new rules if consumers are to continue to receive the protections that Congress intended to provide when it enacted the TCPA"). It cannot be argued in good faith that text messages are so categorically different from phone calls that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry.

**\*5** On this point, Defendant is without support. The Court concludes that unsolicited text messages sent in violation of the DNC Registry can give rise to a cause of action under § 227(c)(5).

## CONCLUSION

For the reasons state above, Defendant's Motion to Dismiss, ECF No. 11, is DENIED.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2025 WL 2029274

---

Footnotes

1    At the motion to dismiss stage, the Court takes Plaintiff's allegations as true. *See Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000).

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.