# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>HAPPY CABBAGE ANALYTICS, INC.<br><br>Defendant. | Case No.: 1:25-cv-01083-JPW |

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..........................................................................................1

ARGUMENT.................................................................................................3

I.    PLAINTIFF LACKS ARTICLE III STANDING ......................................3

    A.    The Court May Consider Facts Outside the Complaint .....................3

    B.    The Opposition Misstates the Watson Declaration ...........................4

    C.    The Spot Sent the Texts at Issue ......................................................5

    D.    Plaintiff Relies Upon Inapposite Authority .......................................6

II.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE TEXT MESSAGES ARE NOT TELEPHONE CALLS .............................8

    A.    The Plain Language of the TCPA Supports Happy Cabbage's Position.................................................................................................8

    B.    Agency Deference Should Not Dictate This Analysis ....................10

III.  PLAINTIFF'S SECOND CAUSE OF ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM...............................12

    A.    No Private Right of Action .............................................................13

    B.    Plaintiff Did Not Plead That His Stop Request Was Not Honored Within a Reasonable Time ...............................................15

CONCLUSION ..........................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Bosley v. A Bradley Hosp. LLC*,
  No. 1:25-cv-22336, 2025 WL 2686984 (S.D. Fla. Sept. 19, 2025)..................12

*Bradshaw v. CHW Grp., Inc.*,
  763 F. Supp. 3d 641 (D.N.J. 2025).............................................................14–15

*Campbell-Ewald Co. v. Gomez*,
  577 U.S. 153 (2016)...................................................................................12

*Connor v. ServiceQuik Inc.*,
  No. 1:24-cv-02286, 2025 WL 2855393 (D. Col. Oct. 8, 2025).........................6

*Cordoba v. DIRECTTV, LLC*,
  942 F.3d 1259 (11th Cir. 2019)...................................................................3

*Davis v. CVS Pharmacy, Inc.*,
  797 F. Supp. 3d 1270 (N.D. Fla. Aug. 26, 2025)..........................................8–9

*Davis v. Wells Fargo*,
  824 F.3d 333 (3d Cir. 2016).........................................................................3

*Dobronski v. Selectquote Ins. Servs.*,
  773 F. Supp. 3d 373 (E.D. Mich. 2025) ......................................................14

*El Sayed v. Naturopathica Holistic Health Inc.*,
  8:25-cv-00846, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025)..........................9

*Esquivel v. Mona Lee, Inc.*,
  No. 3:25-cv-00607, 2025 WL 3275607 (S.D. Cal. Nov. 24, 2025)..................12

*Franklin v. Upland Software, Inc.*,
  No. 1:18-cv-00236, 2019 WL 433650 (W.D. Tex. Feb. 1, 2019) ......................7

*Gager v. Dell Fin. Servs., LLC*,
  727 F.3d 265 (3d Cir. 2013)........................................................................11

*Golan v. FreeEats.com, Inc.*,
  930 F.3d 950 (8th Cir. 2019).......................................................................5

*Jackson v. Direct Bldg. Supplies, LLC*,
   No. 4:23-cv-01569, 2024 WL 184449 (M.D. Pa. Jan. 17, 2024) ......................11

*Jones v. Blackstone*,
   792 F. Supp. 3d 894 (C.D. Ill. 2025).....................................................9

*Kline v. Advanced Ins. Underwriters, LLP*,
   No. 1:19-cv-00437, 2020 WL 14028040 (M.D. Pa. June 23, 2020) .................15

*Linlor v. Five9, Inc.*,
   3:17-cv-00218, 2017 WL 2972447 (S.D. Cal. July 12, 2017) ........................7–8

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024).......................................................................12

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
   606 U.S. 146 (2025).......................................................................11

*New Prime, Inc. v. Oliveira*,
   586 U.S. 105 (2019).........................................................................9

*Orsatti v. Quicken Loans Inc.*,
   No. 2:15-cv-09380, 2016 WL 7650574 (C.D. Cal. 2016)...........................15–16

*Satterfield v. Simon & Schuster, Inc.*,
   549 F.3d 946 (9th Cir. 2009)...........................................................11–12

*Shelton v. Pro Source Lending Group, LLC*,
   No. 2:24-cv-4394, 2025 WL 817485 (E.D. Pa. Mar. 14, 2025) ......................15

*Sheski v. Shopify (USA) Inc.*,
   No 4:19-cv-06858, 2020 WL 2474421 (N.D. Cal. May 13, 2020) ....................7

*Shoemaker v. Zeitlin*,
   No. 1:21-cv-1668, 2023 WL 3826460 (M.D. Pa. June 5, 2023) ........................4

*Wilson v. Medvidi Inc.*,
   No. 5:25-cv-03996, 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) ................... 12

*Wilson v. PL Phase One Operations L.P.*,
   422 F. Supp. 3d 971 (D. Md. 2019)..................................................14–15

**Statutes**

47 U.S.C. § 227(b)(1)(A)(iii) ................................................................10

47 U.S.C. § 227(c)(5).................................................................*passim*

**Other Authorities**

47 C.F.R. § 64.1200(c)(ii) ..................................................................3

47 C.F.R. § 64.1200(d)(3).............................................................13–16

Initiate, Merriam-Webster.com, https://www.merriam-
    webster.com/dictionary/initiate (last visited Dec. 19, 2025) ..............................5

Defendant Happy Cabbage respectfully submits this reply memorandum in further support of its motion to dismiss Plaintiff Asher Bronstin's Class Action Complaint (the "Motion").[1]

## INTRODUCTION

As Happy Cabbage detailed in its Motion, Plaintiff's TCPA claims are predicated on the alleged receipt of two text messages from The Spot in March of 2022. Plaintiff waited over three years to bring this lawsuit to seek redress for his alleged harm, only to find out that The Spot—the company that allegedly texted him—was no longer in business. In an effort to hold some entity liable in place of The Spot, Plaintiff has attempted to shoehorn Happy Cabbage within the purview of the TCPA, irrespective of the fact that it did not send the texts at issue. The record here establishes that any purported injury that Plaintiff experienced is not traceable to Happy Cabbage and therefore Plaintiff lacks standing.

In opposition ("Opposition" or "Opp."), Plaintiff does not dispute that Happy Cabbage is merely a text platform. Rather, he argues that because certain records reflect that Happy Cabbage was the subscriber to the outbound phone number for the texts at issue, such records render Happy Cabbage subject to TCPA liability. Courts around the country have rejected efforts to impose liability upon text

---

[1] All capitalized terms not defined herein have the same definition ascribed to them in the Motion.

platforms and this Court should similarly recognize that any purported injury Plaintiff claims to have suffered is not fairly traceable to Happy Cabbage.

If the Court determines that it has subject-matter jurisdiction over these claims, however, the Complaint fails on the merits. That is because the plain language of the TCPA provisions at issue do not include restrictions on "text messages." Plaintiff's Opposition attempts to ignore the plain meaning of telephone call, but recent Supreme Court authority demonstrates that statutory language—not agency deference—is the touchstone of the inquiry. There is no basis to apply the National Do Not Call Registry ("NDNCR") provisions of the TCPA to the texts Plaintiff allegedly received. Lastly, this Court may dismiss Plaintiff's second cause of action because there is no private right of action for the purported violation of the regulations at issue. Further, Plaintiff failed to allege facts to support a conclusion that Plaintiff's STOP request was not honored within a reasonable time period. As detailed below, the Opposition relies upon inapposite caselaw to urge this Court to reach a different result, but the Court should follow the decisions that have correctly concluded that there is no TCPA claim based upon a purported failure to maintain internal do not call procedures.

# ARGUMENT

## I.    PLAINTIFF LACKS ARTICLE III STANDING

Plaintiff lacks Article III standing to bring his claim because his alleged injury is not traceable to the conduct of Happy Cabbage.  (Mot. 6–11.)  Plaintiff was allegedly injured when he received two text messages from The Spot.  (*See* Compl. ¶¶ 29, 34–35; Bronstin Decl. ¶ 15.)  Where "an independent source would have caused [a plaintiff] to suffer the same injury," a plaintiff lacks standing.  *Cordoba v. DIRECTTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019).  The Spot is a separate entity from Happy Cabbage.  Whether or not The Spot utilized Happy Cabbage's services, Plaintiff would have been injured by receipt of the text messages sent by The Spot.[2] Therefore, Plaintiff cannot show that his alleged injury is traceable to the conduct of Happy Cabbage and his Complaint should be dismissed.  (Mot. 7.)

### A.    The Court May Consider Facts Outside the Complaint

The Opposition states the Court may not consider facts proffered by Happy Cabbage.  (*See* Opp. 7.)  That assertion, however, is incorrect.  *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (noting that "the court 'is free to weigh the

---

[2]    By this statement, Happy Cabbage does not concede Plaintiff was injured by receipt of the text messages as Happy Cabbage asserts that text messages are not telephone calls under the TCPA, *see infra* Section II, and that its clients were required to obtain consent from text message recipients before engaging in messaging.  (Watson Decl. ¶¶ 10–11.)  Section 227(c)(5) of the TCPA only provides a private right of action for individuals who have received more than one telephone call within twelve months to a number registered on the NDNCR without prior express consent.  *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(ii).

evidence and satisfy itself as to the existence of its power to hear the case'" when considering a factual motion to dismiss brought under Rule 12(b)(1)) (citation omitted). Further, unlike a motion to dismiss, this Court need not presume the truthfulness of Plaintiff's allegations. *See Shoemaker v. Zeitlin*, No. 1:21-cv-1668, 2023 WL 3826460, at *2 (M.D. Pa. June 5, 2023). Rather, the Court is free to consider both the facts alleged in the Complaint and the facts alleged in the Motion to satisfy itself of its own jurisdiction. As outlined in the Motion and below, the evidence put forth by both Plaintiff and Happy Cabbage demonstrate that Plaintiff's injury is not traceable to Happy Cabbage because The Spot sent the texts at issue.

**B.    The Opposition Misstates the Watson Declaration**

The Motion incorporated the declaration of Andrew Watson ("Watson Declaration") to explain the operations of Happy Cabbage's text platform at the time Plaintiff received the texts at issue. (Mot. 4) Throughout his Opposition, however, Plaintiff repeatedly mischaracterizes the statements in the Declaration. For example, Happy Cabbage does not send texts "on behalf of" its clients and the Declaration does not state otherwise. (*See* Opp. 3–4.) Instead, Happy Cabbage "provides a software that cannabis retailers can utilize to manage their business." (Watson Decl. ¶ 4.) Further, the Opposition argues that Happy Cabbage does not deny it was responsible for handling "STOP" requests its clients received. (Opp. 8.) Not only does the Watson Declaration deny this allegation, it also makes clear that it is the

clients' responsibility to manage "STOP" requests because Happy Cabbage's clients "bear the responsibility for maintaining . . . an internal do-not-call list." (Watson Decl. ¶ 14.) The Court need not accept Plaintiff's misstatements as true, but instead should consider the evidence offered by Happy Cabbage that demonstrates the absence of any injury traceable to Happy Cabbage.

### C.    The Spot Sent the Texts at Issue

Happy Cabbage did not send the texts at issue to Plaintiff. (Mot. 5.) Rather, The Spot texted Plaintiff. The Parties agree that for a defendant to be held liable under the TCPA, the defendant must "initiate" the soliciting call(s) to a number on the do-not-call list without prior consent. (*See* Mot. 8; Opp. 7.) Neither the TCPA nor the FCC define "initiate." *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 960 (8th Cir. 2019). Plaintiff also does not define the term. Looking to a common definition, "initiate" means "to cause or facilitate the beginning." Initiate, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/initiate (last visited Dec. 19, 2025).

The facts set forth in the Watson Declaration and the cases cited herein demonstrate that a platform like Happy Cabbage does not "initiate" texting the customers of its clients. Rather, an independent third-party, The Spot, initiated the texts to Plaintiff. (Mot. 5.) Accordingly, Plaintiff cannot establish that his injury is fairly traceable to the conduct of Happy Cabbage because Plaintiff would have

received the text messages at issue whether The Spot used Happy Cabbage's platform, a competitor's platform, or no platform at all.  Thus, Plaintiff lacks standing to pursue Happy Cabbage, and the Court should therefore dismiss the Complaint.

### D.    Plaintiff Relies Upon Inapposite Authority

Although the critical facts are not in dispute on this Motion, Plaintiff nevertheless attempts to resist the result reached by numerous courts that have considered similar questions—which is that a text platform is not liable under the TCPA.  (*See* Mot. 8–11.)  Plaintiff does so, however, by relying upon inapposite authority that does not support denial of this Motion.[3]

For example, Plaintiff relies on *Connor v. ServiceQuik Inc.*, No. 1:24-cv-02286, 2025 WL 2855393 (D. Col. Oct. 8, 2025) but this case provides no support to Plaintiff.  In *Connor*, the court ruled on two separate motions to dismiss: a 12(b)(1) motion to dismiss brought by Defendant ServiceQuik Inc. ("ServiceQuik") and a 12(b)(6) motion to dismiss brought by Defendant Woosender Inc.  ("Woosender").  *Id.* at *1.  ServiceQuik argued Connor did not suffer an injury in fact, but unlike Happy Cabbage, it did not raise a traceability issue because ServiceQuik was the sender of the text messages—not merely the text platform provider.  *Id.* at *2–3.

---

[3]    Throughout the Opposition, Plaintiff references the Controlled Substances Act, 21 U.S.C. § 843(c)(1), and other criminal statutes that are untethered to any legal basis of the Opposition.  (See Opp. 4–5.)  These references are an attempt to distract from the lack of merit of Plaintiff's claims.

Woosender, on the other hand, was the third-party text messaging platform that contracted with ServiceQuik, and it brought a 12(b)(6)—not a 12(b)(1)—motion to dismiss for failure to state a claim. *Id.* at *3. Therefore, the court was unable to consider the facts Woosender raised in support of its position and rather had to accept all of Plaintiff's allegations as true. Here, however, the Court can consider the facts raised by Happy Cabbage that support a finding that Plaintiff's injury is not traceable to Happy Cabbage.

Moreover, the Opposition attempts to dismiss the numerous cases cited in the Motion that support a conclusion that text platforms are not liable under the TCPA because, in those cases, the "defendant[s were not] the subscriber[s] of record for the telephone number[s]." (Opp. 6.) By making this distinction, Plaintiff attempts to give meaning to a fact the courts did not consider in any of these decisions. In both *Sheski* and *Upland*, the courts did not consider the entity to which the outbound phone number was registered because it was not relevant to the analysis. *See Sheski v. Shopify (USA) Inc.*, No 4:19-cv-06858, 2020 WL 2474421, at *3 (N.D. Cal. May 13, 2020); *Franklin v. Upland Software, Inc.*, No. 1:18-cv-00236, 2019 WL 433650, at *2 (W.D. Tex. Feb. 1, 2019). In *Linlor*, the plaintiff alleged that defendant serviced the phone number at issue and even managed incoming calls for the sender. *Linlor v. Five9, Inc.*, 3:17-cv-00218, 2017 WL 2972447, at *1 (S.D. Cal. July 12, 2017). Even then, the court dismissed plaintiff's claim, finding defendant could not

be liable for a violation of the TCPA. *Id.* at *3–5. Plaintiff's attempt to distinguish *Linlor* because it involved a common carrier is unconvincing, as the court rejected defendant's common carrier defense at this stage. *Id.* at *4.

Irrespective of whether the outbound phone number is registered to Happy Cabbage, only the entity that initiates a call is liable under the TCPA. That entity is not Happy Cabbage, and there is no dispute otherwise.

## II.  PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE TEXT MESSAGES ARE NOT TELEPHONE CALLS

Plaintiff brings both of his claims under Section 227(c)(5) of the TCPA. Liability under this subsection requires a plaintiff to have received "more than one telephone call" in violation of these regulations. Here, Plaintiff did not receive any telephone calls, only text messages. The Opposition argues that the TCPA covers both telephone calls and text messages because the plain meaning of "call" means a text message. Traditional principles of statutory interpretation show that Congress did not intend the term "telephone call" to encompass text messages. Further, none of the case law Plaintiff cites to requires this Court to come to a contrary conclusion.

### A.  The Plain Language of the TCPA Supports Happy Cabbage's Position

The plain language of Section 227(c)(5) of the TCPA makes clear that a text message cannot be a telephone call. "No normal person refers to a text message, or thinks of a text message, as a 'call.'" *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d

1270, 1273 (N.D. Fla. Aug. 26, 2025); *see also Jones v. Blackstone*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025) ("Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages"); *El Sayed v. Naturopathica Holistic Health Inc.*, 8:25-cv-00846, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) ("In addition to the fact that in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication, the term 'text message' appears elsewhere in the TCPA and related amendments, an appearance confirms that Congress understood the pertinent distinction and legislated mindful of the distinction.").

In response, Plaintiff argues this is irrelevant because text messages did not exist when Congress enacted the TCPA.  (Opp. 9–10.)  However, this reality is precisely the reason it is inappropriate to apply the TCPA to text messages. Plaintiff's reliance on *New Prime, Inc. v. Oliveira* does not address this issue.  586 U.S. 105, 114 (2019).  There, a defendant argued modern language would define a contract term to mean one thing, but when the contract was entered in 1925, the term meant something else.  *Id.* at 114–16.  Plaintiff argues that Happy Cabbage cannot use modern meanings of a term to interpret what was meant historically.  (Opp. 10– 11.)  Happy Cabbage agrees.  In 1991, "telephone call" could not mean "text message" because text messages did not exist.  This is not the same as a word shifting meaning over time.

Looking to other provisions of the TCPA, Plaintiff argues that a telephone call must include a text message because Congress noted a call could be delivered to a paging service. (Opp. 11); *see* 47 U.S.C. § 227(b)(1)(A)(iii). This is unpersuasive, and in fact strengthens Happy Cabbage's position. In order for the court to extend liability beyond the plain meaning of "call," there must be a clear directive from Congress to do so. As the Motion points out, Congress has had the opportunity to amend the TCPA since it was enacted more than 30 years ago. Congress amended Section 227(e) of the TCPA to expressly include text messages, but it did not amend Section 227(c)(5). (Mot. 15.) Unless Congress similarly amends Section 227(c)(5), courts cannot extend liability beyond the intended scope of Congress.

## B.    Agency Deference Should Not Dictate This Analysis

With respect to agency deference, Plaintiff mischaracterizes Happy Cabbage's position; Happy Cabbage is not asking this court to disregard agency expertise. (*See* Opp. 15.) Rather, Happy Cabbage is asking this Court to review the plain language of the TCPA and grant appropriate respect to any past FCC determination in light of this meaning, as instructed by the Supreme Court in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 168 (2025). None of the cases cited by Plaintiff support a different result.

***First***, despite Plaintiff's assertion to the contrary, this Circuit has not rejected the reading of the TCPA advanced by Happy Cabbage.  (Opp. 15.)  Both *Jackson* and *Gager* involved courts determining whether a cellphone is a "residential telephone subscriber" under the TCPA.  *Jackson v. Direct Bldg. Supplies, LLC*, No. 4:23-cv-01569, 2024 WL 184449, at *5 (M.D. Pa. Jan. 17, 2024); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013).  That is not the question in front of the Court.

***Second***, the cases Plaintiff cites in support of a finding that "telephone calls" encompass text messages were either (i) decided before *McKesson* and gave the 2003 FCC Report and Order undue deference or (ii) were decided after *McKesson* but cite pre-*McKesson* cases in support.  For example, in *Satterfield v. Simon & Schuster, Inc.*, the court noted the statutory language "is silent as to whether a text message is a call within the [TCPA]" and that "Congress could not have spoken clearly to [whether text messages are telephone calls] in 1991 when the statute was enacted." 569 F.3d 946, 954 (9th Cir. 2009).  Then, the court looked at the FCC's interpretation of Congress's language and found that the FCC's interpretation was reasonable in light of the principles of *Chevron* deference.[4]  *Id.*  *Campbell-Ewald Co. v. Gomez* simply cites *Satterfield* in support of dicta regarding text messages.

---

[4]    *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) (overruling *Chevron* and holding that courts must independently determine whether agencies act within statutory authority).

*See* 577 U.S. 153, 156 (2016) (deciding only two questions—(i) whether an unaccepted offer of judgment impacts subject matter jurisdiction and (ii) whether government immunity applied to the contractor). The cases decided after *McKesson* similarly fail to engage with the language of the TCPA. *Bosley v. A Bradley Hosp. LLC*, No. 1:25-cv-22336, 2025 WL 2686984, at *5 (S.D. Fla. Sept. 19, 2025) (citing a string of cases tracing back to *Campbell-Ewald*); *Wilson v. Medvidi Inc.*, No. 5:25-cv-03996, 2025 WL 2856295, at *2 (N.D. Cal. Oct. 7, 2025) (relying on *Satterfield* to conclude a call includes "both oral and written communications"); *Esquivel v. Mona Lee, Inc.*, No. 3:25-cv-00607, 2025 WL 3275607, at *2 (S.D. Cal. Nov. 24, 2025) (referencing *Campell-Ewald* and *Satterfield* to support a finding of the same).

When Congress passed the TCPA in 1991, a text message could not be understood to fit within the definition of "telephone call." A telephone call is distinct from a text message. It is not the job of the FCC, or any court, to mold the words of Congress to fit evolving technologies. Only Congress can amend Section 227(c)(5) of the TCPA to extend the TCPA's private right of action to cover text messages. Congress has not done so. Therefore, this court should grant Happy Cabbage's motion to dismiss Plaintiff's Complaint for failure to state a claim.

## III.    PLAINTIFF'S SECOND CAUSE OF ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Even if this Court does not dismiss the Complaint in its entirety (which it should), the Court should dismiss Plaintiff's second cause of action because no

private right of action exists for violations of 47 C.F.R. § 64.1200(d)(3). Further, Plaintiff fails to plead any facts that plausibly support a conclusion that Happy Cabbage did not comply with his "STOP" request in a reasonable timeframe. Therefore, even if this Court finds there is a private right of action for violations of 47 C.F.R. § 64.1200(d)(3), there are no facts in front of it that support Happy Cabbage violated this regulation. Therefore, the Court should dismiss Plaintiff's second cause of action.

### A.    No Private Right of Action

As outlined in the Motion, Congress did not create a private right of action for all violations of the TCPA. Instead, Congress only created a private right of action under Sections 227(b)(3) and 227(c)(5). Plaintiff brings his cause of action for Happy Cabbage's alleged violation of the regulation promulgated pursuant to § 64.1200(d)(3) under the NDNCR provisions of the TCPA (Section 227(c)(5)), but this section of the TCPA does not authorize claims for these types of regulatory violations. That is because this regulation was promulgated under Section 227(d) of the TCPA, for which there is no private right of action. Thus, Plaintiff's second cause of action should be dismissed.

While Section 227(c) of the TCPA enabled the FCC to enact regulations to further the privacy interests of consumers, Section 227(d) enabled the FCC to enact regulations related to the technical and procedural standards by which to do that.

One of these procedural standards is the requirement a company maintain its own specific do-not-call list. *See Wilson v. PL Phase One Operations L.P.*, 422 F. Supp. 3d 971, 982 (D. Md. 2019). When this distinction is understood, it is clear that "47 C.F.R. § 64.1200(d) appears to fall within subsection *d*'s scope, which does not provide a private right of action." *Id.* (dismissing plaintiff's cause of action for violations of Section 227(d)).

Plaintiff's reliance on *Dobronski* is not persuasive as the court there was attempting to determine under which provision of the statute 47 C.F.R. § 64.1200(e) was promulgated. *Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 375 (E.D. Mich. 2025). Defendant argued that it was promulgated under Section 227(e), but the court quickly determined this was impossible because this regulation was promulgated before Congress drafted Section 227(e) of the TCPA. *Id.* at 376.

Additionally, the in-Circuit cases Plaintiff relies upon in support of its position are mischaracterized and unpersuasive. For example Plaintiff contends the district court conducted a historical analysis in *Bradshaw*. (Opp. 19 (citing *Bradshaw v. CHW Grp., Inc.*, 763 F. Supp. 3d 641, 648–49 (D.N.J. 2025).) It did not. *Bradshaw*, 763 F. Supp. 3d at 648–49 (reviewing only cases that have found a private right of action for Section 64.1200(d) violations and not analyzing or weighing case law finding the contrary). In *Shelton v. Pro Source Lending Group, LLC*, Defendant did not raise this issue nor did the court engage with any analysis on the same in its

opinion. *See* No. 2:24-cv-4394, 2025 WL 817485 (E.D. Pa. Mar. 14, 2025). Lastly, in *Kline*, this district did not find that Section 64.1200(d)(3) was promulgated under 227(c)(5), but instead, it was asked to determine whether a private right of action existed for willful and knowing violations of the TCPA. *See Kline v. Advanced Ins. Underwriters, LLP*, No. 1:19-cv-00437, 2020 WL 14028040, at *2 (M.D. Pa. June 23, 2020) (recommending plaintiff's complaint be dismissed for lack of personal jurisdiction), *adopting R. & R.*, 2020 WL 14028041 (July 10, 2020).

Of the authority before the Court, *Wilson* is the only case that explicitly reviewed whether § 64.1200(d)(3) was promulgated under Section 227(c)(5)—and concluded, correctly that it was not. 422 F. Supp. 3d at 982. Therefore, the court found that plaintiff did not have a private right of action to bring this claim. *Id.* This Court should reach the same result and dismiss Plaintiff's second cause of action. (Mot. 19.)

### B.    Plaintiff Did Not Plead That His Stop Request Was Not Honored Within a Reasonable Time

Regardless of whether there is a private right of action for alleged violations of § 64.1200(d)(3), Plaintiff's claim still fails because the Complaint failed to plead facts that The Spot did not honor Plaintiff's "STOP" request within a reasonable time. This reasonableness safeguard is embedded in the language of the regulation, and at the time of the texts at issue, gave a defendant 30 days to comply with a "STOP" request. *See* 47 C.F.R. § 64.1200(d)(3). Other courts have acknowledged

that this language provides a safe harbor to defendants like Happy Cabbage. *See, e.g.*, *Orsatti v. Quicken Loans Inc.*, No. 2:15-cv-09380, 2016 WL 7650574, at *7 (C.D. Cal. 2016) (dismissing complaint for failure to state a claim where plaintiff did not allege she received any call outside of this 30 day window).

The facts as pled in the Complaint do not plausibly allege that Happy Cabbage acted unreasonably. *First*, Happy Cabbage was not responsible for maintaining an internal do-not-call list because it did not text Plaintiff. (*See* Watson Decl. ¶ 14.) *Second*, the timeline of events cannot plausibly be understood to show that The Spot acted unreasonably. On March 9, 2022, Plaintiff allegedly received a text from The Spot from (562) 753-6060. (Compl. ¶¶ 31, 33.) Plaintiff alleges he responded "STOP," and received a response from The Spot stating that he would not receive any more texts from *this* number. (*Id.* ¶ 34.) Eight days later, on March 17, 2022, Plaintiff purportedly received a second text from The Spot from (562) 753-6372. (*Id.* ¶ 35.)

The Opposition argues it is "patently unreasonable" that Plaintiff received a single text message after he received a message confirming that the texts would cease. (Opp. 20.) But, that is not what Plaintiff received confirmation of; Plaintiff was informed he would receive no future messages from the number that texted him. (Compl. ¶ 32 (reflecting message that states "[y]ou have successfully be unsubscribed, you will not receive any more messages ***from this number***" (emphasis

added).)  Further, Plaintiff does not allege he received any text message after the March 17 text, which was only eight days following the purported "STOP" request. Therefore, there are no facts in Plaintiff's Complaint that allow a fact finder to conclude Happy Cabbage acted unreasonably while timely honoring Plaintiff's "STOP" request.  Thus, this Court should dismiss Plaintiff's second cause of action on this basis as well.

## CONCLUSION

For the reasons set forth above, Happy Cabbage respectfully requests that this Court grant its motion to dismiss for lack of subject matter jurisdiction, or, in the alternative for failure to state a claim upon which relief can be granted.

Dated: December 19, 2025          Respectfully submitted,

*/s/ Whitney M. Smith*
Whitney M. Smith (*pro hac vice*)
**KELLEY DRYE & WARREN LLP**
7 Giralda Farms, Suite 340
Madison, New Jersey 07940
Tel.: (973) 503-5900
WSmith@KelleyDrye.com

Steven W Schlesinger (PA Bar No. 332869)
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel.: (212) 808-7740
SSchlesinger@KelleyDrye.com

*Counsel for Happy Cabbage Analytics, Inc.*

17

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify that this brief contains 4,062 words in accordance with Local

Rule 7.8(b)(2).

Dated: December 19, 2025

*<u>/s/ Whitney M. Smith</u>*
Whitney M. Smith

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing to be served via the Court's

Electronic Case Filing (ECF) system upon the following:

**Andrew Roman Perrong, Esq.**
Perrong Law LLC
2657 Mount Caramel Avenue
Glenside, Pennsylvania 19038
Tel.: (215) 225-5529
a@perronglaw.com

**Anthony I. Paronich**
Paronich Law, P.C.
350 Lincoln St., Suite 2400
Hingham, MA 02043
Tel.: (617) 485-0018
Anthony@paronichlaw.com

*Counsel for Plaintiff*

Dated: December 19, 2025


                                    */s/ Whitney M. Smith*
                                    Whitney M. Smith