# INDEX OF UNPUBLISHED CASES

2025 WL 2686984

Only the Westlaw citation is currently available.

United States District Court, S.D. Florida.

Cassandra Bonair BOSLEY, individually and on behalf of all others Similarly situated, Plaintiff,

v.

A BRADLEY HOSPITALITY LLC d/b/a La Mesa Miami, Defendant.

Case No. 25-cv-22336-BLOOM/Elfenbein

|

Signed September 18, 2025

|

Entered September 19, 2025

**Attorneys and Law Firms**

Andrew John Shamis, Shamis & Gentile P.A., Miami, FL, Scott Adam Edelsberg, Edelsberg Law PA, Aventura, FL, for Plaintiff.

Matthew Eric Ladd, Coral Gables, FL, for Defendant.

<u>**ORDER ON MOTION TO DISMISS AND/OR STRIKE COMPLAINT**</u>

BETH BLOOM, UNITED STATES DISTRICT JUDGE

**\*1  THIS CAUSE** is before the Court upon Defendant Bradley Hospitality LLC's ("Defendant") Motion to Dismiss and/or Strike Complaint. ECF No. [9]. Plaintiff filed a Response in Opposition ("Response"), ECF No. [10]. Defendant did not file a reply. For the reasons that follow, Defendant's Motion to Dismiss and/or Strike Complaint is denied.

**I. BACKGROUND**

This case arises from a series of purportedly unsolicited text messages Defendant sent to Plaintiff as a part of Defendant's marketing campaign. The Complaint asserts the following allegations: Plaintiff is the subscriber and sole user of a residential cellphone number ending in 9198 that was registered and continues to be registered on the national do-not-call registry. ECF No. [1] at ¶¶ 32-34. "Defendant is a hospitality group that operates a restaurant franchise in Florida." ECF No. [1] at ¶ 3. To promote its business, Defendant relies on telephone sales calls and text messages "with no regard[ ] for consumers' rights under the [Telephone Consumer Protection Act] ["]TCPA["], even after customers request Defendant to stop texting them." *Id.* at ¶ 34. "At no point in time [has] Plaintiff provide[d] Defendant with her express written consent to be contacted," nor does Plaintiff have an "existing business relationship with Defendant." *Id.* at ¶¶ 28-30.

Beginning on December 11, 2024, Defendant "sent multiple telemarketing text messages to Plaintiff's cellular telephone number ending in 9198, from Defendant's 786-746-9484 number." *Id.* at ¶¶ 13, 21. [1] After receiving several of these telemarketing [2] messages, Plaintiff responded to Defendant on January 2, 2025, "with the message 'No stop,' using standard opt out language, in an attempt to opt-out of any further text message communications with Defendant." *Id.* at ¶ 14. Notwithstanding Plaintiff's opt-out request, Defendant continued to bombard Plaintiff with more unwanted text messages until at least March 2025. *Id.* at ¶ 15. During that time, Plaintiff sent additional opt-out text messages, but to no avail. *See id.* at ¶ 16. Although Defendant had the "capability of immediately complying with opt-out requests,...Defendant fai[led] to ensure that requests by Plaintiff...to opt-out of future communications [were] honored within a reasonable time." *Id.* at ¶¶ 17-18. Specifically, Defendant does not "maintain a master optout list" or "maintain internal polices to sufficiently honor the opt-out requests[.]" *Id.* at ¶ 19.

Plaintiff alleges that "Defendant's unwanted telemarketing text messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion." *Id.* at ¶ 37. Specifically, Plaintiff alleges that each message caused her to stop what she was doing to review the message, wasting fifteen to thirty seconds reviewing each message. *Id.* at ¶ 38.

**\*2** Based on the alleged misconduct, Plaintiff filed a Complaint asserting two separate Telephone Communication Protection Act ("TCPA") claims. Count I alleges that Defendant "violated 47 U.S.C. § 227(c)(5) because Plaintiff received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200[(c)], which prohibits an entity from "initiating, or causing to be initiated telephone solicitations to telephone subscribers such as Plaintiff...who registered their respective telephone numbers on the National Do Not Call Registry." *Id.* at ¶¶ 57-58. Count II alleges that Defendant violated 47 U.S.C. § 227(c)(5) because Defendant sent messages to Plaintiff despite not having "instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf [of Defendant], pursuant to 47 C.F.R. § 64.1200(d)," and after Plaintiff had made requests to Defendant not to receive calls from Defendant." *Id.* at ¶¶ 66-67.

## II. LEGAL STANDARD

### A. Article III Standing
Under Article III of the Constitution, federal courts are limited to adjudicating only "Cases and Controversies." U.S. Const. Art. III § 2; *see Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc.*, 524 F.3d 1299, 1232 (11th Cir. 2008). For a case or controversy to exist, the Plaintiff must have standing to bring the action. *See I.L. v. Alabama*, 739 F.3d 1273, 1278 (11th Cir. 2014) ("Standing is one of the Article III case or controversy requirements."). "To have standing, the plaintiff[ ] must demonstrate injury in fact, causation, and redressability." *Id.* All three must exist before a federal court may exercise jurisdiction over the case. *See Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 484 F. Supp. 3d 1215, 1225 (S.D. Fla. 2020). "The 'foremost' standing requirement is injury in fact." *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 99 (1998)). "An injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.' " *I.L.*, 739 F.3d at 1278; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "A 'concrete' injury must be 'de facto'—that is, it must be 'real, and not abstract.' " *Trichell*, 964 F.3d at 996 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). However, an injury need not yet have occurred to constitute an injury in fact. A harm yet to occur will still satisfy the case and controversy requirement if it is "sufficiently substantial and imminent." *DiPierro v. Fla. Health Sci. Center, Inc.*, Case No: 8:23-cv-01864-KKM-NHA, 2024 WL 3051320, at \*5 (M.D. Fla. June 18, 2024). A harm is imminent if there is "a realistic danger of sustaining a direct injury as a result" of the challenged conduct. *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1161 (11th Cir. 2008) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). [3]

### B. Failure to State a Claim for Relief
"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.' " *Sprint Sols., Inc. v. Fils–Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, No. 09–495, 2010 WL 3385356, at \*3 (N.D. Fla. Aug. 25, 2010)). A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on " ' naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

**\*3** "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right

to relief above the speculative level. *Twombly*, 550 U.S. at 555. When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019). In considering a motion to dismiss, the court is limited to the facts contained in the complaint and attached exhibits. *See Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

## III. DISCUSSION

Defendant asserts several arguments to support dismissing Plaintiff's Complaint. Defendant explains that "[t]he allegations before the court are that the text messages sent [by Defendant] qualify as an 'advertisement' without express consent in violation of 47 CFR 64.1200." ECF No. [9] at 5-6. However, Plaintiff "does not and cannot establish Article III Standing" to assert her TCPA claims because the text messages Defendant sent to Plaintiff were not "advertisements." *Id.* at 5. According to Defendant, the "TCPA defines 'advertisements' as any material advertising the commercial availability or quality of any property, goods, or services." *Id.* at 6. Defendant claims the content of the seven messages it sent were as follows: (1) the first text messages "merely announces that there is [a] movie night and comedy without providing a date, time, or price;" (2) the second text messages is the same announcement as the first but does not contain a "call to action; (3) "[t]he third message provides a date, and announcement that a table will be given away on Feb. 14 for free to VIP clients;" and (4) "[t]he last four texts are also merely announcements without any 'call to action." ' *Id.* at 5. Accordingly, because the "seven text messages do not specify the availability or quality of the 'shows' being advertised," Defendant argues the messages are "not 'advertisements' " but mere informational messages. *Id.* at 6.

Defendant further argues that Plaintiff has failed to allege a concrete injury as a result of the text messages because merely alleging "actual harm," "invasion of privacy," and "annoyance" are too conclusory to establish a concrete injury. *Id.* Moreover, Defendant maintains that taking a few seconds to read a few small text messages over the span of months is insufficient to constitute a concrete harm. *Id.*

Lastly, Defendant addresses Plaintiff's allegation that she "responded to Defendant's 786-746-9484 number with the message 'No stop,' using standard opt-out language, in an attempt to opt-out of any further text message communications with Defendant." ECF No. [1] at 3. According to Defendant, the phrase "No stop" does not amount to an "unequivocal opt-out request." *Id.* at 4. Defendant points out that pursuant to 47 C.F.R. § 64.1200(a)(10):

> A called party may revoke prior express consent, including prior express written consent, to receive calls or text messages made pursuant to paragraphs (a)(1) through (3) and (c)(2) of this section by using any reasonable method to clearly express a desire to not receive further calls or text messages from the caller or sender. Any revocation request made using an automated, interactive voice or key press-activated opt-out mechanism on a call; using the words "stop," "quit," "end," "revoke," "opt out," "cancel," or "unsubscribe" sent in reply to an incoming text message;…. If a called party uses any such method to revoke consent, that consent is considered definitively revoked and the caller may not send additional robocalls and robotexts. If a reply to an incoming text message uses words other than "stop," "quit," "end," "revoke," "opt out," "cancel," or "unsubscribe," the caller must treat that reply text as a valid revocation request if a reasonable person would understand those words to have conveyed a request to revoke consent.

**\*4** While Defendant acknowledges that the regulation provides that texting the word "stop" is an appropriate means of opting out of unwanted text message solicitations, Defendant argues that "No stop" is not. According to Defendant, that is especially the case here, where Plaintiff concedes she was specifically "directed to type 'STOP to end' if she wanted the text messages to stop," but instead said "No stop." ECF No. [9] at 7. Defendant contends that under the circumstances, "No stop" reasonably

conveyed to Defendant that it not stop, "but rather continue." *Id.* Accordingly, "Plaintiff's directive to Defendant" not to stop "implied to Defendant an express consent to 'keep going' or continue providing the text messages." *Id.* Defendant therefore insists that this express consent to receive subsequent messages "precludes the Plaintiff's recovery." *Id.* [4]

Plaintiff responds that Defendant's standing argument "relies on outdated case law and ignores unfavorable, but controlling, Eleventh Circuit precedent." ECF No. [10] at 2. Plaintiff argues that "a plaintiff who receive[s] 'a *single* unwanted, illegal telemarketing text message suffere[s] a concrete injury." ' *Id.* (quoting *Drazen v. Pinto*, 74 F.4th 1336, 1339 (11th Cir. 2023) (emphasis added by Plaintiff)). Therefore, because Plaintiff has alleged that "Defendant sent or caused to be sent," more than one unwanted telemarketing text message to Plaintiff's 9198 Number, she has adequately alleged a concrete injury in fact. *Id.* at 6.

Regarding Defendant's argument that the text messages were not "advertisements," Plaintiff contends the argument is irrelevant because "neither cause of action alleged by Plaintiff (violations of 47 C.F.R. § 64.1200(c) and (d)) even alleges the text messages were advertisements but instead argue that the messages constitute "telephone solicitations" and "telemarketing." *Id.* at 3. As such, any failure to establish that the text messages were advertisements is not dispositive.

Plaintiff also disputes the notion that her text stating ' "No stop' in response to [the] 'STOP to end' [messages from Defendant] was an expression of consent to the messages." *Id.* According to Plaintiff, such an interpretation of her messages "defies not only logic, but also the text of 47 C.F.R. § 64.1200(a)(10), which provides that prior express consent may be revoked 'by using any reasonable method to clearly express a desire not to receive further text messages or calls from the caller or sender." ' *Id.* Plaintiff maintains that her "No stop" messages constituted a reasonable and unambiguous desire for Defendant to cease sending further text messages. [5] Moreover, even assuming they did not, "Plaintiff's Complaint establishes that she never provided prior express consent to be called or texted by Defendants, that she did not have an established business relationship, and that her 9198 Number was listed on the National Do Not Call Registry." *Id.* at 11. Accordingly, the text messages sent to Plaintiff before her "No stop" messages were "without consent and in violation of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2)." *Id.*

The Court finds that Plaintiff has standing to bring her claims and has adequately stated claims upon which relief may be granted. Defendant's first argument that there is no concrete harm sufficient to establish standing for either claim is without merit. The Eleventh Circuit has stated unequivocally that "the receipt of an unwanted text message causes a concrete injury," thereby providing a plaintiff with standing to bring a TCPA claim. *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023); *see also Eisenband v. Schumacher Auto., Inc.*, No. 18-CV-80911, 2018 WL 7820549, at *2 (S.D. Fla. Oct. 23, 2018) (finding allegations of receipt of a single text message sufficient to establish a concrete injury necessary to establish standing). Therefore, because Plaintiff has adequately alleged that Defendant sent her at least one unwanted text message as outlined under the TCPA, she has established Article III standing. [6]

**\*5** Defendant is also unable to demonstrate that Plaintiff has failed to state a claim upon which relief may be granted. To plausibly assert a TCPA violation under 47 U.S.C. § 227, "a plaintiff must allege '(1) receipt of more than one telephone call within any 12-month period; (2) by or on behalf of the same entity; and (3) in violation of the regulations promulgated by the FCC." ' *Perischett v. T-Mobile USA, Inc.*, 479 F. Supp. 3d 1333, 1339 (N.D. Ga. 2020) (quoting *Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp. 3d 1193, 1197 (M.D. Fla. 2014)); *Lawson v. Visionworks of Am., Inc.*, 741 F. Supp. 3d 1251, 1253 (M.D. Fla. 2024). There is no dispute that Plaintiff has adequately alleged the first two elements for both Counts I and II, given that a text message constitutes a "call" under the TCPA and the text messages were alleged to have been sent over the course of several months. *See Eldridge v. Pet Supermarket Inc.*, 446 F. Supp. 3d 1063, 1067-68 (S.D. Fla. 2020) ("A text message to a cell phone qualifies as a 'call' under the TCPA.") (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), *as revised* (Feb. 9, 2016); *Legg v. Voice Media Grp., Inc.*, 990 F. Supp. 2d 1351, 1354 (S.D. Fla. 2014) (noting that the TCPA and the accompanying federal regulations "apply with equal force to conventional telephone calls and text messages, as a text message qualifies as a 'call' within the meaning of the TCPA."); *Pariseau v. Built USA, LLC*, 619 F. Supp. 3d 1203, 1206 (M.D. Fla. 2022) ("In several rules, the FCC reiterates that the TCPA affords text messages 'the same consumer protections...as voice calls." ') (internal quotations omitted). Therefore, Defendant's Motion solely concerns the third element—whether there are allegations sufficient to establish that Defendant's text messages to Plaintiff violated FCC regulations.

Plaintiff asserts two regulatory violations here. In Count I, Plaintiff alleges a violation of 47 C.F.R. § 64.1200(c), which "prohibits entities from making 'telephone solicitations' to '[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." *Lawson*, 741 F. Supp. 3d at 1254. "The term telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services...." *Id.* (quoting 47 C.F.R. § 64.1200(f)(15)). In the Complaint, Plaintiff alleges that she "registered her phone number with the national do-not-call registry on November 11, 2009, and has been registered at all times relevant to this action." ECF No. [1] at ¶ 34. Additionally, Plaintiff alleges that Defendant sent multiple telemarketing messages to her, encouraging "the future purchase or investment in property, goods, or services," by "promoting Defendant's restaurant and entertainment services." *Id.* at ¶ 22. According to Plaintiff, these messages contained both "discounts and promotions" with the intent to drive customers to Defendant's business. The allegations are sufficient to establish a § 64.1200(c) violation as Plaintiff has adequately alleged that (1) her residential phone number was on a do-no-call registry and (2) she received "telephone solicitations" from Defendant. [7] *See Klassen, v. Protect My Car Admin Servs., Inc.*, 599 F. Supp. 1243, 1246 (M.D. Fla. 2021) (finding that allegations that the plaintiff's number was on the Do Not Call Registry and that the defendant subsequently called the plaintiff "for solicitation purposes" was "sufficient to plead a violation of Section 227(c)").

Defendant argues that the messages sent to Plaintiff did not violate § 64.1200(c) because they were not advertisements. However, even if true, that fact would not undermine the validity of Plaintiff's TCPA claim. Under § 64.1200(c), a plaintiff does not need to establish that the messages she received constituted advertisements, but only that they amounted to telephone solicitations. Plaintiff adequately alleges that the text messages were for the purposes of solicitation and thus has adequately alleged a violation of § 64.1200(c).

**\*6** Defendant's only other argument regarding Count I is that Plaintiff effectively consented to the text messages because she sent multiple text messages with the words "No stop." The Court need not consider whether the "No Stop" message could reasonably be construed as Plaintiff's affirmative consent to receive additional messages for the purposes of evaluating the sufficiency of Count I. Plaintiff alleges that the first "No stop" message was sent in *response* to Defendant after she had received multiple text message solicitations. *See* ECF No. 1 at ¶¶ 14-15. Therefore, even assuming that Plaintiff's "No stop" message constituted approval by Plaintiff to receive more solicitations, the initial messages from Defendant were necessarily sent to Plaintiff without prior consent or approval. [8] Therefore, because there need only be "more than one" unwanted text message sent to a phone number on the Do Not Call Registry in order to establish a violation, consent to receive subsequent messages does not defeat the claim that Defendant violated § 64.1200(c) when it sent the initial two messages. *See Perishett*, 479 F. Supp. 3d at 1339 (explaining that there simply needs to be more than one unwanted call to establish a TCPA violation).

Defendant's arguments regarding Count II are similarly unpersuasive. In Count II, Plaintiff alleges a violation of 47 C.F.R. § 64.1200(d), which provides "that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or behalf of that person or entity." ' *Perischetti*, 479 F. Supp. 3d at 1338 (quoting 47 C.F.R. § 64.1200(d)). "The term telemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13). The procedures instituted by the party must meet the following standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on

the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

**\*7** 47 C.F.R. § 64.1200(d)(1)-(4).

Plaintiff has adequately alleged that Defendant violated 47 C.F.R. § 64.1200(d). There is no dispute that Plaintiff has adequately alleged that she received text messages to her residential[9] phone number from Defendant. Furthermore, Defendant does not challenge or otherwise dispute Plaintiff's allegations that Defendant "failed to maintain a master opt-out list" or that Defendant "does not have a written policy for maintaining an internal do not call list pursuant to 47 [C.F.R.] § 64.1200(d)(1)." ECF No. [1] at ¶¶ 19-24. Instead, Defendant argues that, notwithstanding those allegations, Count II still fails to state a claim because Plaintiff has not established that the messages Defendant sent were "advertisements," and because Plaintiff acknowledges that she consented to the text messages by responding with text messages saying "No stop."

Defendant's argument that it did not send "advertisements" fails as to Count II for the same reasons the argument failed with respect to Count I. As Plaintiff correctly points out, she alleges that she received "telemarketing" messages from Defendant, not advertisements. The operative regulation, 47 C.F.R. § 64.1200(d), does not require that the text messages amount to "advertisements," and therefore, Plaintiff's allegations that the messages were "telemarketing" messages as opposed to "advertisements" is not fatal to her claim. Plaintiff properly alleges that the messages were more than informational and thus constituted "telemarketing" messages as the messages were sent to promote Defendant's restaurant and entertainment services and informed recipients of Defendant's discounts and promotions. *See Lawson*, 741 F. Supp. 3d at 1254-55 (finding that a message amounted to telemarketing because "[s]imply put, the message was not purely informational, and Defendant did stand to gain financially from a transaction with Plaintiff if he acted on the message.").

Defendant's final argument concerns the "No stop" text messages Plaintiff sent to Defendant in response to its telemarketing messages. Plaintiff alleges that her repeated text messages to Defendant stating "No stop" were clear directives to Defendant to stop sending telemarketing text messages to her phone number. As Plaintiff correctly points out, it may be inferred that "internal do-not-call procedures are deficient when calls to an individual who has requested not to be called continue." 47 C.F.R. § 64.1200(d); *see e.g., Menin v. Star Markets Co., Inc.*, No. 23-CV-11918-DJC, 2024 WL 4123522, at *3 (D. Mass. Sept. 9, 2024) (citing *Eagle v. GVG Cap., LLC*, No. 22-cv-00638-SRB, 2023 WL 1415615, at *4 (W.D. Mo. Jan. 31, 2023); *Adam v. CHW Grp., Inc.*, No. 21-cv-19-LRR, 2021 WL 7285905, at *2, 9 (N.D. Iowa Sept. 9, 2021)). Therefore, since Defendant purportedly continued to send messages after receiving the "No stop" replies from Plaintiff, she has provided sufficient allegations that Defendant failed to "institute procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of [Defendant]." 47 C.F.R. § 64.1200(d).

**\*8** Defendant contends that pursuant to 47 C.F.R. 64.1200(a)(1), there can be no TCPA violation where a plaintiff expressly consents to receiving the text and has not otherwise revoked that consent since that individual would no longer be on the entity's do-not-call list. Defendant argues that the phrase "No stop" indicated to the Defendant that it should continue to send the telemarketing messages to Plaintiff's phone number and therefore it did not need to put Plaintiff on its internal do-not-call list. The Court finds Defendant's argument unpersuasive.

Plaintiff's "No stop" messages do not conclusively establish that Plaintiff consented to future telemarketing messages from Defendant. The provision Defendant cites to—47 C.F.R. § 64.1200(a)(10)—provides that any prior consent to receive text messages may be revoked by either "using the word stop, quit, end, revoke, opt-out, cancel, or unsubscribe' sent in reply to an incoming message" or "by using any reasonable method to clearly express a desire not to receive further text messages or calls from the caller or sender." Here, Plaintiff alleges that she texted the word "stop" in response to Defendant's telemarketing messages, creating a reasonable inference that she revoked any potential prior consent to receive telemarketing messages from Defendant. *See* 47 C.F.R. § 64.1200(a)(10) ("Any revocation request made...using the words 'stop,'...sent in reply to an incoming text message; or pursuant to a website or telephone number designated by the caller to process opt-out requests constitutes a reasonable means per se to revoke consent. If a called party uses any such method to revoke consent, that consent is considered definitively revoked and the caller may not send additional robocalls and robotexts."); *see also* Persichetti, 2020 WL 4811003 at *1340 (finding claim was sufficient where there was a reasonable "inference that Defendant failed to honor Plaintiff's do-not-call request"). Although the word "No" precedes the word "stop" in the messages sent to Defendant, the Court finds that when viewing the allegations as true, a reasonable person would likely understand "No stop" to mean stop sending the receipt messages, not "continue" sending messages. *See* 47 C.F.R. § 64.1200(a)(10) ("If a reply to an incoming text message uses words other than 'stop,' 'quit,' 'end,' 'revoke,' 'opt out,' 'cancel,' or 'unsubscribe,' the caller must treat that reply text as a valid revocation request if a reasonable person would understand those words to have conveyed a request to revoke consent."); *see also* Legg v. Voice Media Grp., Inc., 990 F. Supp. 2d 1351, 1354 (S.D. Fla. 2014) ("[B]ecause the TCPA is a consumer protection statute that is remedial in nature, it should be construed liberally in favor of consumers."). This is especially true given Plaintiff's allegations that she was already on the national do-not-call registry and sent the "No stop" messages on multiple occasions. Under the circumstances, the phrase "No stop" cannot reasonably be understood as an invitation for continued solicitations. Moreover, Defendant offers no case law or other authority suggesting that the phrase "No stop" is an expression of consent such that the Court should dismiss Plaintiff's claims. Therefore, because there is no basis to dismiss either of Plaintiff's claims, Defendant's Motion is denied.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

      1. Defendant's Motion to Dismiss, **ECF No. [9]**, is **DENIED.**

2. Defendants shall file an answer to the Complaint no later than **October 2, 2025.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on **September 18, 2025**.

**All Citations**

Slip Copy, 2025 WL 2686984

---

### Footnotes

1      Plaintiff alleges none of these messages were for an emergency purpose or to collect a debt. ECF No. [1] at ¶ 27.

2    According to Plaintiff, "Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., promoting Defendant's restaurant and entertainment services." ECF No. [1] at ¶ 22. Specifically, the "information contained in the text message[s] advertise[ ] Defendant's various discounts and promotions, which Defendant sends to promote its business." *Id.* at ¶ 23.

3    "*Merriam–Webster* defines 'imminent' in its online dictionary to mean 'ready to take place; *especially*:

hanging threateningly" and provides as an example the "*imminent* danger of being run over[.]" https://www.merriam-webster.com/dictionary/imminent." *See Taylor v. Fred's, Inc.,* 285 F. Supp. 3d 1247, 1259 (N.D. Ala. 2018).

4    While Defendant characterizes his Motion in part as a motion to strike, Defendant makes no argument in favor of striking any portion of the Complaint. *See generally* ECF No. [9].

5    Plaintiff also notes that while Defendant's Motion purports to also be a motion to strike, Defendant fails to identify any portion of the Complaint it seeks to have stricken. *See* ECF No. [10] at 3.

6    Defendant's argument that Plaintiff's failure to establish that the text messages were advertisements is not a standing argument but rather an argument that Plaintiff has failed to state a claim. As such, the Court will discuss the issue in the failure to state a claim section of the Opinion.

7    The Court notes that "[c]alls that 'violat[e] the do-not-call requirements'...'need not be automated to violate the regulations." ' *Klassen v. Protect My Car Admin Servs., Inc.,* 599 F. Supp. 3d 1243, 1245 (M.D. Fla. 2021); *Somogyi v. Freedom Mortg. Corp.,* No. CV 17-6546 (JBS/JS), 2018 WL 3656158, at *4 (D.N.J. Aug. 2, 2018).

8    As Plaintiff points out, the Complaint alleges that Plaintiff never provided any prior consent to receive text messages from Defendant. She did not "express written consent," and she "had no existing business relationship with Defendant." ECF No. [1] at ¶¶ 28,31.

9    *See* ECF No. [1] at ¶ 9 (describing her telephone number ending in 9198 as her "residential telephone number").

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2855393
Only the Westlaw citation is currently available.
United States District Court, D. Colorado.

Jay CONNOR, individually and on behalf of all others similarly situated, Plaintiff,
v.
SERVICEQUICK INC., d/b/a/ Zing Business Management Software, and Woosender, INC. Defendants.

Civil Action No. 1:24-cv-02286-CNS-NRN
|
Signed October 8, 2025

**Attorneys and Law Firms**

Anthony I. Paronich, Paronich Law, P.C., Hingham, MA, Andrew Roman Perrong, Perrong Law LLC, Glenside, PA, for Plaintiff.

Philip Daniel Summa, Summa Law Firm LLC, Charleston, SC, for Defendant Servicequik Inc.

H. David Kraut, Timothy M. Knowles, Warren McGraw & Knowles LLC, for Defendant Woosender Inc.

**ORDER**

Charlotte N. Sweeney, United States District Judge

**\*1**  Before the Court are Defendant ServiceQuik Inc. d/b/a/ Zing Business Management Software (ServiceQuik's) Motion to Dismiss, ECF No. 38, and Defendant Woosender Inc.'s (Woosender's) Motion to Dismiss Plaintiff's Second Amended Class Action Complaint Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), ECF No. 52. For the following reasons, the Court DENIES ServiceQuik's and Woosender's motions. In doing so, the Court presumes familiarity with the allegations contained in Plaintiff's Second Amended Class Action Complaint, ECF No. 35, as well as the legal standard governing the Court's analysis of the parties' dismissal motions, *see, e.g., Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1274–75 (10th Cir. 2023).

**I. ANALYSIS**

**A. ServiceQuik's Motion**

The core argument advanced in ServiceQuik's dismissal motion is that Plaintiff fails to state a claim for relief under Section 227(c) of the Telephone Consumer Protection Act (TCPA) because despite pleading that Plaintiff received two text messages from Defendants while his phone number was listed on the national Do-Not-Call (DNC) registry, Plaintiff actually received only one text message that was approximately 227 characters in length. ECF No. 38 at 3–5; *see also* ECF No. 35 (Second Amended Compl.) at 6 ¶¶ 30–31. ServiceQuik argues that Plaintiff's phone records reflect the receipt of two messages due to "invisible technical processes" used to transmit text messages that exceed the standard, 160-character limit for SMS messages.[1] *Id.* at 5. ServiceQuik contends that despite these back-end technological processes, Plaintiff's TCPA claim fails because only one message actually "appear[ed]" on Plaintiff's phone, as evidenced by a screenshot submitted by Plaintiff in a related state-court action.[2] ECF No. 38 at 5. In response, Plaintiff argues that even if his cell phone combined Defendants' messages "for the ease of reading," he has plainly alleged the receipt of more than one text message from Defendants within a twelve-month period in violation of 47 U.S.C. § 227(c)(5), as evidenced by the entries on Plaintiff's phone bill. ECF No. 47 at 14–16 (citing ECF No. 35 at 6, 7 ¶¶ 30–32). The Court agrees that Plaintiff sufficiently pleaded his TCPA claim.

**\*2**  The TCPA provides a private right of action for "[a] person who has received more than one telephone call [or text message] within any 12-month period by or on behalf of the same entity," when that person's phone number is listed on the DNC registry. 47 U.S.C.A. § 227(c)(5). [3]  Here, Plaintiff not only pleads allegations regarding the text contained in each of the two messages, ECF No. 35 at 6 ¶¶ 30, 31, Plaintiff's allegations are supported by an excerpt from his phone records, which reflect his receipt of two separate messages, *id.* at 7 ¶ 32. Other courts have relied on billing records in determining the number of contacts plaintiffs received when evaluating TCPA claims. *See, e.g.*, *Hinman v. M & M Rental Ctr., Inc.*, 596 F. Supp. 2d 1152, 1156 (N.D. Ill. 2009) (acknowledging that "billing records...provide some information about each job billed" and that "client invoices indicate how many faxes were sent"). While the screenshot of Plaintiff's phone appears to reflect one continuous message, *see* ECF No. 38-2, that does not necessarily refute or "utterly contradict[ ]" Plaintiff's allegation that he received two separate messages, particularly given Plaintiff's allegations regarding his billing records and the complexities of the background technological processes at work. *See* *Flores v. City of Aurora*, No. 1:20-cv-00618-RBJ, 2021 WL 4033117, at \*7 (D. Colo. Sept. 3, 2021) (citation omitted). At this stage, where Plaintiff is entitled to have his properly alleged facts accepted as true and enjoy all reasonable inferences drawn from those facts, these allegations are sufficient for Plaintiff's claim to survive. *See* *Est. of Hebert by & through Bourgeois v. Marinelli*, No. 1:22-cv-02582-CNS-STV, 2023 WL 4744927, at \*12 (D. Colo. July 25, 2023) (denying a motion to dismiss even where it "[was] a close call" that plaintiff "alleged enough factual content" to set forth claim).

In addition to the above, ServiceQuik advances two additional arguments in support of its dismissal motion. At this stage, neither is persuasive. First, ServiceQuik argues that Plaintiff fails to state a claim under the TCPA because Plaintiff's allegation that he was contacted on a "residential telephone number" (as opposed to a business phone line which is not entitled to the same TCPA protections) is a "legal conclusion couched as a factual allegation" that the Court need not accept. ECF No. 38 at 6. The Court disagrees. ServiceQuik's contention that Plaintiff's phone number is "listed online as the main phone line of a business" on Google, ECF No. 38 at 6, raises a factual dispute—and not a legal one—that is inappropriate for the Court to analyze at this stage. Plaintiff has plainly alleged that he received the at-issue text messages on a "residential telephone number," ECF No. 35 at 5 ¶ 20, that he uses for "personal, residential, and household reasons," *id.* at 6 ¶ 25, and which he pays for with his "personal financial accounts," *id.* at 6 ¶ 24. Plaintiff also pleads that he "does not use [his] number for business reasons or business use and the number is not registered in the name of a business." *Id.* at 6 ¶ 26. Alleging that Plaintiff's phone number, which is listed "on the DNC" registry, "is not associated with a business and is used for personal purposes," is sufficient to establish that Plaintiff is a "residential telephone subscriber," and not a business, under the TCPA. *Tsolumba v. SelectQuote Ins. Servs.*, No. 5:22-cv-00712, 2023 WL 6146644, at \*5 (N.D. Ohio Sept. 20, 2023); *see also id.* ("Because Plaintiff's number is on the DNC Registry, the FCC's presumption that she is a residential telephone subscriber applies.").

Second, ServiceQuik argues that Plaintiff's TCPA claim should be dismissed pursuant to Rule 12(b)(1) for lack of Article III standing because by "fishing for telemarketing violations" and "effectively seeking TCPA lawsuits," Plaintiff "does not have the privacy interest that the TCPA is intended to protect" and "has not suffered an injury in-fact." *See* ECF No. 38 at 6–7. In support of its argument, ServiceQuik contends that Plaintiff has previously "initiated hundreds of lawsuits in relation to telemarketing." *Id.* at 7; *see also id.* at 2 (citing ECF No. 38-4 (Ex. D)). This would perhaps be relevant if Plaintiff were alleging only a "generalized interest in punishing telemarketers," *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 323 (3d Cir.2015), or if Plaintiff had "admitted" that his "sole purpose" in purchasing his phone was to "receive more calls, thus enabling [him] to file TCPA lawsuits," *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 802 (W.D. Pa. 2016). However, that is not the case here.

**\*3**  Plaintiff has pleaded that he (i) received two text messages from Defendants, ECF No. 35 at 6 ¶¶ 29–32; (ii) never consented to receiving messages from Defendants, *id.* at 6 ¶ 27; and (iii) has never done business with Defendants, *id.* at 10 ¶ 52. Plaintiff also alleges that he personally placed his phone number on the DNC registry, *id.* at 5 ¶ 22, and that each message he received from Defendants was nonconsensual, *id.* at 9 ¶ 50. Taken together, Plaintiff's allegations are sufficient to meet his burden of establishing Article III standing because they establish that Plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The Court further agrees with Plaintiff that ServiceQuik has offered no evidence to support its contention that Plaintiff uses his phone to run a TCPA litigation "business," as opposed to using it for personal and household

use. ECF No. 47 at 13. Accordingly, the Court determines that Plaintiff's allegations are sufficient to bring him "within the zone of the privacy rights the TCPA protects" and establish Article III standing. *Barrett v. Vivint, Inc.*, No. 2:19-cv-00568-DBB-CMR, 2020 WL 2558231, at *5 (D. Utah May 20, 2020).

For the foregoing reasons, ServiceQuik's Motion to Dismiss, ECF No. 38, including its request for oral argument, ECF No. 58, is DENIED, along with its request that ServiceQuik's dismissal motion "be converted to a motion for summary judgment," *id.* at 7. The foregoing analysis of ServiceQuik's arguments makes clear that there are several factual disputes to be addressed during discovery. However, upon review of the docket and in light of the October 1, 2025 discovery deadline, *see* ECF No. 67, the parties should immediately review the Court's procedures for filing a summary judgment motion. *See* CNS Civ. Standing Order Regarding Federal Rule of Civil Procedure 56 Motions. Any party seeking to file a motion for summary judgment must email Chambers, copying opposing counsel, to inform the Court of their intent to file such motion no later than October 14, 2025.

## B. Woosender's Motion

In addition to joining and incorporating ServiceQuik's motion to dismiss, *see* ECF No. 52 at 8, the primary argument advanced in Woosender's dismissal motion is that Plaintiff's claims against Woosender should be dismissed because "Plaintiff does not allege that Defendant Woosender directly sent the text message at issue in this case," *id.* at 4. Woosender contends that Plaintiff's allegations acknowledge that the text messages at issue were "sent by ServiceQuik," *id.* (citing ECF No. 35 at 6, 7 ¶¶ 29, 34), and that Plaintiff merely alleges that "Woosender is liable as a platform for initiating the text message," because Woosender was " 'involved in the calling conduct,' " *id.* (citing ECF No. 35 at 9 ¶ 45). In response, Plaintiff contends that it has sufficiently alleged that Woosender is directly liable under the TCPA because, as a "third-party text messaging platform" utilized by ServiceQuik, ECF No. 35 at 7 ¶ 36, Woosender "physically sent the messages at issue" from Woosender's phone number, ECF No. 55 at 5, 6. The Court agrees with Plaintiff.

Pursuant to FCC regulation 47 C.F.R. § 64.1200(c)(2), under Section 227(c) of the TCPA, "no person or entity is permitted to '*initiate* any telephone solicitation...to any residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry.' " *In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (Tcpa) Rules*, 28 F.C.C. Rcd. 6574, 6575 (2013) (citing 47 C.F.R. § 64.1200(c)(2)) (emphasis added). An entity directly "initiate[s]" a call or text message "when it takes the steps necessary to physically place a telephone call." *Id.* at 6583. Here, Plaintiff has sufficiently alleged that Woosender directly initiated the at-issue text messages. Plaintiff not only pleads that he received two texts messages "sent using [Woosender's] platform at Defendant ServiceQuik's direction," ECF No. 35 at 6 ¶ 29, he also alleges that Woosender's messaging service "goes [f]ar beyond merely providing the platform that enables them to send messages" and includes "actually setting up and providing intimate support for their customers' campaigns and strategies," *id.* at 8 ¶ 40. Plaintiff further alleges that ServiceQuik "used the services provided by Defendant [Woosender] to send out the text message blasts, such as the one Plaintiff received" *id.* at 8 ¶ 41, and that it was Woosender that actually "sent" the texts at issue, *id.* at 8 ¶ 44. These allegations are sufficient to establish a "direct connection" between Woosender and the transmission of the at issue texts Plaintiff received. *In re Dish Network*, 28 F.C.C. Rcd. at 6575. Woosender's request to dismiss Plaintiff's TCPA claim is DENIED.

**\*4** In addition to seeking dismissal, Woosender's motion also requests that the Court strike Plaintiff's allegation regarding Woosender's use of "automated calling" software. *See* ECF No. 52 at 7–8 (citing ECF No. 35 at 7 ¶ 38). For the reasons outlined below, the court declines to do so. Under Rule 12(f) (which Woosender neglects to invoke in its motion), "[t]he court may strike from a pleading...any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike, however, are "viewed with disfavor," *Griffie v. Allstate Fire & Cas. Ins. Co.*, No. 19-cv-02647-PAB-MEH, 2020 WL 4474800, at *2 (D. Colo. Aug. 3, 2020), and are "usually only granted when the allegations have no bearing on the controversy and the movant can show that he has been prejudiced," *Sierra Club v. Young Life Campaign, Inc.*, 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001). As such, the moving party's "burden of proof is a heavy one." *Holzberlein v. OM Fin. Life Ins. Co.*, No. 08-cv-02053-LTB, 2008 WL 5381503, at *1 (D. Colo. Dec. 22, 2008).

Here, Woosender requests that the Court strike Plaintiff's allegation that "Defendant WooSender hosts all the requisite computer software to enable illegal automated calling." *See* ECF No. 52 at 7–8 (citing ECF No. 35 at 7 ¶ 38). However, Woosender does not argue that Plaintiff's allegation is redundant, immaterial, impertinent, scandalous, or prejudicial, or that it has no bearing on the instant controversy. Instead, Woosender contends that Plaintiff "provides no factual support for its bare assertion that Defendant Woosender used an automated system." *Id.* at 7. Even if true, without more, this is not sufficient to strike an allegation. *See, e.g.*, *Beltran v. InterExchange, Inc.*, No. 14-cv-03074-CMA-KMT, 2015 WL 7253286, at *2 (D. Colo. Nov. 16, 2015) (denying a motion to strike where "no prejudice has been shown against the defendants merely by the inclusion of factual allegations in the Complaint" as those allegations "must ultimately be proved or disproved after the discovery period"); *Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.*, 173 F.R.D. 275, 285 (D. Colo. 1997) ("Even where the challenged allegations fall within the categories set forth in [Rule 12(f)], a party must usually make a showing of prejudice before the court will grant a motion to strike."); *see also United States ex rel. Schroeder v. Medtronic, Inc.*, No. 17-2060-DDC-BGS, 2024 WL 1095664, at *4 (D. Kan. Mar. 13, 2024) ("[A] rule 12(f) motion is not the appropriate method to challenge the factual support for an allegation."). Moreover, Plaintiff is not required to put up evidence in support of every allegation at the pleading stage. *See Cochran v. City of Wichita*, 771 F. App'x 466, 469 n.3 (10th Cir. 2019) ("In a complaint[,] the plaintiff need not present evidence, but he or she must plead facts and cannot rely on conclusory allegations.") (citing *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006)). In light of its failure to explain how Paragraph 38 meets any of the bases for striking an allegation under Rule 12(f), Woosender's request to strike is DENIED.

## II. CONCLUSION

Consistent with the analysis above, Defendant ServiceQuik's Motion to Dismiss, ECF No. 38, and Defendant Woosender's Motion to Dismiss Plaintiff's Second Amended Class Action Complaint Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), ECF No. 52, are DENIED. Additionally, any party seeking to file a motion for summary judgment is instructed to immediately review the Court's procedures for filing a summary judgment motion and must email Chambers no later than October 14, 2025, copying opposing counsel, to inform the Court of their intent to file a summary judgment motion.

**All Citations**

Slip Copy, 2025 WL 2855393

---

### Footnotes

1       ServiceQuik describes the technology likely used to transmit the text messages at issue:

        SMS messages, when using the default GSM 7-bit character encoding, are technically limited to 160 characters per segment—a standard set in the 1980s when data transmission was less advanced. However, modern messaging technology makes this limit largely invisible to users. When a message exceeds 160 characters, devices and networks automatically split it into multiple segments using 'concatenated SMS,' which adds a small header to each segment so the recipient's device can seamlessly reassemble them. While each segment is transmitted separately, the end user sees only one continuous message, exactly as the sender intended.

        ECF No. 38 at 3–4 (citations omitted).

2       In support of its dismissal motion, ServiceQuik attaches a screenshot purportedly showing Plaintiff's receipt of a single message on Plaintiff's phone. *See* ECF No. 38-2 (Ex. B). The Court is permitted to consider Exhibit B at this stage as it is part of a publicly filed court record central to Plaintiff's claims. *See Equal Emp. Opportunity Comm'n v. 'Murica, LLC*, 694 F. Supp. 3d 1356, 1365 (D. Colo. 2023) (when considering a motion to dismiss under Rule 12(b)(6), "the

Court may consider documents incorporated by reference, documents referred to in the complaint that are central to the claims, and matters of which a court may take judicial notice," including "[p]ublicly filed court records.") (internal citations omitted).

3       The Federal Communications Commission (FCC), which has been delegated authority to implement the TCPA's requirements, has interpreted the TCPA's reference to a "telephone call" to include text messages. *See, e.g.*, *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 88–89 (2d Cir. 2019) ("Although text messages are not explicitly covered under the TCPA, the FCC has interpreted the Act to cover them.") (citing *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 14014, 14115 (July 3, 2003); *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 667 (2016)).

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2997759
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Tampa Division.

Aliana El SAYED, Individually and on behalf of all others similarly situated Plaintiff,

v.

NATUROPATHICA HOLISTIC HEALTH, INC., et al, Defendants.

Case No. 8:25-cv-00847-SDM-CPT
|
Signed October 24, 2025

**Attorneys and Law Firms**

Manuel Santiago Hiraldo, Hiraldo PA, Ft. Lauderdale, FL, Michael Eisenband, Eisenband Law, P.A., Fort Lauderdale, FL, for Plaintiff.

Garrett Lane Roberts, Zumpano Castro, PLLC, Brandon, FL, for Defendants.

<u>**ORDER**</u>

STEVEN D. MERRYDAY, UNITED STATES DISTRICT JUDGE

**\*1** Alleging violations of the Telephone Consumer Protection Act (TCPA), Ali-ana El Sayed, in a prospective class action, sues (Doc. 9) Naturopathica Holistic Health, Inc., and Naturopathica's CEO, Catherine M. O'Brien. The defendants move (Doc. 13) to dismiss and El Sayed responds. (Doc 14)

Naturopathica sent to El Sayed a promotional text message to which El Sayed responded "STOP" on February 1, 2022. (Doc. 9 at ¶ 9) Despite receiving an auto-mated response ("You are now unsubscribed from all Naturopathica SMS marketing messages and will receive no further messages."), El Sayed received an additional promotional text message from Naturopathica on April 23, 2023, and another on April 30, 2023. (Doc. 9 at ¶ 10) When El Sayed received each text message, her num-ber was on the "National Do-Not-Call Registry." (Doc. 9 at ¶ 10)

El Sayed sues under the TCPA, which provides a "private right of action" for a "person who has received more than one telephone call within any 12-month pe-riod by or on behalf of the same entity in violation of the regulations prescribed un-der this subsection." 47 U.S.C. § 227(c)(5); *see also* 47 C.F.R. § 64.1200(d). Relying on a 2003 "Order" issued by the Federal Communications Commission, El Sayed ar-gues that paragraph 227(c)(5) of the TCPA, although textually limited to "telephone call[s]," includes text messages. *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014 (The TCPA "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls.").

Contrary to El Sayed's contention that a natural reading of the term "tele-phone call" includes a "text message," "it is only though the rulemaking authority of the FCC that the voice call provisions of the TCPA have been extended to text mes-sages." *Salcedo v. Hanna,* 936 F.3d 1162, 1169 (11th Cir. 2019), *abrogated on other grounds by Drazen v. Pinto,* 74 F.4th 1336 (11th Cir. 2023). However, a "District Court is not bound by the FCC's interpretation of the TCPA." *McLaughlin Chiropractic Asso-ciates, Inc. v. McKesson Corporation,* 606 U.S. 146, 168 (2025). Rather, "a district court must independently determine for itself whether the agency's interpretation of a stat-ute is correct. District courts are not bound by the agency's interpretation, but

instead must determine the meaning of the law under ordinary principles of statutory inter-pretation." *McLaughlin Chiropractic, 606 U.S. at 155* (citing *Loper Bright Enterprises v. Raimondo, 603 U.S. 369, 402 (2024)*).

"In interpreting a statute, we start with the plain language of the provisions to be interpreted." *Pugliese v. Pukka Dev., Inc., 550 F.3d 1299, 1303 (11th Cir. 2008)*. "[U]nless otherwise defined, words will be interpreted as taking their ordinary, con-temporary, common meaning." *Perrin v. United States, 444 U.S. 37, 42.* "The canons of construction often play a prominent role in that endeavor, serving as useful tools to discern that ordinary meaning." *Heyman v. Cooper, 31 F.4th 1315, 1319 (11th Cir. 2022)* (cleaned up). "But if the text is clear, the analysis begins and ends there." *Davis v. CVS Pharmacy, Inc., 2025 WL 2491195, at *1* (Winser, J.) (N.D.Fla., 2025) (citing *Young v. Grand Canyon Univ., Inc., 980 F.3d 814, 818 (11th Cir. 2020)*).

**\*2** Although some judges differ, I agree with and adopt Judge Winser's opinion that "the statutory text here is clear, and a text message is not a 'telephone call.' " *Da-vis, 2025 WL 2491195 at *1.* In addition to the fact that in common American Eng-lish usage, a "telephone call" and a "text message" are separate and distinct forms of communication, the term "text message" appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent dis-tinction and legislated mindful of the distinction. *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. P, § 503(a) (codified at 47 U.S.C. §§ 227(e)(8)(A)–(B)) (distinguishing between "a call made using a voice service" and "a text message sent using a text messaging service"). "[W]hen Congress uses different terms, we expect that they hold different meanings, especially when the same mean-ing would render one of the terms superfluous." *Fernandez v. Seaboard Marine Ltd., 135 F.4th 939, 958 (11th Cir. 2025)* (citing *Pulsifer v. United States, 601 U.S. 124, 149 (2024)*). The omission of "text message" from paragraph 227(c)(5) confirms that the provision applies only to a "telephone call."

Also, El Sayed fails to adequately plead O'Brien's personal liability. "[P]er-sonal liability of an officer under the TCPA should be the exception rather than the rule." *Appelbaum v. Rickenbacker Grp., Inc., 2013 WL 12121104, at *3* (Ryskamp, J.) (S.D. Fla. 2013). As CEO of Naturopathica, O'Brien "is not liable unless [s]he com-mitted, directly participated in, or otherwise authorized the commission of wrongful acts within the scope of [her] employment." *Mais v. Gulf Coast Collection Bureau, Inc., 2013 WL 1283885, at *4* (Scola, J.) (S.D. Fla. 2013). "Some showing of intentional misconduct or gross failure to implement policies that comply with the TCPA should be required." *Appelbaum, 2013 WL 12121104, at *3.* The complaint alleges only that O'Brien "personally participated in and/or directed and authorized" the text mes-sages (Doc. 1 at ¶ 21); but "mere conclusory statements" cannot survive a motion to dismiss. *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).*

The defendants' motion to dismiss is **GRANTED**. No later than **NOVEM-BER 14, 2025**, El Sayed may amend the complaint.

El Sayed is reminded that all papers must comply with the Local Rules of the Middle District of Florida, https://www.flmd.uscourts.gov/local-rules, including Rule 1.08. Failure to comply with the Local Rules will result in an order striking a non-compliant paper.

ORDERED in Tampa, Florida, on October 24, 2025.

**All Citations**

Slip Copy, 2025 WL 2997759

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 3275607
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

Joe ESQUIVEL, on behalf of himself and all others similarly situated, Plaintiff,

v.

MONA LEE, INC., Defendant.

Case No.: 3:25-cv-00607-H-BLM
|
Signed November 24, 2025

**Attorneys and Law Firms**

Adrian R. Bacon, Todd M. Friedman, Law Offices of Todd M. Friedman, Calabasas, CA, Max Scott Morgan, Pro Hac Vice, The Weitz Firm, LLC, Philadelphia, PA, for Plaintiff.

Jonathan Joannides, Digital Frontier Law, APC, San Jose, CA, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

MARILYN L. HUFF, District Judge

**\*1**  On March 14, 2025, Plaintiff Joe Esquivel filed a complaint against Defendant Mona Lee Inc. (Doc. No. 1, Complaint.) On July 28, 2025, Defendant filed a motion to dismiss. (Doc. No. 17.) On July 30, 2025, Plaintiff filed a first amended class action complaint ("FAC"). (Doc. No. 19, FAC.) On August 1, 2025, Defendant responded to Plaintiff's FAC with a second motion to dismiss. (Doc. No. 20.) On August 4, 2025, the Court denied Defendant's first motion to dismiss as moot and vacated the hearing set for that motion. (Doc. No. 21.) On August 25, 2025, Plaintiff filed its opposition. (Doc. No. 22.) On August 26, 2025, Defendant filed its reply. (Doc No. 23.) On October 7, 2025, the Court took Defendant's second motion to dismiss under submission. (Doc. No. 26.) For the reasons set forth below, the Court **DENIES** Defendant's motion.

## Background

As alleged in the FAC, Plaintiff Joe Esquivel is a citizen and resident of California and Defendant Mona Lee Inc. is a Delaware corporation headquartered in Massachusetts. (Doc. No. 19, FAC, ¶¶ 8–10.) On February 2, 2024, Plaintiff allegedly registered his telephone number ending in 4489 on the national do-not-call registry. (Doc. No. 19, FAC, ¶ 35.) From November 5, 2024 to November 22, 2024, Defendant sent Plaintiff text messages regarding its solar products and services. (Doc. No. 19, FAC, ¶ 39.) These messages included responses to inquiries, prompts to schedule phone consultations, reminders for scheduled phone consultations, and an advertisement for Black Friday deals. (Doc. No. 19, FAC, Ex. A.) Plaintiff further alleges that Defendant either did not have written do-not-call policies, had policies that did not comply with the minimum requirements of the TCPA, 47 C.F.R. § 64.1200(d), or did not properly implement such policies at the time of the texts. (Doc. No. 19, FAC, ¶ 47.)

Defendant moves to dismiss on the ground that Section 227(c)(5) of the TCPA does not provide a private right of action for Plaintiff because text messages are not "telephone solicitations" or "calls" under the TCPA. (Doc. No. 20.) Additionally, in the alternative, Defendant argues that the text messages are responses to inquiries within the scope of an "established business relationship." (Doc. No. 20.) Plaintiff's opposition argues that Section 227(c)(5) grants him a private right of action because text messages constitute "telephone solicitations" and "calls" under the TCPA. In addition, Plaintiff also alleges that he sufficiently

pled facts regarding Defendant's solicitation and that Defendant's factual arguments are premature for a motion to dismiss. (Doc. No. 22.) The Court addresses each argument in turn.

## **Discussion**

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court may grant a Rule 12(b)(6) motion to dismiss only if the motion lacks "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint sufficient on its face need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." Id. at 555. When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017). However, a court need not accept legal conclusions as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### II. Scope of Section 227 and Text Messages

**\*2** Defendant argues under statutory construction that a text message does not constitute a telephone solicitation or call under the TCPA. (Doc. No. 20.) In opposition, Plaintiff cites case law including Ninth Circuit authority and FCC guidance that a text message constitutes a telephone solicitation and call under the TCPA. (Doc No. 22.)

Congress enacted the TCPA "to address a growing number of telephone marketing calls and certain telemarketing practices thought to be an invasion of consumer privacy ..." In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14018 (June 26, 2003). To that end, Section 227(c) "protect[s] residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Section 227(c)(5) provides a private right of action against solicitations violating the national do-not-call registry to any person who receives "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of" 47 C.F.R. § 64.1200(c). 47 U.S.C. § 227(c)(5); see Barton v. JMS Assoc. Mktg., LLC, 2023 WL 2009925 (9th Cir. Feb. 15, 2023) (finding a private right of action under Section 227(c)(5) for violation of Section 64.1200(c)(2)). Both Section 227(a)(4) and Section 64.1200(f)(15) define telephone solicitation as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(f)(15).

Supreme Court and Ninth Circuit precedent conclude that text messages qualify as calls under the TCPA. The Supreme Court explicitly held in Campbell-Ewald Co. v. Gomez that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." 577 U.S. 153, 156 (2016). Ninth Circuit precedent echoes the same, such as in Satterfield v. Simon & Schuster, Inc. where the panel held that "a text message is a 'call' within the meaning of the TCPA." 569 F.3d 946, 952 (9th Cir. 2009). The Ninth Circuit elaborated on this in Van Patten v. Vertical Fitness Group, LLC, where it explained that "telemarketing text messages [ ], absent consent, present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA." 847 F.3d 1037, 1043 (9th Cir. 2017) ("Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients."). More recently, the Ninth Circuit has held that unwanted text messages qualify as an injury in fact sufficient to confer standing for a TCPA claim. See Hall v. Smosh Dot Com, Inc., 72 F.4th 983, 988 (9th Cir. 2023); Van Patten, 847 F.3d at 1043; Chennette v. Porch.com, Inc., 50 F.4th 1217, 1221 (9th Cir. 2022). Plaintiff has alleged in its FAC that Defendant's text messages were in contravention of both Plaintiff's do-not-call registration and repeated requests to stop. (Doc. No. 19, FAC, ¶¶ 1–3, 36–47; Ex. A.)

Additionally, FCC guidance states that text messages constitute calls under the TCPA. Within both Section 227(b) and Section 227(c), Congress codified a grant of authority to the FCC to prescribe regulations guiding the enforcement of the TCPA. 47

U.S.C. §§ 227(b)(2); 227(c)(1)–(4). A 2024 FCC regulation explicitly confirmed that Section 227(c) applies to text messages, stating "[t]he Commission adopts the proposal to codify the National DNC Registry's existing protections to text messages. Texters must have the consumer's express invitation or permission before sending a marketing text to a wireless number in the DNC Registry." Targeting and Eliminating Unlawful Text Messages, Implementation of the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls, 89 Fed. Reg. 5098, 5101 (Jan. 26, 2024). The adoption came shortly after, effective March 26, 2024, amending Section 64.1200(e) to state that "paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers ..." 47 C.F.R. § 64.1200(e); Targeting and Eliminating Unlawful Text Messages, 89 Fed. Reg. at 5099.

**\*3** Defendant states that "[a]s the Supreme Court reaffirmed in Loper Bright, the judiciary—not the executive branch—must interpret statutes in accordance with their text, and that while courts once deferred to the Federal Communications Commission's expansive interpretation of 'call,' such deference is no longer required." (Doc. No. 20 (citing Loper Bright Enters. v. Raimondo, 603 U.S. 369 (2024); McLaughlin Chiropractic Assocs. v. McKesson Corp., 606 U.S. 146 (2025).) Loper Bright and McLaughlin did not wholly abrogate FCC guidance. And significantly, McLaughlin did not examine the issue in this motion of whether a text message qualifies as a call under the TCPA. See McLaughlin, 606 U.S. at 146 (holding that "[t]he Hobbs Act does not bind district courts ... to an agency's interpretation of a statute.").

Although FCC guidance is no longer binding on district courts, its regulations can still inform a district court's analysis. Before its 2024 clarification, the FCC issued at least two regulations stating that texts are covered under the TCPA. See 2003 Rules & Reguls., 18 F.C.C. Rcd. at 14115 ("We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number ... [t]his encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls"); In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961 ¶ 107 (July 10, 2015) ("Glide raises the issue of whether SMS text messages are subject to the same consumer protections under the TCPA as voice calls. We reiterate that they are.").

Given the language of the TCPA, precedent, and FCC regulatory guidance, the Court concludes that Plaintiff's allegations regarding Defendant's text messages rise to a cause of action under Section 227(c)(5).

### III. Section 227(a)(4) Exception

Defendant also argues that the text messages at issue do not constitute telephone solicitations because they fall under one of Section 227(a)(4)'s exceptions. Section 227(a)(4)(B) states that "telephone solicitation" "does not include a call or message to ... any person with whom the caller has an established business relationship." 47 U.S.C. § 227(a)(4)(B). Section 64.1200(f)(5) elaborates that an established business relationship is a "prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration ... on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call." 47 C.F.R. § 64.1200(f)(5).

In opposition, Plaintiff argues that Defendant's factual arguments misconstrue the allegations in the complaint and are premature in a motion to dismiss. (Doc. No. 22.) Plaintiff cites to the allegations of the FAC the requests it made to Defendant to cease communication:

• "Stop"

• "Mona Lee stop sending me messages."

• "Stop I don't appreciate it."

• "I didn't request any appointments with your company so stop sending me messages please, the time that you message me it's too early, please have considerations of others, and why do you want with my utility bill? That's private [information] and

not for me to discuss with you!! Who are you looking for? Can you disconnect every communication with your Company because I have no business with you at all. Did someone send you to bother me with your texts?"

• "Unsubscribe me please, I didn't request any inquiries on your business."

**\*4** • "Unsubscribe me, I never signed up for your text, so stop."

(Doc. No. 22 (quoting Doc. No. 19, FAC, Ex. A).)

When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. Los Angeles Lakers, 869 F.3d at 800. Defendant argues that all its text messages to Plaintiff were sent pursuant to their established business relationship. (Doc. No. 20.) To support this, Defendant points out that the content of its automated text messages "support[s] a reasonable inference that they were sent in response to a ... inquiry or application." (Doc. No. 20 (emphasis removed).) Defendant's argument that such messages were sent in response to Plaintiff's inquiries is not apparent from the allegations in the FAC. And Plaintiff alleges in the FAC that he continuously received text messages from Defendant despite requesting that Defendant stop. (Doc. No. 19, FAC, ¶ 36–47.) The precise nature and context of the text messages is a factual matter for discovery and better suited for a motion for summary judgment when the record is more developed.

## Conclusion

For the foregoing reasons, the Court **DENIES** Defendant Mona Lee Inc.'s motion to dismiss. The Court orders Defendant to file an answer within 30 days of the date of this order.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 3275607

---

**End of Document**                                                                 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Franklin v. Upland Software, Inc., Not Reported in Fed. Supp. (2019)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 21 of 93

2019 WL 433650

Only the Westlaw citation is currently available.

United States District Court, W.D. Texas, Austin Division.

Ricky R. FRANKLIN

v.

UPLAND SOFTWARE, INC.

1-18-CV-00236-LY

|

Signed 02/01/2019

**Attorneys and Law Firms**

Ricky R. Franklin, Stockbride, GA, pro se.

Carlos R. Soltero, Matthew Murrell, Cleveland Terrazas PLLC, Austin, TX, for Upland Sofware, Inc.

### REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL UNITED STATES DISTRICT JUDGE

ANDREW W. AUSTIN, UNITED STATES MAGISTRATE JUDGE

**\*1** Before the Court are Plaintiff's Motion for Summary Judgment (Dkt. No. 13), Defendant's Response (Dkt. No. 18), and Plaintiff's Reply (Dkt. No. 20); and Plaintiff's Motion to Dismiss Defendant's Counterclaims (Dkt. No. 15), Defendant's Response (Dkt. No. 17), and Plaintiff's Reply (Dkt. No. 19). The undersigned submits this Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

Plaintiff Ricky Franklin brings this suit against Upland Software company alleging that Upland Software committed violations of the Telephone Consumer Protection Act (TCPA). Franklin alleges that Upland violated the TCPA and Georgia Code, O.C.G.A. § 46-5-27(i), when it sent a number of unsolicited text messages to his phone. Upland responded by asserting counterclaims against Franklin, including fraud and fraud by non-disclosure. Franklin then filed both a motion for summary judgment seeking relief on his affirmative claims, and a motion to dismiss attacking Upland's counterclaims.

## II. LEGAL STANDARD

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323–25 (1986); Washburn v. Harvey, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable

to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

**\*2** Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also, Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Supreme Court recently expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009). Finally, although this Court construes the briefs of *pro se* litigants liberally, a *pro se* litigant must still comply with the court rules of procedural and substantive law. *Bird v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981). *See also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (internal quotation marks and citations omitted), *cert. denied*, 537 U.S. 1200 (2003).

## III. ANALYSIS

### A. Motion for Summary Judgment

Upland argues that the summary judgment motion should be denied for several reasons, including the fact that Upland did not make or send the texts in question to Franklin because it merely provides software to customers who then "make" or "initiate" calls to consumers, its software does not use an "automatic telephone dialing system" (ATDS) as defined by the TCPA, Upland's software does not use a random number generator, and Upland's customers are only capable of contacting consumers' numbers that have been placed in the software with the consumers' consent.

Franklin appears to be a serial litigator under the TCPA. In one of these suits, filed in Illinois, he also attempted to sue a mobile marketing company that only provided content routing software to its customers and did not send text messages. *Franklin v. Express Text, LLC*, 2017 WL 6540044, at *2 (N.D. Ill. Aug. 2, 2017). [1] As noted, Upland contends that it too does not send text messages, but rather only provides the platform by which its customers are able to compile phone numbers and send text messages to only those who have consented to receive them. The TCPA provides that:

> It shall be unlawful for any person within the United States ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic

> telephone dialing system or an artificial or prerecorded voice...to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. § 227(b)(1)(A). This prohibition includes sending text messages. *Blow v. Bijora, Inc,* 855 F.3d 793, 798 (7th Cir. 2017).

Some courts have read the TCPA to strictly apply only to the entity making or initiating the call. [2] Other courts have expanded the liability to include both the entity making the calls and the company who hired and directed the entity to make or initiate the calls. [3] Upland argues that its particular situation does not fit within this latter line of cases because it merely provides a platform for others to make or send texts, and urges the Court to follow the reasoning of *Klein v. Commerce Energy, Inc.*, where the court refused to impose a "broad sweeping extension of liability" under the TCPA to any entity involved in the transaction because the statutory text did not impose such a liability and because the court was not persuaded that parties should be held liable "merely because they stand to benefit from a call." *Klein v. Commerce Energy, Inc.*, 256 F.Supp.3d 563, 578 n.7 (W.D. Pa. 2017). The Court agrees. First, Upland provided a detailed breakdown to the Court of how its cloud-based software platform works. (Dkt. No. 18, Exhibit 1). The platform generally allows a company to capture and store consent records of individuals who have "opted in" to receive text messages from that company. The process "to make" a call or send a text requires no involvement from Upland, but rather requires Upland's customer to log onto its platform and set up a mobile messaging campaign from a list of individuals who have opted into a messaging campaign. After setting up the lists, the customer drafts the content of the text message and then selects the date and time the text message is to be sent, and, after reviewing the content of the message and time to be sent, sends or schedules the text to be sent. In addition, none of the platforms that Upland uses allow for automatic or predictive dialing. The platforms require significant human intervention and sorting on almost all aspects of the text messages and the platforms do not have the capacity to act as an auto dialer. In the Court's examination of the summary judgment evidence, it can find nothing to suggest that Upland initiated the text messages or that an ATDS was used. To the extent that Franklin relies on a theory of vicarious liability, he does not succeed in his motion. Here, as in *Franklin*, the plaintiff has not put forward any evidence to show that Upland has been an agent of the entity that sent the text messages, or vice-versa, and the Court couldn't find anything in the record that even remotely suggested it. And Franklin's reliance on an FCC ruling that gave the term ATDS a broad scope is misplaced, as the D.C. Circuit recently overturned this interpretation, finding it was "utterly unreasonable in the breath of its regulatory inclusion." *ACA Int'l v. FCC*, 855 F.3d 687, 699 (D.C. Cir. 2018).

**\*3** Finally, Franklin brings a claim for violation of Georgia's No Call Law. The relevant portions of this statute state:

> Any person who has received more than one telephone solicitation within any 12 month period by or on behalf of the same person or entity in violation of subsection (c) or (g) of this Code section may either bring an action to enjoin such violation; bring an action to recover for actual monetary loss from such knowing violation or to receive up to $2,000.00 in damages for each such knowing violation, whichever is greater; or bring both such actions.

O.C.G.A. § 46-5-27(i).

> No person or entity shall make or cause to be made any telephone solicitation to the telephone line of any residential, mobile, or wireless subscriber in this state **who has given notice to the commission**, in accordance with regulations promulgated under subsection (d) of this Code section, **of such subscriber's objection to receiving telephone solicitations**.

Franklin v. Upland Software, Inc., Not Reported in Fed. Supp. (2019)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 24 of 93

§ 46-5-27(c) (emphasis added).

> Any person or entity who makes a telephone solicitation to the telephone line of any residential, mobile, or wireless subscriber in this state shall, at the beginning of such call, state clearly the identity of the person or entity initiating the call.

§ 46-5-27(g)(1).

> No person or entity who makes a telephone solicitation to the telephone line of a residential, mobile, or wireless subscriber in this state shall knowingly utilize any method to block or otherwise circumvent such subscriber's use of a caller identification service.

§ 46-5-27 (g)(2). Franklin does not submit any evidence that would even suggest there has been a violation of § 46-5-27(c). For example, he submits no evidence that he objected and gave notice to the commission of not wanting telephone solicitations. Furthermore, Franklin does not allege that Upland violated any portion of § 46-5-27(g), including evidence that Upland did not identify itself or attempted to circumvent a caller identification service. Notably, Franklin, in his motion for summary judgment, barely addresses the Georgia Law and provides no argument or case law suggesting that Upland is liable. Perhaps most importantly, Georgia's No Call Law explicitly defines "telephone solicitation" to mean "any *voice communication* over a telephone line for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." § 46-5-27(b)(3). Franklin's Complaint is based on unsolicited text messages, not voice communications. Hence, Franklin has failed to demonstrate that he is entitled to judgment as a matter of law as to his Georgia claim.

For the reason set forth above, the undersigned recommends that Franklin's motion for summary judgment be denied.

## B. Motion to Dismiss Upland's Counterclaims

Upland's answer includes a counterclaim, in which it sues Franklin for common law fraud and fraud by nondisclosure. In short, Upland alleges that Franklin solicited the very texts he now claims in this lawsuit were unsolicited. Franklin argues that Upland's counterclaims should be dismissed in their entirety because Upland can't prove what Franklin did to prompt Upland to contact him on his cell phone, because Upland introduced hearsay, and because the counterclaims are retaliation for Franklin bringing his lawsuit. The Court disagrees. Taking all of Upland's factual allegations as true, as the Court must under Rule 12(b)(6), Upland has pled enough factual content to allow the Court to draw the reasonable inference that Franklin is liable for the misconduct alleged.

**\*4** With regard to the fraud by nondisclosure claim, [4] Upland alleges that Franklin had knowledge by November 2017 at the latest, that someone by the name of Benita Ross had opted in to receive the very text messages at issue at the phone number at issue. Upland alleges that Franklin knew this material fact and that Upland was ignorant of the facts and did not have an equal opportunity to discover the facts. Upland also alleges with specificity that Franklin had intimate knowledge of the TCPA, and therefore, had a duty to speak by opting out of the text messages and failed to do so to induce Upland's client to continue to send Franklin text messages. Upland alleges that it, and more importantly its third-party client, did indeed rely on the failure to disclose and continued to send text messages to the phone number at issue, as Upland took actions pursuant to its contractual obligations. Finally, Upland alleges that it was injured as a result of the nondisclosure and had to incur costs associated with what it views as a spurious and setup lawsuit. These allegations meet of Rule 12(b)(6) and state a claim for relief that is plausible on its face.

Franklin v. Upland Software, Inc., Not Reported in Fed. Supp. (2019)

Case 1:25-cv-01083-JPW   Document 32-1   Filed 12/19/25   Page 25 of 93

Upland also brings a common-law fraud claim. [5] Here too, Upland's counterclaim has pled sufficient facts to survive a motion to dismiss. Again, accepting Upland's factual allegations as true, Upland contends that Franklin knew prior to his demand letter and the filing of the present suit that Franklin or Ms. Ross had affirmatively given Upland or third parties consent to receive text messages from Upland's third party providers at the phone number at issue. Upland pleads that Franklin knew the representations he made to the contrary were false and he intended Upland to rely on Franklin's representation so that Upland would be required to fulfill its contractual obligations with third parties who would then send Franklin text messages that they believed had been requested by Franklin. Upland contends that it suffered an injury by having to spend both employee time and resources to fulfill its contractual obligations based on Franklin's representations. This is enough to state a claim to relief that is plausible on its face.

### IV. RECOMMENDATION

Based on the preceding discussion, the undersigned Magistrate Judge **RECOMMENDS** that the District Judge **DENY** Plaintiff's Motion for Summary Judgment (Dkt. No. 13) and **DENY** Plaintiff's Motion to Dismiss Defendant's Counterclaims (Dkt. No. 15).

### V. WARNINGS

 **\*5** The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

### All Citations

Not Reported in Fed. Supp., 2019 WL 433650

### Footnotes

1    *See also* the six cases cited in Upland's counterclaim, Dkt. No. 12 at ¶ 3.

2    *See Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014); *Golan v. Veritas Entm't, LLC*, 2014 WL 2095310, at \*4 (E.D. Mo. May 20, 2014).

3    *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014) (allowing defendant to be held vicariously liable under the TCPA where there is an agency relationship); *Hartley-Culp v. Green Tree Servicing, LLC*, 52 F.Supp.3d 700, 703 (M.D. Pa. 2014) (TCPA can impose liability vicariously upon any entity on whose behalf a third party places a call); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, at \*4 (N.D. Ill. Mar. 19, 2013) (TCPA creates vicarious liability against entity when it sends unsolicited communications on another party's behalf); *Accounting Outsourcing, LLC v. Verizon Wireless Personal Communications*, 329 F.Supp.2d 789, 805-06 (M.D. La. 2004); *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F.Supp.3d 765, 774 (N.D. Ill. 2014) (same).

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 26 of 93

Franklin v. Upland Software, Inc., Not Reported in Fed. Supp. (2019)

4    Under Texas law, the elements of fraud by nondisclosure are: (1) the defendant failed to disclose facts to the plaintiff, (2) the defendant had a duty to disclose those facts, (3) the facts were material, (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts, (5) the defendant was deliberately silent when it had a duty to speak, (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, (7) the plaintiff relied on the defendant's nondisclosure, and (8) the plaintiff was injured as a result of acting without that knowledge. *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App.–Dallas 2013).

5    The elements of a common-law fraud claim are: (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation: and (4) the plaintiff suffered an injury by actively and justifiably relying on that representation. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011).

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.   6

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 27 of 93

2024 WL 184449
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Gerard JACKSON, Plaintiff,

v.

DIRECT BUILDING SUPPLIES LLC, Defendant.

No. 4:23-CV-01569
|
Signed January 17, 2024

**Attorneys and Law Firms**

Anthony I. Paronich, Broderick Law, P.C., Hingham, MA, Jeffrey M. Bower, Bower Law Associates, PLLC, State College, PA, for Plaintiff.

Brian J. Murren, Kevin L. Hall, Tucker Arensberg, P.C., Camp Hill, PA, for Defendant.

**MEMORANDUM OPINION**

Matthew W. Brann, Chief United States District Judge

## I. BACKGROUND

**\*1** In October 2023, Plaintiff, Gerard Jackson, filed a one-count amended complaint against Defendant, Direct Building Supplies, doing business as Renu Solar.[1] In November 2023, Direct Building Supplies filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[2] It also moves to strike Jackson's class allegations pursuant to Federal Rule of Civil Procedure 12(f).[3] The motion is now ripe for disposition; for the reasons that follow, it is denied.

## II. DISCUSSION

### A. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[4] and *Ashcroft v. Iqbal*,[5] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "[6] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[ ] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[7]

When deciding a motion to dismiss, a court generally considers only the allegations in the complaint, exhibits attached thereto, and facts of public record.[8] Normally, to go consider anything beyond those sources, a motion to dismiss must be converted to a motion for summary judgment.[9] But consideration of materials outside the complaint is not completely barred on a 12(b)(6) motion. Courts may consider any documents that are integral or explicitly relied upon in the complaint.[10] "However, before

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 28 of 93

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

materials outside the record may become the basis for a dismissal, several conditions must be met." [11]  "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." [12]  It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document. [13]

**\*2**  In this matter, Direct Building Services has attached an email described in the Amended Complaint to its Reply Brief to substantiate its allegations that Jackson may actually have solicited Direct Building Services' call. [14]  But while Jackson references this email in his amended complaint, [15]  this Court cannot find that it is "integral" to the amended complaint. This email only adds context to support the plausibility that Jackson received calls from Direct Building Services, and is not actually necessary to establishing his TCPA claims. Jackson does not reference the contents of this email; he references the simple fact that Direct Building Services' employee emailed him, in support of his allegation that Direct Building Services contacted him to solicit the sale of solar panels. [16]  Nor does this proposition hinge solely upon the email; Jackson also alleges that the number from which he received a prior call was advertised as Direct Building Services' phone number. [17]

Direct Building Services also inspects various TCPA lawsuits filed by Jackson which it asserts were filed with different phone numbers listed for Jackson. [18]  Direct Building Services points to the suit against it in the Court of Common Pleas of Centre County, alleging calls to (814) 238-5007; this lawsuit, alleging calls to (814) 876-XXXX; and three separate class actions filed before this Court in 2020, 2021, and 2023, alleging calls to (814) 238-XXXX, (814) 876-XXXX, and (814) 238-XXXX. [19]  Direct Building Services contends that these "inconsistencies" concerning which telephone constitutes Jackson's residential number make Jackson an inadequate class representative. [20]

However, Direct Building Services' attempt to insert new factual matter into the amended complaint is inconsistent with the purpose of a motion to dismiss, which inspects the adequacy of the *pleadings*. While the Court recognizes that Direct Building Services has based its argument solely on Court filings, only one of these filings relates to the allegations in Jackson's amended complaint at all. [21]  And this filing is not "integral" to the complaint, which is based on the calls placed *after* Jackson filed his initial lawsuit against Direct Building Services; it only contextualizes and supports the plausibility of Jackson's assertion that he received unsolicited calls from Direct Building Services. Some courts have found at summary judgment that a TCPA plaintiff who owns multiple cellphones specifically for the purpose of orchestrating TCPA litigation does not have standing to sue, but such a finding is only appropriate after discovery. [22]  Even considering Jackson's prior filing against Direct Building Services, all it shows is that Jackson has had two cellphone numbers at different points in time. This Court must still assume the truth of Jackson's allegation that the cellphone number specified in this complaint is his actual residential phone number.

Believing it has laid the groundwork to cast doubt upon whether Jackson's phone number is in fact residential, Direct Building Services disputes Jackson's allegation that his phone bill proves the residential character of his cellphone number. [23]  As Jackson alleges this fact without attaching the phone bill, Direct Building Services "requests that this Court require Plaintiff provide his phone bill to substantiate his otherwise bald allegations concerning the residential nature of the phone number (814) 876-XXXX as part of its consideration of the instant Motion." [24]  But Jackson's phone bill is also not integral to his complaint, and the Court may take his assertion about the phone bill to be true for purposes of dismissal.

Finally, based on an audio recording of Jackson's call which is purportedly in its possession, Direct Building Services states that Jackson gave express written consent to receive its calls under the false name "Barry Johnson." [25]  These allegations are based upon evidence outside the scope of the complaint and fall far outside of the scope of dismissal. If true, Direct Building Services' allegations are significant to its affirmative defense, but that affirmative defense is irrelevant here. A motion to dismiss evaluates the sufficiency of the *plaintiff's* allegations, and no defense of consent is apparent from the face of Jackson's complaint. [26]

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 29 of 93

**\*3** All the documents referenced by Direct Building Services' Reply Brief are only tangentially related to Jackson's amended complaint. Therefore, this Court will not consider the attached email, referenced court filings or the allegations which Direct Building Services' bases upon its supposed recording of Jackson's call.

### B. Facts Alleged in the Amended Complaint

The facts alleged in the amended complaint, which this Court must accept as true for the purposes of this motion, are as follows.

Gerard Jackson, a Pennsylvania resident, placed his number on the National Do Not Call Registry. [27] Jackson alleges that his telephone number is residential, used for personal calls only, and not associated with a business or registered to a business. [28] He further alleges that the telephone bill for this number only lists his own name. [29]

Direct Building Services offers solar services, [30] and makes telemarketing calls to consumers to generate leads. [31] Because Jackson received telemarketing calls from Direct Building Services despite placing his name on the Do Not Call Registry, he filed suit against it in early 2021. [32] But this only marked the beginning of this dispute. Direct Building Services placed five more telemarketing calls to Jackson from August 9, 2021, through September 28, 2021. [33] Each call which was answered followed a similar script: the caller advertised residential solar electric product and installation services offered by Direct Building Services. [34]

Jackson highlights a particular call in his amended complaint. [35] According to Jackson, a September 2, 2021 call using a "spoofed Caller ID" began with a similar telemarketing pitch, from someone identifying himself as "Edmund." [36] After Jackson answered Edmund's questions, he was transferred to someone identifying himself as "Jacob." [37] This person continued to discuss the sale of solar panels with Jackson until the phone disconnected. [38] Jacob then immediately called Jackson back that same day, which transmitted Direct Building Services' advertised telephone number to Jackson. [39] Jackson then received an email from the telemarketer, "Jacob Dimpsey," which confirmed that the call was attributable to Direct Building Services. [40]

Jackson again filed suit. [41] Yet still, he received four more calls from Direct Building Services on July 5, July 19, August 1, and September 8, 2023. [42] These calls, like the previous ones, followed a similar script advertising Direct Building Services' solar products. [43] Jackson states that "the calls were clearly sent by the Defendant promoting their goods as counsel for the Defendant provided a recording of the final call to counsel for the Plaintiff." [44] Jackson alleges that he never consented to any of these calls. [45]

Based on these facts, Jackson brings a class action suit against Direct Building Services for violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227. [46] He seeks to represent a class tentatively defined as follows:

> All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of the Defendant (3) within a 12-month period, (4) from four years prior the filing of the Complaint. [47]

### C. Analysis

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 30 of 93

**\*4**  Direct Building Services argues that claims under TCPA section 227(c)'s private right of action are statutorily unavailable for calls placed to cellphones, and that in any case Jackson has failed to plausibly allege a violation of the TCPA. This Court rejects both arguments.

The TCPA sought to curb the invasion of privacy caused by abusive telemarketing practices. [48] One of the TCPA's reforms provides for the Do Not Call registry, a "consumer-driven process" to limiting telemarketing calls. [49] Any "residential telephone subscriber" may place his name on the National Do Not Call Registry, and placing a call to any "residential telephone subscriber" whose name is on the National Do Not Call registry is an abusive telemarketing act. [50] Consumers may then bring suit through 47 U.S.C. § 227(c)'s private right of action if two telemarketing calls are made within a twelve-month period. [51]

In support of its motion to dismiss, Direct Building Services argues that cellphone numbers are not "residential." [52] But while our Court of Appeals has not expressly decided this issue, it is far from a novel question. The weight of existing authority indicates that cellphone users may be considered residential telephone subscribers, although whether a cellphone is used for residential purposes involves a more fact-intensive question. In addition to this persuasive authority, subsection 227(c) and the TCPA's text, structure, and purpose all belie Direct Building Services' reading.

The Eastern District of Pennsylvania has recently opined that "[t]he consensus in this Circuit is that Do Not Call claims may apply to cell phones." [53] This consensus is well-founded. Regulations implemented shortly after the TCPA was passed further define residential subscribers to include a "subscriber to a telephone exchange service that is not a business subscriber," a definition which plainly does not distinguish between cellphones and landline phones. [54] Therefore, the Federal Communications Commission, which was empowered to implement the TCPA's Do Not Call provisions through administrative rulemaking, [55] has explicitly noted that because "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections ... wireless subscribers may participate in the national do-not-call list." [56]

**\*5**  The United States Court of Appeals for the Fourth Circuit has applied the logical next step from this rulemaking decision: a number placed on the Do Not Call Registry is presumptively residential for purposes of section 227(c)'s private right of action, else it would not have been registered in the first place. [57] The United States Court of Appeals for the First Circuit has likewise opined: "[the] argument that cell phone users are not 'residential telephone subscribers' runs headlong into the FCC's express statements to the contrary." [58] Other courts have found similarly. [59]

The contrary authority cited by Direct Building Services relies on two ill-founded textual arguments. In *Shelton v. Fast Advance Funding, LLC*, which predated *Dudley v. Vision Solar*, the Eastern District of Pennsylvania opined on the term "residential telephone" in dicta. [60] It first noted that "residential" means "used as a residence or by residents," and "resident" means "living in a place for some length of time," or "one who resides in a place." [61] Therefore, that court stated that the "plain language" of the term "residential telephone" limits that term to phones exclusively used in a residence, and therefore excludes "a cellular telephone, which can be used anywhere." [62] However, "plain language" is not a magical incantation. A statute's "plain language" is indeed decisive, but only when that language is susceptible to just one meaning—that is what makes the language "plain." Otherwise, appealing to plain language when attempting to define ambiguous terms takes the conclusion for granted.

"Slicing a statute into phrases while ignoring their contexts" is a "formula for disaster" [63] because "[t]he full body of a text contains implications that can alter the literal meaning of individual terms." [64] *Shelton v. Fast Advance Funding, LLC*, articulates a wooden reading of the TCPA's text which obscures its ambiguity by fixating on the word "residential" alone, rather than placing it in semantic context. Section 227(c)(1) does not merely use the term "residential" or "residential telephone;" in describing the Do Not Call registry, it refers to a "residential telephone subscriber." [65] While this language is facially ambiguous, the best

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 31 of 93

reading of the word "residential" is not that it modifies the "telephone," but rather that "residential" and "telephone" *both* modify the "subscriber." So instead of describing a "subscriber" who owns a "residential telephone," Section 227(c)(1) describes a "telephone subscriber" who has subscribed for "residential," *i.e.*, personal, purposes. [66] "Residential" is therefore used in the broader sense of "relating to a resident" to distinguish such a subscriber from a business or commercial telephone subscriber, who cannot be added to the Do Not Call registry.

**\*6** The structure of subsection 227(c) itself supports the point. The subsection never references any such thing as a "residential telephone;" only "telephone subscribers" and "residential subscribers." [67] When Congress authorizes the F.C.C. to create the Do Not Call registry in section 227(c)(3), it describes a list of "telephone numbers" held by "residential subscribers:" "a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations." [68] Congress again refers to "residential subscribers" rather than "residential telephones" in section 227(c)(3)(E). Finally, in a subsequent amendment which seems to endorse the F.C.C.'s understanding of a "residential subscriber" as a non-business subscriber rather than defying that distinction, section 227(a)(1)(2)(A) distinguishes between a "business subscriber" and a "residential subscriber." [69]

Contrary to *Shelton*'s reasoning, the TCPA's broader structure supports rather than undermines this reading of the term "residential telephone subscriber." *Shelton*'s second textual argument relies on the *expressio unius* canon, which reasons that the expression of one thing implies the exclusion of others. The fact that the TCPA references "cellular telephone service" in the prior subsection supposedly "evidenc[es] that both Congress and the FCC were aware of the distinction between a cellular telephone and a residential telephone and purposely protected only 'residential telephone subscribers' under § 227(c)." [70] But "[t]he *expressio unius* canon applies only when 'circumstances support a sensible inference that the term left out must have been meant to be excluded.' " [71] As Congress also referred to a "residential telephone *line*" in section 227(b), [72] this same logic can be turned on its head. Had Congress wished to limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that the registry is limited to a "residential telephone *line*," as Congress used that term in the preceding subsection. [73]

**\*7** Section 227(c)'s focus on the telephone subscriber demonstrates that the term "residential" is a "functional term not tethered to a particular technology," [74] focusing instead on the subscriber's privacy rights. This is in stark contrast to other sections of the statute, describing technology such as a "telephone facsimile machine," a "cellular telephone service," and indeed, a "residential telephone *line*." [75] Section 227(c)'s focus on the "telephone subscriber" who uses his telephone for "residential" purposes is underscored by the full context of section 227(c)(1), which draws attention to the subscriber's privacy rights rather than his telephone's technological capabilities. "The Commission shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." [76]

This reading is confirmed by the only reference to "residential telephone subscribers" in the TCPA's Congressional findings, which speaks broadly to privacy interests: "evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." [77] As was true in 1991 and as is more true today, cellphones are often used in the residence for personal purposes as well as in other locations, and indeed many exclusively use cellphones in their residence and do not own landline phones. [78] If anything, telemarketing calls to personal cellphones pose a *greater* invasion of privacy to telephone subscribers than do telemarketing calls to landline phones, because they can invade one's privacy at any time and in any place.

"The TCPA cannot be read to regulate unsolicited telemarketing only when it affects the home." [79] As the Third Circuit has instructed, "because the TCPA is a remedial statute, it should be construed to benefit consumers." [80] Indeed the Third Circuit has stated in a different context that "[a]lthough it is true that the TCPA placed particular emphasis on intrusions upon the

privacy of the home in 1991, this expression of particular concern for residential calls does not limit—either expressly or by implication—the statute's application to cell phone calls." [81]

Because of the F.C.C. contrary regulations, *Shelton*'s burden was not to offer the best interpretive argument, but to offer section 227(c)'s only plausible construction. Yet the statute's language is ambiguous at best, and therefore the F.C.C.'s interpretation is at least a "permissible construction of the statute." [82] There is little reason to doubt the interpretation adopted by the majority of courts and the F.C.C. In light of contrary regulations, the statutory argument proffered by Direct Building Services has been rightly maligned as relying on "isolated authority" contrary to "common sense." [83]

**\*8** Direct Building Services' remaining arguments against Jackson hinge on whether he has plausibly alleged himself to be a residential telephone subscriber. These arguments can be dismissed in short order because they all demand more from Jackson's amended pleading than is appropriate at the dismissal stage. Ironically, Direct Building Services' assertion that Jackson's status as a residential telephone subscriber is "unsupported" and "conclusory" [84] is itself unsupported and conclusory. Jackson's allegations that his cellphone is for personal use, and that it is registered on the Do Not Call Registry, are presumptively sufficient for his allegation to be plausible. [85] It is not clear what else Direct Building Services would require of Jackson's complaint for it to survive dismissal.

### D. Motion to Strike Analysis

#### 1. Law

When pleadings contain "redundant, immaterial, impertinent, or scandalous matter," a party may move to strike under Federal Rule of Civil Procedure 12(f). [86] The narrow purpose of a motion to strike is to "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." [87] District Courts have broad discretion in granting a Rule 12(f) motion to strike. [88] However, striking pleadings is a "drastic remedy" to be used "sparingly." [89]

"District courts within the Third Circuit typically conclude that motions to strike class action allegations filed before plaintiffs move for class certification are premature." [90] Because "the shape and form of a class action evolves only through the process of discovery," [91] "courts rarely grant motions to strike under Rule [12(f) or Rule] 23(d)(1)(D) prior to class discovery, doing so only where '[n]o amount of additional class discovery will alter th[e] conclusion' that the class is not maintainable." [92]

#### 2. Fail-Safe Class

One rare instance in which courts do grant motions to strike prior to class discovery is where a plaintiff has alleged a "fail-safe class." "A fail-safe class is one that defines its members by the plaintiff's liability – all individuals wronged by the defendant, in the classic formulation." [93] "[S]uch a class impermissibly skirts the bar of *res judicata*" because "either the class members win or, if the defense prevails, no class exists, and the putative class members, unbound by any judgment, are free to pursue individual claims." [94]

**\*9** Direct Building Services states that Jackson's class depends on whether someone received a "telemarketing or 'solicitation call,' " and points out that "telephone solicitation" is statutorily defined to include only persons who received such calls without consent. [95] But Direct Building Services is mistaken. The term "solicitation" does not appear anywhere within Jackson's class definition. [96] As Jackson points out in his Brief in Opposition, he intentionally used the term "telemarketing" to ensure that

no analysis of consent was contained within his class definition. [97] Instead, he intended telemarketing to "mean what it says, which is 'selling or advertising by telephone.' " [98] So there is no basis to claim that he has proffered a fail-safe class.

As Jackson notes, his case is then indistinguishable from *Jackson v. Meadowbrook Financial Mortgage Bankers Corp.* [99] In *Jackson v. Meadowbrook*, I refused to strike an identical TCPA class definition offered by this same plaintiff alleging this same cause of action. [100] Therefore, minimal analysis is required; as many courts within this Circuit have found, Jackson has avoided the fail-safe concerns posed by *Zarichny v. Complete Payment Recovery Services* by defining his class without reference to whether the class members first consented to be called. [101]

### 3. Class Action Requirements

Even if a class is not fail-safe, class allegations may be struck where "no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23." [102] To be certified, a class must satisfy predominance and superiority under Rule 23(b)(3). This requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." [103] A successful class must also meet the following four prerequisites:

(1) the class is so numerous that joinder of all members is impracticable [numerosity];

(2) there are questions of law or fact common to the class [commonality];

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and

(4) the representative parties will fairly and adequately protect the interests of the class [adequacy of representation]. [104]

But again, "a motion for class certification is a more appropriate vehicle for arguments about class propriety." [105] Here, Direct Building Services contests the commonality and numerosity requirements.

Direct Building Services first argues that Jackson "has not alleged that these calls were placed at the same time, by the same caller, or featured the same conversation." [106] Somehow, counsel has made the same argument, in the exact same language, that I already rejected in *Jackson v. Meadowbrook*. [107] I reject it here for the same reasons; issues concerning the relationship between an alleged telemarketer and putative class members are "difficult to resolve without discovery," and it is too early in the litigation to make any such judgment. [108] Moreover, "[c]ommonality does not require an identity of claims or facts among class members; instead, the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." [109]

**\*10** Direct Building Services also argues that Jackson's pleadings cannot possibly satisfy the numerosity requirement, which is generally satisfied when at least 40 class members are present, [110] because the "[t]he Complaint is devoid of any other allegations of unwanted calls being made to anyone other than plaintiff." [111] *Jackson v. Meadowbrook* also rejected this argument. [112] Once again, discovery is needed. The mere fact that a plaintiff received an unsolicited telemarketing call renders plausible the assertion that at least 40 other individuals did as well. [113] Requiring Jackson to list other class members who Direct Building Services called *before* he has access to such names, which are currently within the exclusive possession of Direct Building Services, would likely result in nearly all class actions being stricken before discovery.

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 34 of 93

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

#### 4. Individualized Fact Finding

Direct Building Services' last argument concerns individualized fact-finding. As our Court of Appeals has explained, class certification is inappropriate where a class cannot be ascertained "without extensive and individualized fact-finding or 'mini-trials.'" [114] Direct Building Services argues that extensive individualized fact-finding would be required to determine whether an individual received more than one telemarketing call. [115] But this twisted logic would mean that TCPA class actions can never be brought. "Had Congress wanted to preclude aggregation of individual TCPA claims, it could have so provided in the TCPA itself or in CAFA [Class Action Fairness Act]." [116] Nor does it appear difficult to determine how many telemarketing calls were placed to class members, assuming Direct Building Services keeps records of its business calls; this fact can easily be ascertained through a company database. [117]

Direct Building Services also points to Jackson's inclusion of persons called by its agents or third parties as requiring individualized fact-finding. [118] But this is as simple as the fact-finding involved in determining whether someone has received more than one telemarketing call from Direct Building Services itself. Such class members are likely ascertainable from the company databases of any agents or third parties advertising for Direct Building Services, which can be obtained during discovery, [119] and otherwise involves the same or similar claims under the TCPA. That is sufficient for the class to remain intact at this point in the litigation.

### III. CONCLUSION

Defendant's motion to dismiss pursuant to Rule 12(b)(6), and Defendant's motion to strike pursuant to Rule 12(f), are denied.

An appropriate Order follows.

### All Citations

Not Reported in Fed. Supp., 2024 WL 184449

---

### Footnotes

1      Doc. 20.

2      Doc. 22.

3      *Id.* at 5-6.

4      550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

5      556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

6      *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

7      *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

8      *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 35 of 93

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

9      *See* Fed. R. Civ. P. 12(d).

10     *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

11     *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

12     *Id.*; *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).

13     *Faulkner*, 463 F.3d at 134.

14     Doc. 24-1.

15     Doc. 20 ¶32.

16     *Id.* ¶¶24-32.

17     *Id.*¶31.

18     Doc. 25 at 3-5.

19     *Id.*

20     *Id.* at 5.

21     *Id.* at 2.

22     *Stoops v. Wells Fargo Bank, N.A.*, 197 F.Supp. 782, 800 (W.D. Pa. 2016).

23     Doc. 25 at 6.

24     *Id.* at 7.

25     Doc. 25 at 3 ("To the extent any call was placed to Plaintiff to (814) 476-XXXX, it was made after Defendant received express written consent for contact from an individual named "Barry Johnson" to contact that number ... it would appear 'Barry Johnson,' is in fact the Plaintiff in this matter. From these facts and inferences that can be deduced therefrom, Plaintiff cannot adequately represent his proposed putative class.").

26     *See Rosenberg v. LoanDepot.com LLC*, 435 F.Supp. 3d 308, 318 (D. Mass. 2020); *see also Bethel v. Jendoco Constr. Corp.*, 570 F.3d 1168, 1175 (explaining that affirmative defenses such as a statute of limitations may only be considered on a motion to dismiss if the bar is "apparent on the face of the complaint.").

27     Doc. 20 ¶¶6, 18.

28     *Id.* ¶19-21.

29     *Id.* ¶22.

30     *Id.* ¶15.

31     *Id.* ¶16.

32     *Id.* ¶23.

33     *Id.* ¶24

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 36 of 93

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

34    *Id.* ¶¶25-26.

35    *Id.* ¶¶27-31.

36    *Id.* ¶27.

37    *Id.* ¶28.

38    *Id.* ¶29.

39    *Id.* ¶31.

40    *Id.* ¶32.

41    *Id.* ¶33.

42    *Id.* ¶¶33-35.

43    *Id.* ¶¶36-37.

44    *Id.* ¶38.

45    *Id.* ¶40.

46    *Id.* at 10.

47    *Id.* ¶43.

48    *Barr v. Am. Ass'n of Political Consultants*, ––– U.S. ––––, 140 S.Ct. 2335, 2343, 207 L.Ed.2d 784 (2020); *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 132 S.Ct. 740, 181 L.Ed.2d 881 (2012).

49    *Krakauer v. D.I.S.H. Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

50    47 U.S.C. § 227(c)(3); 47 C.F.R. §§ 64.1200(c)(2).

51    47 U.S.C. § 227(c)(5).

52    Doc. 23 at 16.

53    *Dudley v. Vision Solar, LLC*, No. 21-659, 2021 WL 3077557 at *––––, 2021 U.S. Dist. LEXIS 135608 at *13 (E.D. Pa. July 21, 2021); *see also Atkinson v. Choice Home Warranty*, No. 22-04464, 2023 WL 166168 at *––––, 2023 U.S. Dist. LEXIS 5570 at *12-13 (D.N.J. Jan. 11, 2023).

54    47 C.F.R. § 64.2305(d).

55    47 U.S.C. § 227(c)(1).

56    *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,18 F.C.C. Rcd. 14014, at *63-64 (F.C.C. July 3, 2003); *see also Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("considerable weight should be accorded" to an agency's "construction of a statutory scheme it is entitled to administer").

57    *Krakauer*, 925 F.3d 643, 657 (4th Cir. 2019).

58    *Murray v. Grocery Delivery E-Servs.*, 55 F.4th 340, 348 (1st Cir. 2022).

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 37 of 93

59    *See, e.g.*, *Chennette v. Porch.com, Inc.*, 40 F.4th 1217, 1223-24 (9th Cir. 2022) (finding that cellphone used for both business and personal purposes was not residential, but noting that "During oral argument, defendants conceded that cell phones can be 'residential' for purposes of § 277(c)"); *Strange v. ABC Co.*, No. CV 19-1361, 2021 WL 798870 at *——, 2021 U.S. Dist. LEXIS 38882 at *10-11 (W.D. La. Mar. 1, 2021).

60    *See Shelton v. Fast Advance Funding, LLC*, 378 F.Supp. 3d 356, 362 n.7 (E.D. Pa. 2019), *aff'd*, No. 19-2265, 2020 WL 1027802, 2020 U.S. App. LEXIS 6676 (3d Cir. Mar. 3, 2020). Other decisions have relied upon the same "plain language" interpretation in *Shelton*. *See Gaker v. Q3M Ins. Sols.*, No. 3:22-CV-00296-RJC-DSC, 2023 U.S. Dist. LEXIS 44919, at *6-7 (W.D.N.C. Feb. 7, 2023) (Cayer, M.J.) (citing *Shelton* for its interpretation of this language); *Cunningham v. Politi*, No. 4:18-CV-00362-ALM-CAN, 2019 U.S. Dist. LEXIS 102447, at *10-11 (E.D. Tex. Apr. 30, 2019) (Nowak, M.J.), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 102050 (E.D. Tex. Apr. 30, 2019); *Cunningham v. Britereal Mgmt.*, No. 4:20-cv-144-SDJ-KPJ, 2020 WL 7391693 at *——, 2020 U.S. Dist. LEXIS 236135 at *16-17 (E.D. Tex. Nov. 20, 2020) (Johnson, M.J.), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 235956 (Dec. 16, 2020).

61    *Id.* (citing *Residential*, https://www.merriam-webster.com/dictionary/residential *and Resident*, https://www.merriam-webster.com/dictionary/resident).

62    *Id.*

63    *Hermann v. Cencom Cable Assocs.*, 978 F.2d 979, 982 (7th Cir. 1992) (Easterbrook, J.).

64    ANTONIN SCALIA & BRIAN A. GARNER, READING LAW 356. *See also Yates v. United States*, 574 U.S. 528, 536, 135 S.Ct. 1074, 191 L.Ed.2d 64 (2015) (Ginsburg, J.).

65    47 U.S.C. § 227(c)(1).

66    *See Mantha v. Quotewizard.com, LLC*, No. 19-12235-LTS, 2022 WL 325722 at *——, 2022 U.S. Dist. LEXIS 19502 at *13 (D. Mass. Feb. 3, 2022) ("[T]he inquiry to determine whether a phone number qualifies as a 'residential telephone subscriber' focuses on whether the subscriber has and uses the phone for residential purposes.").

67    47 U.S.C. §§ 227(c)(2) ("telephone subscribers"), 227(c)(3) ("residential subscribers"), 227(c)(3)(E) ("residential subscriber"), 227(c)(3)(C) ("telephone subscriber"). The broader term "telephone subscriber" is never used to describe the persons placed on the Do Not Call registry, but instead is used when describing notice and comment procedures for the F.C.C.'s administrative rulemaking.

68    47 U.S.C. § 227(c)(3).

69    47 U.S.C. § 227(a)(2)(A) ("The term 'established business relationship' ... shall include a relationship between a person or entity and a business subscriber subject to the same terms applicable under such section to a relationship between a person or entity and a residential subscriber."). Although this subsection explicitly notes that it applies "for purposes only of subsection (b)(1)(C)(i)," it nevertheless demonstrates Congress' ratification of the F.C.C.'s residential subscriber —business subscriber dichotomy. *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 78, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) (Scalia, J., Concurring) (opining that while Title IX's implied private right of action may not have originally permitted monetary damages, subsequent legislation demonstrated Congress's understanding of this reading and therefore ratified it).

70    *Shelton*, 378 F.Supp. 3d at 363 n.7; *Gaker*, 2023 U.S. Dist. LEXIS 44919, at *6-7; *Cunningham v. Britereal Mgmt.*, 2020 U.S. Dist. LEXIS 236135, at *16-17; 47 U.S.C. § 227(b)(1)(A)(iii)., (b)(2)(C), (b)(2)(H).

71    *N.L.R.B. v. SW General, Inc.*, 580 U.S. 288, 137 S.Ct. 929, 197 L.Ed.2d 263 (2017).

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 38 of 93

72    47 U.S.C. § 227(b)(1)(B) (emphasis added).

73    Alternatively, one district court reads the term "residential" to describe a subscriber's "telephone" but concludes that "residential" telephones, rather than standing in contrast to cellular telephones, are a broad category that subsumes the term. *See Tessu v. AdaptHealth, LLC*, No. SAG-23-0364, 2023 WL 5337121, 2023 U.S. Dist. LEXIS 145211 (D. Md. Aug. 17, 2023) ("[The TCPA does not] draw an express distinction between a residential telephone and a cellular telephone. It simply makes reference at different points to each, but does not provide that one could not be subsumed within the other.").

74    *Mantha*, 2022 U.S. Dist. LEXIS 19502, at *8-9.

75    *Id.* at 8-9 (citing 47 U.S.C. §§ 227(d)(2), (b)(2)(c)); 47 U.S.C. § 227(b)(1)(B).

76    47 U.S.C. § 227(c)(1).

77    Act Dec. 20, 1991, Pub. L. 102-243, § 2, 105 Stat. 2394.

78    *See In re Rules*, 18 F.C.C. Rcd. at 14038-39 ("wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones"); *Klassen v. Solid Quote LLC*, No. 23-cv-00318-GPG-NRN, 2023 WL 7544185 at *——, 2023 U.S. Dist. LEXIS 203237 at *5-6 (D. Colo. Nov. 14, 2023) ("By the end of 2022, seventy percent of adults [were] estimated to reside in wireless-only households") (citing STEPHEN J. BLUMBERG AND JULIAN V. LAKE, NATIONAL CENTER FOR HEALTH STATISTICS, WIRELESS SUBSTITUTION: EARLY RELEASE OF ESTIMATES FROM THE NATIONAL HEALTH INTERVIEW SURVEY, JANUARY-JUNE 2022, at 1 (2022)).

79    *Cranor v. 5 Star Nutrition*, 998 F.3d 686, 691 (5th Cir. 2021) (ruling upon section 227(b)).

80    *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

81    *Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d Cir. 2017).

82    *See Chevron*, 467 U.S. at 843, 104 S.Ct. 2778; 47 U.S.C. § 227(c)(2) (authorizing the Federal Communications Commission to prescribe regulations "to implement methods and procedures for protecting the privacy rights described"); 47 C.F.R. § 64.2305(d) (defining "residential telephone subscribers").

83    *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 131 (N.D. Tex. 2020). Even if this Court were to accept this statutory interpretation argument, Direct Building Services has not explained why the F.C.C.'s ruling would not prohibit such a holding. *See Tessu*, 2023 U.S. Dist. LEXIS 145211, at *10-13.

84    Doc. 23 at 15.

85    *In re Rules*, 18 F.C.C. Rcd. at 14038-39; *Krakauer*, 925 F.3d at 649-50; *Barton v. Temescal Wellness*, LLC, No. 4:20-cv-40114-TSH, 525 F.Supp.3d 195, 2021 WL 858402 at *——, 2021 U.S. Dist. LEXIS 42211 at *13-14 (D. Mass. Mar. 8, 2021).

86    Federal Rule of Civil Procedure 23(d)(1)(D) also authorizes courts to strike pleadings relating to class actions by stating that in evaluating class actions, the court may issue orders that "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly.").

87    *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F.Supp. 2d 393, 402 (E.D. Pa. 2002).

88    *Wirt v. Bon-Ton Stores, Inc.*, 134 F.Supp. 3d 852, 857 (M.D. Pa. 2015).

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 39 of 93

89    *Dann v. Lincoln Nat'l Corp.*, 274 F.R.D. 139, 142 (E.D. Pa. 2011).

90    *Reed v. Friendly's Ice Cream, LLC*, No. 15-0298, 2015 WL 7941217, 2016 U.S. Dist. LEXIS 62197, at * (M.D. Pa. May 11, 2016).

91    *Abdallah v. The Coca-Cola Co.*, No. 1:98-CV-3679, 1999 U.S. Dist. LEXIS 23211, at *6 (N.D. Ga. July 19, 1999).

92    *Goode v. LexisNexis Risk & Info. Analytics*, 284 F.R.D. 238, 244 (E.D. Pa. 2012) (citing *P.V. ex rel. Valentin v. Sch. Dist. of Phila.*, No. 2:11-CV-04027, 2011 U.S. Dist. LEXIS 125370, at *12 (E.D. Pa. Oct. 31, 2011) *and Thompson v. Merck & Co., Inc.*, Nos. 01-1328, 01-3011, 2004 WL 62710 at *——, 2004 U.S. Dist. LEXIS 540 at *9 (E.D. Pa. Jan. 6, 2004)).

93    *Zarichny v. Complete Payment Recovery Servs.*, 80 F.Supp. 3d 610, 624 (E.D. Pa. 2015).

94    *Id.*

95    Doc. 34 at 13 (citing 47 U.S.C. § 227(a)(4)).

96    *See* Doc. 20 ¶43.

97    Doc. 24 at 14-15.

98    *Id.* at 15-16.

99    No. 4:22-CV-01659, , 2023 WL 2472606, 2023 U.S. Dist. LEXIS 41211 (M.D. Pa. Mar. 10, 2023).

100    *Compare* Complaint, Doc. 1 ¶31, *Jackson v. Meadowbrook Fin. Mortg. Bank*, No. 4:22-CV-01659 (M.D. Pa.), *with* Doc. 20 ¶43.

101    *See Abella v. Student Aid Center*, No. 15-3067, 2015 U.S. Dist. LEXIS 147299, at *12 (E.D. Pa. Oct. 30, 2015); *Johnson v. Ally Financial Inc.*, No. 1:16-CV-1100, 2017 WL 3433689, 2017 U.S. Dist. LEXIS 126817 (M.D. Pa.), *O.P. Schuman & Sons, Inc. v. DJM Advisory Grp., LLC*, No. 16-3563, 2017 WL 634069 at *——, 2017 U.S. Dist. LEXIS 22402 at *13, (E.D. Pa. Feb. 16, 2017).

102    *Luciano v. Teachers' Ins. and Annuity Ass'n of Am. – Coll. Ret. Equities Fund*, No. 15-6726 (ZNQ) (DEA), 2022 WL 1044969 at *——, 2022 U.S. Dist. LEXIS 64671 at *3 (D.N.J. Apr. 7, 2022).

103    Fed. R. Civ. P. 23(b)(3).

104    Fed. R. Civ. P. 23(a).

105    *Luciano*, 2022 U.S. Dist. LEXIS 64671, at *3.

106    Doc. 23 at 10.

107    2023 U.S. Dist. LEXIS 41211, at *16 ("Meadowbrook contends that Jackson's class allegations do not satisfy the typicality requirement because although he alleges that Meadowbrook 'made potentially thousands of separate calls to separate potential class members,' he 'has not alleged that these calls were placed at the same time, by the same caller, or featured the same conversation.' ").

108    *Id.* at *17 (quoting *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93-94 (3d Cir. 2011), *opinion reinstated*, Nos. 09-3105/09-3532/09-3793, 2012 U.S. App. LEXIS 11946 (3d Cir. Apr. 17, 2012)).

109    *Jackson v. Locust Med., LLC*, No. 4:22-CV-00424, 2022 WL 16540675 at *——, 2022 U.S. Dist. LEXIS 197057 at *5 (M.D. Pa. Oct. 28, 2022) (quoting *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001)).

Jackson v. Direct Building Supplies LLC, Not Reported in Fed. Supp. (2024)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 40 of 93

110    *In re NFL Players Concussion Injury Litig.*, 821 F.3d 430, 427 (3d Cir. 2016) ("There is no magic number of class members needed for a suit to proceed as a class action. We have set a rough guidepost in our precedents, however, and stated that numerosity is generally satisfied if there are more than 40 class members.").

111    Doc. 23 at 11.

112    *Jackson v. Meadowbrook Fin. Mortg. Bank*, 2023 U.S. Dist. LEXIS 41211, at *17 n.76.

113    *See id.* ("his factual allegations—namely, that he received three telemarketing calls on the same day, all of which followed a script, al of which came after his attorney sent Meadowbrook a cease-and-desist letter, 'make clear [the] *en masse* nature of the calling.' ") (citations omitted).

114    *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012).

115    Doc. 23 at 12.

116    *Landsman*, 640 F.3d at 95.

117    *See Marcus*, 687 F.3d at 593 (collecting cases requiring proposed classes to be ascertainable from a company database).

118    Doc. 23 at 9; *see Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd*, 577 U.S. 153, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016).

119    *See, e.g., Jackson v. Aragon Adver., LLC*, No. 4:23-MC-00812, 2023 WL 7413332, 2023 U.S. Dist. LEXIS 201988 (M.D. Pa. Nov. 9, 2023).

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 41 of 93

2020 WL 14028040
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Robert D. KLINE, Plaintiff,

v.

ADVANCED INS. UNDERWRITERS, LLP, Jason Wyman, and Marilyn E. Morillo, Defendants.

CIVIL ACTION NO. 1:19-CV-00437
|
Signed June 23, 2020

**Attorneys and Law Firms**

Robert D. Kline, McClure, PA, Pro Se.

Leonard Fornella, Babst, Calland, Clements & Zomnir, P.C., Pittsburgh, PA, Timothy Allan Schoonover, Babst, Calland, Clements & Zomnir, P.C., State College, PA, for Defendants.


**REPORT AND RECOMMENDATION**

KAROLINE MEHALCHICK, United States Magistrate Judge

 **\*1** *Pro se* plaintiff Robert D. Kline commenced this action on February 4, 2019, in the Mifflin County Court of Common Pleas, asserting claims against Florida-based defendants Advanced Insurance Underwriters, LLP (AIU), Jason Wyman, and Marilyn E. Morillo (collectively, "Defendants") for violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 (TCPA). (Doc. 1-2). After Defendants removed the action to federal court, the Court granted their motion to dismiss Kline's first amended complaint for lack of personal jurisdiction. (Doc. 2; Doc. 11). With the Court's permission, Kline filed a second amended complaint, which Defendants now move to dismiss, or for more specific pleadings or a transfer of venue. (Doc. 12; Doc. 13; Doc. 14). Despite two lapsed deadlines and a Court order directing him to respond to Defendants' motion and brief in support, [1] Kline has not filed a brief in opposition. (*See* Doc. 17).

For the following reasons, the Court recommends that Defendants' motion to dismiss (Doc. 14) be **GRANTED**, that Kline's second amended complaint (Doc. 12) be **DISMISSED WITHOUT PREJUDICE** to Kline's refiling his complaint in the Southern District of Florida, and that the Clerk of the Court be directed to **CLOSE** this case.


**I. BACKGROUND AND PROCEDURAL HISTORY**

In his first amended complaint, Kline alleged that he received several calls from a Pennsylvania area code both before and after he asked the callers, who identified themselves as agents of the Health Registration Center (the "Center"), to stop calling him. (Doc. 5, at 9-10). He knew the calls were made using an automatic telephone dialing system (ATDS) because when he answered, he heard silence and an electronic "blip" before connecting with a live caller – and when he called the numbers back, he was unable to reach anyone. (Doc. 5, at 12). In June 2017, Kline received an ATDS call from Erica, a purported agent of the Center, who transferred Kline to defendant Marilyn Morillo, who attempted to sell Kline insurance. (Doc. 5, at 12). Kline's own research revealed that Morillo "was part of the organization with the other Defendants in this lawsuit." (Doc. 5, at 12).

Defendants moved to dismiss the amended complaint for lack of personal jurisdiction based on defendant Jason Wyman's affidavit in which he averred, *inter alia*, that all Defendants are Florida-based, and none of them ever directed any calls

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 42 of 93

Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)

or business into the state of Pennsylvania. Because Kline provided no counter affidavit and instead relied on references to allegations in his unverified amended complaint, the motion to dismiss was granted pursuant to Rule 12(b)(2). (Doc. 11; Doc. 10, at 8 (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984) ("A Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies."))). The undersigned's recommendation, which the District Judge adopted, noted that Kline's allegations did not appear to state a claim for relief as to some of his causes of action.

**\*2** In his second amended complaint, Kline alleges essentially the same set of facts. Beginning in April or May 2017, callers purporting to be agents of the Center began calling his personal cellphone, which was registered on the federal do-not-call registry. (Doc. 12, at 10). Most of the calls originated from the same Pennsylvania area code as Kline's cellphone number, i.e., 507. (Doc. 12, at 10-11). When Kline answered, he heard a few seconds of "dead air" or silence, an electronic "blip," and then a live agent who would begin to discuss health insurance. (Doc. 12, at 11-12). The Center continued to call Kline even after he told its agents to stop calling him, and none of the agents could answer Kline's numerous inquiries about the Center's do-not-call policy. (Doc. 12, at 12-13). Kline's research revealed that the calls were originating from "spoof" numbers. (Doc. 12, at 13). In June 2017, [2] Kline received a call from Erica, an agent of the Center, originating from a number that Kline later verified to be a "spoof" number. (Doc. 12, at 13). Kline "answered [Erica's] questions relating to health insurance in sufficient detail that she transferred him to Defendant Morillo who indicated that she could sell insurance" to him. (Doc. 12, at 13). Through his own research, Kline discovered that Morillo "was part of the organization with the other Defendants in this lawsuit." (Doc. 12, at 13-14).

Kline asserts nine causes of action: (1) negligent violation of the TCPA's ATDS prohibition; (2) knowing and/or willful violation of the TCPA's ATDS prohibition; (3) negligent violation of the TCPA "Sales CALL/DNC" prohibition; (4) knowing and/or willful violation of the TCPA's "Sales CALL/DNC" prohibition; (5) negligent violation of the TCPA's "Do-Not-Call Policy" requirement; (6) knowing and/or willful violation of the TCPA's "Do-Not-Call Policy" requirement; (7) negligent violation of the TCPA's "Do-Not-Call List" requirement; (8) knowing and/or willful of the TCPA's "Do-Not-Call List" requirement; and (9) a state law trespass-to-chattels claim.

Kline seeks $500 for every negligent violation of the above statutes and regulations and $1,500 for every knowing or willful violation of the same. (Doc. 12, at 21). For his claims of trespasses to chattels, Kline seeks $1 for every sales call made to his cellular phone. (Doc. 12, at 21). Kline does not allege the specific date and time of every call for which he seeks damages but asserts that the exchange of discovery will reveal these details. (Doc. 12, at 21). Kline also seeks punitive damages in the amount of $100,000 to "deter others who may otherwise engage in similar willful illegal and deliberate tortuous [sic] conduct ...," prejudgment interest, and litigations costs. (Doc. 12, at 21).

## II. DISCUSSION

Defendants move to dismiss the second amended complaint for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure and failure to state a claim under Rule 12(b)(6). (Doc. 15, at 3-11). Alternatively, Defendants move for a more definite statement under Rule 12(e), or a transfer of venue to the United State District Court for the Southern District of Florida, Ft. Lauderdale Division, pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). (Doc. 15, at 11).

### A. THE TCPA

The Telephone Consumer Protection Act "was intended to combat, among other things, the proliferation of automated telemarketing calls (known as 'robocalls') to private residences, which Congress viewed as a nuisance and an invasion of privacy." *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 322 (3d Cir. 2015). At issue here are subdivisions (b) and (c) of the Act. Subdivision (b) makes it unlawful to use an ATDS to call any cell phone number "other than a call made for emergency purposes or made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). The statute provides for a private right of action that permits "a 'person or entity' [ ] [to] bring an action to enjoin violations of the statute and recover actual damages or $500 in statutory damages per violation." *Leyse*, 804 F.3d at 322 (quoting 47 U.S.C. § 227(b)(3)(A)-(B)).

Willful or knowing violations may give rise to treble damages, "increas[ing] the amount of the award to an amount equal to not more than 3 times the amount available" for actual or statutory damages. (47 U.S.C. § 227(b)(3)).

**\*3** Subdivision (c) of the Act directs the Federal Communications Commission (FCC) to prescribe regulations pursuant to which the FCC implemented a national do-not-call registry and set forth a requirement that telemarketers institute procedures for maintaining lists of individuals who request not to receive calls. 47 U.S.C. § 227(c); *see* 47 C.F.R. § 64.1200(c)–(d). [3] These regulations make it unlawful to initiate a telephone solicitation to a residential telephone subscriber "who has registered his or her telephone number on the national do-not-call registry," or when the person or entity making the call failed to institute procedures for maintaining a do-not-call list. 47 C.F.R. § 64.1200(c)(2), (d). A "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation" of these regulations may bring an action to enjoin such violation and recover the greater of actual loss or $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5)(A)-(B). Subsection (c) also authorizes treble damages for willful or knowing violations of the regulations. 47 U.S.C. § 227(c)(5).

B. PERSONAL JURISDICTION

Rule 12(b)(2) authorizes a defendant to move to dismiss a complaint for lack of personal jurisdiction. Generally, courts "reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). If, however, the plaintiff's "allegations are contradicted by an opposing affidavit," the plaintiff "must present similar evidence in support of personal jurisdiction." *In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d 367, 381–382 (M.D. Pa. 2009). Under long-standing Third Circuit precedent, "at no point may a plaintiff rely on the bare pleadings alone in order to withstand" such a motion. *Patterson v. FBI*, 893 F.2d 595, 603–604 (3d Cir. 1990) (quoting *Time Share Vacation Club*, 735 F.2d 61) (internal quotation marks omitted). As such, "[g]eneral averments in an unverified complaint or response without the support of 'sworn affidavits or other competent evidence' are insufficient to establish jurisdictional facts." *Harris v. Trans Union, LLC*, 197 F. Supp. 2d 200, 203 (E.D. Pa. 2002) (quoting *Time Share Vacation Club*, 735 F.2d at 66, n.9) (internal quotation marks omitted). "Once [a] Rule 12(b)(2) motion is made, [the] plaintiff must respond with actual proofs, not mere allegations." *Patterson*, 893 F.2d at 603.

Generally, a district court exercises personal jurisdiction "to the extent allowed under the law of the forum state." *Allaham v. Naddaf*, 635 F. App'x 32, 37 (3d Cir. 2015) (internal quotation marks omitted) (citing Fed. R. Civ. P. 4(k)(1)(A) (providing for "personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located")). Because the Pennsylvania long-arm statute "allows the exercise of personal jurisdiction to the full extent permitted by the Constitution," the standard for a federal court sitting in diversity in Pennsylvania is whether a defendant has "minimum contacts" with it such that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted); *see* 42 Pa.C.S.A. § 5322. "Having minimum contacts with another state provides 'fair warning' to a defendant that he or she may be subject to suit in that state." *Kehm Oil v. Texaco, Inc.*, 537 F.3d at 290, 299–300 (3d Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). As such, personal jurisdiction under the Due Process Clause depends upon "the relationship among the defendant[s], the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

**\*4** Two types of personal jurisdiction exist over non-resident defendants: general and specific. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). General jurisdiction may be asserted when a non-resident defendant has maintained "systematic and continuous contacts with the forum state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."). When subject to the general jurisdiction of a state, "that [defendant]

Case 1:25-cv-01083-JPW   Document 32-1   Filed 12/19/25   Page 44 of 93

Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)

can be called to answer any claim against [it], regardless of whether the subject matter of the cause of action has any connection to the forum." *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).

On the other hand, "[s]pecific jurisdiction exists when the claim arises from or relates to [a defendant's] conduct purposely directed at the forum state." *Marten*, 499 F.3d at 296 (citing *Helicopteros*, 466 U.S. at 414-415 n.9). To determine whether specific jurisdiction over a defendant exists, courts must engage in a three-part inquiry. *O'Connor*, 496 F.3d at 317. First, a court must consider whether a defendant "purposefully directed [its] activities" at the forum state. *O'Connor*, 496 F.3d at 317 (quoting *Burger King*, 471 U.S. at 472). Second, "the litigation must 'arise out of or relate to' at least one of those activities." *O'Connor*, 496 F.3d at 317 (quoting *Helicopteros*, 466 U.S. at 414). Third, if the prior requirements are met, the court "may consider additional factors to ensure that exercising jurisdiction would be consistent with notions of 'fair play and substantial justice.' " *O'Connor*, 496 F.3d at 317 (quoting *Burger King*, 471 U.S. at 476).

Defendants move to dismiss Kline's claim for lack of personal jurisdiction given Defendants' Florida residences, AIU's principal place of business, and Wyman's affidavit. In his affidavit, Wyman avers that (1) he and defendant Morillo reside in Florida and have resided in Florida during all relevant times; (2) AIU is a limited liability company with a principal place of business located in Florida; (3) Wyman is a "member" of AIU, and Morillo was employed by AIU as a commercial lines manager from about 2013 to 2016; (4) none of AIU's officers, directors, or employees ever resided in Pennsylvania; (5) AIU's Board of Directors and shareholders have never conducted meetings in Pennsylvania; (6) AIU has not appointed an agent for service of process in Pennsylvania; (7) AIU has never conducted any business in Pennsylvania nor directed any advertising in publications directed primarily at Pennsylvania; (8) neither AIU nor anyone acting on its behalf ever directed any telephone calls into Pennsylvania for the purpose of soliciting insurance business or contracted with a telephone marketing company to make unsolicited sales calls into Pennsylvania; and (9) neither AIU nor anyone acting on its behalf ever made or directed anyone to make a telephone sales call to Kline at any time. (Doc. 4, at 2-3).

In recommending dismissal of Kline's first amended complaint, the Court noted that to overcome Wyman's affidavit, Kline was required to "respond with actual proofs, not mere allegations," and "at no point may [he] rely on the bare pleadings alone in order to withstand" a Rule 12(b)(2) motion. (Doc. 10, at 6) (quoting *Patterson*, 893 F.2d at 603 (internal quotation marks omitted)). Kline did not provide any proof in response to Defendants' motion to dismiss to first amended complaint, and he has failed to respond entirely to the instant motion. As such, Kline relies "on the bare pleadings alone," which is prohibited under Rule 12(b)(2) and related case law. *See, e.g., Turner v. Prince George's Cty. Pub. Sch.*, 694 F. App'x 64, 65 (3d Cir. 2017) (affirming Rule 12(b)(2) dismissal where the District Court "granted the [Rule 12(b)(2)] motion after [plaintiff] failed to respond for nearly five months" and "dismissed her complaint without prejudice" for failure "to produce any competent evidence to support personal jurisdiction").

 **\*5** Even if the Court treated the second amended complaint as if it were an affidavit submitted in response to Defendants' motion, Kline still would not prevail. The requirement that the Court accept as "true all of the allegations in the complaint" in deciding a Rule 12(b)(2) motion no longer applies when "those allegations are contradicted by the defendants' affidavits." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012). Kline verified the second amended complaint, but a pleading can serve as an affidavit only to the extent the allegations therein are made upon person knowledge. *See* 10B Wright, Miller & Kane, Federal Practice and Procedure § 2738 (4th ed.) ("Although a verified pleading, like any pleading, may be presented to the court in a summary-judgment proceeding, it will not be accorded the probative force of an affidavit unless it meets the requirements of Rule 56(c)(4)."); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Many of Kline's allegations are made upon information and belief or with reference to Kline's unspecified research. The non-conclusory allegations made upon personal knowledge are that the Center called Kline several times; on one call, Erica from the Center transferred Kline to defendant Morillo, who then tried to sell him insurance; and Kline was unable to reach anyone at the Center. There are no non-conclusory allegations that AIU, Morillo, or Wyman initiated any calls to Kline, and his attempts

Case 1:25-cv-01083-JPW   Document 32-1   Filed 12/19/25   Page 45 of 93

Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)

to tie the calls from the Center to Defendants are bare and unsupported. For example, Kline believes that "Defendants have [a] direct relationship with [the] Center and therefore have vicarious liability for the illegal, ultra vires activities that related to telemarketing directed toward [Kline]," but he provides no non-conclusory support for that belief and omits reference to the source from which he obtained that information, if any. (Doc. 12, at 13-14). Kline refers to research he conducted, but he does not specify what the research entailed or what he uncovered that led to his conclusions.

Accordingly, on record before the Court, there does not appear to be an adequate basis for invoking general or specific jurisdiction over Defendants. Regarding general jurisdiction, Kline does not specify the number of calls he allegedly received from Defendants to his mobile phone number. Even if Kline had pleaded the number of calls with specificity, there is no indication that the calls were of a continuous and systematic nature such that exercising jurisdiction over Defendants would comport with the demands of due process. *See, e.g., Abramson v. CWS Apartment Homes, LLC*, No. CV 16-426, 2016 WL 6236370, at *2 (W.D. Pa. Oct. 24, 2016) (finding no basis for general jurisdiction in TCPA claim against defendant with a Texas principal place of business and no other ties to Pennsylvania); *Hugo v. Galant*, No. CIV. A. 86-3776, 1987 WL 4810, at *1 (E.D. Pa. Apr. 29, 1987) ("[O]ne visit and a number of phone calls do not constitute the 'continuous and systematic' contacts necessary to justify general jurisdiction."). Significantly, the allegations are that *the Center* called Kline several times, one such occasion being when Kline was transferred to Morillo, not that Defendants called Kline several times.

It is true that that in TCPA cases, "courts generally find that *specific* personal jurisdiction exists when a defendant sends a message into the forum state by targeting a phone number in that forum." *Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378, at *7 (E.D. Pa. Apr. 5, 2019) (emphasis added); *see also Abramson, LLC*, 2016 WL 6236370, at *4 ("District courts across the country have found purposeful direction based on allegations that a defendant sent its telemarketing call to a number bearing the state's area code."). This case, however, does not involve a defendant who directly initiated a call to a plaintiff in violation of the TCPA, and the conclusory assertions in the complaint, without any further response from Kline in opposition to the Rule 12(b)(2) motion, fall short of establishing that Morillo purposefully directed her conduct at Kline.

 **\*6**  In short, Kline has failed to meet his "ultimate burden ... to demonstrate the existence of jurisdiction by a preponderance of the evidence." *See LaSala v. Marfin Popular Bank Pub. Co.*, Ltd., 410 F. App'x 474, 476 (3d Cir. 2011). It is therefore recommended that Defendants' Rule 12(b)(2) motion to dismiss be granted and Kline's second amended complaint be dismissed for lack of personal jurisdiction.

### C. MOTION TO DISMISS OR FOR A MORE DEFINITE STATEMENT

Because the Court lacks jurisdiction over this claim, the undersigned will not opine on the merits of Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) and motion for a more definite statement under Rule 12(e). Regarding the motion for a more definite statement, because this is Kline's third amended complaint, it does not appear that granting a Rule 12(e) motion would yield a different outcome.

### D. MOTION TO TRANSFER

Alternatively, Defendants move to transfer this case to the Southern District of Florida. Although the Court lacks personal jurisdiction over Defendants in Pennsylvania, it must consider whether transferring the instant action to another forum is a proper alternative to dismissal. If a district court determines that it lacks personal jurisdiction over an action, it shall either dismiss the action, or, "if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed." 28 U.S.C. § 163117; *see D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110 (3d Cir. 2009) (directing the district court on remand to consider transfer pursuant to § 1631 where personal jurisdiction was lacking). Generally, transfer is the option of choice; however, this presumption may be rebutted under consideration of the following three factors: (1) whether transfer would unfairly benefit the proponent; (2) whether transfer would impose an unwarranted hardship on the objector; and (3) whether transfer would unduly burden the judicial system. *Pac. Employers Ins. Co. v. AXA Belgium S.A.*, 785 F. Supp. 2d 457, 475 (E.D. Pa. 2011) (citing *Britell v. United States*, 318 F.3d 70, 74 (1st Cir. 2003)). However, "[t]ransfer decisions fall to the discretion of the District Court," and "may involve undertaking some 'limited

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 46 of 93

Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)

review of the merits' of the underlying claims. *United States v. Foy*, 803 F.3d 128, 137–38 (3d Cir. 2015) (citing *Phillips v. Seiter*, 173 F.3d 609, 611 (7th Cir. 1999)); *Sidari v. Caesar's Pocono Resorts*, 29 F. App'x 845, 847 (3d Cir. 2002). Indeed, "[e]ven though there is a presumption in favor of transfer ... if an action or appeal is fanciful or frivolous, it is in the interest of justice to dismiss it rather than to keep it on life support." *Patchen v. McGuire*, No. CIV.A. 11-5388, 2012 WL 4473233, at *14 (E.D. Pa. Sept. 27, 2012) (citing *Britell*, 318 F.3d at 74).

Upon consideration of these interests, the Court finds that transfer to another district would not be in the interest of justice, particularly given Kline's recent failure to comply with the Court's order directing him to file a brief in opposition. "A court is authorized to consider the consequences of transfer before deciding whether to transfer; that is implicit in the statute's grant of authority to make such a decision, and implies in turn that the court can take a peek at the merits, since whether or not the suit has any possible merit bears *significantly* on whether the court should transfer or dismiss it." *Phillips*, 173 F.3d at 610-11 (emphasis added) (citing *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 818 (1988)); *see also United States v. Holland*, No. 1:01-CR-195-06, 2016 WL 3387170, at *1 (M.D. Pa. June 20, 2016) ("[A]lthough a lack of jurisdiction prevents a court from considering the merits when deciding whether to dismiss the motion, the merits may inform a court's determination of whether the interest of justice warrants a transfer.") (internal citations omitted).

**\*7** The Court finds little merit in Kline's claims. His claims against Wyman in his capacity as an officer of AIU do not appear to be a cognizable theory of liability under the TCPA. Kline asserts that Wyman is *personally liable* "under the 'participation theory' of liability because Wyman is the controlling manager of [AIU]" (Doc. 12, at 7-8), but "a corporate officer is not liable under the TCPA under common law personal liability principles." *See KHS Corp. v. Singer Fin. Corp.*, 376 F. Supp. 3d 524, 530 (E.D. Pa. 2019) (citing *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 160 (3d Cir. 2018) ("We doubt as well, however, whether such common-law personal-participation liability is available against corporate officers under the TCPA.")). Kline has not sufficiently alleged that Wyman "directly participated in any unlawful conduct. Instead, [Kline]'s allegations against [Wyman] appear to be based solely on Wyman's position as [a member or officer] of [AIU]." *See Zelma v. Penn LLC*, No. CV 19-8725, 2020 WL 278763, at *4 (D.N.J. Jan. 17, 2020); *see also Bartkowski v. Foni*, No. CIV. A. 07-1018, 2007 WL 2728844, at *3 (E.D. Pa. Sept. 17, 2007) ("It is well-established that personal jurisdiction 'does not exist simply because [defendants] are agents or employees of organizations which presumably are amenable to jurisdiction in' a particular forum." (quoting *Nicholas v. Saul Stone & Co.*, LLC, 224 F.3d 179, 184 (3d Cir. 2000))); *Cunningham v. Capital Advance Sols., LLC*, No. CV 17-13050, 2018 WL 6061405, at *5 (D.N.J. Nov. 20, 2018) ("[T]o the extent that the TCPA provides a basis for filing suit against a corporate officer in that officer's individual capacity, Plaintiff's allegations in support thereof fail to demonstrate that the Individual Defendants were more than 'tangentially involved' with the complained of telemarketing calls."). The same is true of Morillo, to the extent Kline has asserted she is liable under a participation theory for being a "conspiratorial agent who received the phone calls from the lead generation agent." (Doc. 12, at 9).

Moreover, it is not clear that Kline has alleged an agency relationship giving rise to vicarious liability. One of his claims appears to be that Morillo and Wyman, through AIU, conspired together to create a "spoof" or "sham" entity to make calls in violation of the TCPA. Kline apparently believes that because the Center handed off one call to Morillo, who then tried to sell Kline health insurance, all Defendants therefore controlled the Center and are therefore vicariously liable under agency principles.[4] Given the slim allegations and conclusory references to unknown sources in Kline's complaint, this claim has dubious merit. *See, e.g., Kline v. Elite Med. Labs., Inc.*, No. 1:19-CV-1043, 2019 WL 6828590, at *6 (M.D. Pa. Dec. 13, 2019) ("There is no allegation that Defendant Arriviello directed the callers to call Plaintiff on his behalf, or that Defendant Arriviello caused the callers to reasonably believe that they had the authority to call Plaintiff on Defendant Arriviello's behalf.... Plaintiff has not alleged enough facts to show that the callers were agents of Defendant."); *cf. Hartley-Culp v. Green Tree Servicing*, LLC, 52 F. Supp. 3d 700, 704 (M.D. Pa. 2014) (vicarious-liability TCPA claim stated against Fannie Mae where the direct caller's recorded messages indicated they were sent "on behalf of Fannie Mae").

Based on the above, the Court finds it is not in the interest of justice to transfer this matter to the District Court in Florida.

## E. LEAVE TO AMEND

Finally, although The Third Circuit has instructed that district courts generally must permit a curative amendment if a complaint filed *pro se* is vulnerable to dismissal for failure to state a claim, amendment is not required if it would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Despite being on notice of the defects in his complaints, Kline has failed to address or correct them with each successive filing, and in the end, has failed to file any response to Defendants' present motion to dismiss. As such, the Court finds that further leave to amend would be futile.

## III. RECOMMENDATION

Based on the foregoing, it is recommended that:

1. Defendants' motion to dismiss (Doc. 14) Kline's second amended complaint (Doc. 12) be **GRANTED** for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2);

**\*8** 2. Kline's second amended complaint be **DISMISSED WITH PREJUDICE** and without leave to amend; and

3. The Clerk of the Court be directed to **CLOSE** this case.

### NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **June 23, 2020**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 14028040

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 48 of 93

Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)

---

### Footnotes

1    Throughout their brief in support, Defendants repeatedly incorporate by reference arguments made in their previous filings in this matter. Counsel is reminded that Local Rule 7.8 precludes such incorporation, specifically stating "No brief may incorporate by reference all or any portion of any other brief."

2    Kline alleges this call was the first of the many he received from the Center during which he had sufficient cellular reception to engage in a meaningful inquiry. (Doc. 12, at 12).

3    The procedures instituted require that the person or entity maintain "a written policy, available upon demand, for maintaining a do not-call-list" and record a subscriber's do-not-call "request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made." 47 C.F.R. § 64.1200(d)(1), (3).

4    In additional to alleging that Defendants actively participated in specific TCPA violations, Kline also alleges that Defendants are personally liable for failing to "supervise agents and subordinates." (Doc. 12, at 7).

---

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01083-JPW   Document 32-1   Filed 12/19/25   Page 49 of 93

Kline v. Advanced Insurance Underwriters, LLC, Not Reported in Fed. Supp. (2020)

2020 WL 14028041
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Robert D. KLINE, Plaintiff,

v.

ADVANCED INSURANCE UNDERWRITERS, LLC, et al., Defendants.

Civil No. 1:19-CV-00437
|
Signed July 10, 2020

**Attorneys and Law Firms**

Robert D. Kline, McClure, PA, Pro Se.

Leonard Fornella, Babst, Calland, Clements & Zomnir, P.C., Pittsburgh, PA, Timothy Allan Schoonover, Babst, Calland, Clements and Zomnir, P.C., State College, PA, for Defendants.

## ORDER

JENNIFER P. WILSON, United States District Court Judge

**\*1** Before the court is a report and recommendation issued by United States Magistrate Judge Karoline Mehalchick addressing the Defendants' motion to dismiss the Plaintiff's second amended complaint. (*See* Doc. 18.) Judge Mehalchick recommends that the court grant the motion for lack of personal jurisdiction and accordingly dismiss the second amended complaint without prejudice to Plaintiff's right to refile the case in the United States District Court for the Southern District of Florida. (*Id.* at 2, 12.) [1] Neither party has objected to Judge Mehalchick's report and recommendation.

When neither party objects to a magistrate judge's report and recommendation, a district court is not required to conduct a de novo review of the report and recommendation. *Univac Dental Co. v. Dentsply Int'l, Inc.*, 702 F. Supp. 2d 465, 469 (M.D. Pa. 2010) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). Instead, the court is only required to "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* (quoting Fed. R. Civ. P. 72 advisory committee's note to 1983 addition).

The court has reviewed Judge Mehalchick's report and recommendation and finds no clear error on the face of the record. Accordingly, **IT IS ORDERED AS FOLLOWS**:

  1. Judge Mehalchick's report and recommendation (Doc. 18) is **ADOPTED IN ITS ENTIRETY**.

  2. Defendants' motion to dismiss (Doc. 14) is **GRANTED**.

  3. Plaintiff's second amended complaint (Doc. 12) is **DISMISSED** without prejudice to Plaintiff's right to refile the case in the United States District Court for the Southern District of Florida.

  4. The Clerk of Court is directed to close this case.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 14028041

---

### Footnotes

1    The report and recommendation states in its introduction that dismissal of the case should be without prejudice to Plaintiff's right to refile the case in the Southern District of Florida, but then states in its conclusion that the dismissal should be with prejudice. (*See* Doc. 18 at 2, 16.) In order to avoid any prejudice to the unrepresented Plaintiff, the court will construe the report and recommendation as recommending dismissal without prejudice.

---

**End of Document**                                                © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Linlor v. Five9, Inc., Not Reported in Fed. Supp. (2017)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 51 of 93

2017 WL 2972447

Only the Westlaw citation is currently available.

United States District Court, S.D. California.

James LINLOR, Plaintiff,

v.

FIVE9, INC., Defendant.

Case No.: 17CV218-MMA (BLM)

|

Signed July 11, 2017

|

Filed 07/12/2017

**Attorneys and Law Firms**

James Linlor, Encinitas, CA, pro se.

Lee S. Brenner, Kelley Drye and Warren LLP, Los Angeles, CA, Steven Spencer Elg, Kelley Drye & Warren, Washington, DC, for Defendant.


### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; AND

### GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Hon. Michael M. Anello, United States District Judge

**\*1** On February 3, 2017, Defendant Five9, Inc. removed this action from the Superior Court of California, County of San Diego. *See* Doc. No. 1. In the First Amended Complaint ("FAC"), Plaintiff James Linlor, proceeding *pro se*, alleges Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). *See* Doc. No. 1. Defendant moves to dismiss Plaintiff's FAC under Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 10. Plaintiff has also filed a "motion to substitute," in which Plaintiff requests leave to amend the FAC to add a new defendant. *See* Doc. No. 12. The Court found these matters suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss, Doc. No. 10, and **GRANTS** Plaintiff's motion for leave to amend the FAC, Doc. No. 12.


### BACKGROUND [1]

The FAC asserts claims for violations of the TCPA against Defendant Five9, Inc. ("Defendant Five9") and other unnamed defendants, whom Plaintiff refers to as "John Does #1-#9." Plaintiff alleges Defendant Five9 "is in the business of providing customer contact center solutions, including, but not limited to, predictive and autodialers, and inbound call management." *See* FAC, p. 3. Plaintiff alleges the unnamed defendants are "customers, employees, contractors, or agents working with or for or in some manner in partnership or as purchasers of [Defendant Five9's] services or products, or using [Defendant Five9's] customer contact services in any existing or novel way." *See* FAC, p. 4.

Plaintiff alleges that in approximately October 2016, "Plaintiff began receiving SMS texts to the Plaintiff's cellular telephone from the Defendants." *See* FAC, p. 2. Specifically, Plaintiff alleges he received "[a]t least five (5) text messages ... during 2016 and January 2017." *See* FAC, p. 5. Plaintiff alleges that the "repetitive nature of the text messages indicate that the Defendants' messages were made using an 'automatic telephone dialing system,' as defined by 47 U.S.C. § 227(a)(1)." *See* FAC, p. 5. The FAC states that Defendant Five9 "was identified as the teleco operator/agent responsible for an outbound # 855-790-6802 identified in SMS messages sent to the Plaintiff's cell phone." *See* FAC, p. 3. Plaintiff alleges he does not have a relationship with Defendants, did not provide his cellular telephone number to Defendants, and did not consent to be contacted.

Regarding Defendant Five9's liability, Plaintiff contends Defendant is vicariously liable for violating the TCPA because Defendant provides "the capacity for (and use of) an autodialing function" "as a feature of [Defendant Five9's] software," and provided such software to the unnamed defendants "who appear to have put together the text messages to the Plaintiff's cellphone, including a phone # serviced by [Defendant Five9] for the resulting (hoped for) inbound calls in response to the marketing campaign, and for [Defendant Five9] to profit from the use of [its] software in creating the text messages." *See* FAC, p. 6. Plaintiff emphasizes that the unnamed defendants "initiated the text message 'calls' ... to the Plaintiff's cellphone." *See* FAC, p. 6. Plaintiff contends that Defendant Five9 "manage[d]" the "toll-free number inbound calls" and "profit[ed] from the toll charges and software licensing fees associated with the use of [its] inbound call system, as a precursor to generating sales for the [unnamed defendants, as] recipients of the toll-free calls processed by" Defendant Five9. *See* FAC, p. 7.

**\*2** Defendant moves to dismiss the FAC, arguing Plaintiff fails to sufficiently plead vicarious liability or a predicate TCPA violation, and that Defendant is immune from liability as a common carrier. Plaintiff moves for leave to amend to add a defendant, Futero, Inc., which Plaintiff believes is liable for violating the TCPA.

## LEGAL STANDARD

### A. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Twombly*, 550 U.S. at 545. The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). However, a *pro se* plaintiff's complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L.Ed. 2d 1081 (2007). Courts must construe such pleadings liberally. *Id.*

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## B. Rule 15

Rule 15(a)(2) supplies the standard for amending pleadings within the scheduling order deadlines. [2] *See* Fed. R. Civ. P. 15(a)(2). Pursuant to Rule 15(a)(2), "a party may amend its pleading [ ] with the opposing party's written consent or the court's leave," which should be freely given "when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). The United States Supreme Court has stated:

> **\*3** If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-04000 SC, 2013 WL 1739451, at \*3 (N.D. Cal. Apr. 22, 2013) (stating "the Ninth Circuit has stressed Rule 15's policy of favoring amendments").

## DISCUSSION

### A. Motion to Dismiss

Defendant moves to dismiss the FAC with prejudice on three grounds. First, Defendant argues the FAC fails to sufficiently allege facts in support of Plaintiff's theory that Defendant is vicariously liable for allegedly unlawful text messages. Second, Defendant argues the FAC establishes that Defendant is "a common carrier caught in the crosshairs," and is accordingly immune from liability for violations of the TCPA. *See* Doc. No. 10. Third, Defendant contends the FAC insufficiently alleges a violation of the TCPA. After reviewing Defendant's arguments in support of its motion, and Plaintiff's arguments in response, the Court finds dismissal is proper for the reasons set forth below.

### i. Vicarious Liability

In the FAC, Plaintiff does not allege Defendant is directly liable for violating the TCPA, as Plaintiff admits Defendant did not send the text messages at issue. Rather, Plaintiff asserts Defendant is vicariously liable for TCPA violations. The Court agrees with Defendant that Plaintiff fails to allege facts to support a theory of vicarious liability.

The Ninth Circuit has assumed that "Congress intended to apply" "ordinary tort-related vicarious liability rules" to TCPA claims. *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. 2014), *aff'd*, 136 S. Ct. 663, 193 L.Ed. 2d 571 (2016), *as revised* (Feb. 9, 2016) (deferring also to the Federal Communications Commission's ruling that there may be vicarious liability for TCPA violations under federal common law agency principles). In other words, a defendant may be vicariously liable for a third-party caller's TCPA violations where the plaintiff demonstrates an agency relationship between the defendant and the third-party caller. *Id.* Under traditional agency principles, "[a]n entity may be liable for actions it did not itself take when the unlawful acts were performed by an agent of the entity." *Henderson v. United Student Aid Funds, Inc.*, No. 13CV1845 JLS (BLM), 2017 WL 766548, at \*6 (S.D. Cal. Feb. 28, 2017). "An agency relationship forms 'when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's

control, and the agent manifests assent or otherwise consents so to act.' " *Trenz v. Sirius Xm Radio, Inc.*, No. 15CV0044 AJB (NLS), 2015 WL 11658715, at *2 (S.D. Cal. July 13, 2015) (quoting *France Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-cv-04967-WHO, 2015 WL 925892, at *4 (N.D. Cal. Mar. 2, 2015)) (citing Restatement (Third) of Agency § 1.01 (2006)).

Here, Plaintiff does not allege a traditional agency relationship between Defendant and the unidentified entity or entities responsible for the text messages. The FAC does not allege Defendant had any control over any entity responsible for sending the text messages, nor that any entity acted in any way on Defendant's behalf. In order to allege a traditional agency relationship, Plaintiff would have to allege Defendant "controlled or had the right to control [the entity responsible for the text messages] and, more specifically, the manner and means of the text message campaign they conducted." *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085 (C.D. Cal. 2012), *aff'd*, 582 Fed.Appx. 678 (9th Cir. 2014). "Agency means more than mere passive permission; it involves request, instruction, or command." *Id.* (quoting *Klee v. United States*, 53 F.2d 58, 61 (9th Cir. 1931)). Plaintiff merely alleges Defendant sold software to the entity responsible for sending the messages, and provided the entity with a toll free number with which to receive responses to the messages. Thus, Plaintiff does not allege Defendant had express or actual authority over the entity that sent the alleged text messages.

**\*4** Further, Plaintiff fails to allege either apparent authority or ratification, which may also give rise to vicarious liability. *See id.*; *Thomas*, 879 F. Supp. 2d at 1085; *Thomas v. Taco Bell Corp.*, 582 Fed.Appx. 678, 679 (9th Cir. 2014). Apparent authority "can only 'be established by proof of something said or done by the [alleged principal], on which [the plaintiff] reasonably relied' " to the plaintiff's detriment. *Thomas*, 582 Fed.Appx. at 679. Plaintiff does not allege that he "reasonably relied, much less to [his] detriment, on any apparent authority with which [Defendant] allegedly cloaked" the entity responsible for creating and sending the text messages. *See id.* at 679–80. Finally, Plaintiff fails to allege ratification. A principal may be liable "when it ratifies an originally unauthorized tort," but "the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *See id.* at 680 (quoting *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003)). Plaintiff does not allege the existence of a principal-agent relationship, nor does Plaintiff allege Defendant somehow approved of another entity's violations of the TCPA.

In sum, the FAC fails to sufficiently allege Defendant is vicariously liable for allegedly unlawful text messages created and sent by an unnamed third party.

### ii. Common Carrier

Second, Defendant argues the FAC establishes that it is a common carrier exempt from TCPA liability. Generally, "users of [telecommunications] services, not the carriers providing the services, [are] held liable" under the TCPA. *Kauffman v. CallFire, Inc.*, 141 F. Supp. 3d 1044, 1047 (S.D. Cal. 2015) (quoting *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8776 n.83 (1992)). "Common carriers are not liable under the TCPA absent a 'high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions.' " *Rinky Dink, Inc. v. Elec. Merch. Sys.*, No. C13-1347-JCC, 2015 WL 778065, at *4 (W.D. Wash. Feb. 24, 2015). To determine whether an entity is a common carrier, courts inquire: "(1) Does the entity hold itself out indifferently to all potential users or, if serving a legally-defined class, hold itself out indiscriminately to serve all within that class; and (2) Does the entity allow customers to transmit messages of their own design and choosing?" *Id.* at *5.

However, based solely on the FAC, the Court is unable to make these determinations. The Court, like other district courts have done in analogous cases, declines to find as a matter of law, at the pleadings stage, that Defendant is a common carrier exempt from liability under the TCPA. *See, e.g.*, *Couser v. Pre-paid Legal Servs., Inc.*, 994 F. Supp. 2d 1100, 1104–05 (S.D. Cal. 2014) ("[W]ith only pleadings to go on and no discovery as to the precise relationship between CallFire and Legal Shield, it is simply too early in this litigation for the Court to affirmatively conclude that CallFire is the middleman it claims."); *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 5324291, at *2 (N.D. Cal. Oct. 17, 2014); *Kauffman v. CallFire, Inc.*, No. 3:14-CV-1333-H-DHB, 2015 WL 11237468, at *1 (S.D. Cal. July 22, 2015) (stating that "whether CallFire is a common carrier is a factual issue better suited for resolution at summary judgment").

Accordingly, the Court finds Defendant's second grounds for dismissal unpersuasive at this stage in the proceedings.

### iii. Predicate TCPA Violation

Lastly, Defendant contends Plaintiff fails to sufficiently allege a violation of the TCPA. The TCPA makes it unlawful "for any person ... to make any call ... using any automatic telephone dialing system or an artificial or prerecorded voice" to "a cellular telephone service" or "any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A). Under the TCPA, the term "call" encompasses "both voice calls and text messages." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949 (9th Cir. 2009). An automatic telephone dialing system ("ATDS") is defined as "equipment which has the capacity ... (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). "In reviewing the adequacy of ATDS allegations, courts consider whether, read as a whole, the complaint contains sufficient facts to show that it is plausible that [the] [d]efendants used an ATDS." *Vaccaro v. CVS Pharmacy*, Inc., 2013 WL 3776927, at *2 (S.D. Cal. 2013) (internal quotations and alterations omitted) (citing *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010)).

**\*5** Here, the FAC does not allege the text messages were sent using an ATDS, but rather, states that the "repetitive nature of the text messages *indicate* that the Defendants' messages were made using an 'automatic telephone dialing system,' as defined by 47 U.S.C. § 227(a)(1)." *See* FAC, p. 5. However, the allegation that Plaintiff received five text messages within the span of several months, on its own, is insufficient to allege the entity responsible for sending the text messages was using a device with the capacity to "store or produce telephone numbers to be called, using a random or sequential number generator," and dial those numbers. *See* 47 U.S.C. § 227(a)(1). In other words, "Plaintiff fails to allege 'factual content that allows the court to draw the reasonable inference that the defendant' used a machine capable of random or sequential number generation, and the Court cannot fill the gap with speculation." *See Flores v. Adir Int'l, LLC*, No. CV1500076ABPLAX, 2015 WL 12806476, at *4 (C.D. Cal. May 8, 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Without more, Plaintiff fails to state a plausible claim for violation of the TCPA, even construing Plaintiff's pleadings liberally.

### B. Motion for Leave to Amend to Add New Defendant

Plaintiff requests leave to add Futero, Inc. as a Defendant in this action. *See* Doc. No. 12. Defendant does not oppose Plaintiff's request. At this early stage in the proceedings, courts must liberally grant leave to amend under Rule 15. *See* Fed. R. Civ. P. 15. Accordingly, the Court **GRANTS** Plaintiff's request for leave to amend the FAC to add Futero, Inc. as a Defendant. Plaintiff may not add additional parties without leave of Court.

### <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss, and **DISMISSES** Plaintiff's TCPA claims without prejudice and with leave to amend. *See* Doc. No. 10. The Court **GRANTS** Plaintiff's motion for leave to amend the FAC to add Futero, Inc. as a defendant to this action. *See* Doc. No. 12. The Court further **ORDERS** that Plaintiff must file the Second Amended Complaint on or before **July 28, 2017**.

**IT IS SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2017 WL 2972447

Linlor v. Fives, Inc., Not Reported in Fed. Supp. (2017)

---

### Footnotes

1    Because this matter is before the Court in part on a 12(b)(6) motion to dismiss, the Court must accept as true the allegations set forth in the operative complaint. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

2    Neither the undersigned nor the assigned magistrate judge has issued a scheduling order in this case.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 7650574
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

Julie ORSATTI

v.

QUICKEN LOANS, INC.

Case No. 2:15–cv–09380–SVW–AGR
|
Signed 09/12/2016

**Attorneys and Law Firms**

Adrian Robert Bacon, Todd M. Friedman, Law Offices of Todd Friedman PC, Woodland Hills, CA, for Julie Orsatti.

Brooks R. Brown, Goodwin Procter LLP, Los Angeles, CA, William K. Tayman, Pro Hac Vice, Goodwin Procter LLP, Washington, DC, for Quicken Loans, Inc.

**Proceedings:** IN CHAMBERS ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS [17]

STEPHEN V. WILSON, U.S. DISTRICT JUDGE

### I. Introduction

**\*1** Plaintiff Julie Orsatti, individually and on behalf of all others similarly situated, brings this action against Defendant Quicken Loans, Inc. ("Quicken Loans" or "Defendant"), for negligent and willful violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). First Amended Complaint, ¶¶ 34–41 ("FAC"). The Plaintiff claims that the Defendant used an "automatic telephone dialing system" ("ATDS"), to place calls to her residential phone line for solicitation purposes, without the Plaintiff's express written consent, and despite the fact that the Ms. Orsatti had previously placed herself on the national Do–No–Call registry, all in violation of the TCPA. *Id.* at ¶¶ 6–16.

Presently before the Court is Defendant's Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. 17. For the reasons stated below, the Motion to Dismiss is GRANTED with respect to the Plaintiff's claims based on 47 U.S.C. § 227(b)(1) and 47 CFR § 64.1200(d), and DENIED with respect to the Plaintiff's claims based on 47 U.S.C. § 227(c) and 47 CFR § 64.1200(c)(2).

### II. Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. Proc. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Service,* 572 F. 3d 962, 969 (9th Cir. 2009) (citing *Iqbal,* 556 U.S. at 678).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.,* 768 F. 3d 938,

Orsatti v. Quicken Loans, Inc., Not Reported in Fed. Supp. (2016)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 58 of 93

945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume then veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

**\*2** Where a complaint is dismissed, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.' " *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v.–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' " *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Sharkey v. O'Neal*, 778 F. 3d 767, 774 (9th Cir. 2015) (abuse of discretion to not apply *Foman* factors).

### III. Factual and Procedural Background

On March 4, 2015, the Plaintiff filed a complaint against the Defendant, contending that the Defendant made an unspecified number of calls to her residential phone line beginning in June of 2015. On February 11, 2016, the Defendant filed a motion to dismiss based on a failure to state a claim upon which relief could be granted under Rule 12(b)(6). Specifically, the initial Motion to Dismiss argued that the Plaintiff's Complaint did not properly allege all of the elements required to sustain a TCPA claim under 47 U.S.C. § 227. Before the Court could rule on the motion, the Plaintiff filed a First Amended Complaint ("FAC") on February 18, 2016. The Defendant filed a Motion to Dismiss the FAC on March 7, 2016. That motion is presently before the Court.

#### i. First Amended Complaint

Plaintiff asserts that her home telephone number was added to the National Do–Not–Call Registry in October, 2011. *Id.* at ¶ 9. While Plaintiff concedes that she "partially filled out a form at a website" around June 2015, she contends that she did not "send, submit, or supply" Defendant with any information that could be used to contact her. *Id.* at ¶ 10. Plaintiff maintains that she was uncomfortable completing the online form when it requested her social security number, and thus did not follow through with the application. *Id.*

Plaintiff does not specify the nature of this online form, but contends that she is not a customer of Defendant's services, has never provided Defendant with any personal information, including her telephone number, and has never purchased or used any services offered by Defendant. *Id.* at ¶ 11. Plaintiff further alleges that she did not give Defendant prior express written consent to call Plaintiff's home telephone. *Id.* at ¶ 12. Plaintiff claims that after Defendant's first telephone call to Plaintiff's residence soliciting her business, Plaintiff demanded that Defendant stop calling her. *Id.* at ¶ 13–14. Although she does not allege specifics. Plaintiff contends that Defendant's agents then continued to call to solicit her business using an automatic telephone dialing system ("ATDS"). *Id.*

Plaintiff seeks to represent two proposed classes of persons affected by Defendant's alleged TCPA violations. The first class (the "ATDS Class") purports to represent all persons who "within four years prior to the filing of this Complaint, received any sales or solicitation calls from Defendants to said person's telephone who had [ ] revoked consent to be contacted using an automated telephone dialing system." *Id.* at ¶ 18. The second class (the "DNC Class") purports to represent all persons who "registered on the National Do–Not–Call Registry for at least 30 days, who received more than one call made by or on behalf of Defendant that promoted Defendant's products or services, within any twelve-month period, within for years prior to the filing of this Complaint." *Id.* at ¶ 19.

**\*3** Plaintiff alleges two causes of action, both under 47 U.S.C. § 227. The first is for negligent violations of the TCPA and the second is for willful and/or knowing violations of the TCPA. *Id.* at ¶ 35–40. Plaintiff seeks an award of $1,500 in

Orsatti v. Quicken Loans, Inc., Not Reported in Fed. Supp. (2016)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 59 of 93

statutory damages per violation. Plaintiff particularly relies on 47 C.F.R. § 64.1200(c), which prohibits telephone solicitation to a residential telephone subscriber who has registered their number on the national Do–Not–Call Registry. Dkt. 19 ("Opp.") at 1.

### IV. Analysis

#### i. Defendant's Motion to Dismiss

Defendant contends that Plaintiff's complaint fails to state a recognizable claim under the TCPA. Dkt. 17, 1. Although it did not file a request for judicial notice, Defendant attached an exhibit to its motion purporting to be the online form from LowerMyBills.com that Plaintiff references in the FAC. *Id.* at Exh. A., 18–21. Defendant alleges the form was filled out on June 16, 2015 with information about Ms. Orsatti and her existing mortgage loan, and contained express consent for Defendants to contact her. In its reply to Plaintiff's opposition, Defendant attached a declaration that purports to authenticate the online form. Dkt. 20, Kearns Decl.

#### ii. ATDS Class

Plaintiff has not alleged sufficient facts to support a TCPA violation in regards to Defendant's use of an automatic telephone dialing system ("ATDS"). Defendant first challenges the "ATDS" allegations under the TCPA. Dkt. 17, 5. Defendant contends that the ATDS language in 47 U.S.C. § 227(b)(1)(a) does not encompass the challenged calls at issue. *Id.* Further, Defendant argues that Plaintiff has failed to provide factual support about the alleged calls that is required to state a claim under the TCPA, such as the number of calls made, the dates or participants in any of the calls, the date she requested Defendant cease calling, the circumstances under which she made the request, and to whom the request was made. *Id.*

Under § 227(b)(1)(A), it is unlawful to make any call using an automatic telephone dialing system or a pre-recorded/artificial voice to (1) any emergency phone line; (2) to the telephone line of any guest or patient room of a hospital or similar care facility; or (3) to any telephone number assigned to a *paging service, cellular telephone service,* or *similar common carrier service* (emphasis added). Under § 227(b)(1)(B), it is unlawful to make a call to any residential telephone line using an *artificial or pre-recorded voice* to deliver a message without the prior express consent of the called party (emphasis added).[1] Only § 227(b)(1)(A) prohibits the use of an ATDS, while § 227(b)(1)(B) merely prohibits an artificial or pre-recorded voice. Both sections of the statute provide an exception when the called party has given express written consent to make the call.

Plaintiff alleges that Defendant utilized an ATDS in its calls to Plaintiff on her residential telephone line. FAC at ¶ 6, ¶ 15. As a matter of law, the ATDS prohibition under § 227 applies to cellular phones, emergency lines, or special care facilities, not residential phone lines. Further, "at a minimum, Plaintiff must allege some indirect facts to suggest that Defendant's system is capable of acting as an ATDS," and these indirect facts are not alleged in either the Plaintiff's FAC or Opposition. *Flores v. Adir lnt'l, LLC,* 2015 WL 4340020, at *5 (C.D. Cal. July 15, 2015); *see also Knutson v. ReplyA, Inc.,* 2011 WL 291076, at *2 (S.D. Cal. January 27, 2011). Additionally, § 227(b)(1)(B), which applies to calls made to residential phone lines, does not prohibit ATDS calls. Instead, the section prohibits calls to residential telephone lines only if they are made by automated or prerecorded voices, and the Plaintiff does not allege that she was contacted by an automated or prerecorded voice. Accordingly, the Plaintiff's claims under both § 227(b)(1)(A) or § 227(b)(1)(B) fail as a matter of law, as Plaintiff has not alleged any artificial or pre-recorded voice associated with the call to her residential line, or any ATDS call to a cellular device. Thus, Defendants motion to dismiss any claim under § 227(b) is GRANTED.

**\*4** Further, as the Plaintiff's initial complaint contained the same pleading deficiencies, which were highlighted by the Defendant's first Motion to Dismiss, this claim is dismissed *with prejudice.* The Plaintiff's complaint makes clear that the calls from the Defendant were made by a live person to her residential telephone line. Therefore, the Plaintiff cannot possibly satisfy the requirements of either § 227(b)(1)(A) or § 227(b)(1)(B) for the reasons stated above, and the opportunity to amend would be futile. Thus, this claim is properly dismissed with prejudice. *See Foman,* 371 U.S. at 182.

Orsatti v. Quicken Loans, Inc., Not Reported in Fed. Supp. (2016)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 60 of 93

iii. DNC Class

a. The Plaintiff's Do–Not–Call Registry Claim Under 47 CFR § 64.1200(c)(2)

Plaintiff contends that she has plausibly pled a TCPA claim under 47 U.S.C. § 227(c), which empowers the Federal Communications Commission ("FCC") to further regulate telemarketing calls to protect subscriber privacy rights. 47 U.S.C. § 227(c)(1) ("[T]he Commission shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."). In 47 CFR § 64.1200(c), the FCC issued a regulation that prohibits telephone solicitation to a residential telephone subscriber who has registered his or her number on the National Do–Not–Call Registry. Under § 64.1200(c)(2)(h), there is an exemption relieving the caller of liability if it obtained the residential telephone subscriber's express invitation or permission, evidenced by a written agreement which states the consumer agrees to be contacted and includes the telephone number to which the calls may be placed. *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14043 (2003). [2]

Plaintiff alleges that she was added to the National Do–Not–Call Registry on or about October 7, 2011. FAC at ¶ 9. In both her FAC and Opposition, Plaintiff states that the Defendant did not have proper written consent to call her. *Id.* at ¶ 12–14, 27–29; *see also* Opp. at 1–2, 7–9. Further, the Plaintiff states that she does not have a prior business relationship with the Defendant, evidenced by the facts that she is not a Quicken Loans customer, has never given them her home telephone number, and has never used any services offered by them. FAC at ¶ 8; *see also* Opp. at 11.

Taking all factual allegations by Plaintiff as true, Plaintiff has alleged sufficient facts to support a TCPA claim based on her national Do–Not–Call Registry theory under § 227(c) and § 64.1200(c). Plaintiff sufficiently alleges she is registered on the National Do–Not–Call list and that Defendant's call was solicitation-oriented. FAC at ¶ 9, 12. Further, § 227(c)(5) provides a private right of action for a "person who has received more than one telephone call within any 12–month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." *Roylance v. ALG Real Estate Servs., Inc.*, 2015 WL 1522244, at *3 (N.D. Cal. Mar. 16, 2015), *report and recommendation adopted as modified*, 2015 WL 1544229 (N.D. Cal. Apr. 3, 2015). Plaintiff sufficiently alleges she was on the Do–Not–Call Registry, that the calls were for solicitation purposes, and that she received at least two calls within a 12–month period. FAC at ¶ 7–9, 13–14. Taking these pleadings as true. Plaintiff has sufficiently alleged a claim under § 64.1200(c)(2). [3]

**\*5** In support of its Motion to Dismiss, Defendant attached screenshots of the online form that purportedly evidences Plaintiff's prior express consent. Dkt. 17, Exh. A. Prior written consent would negate the Plaintiff's claim, as § 64.1200(c)(2)(ii) provides that a defendant will not be liable for its calls under the FCC regulations if it received prior consent to receive the calls. In its reply to Plaintiff's opposition to Defendant's motion to dismiss, Defendant attached a declaration allegedly authenticating this online form. Dkt. 20, Exh. 1. As a result, the Court must determine whether Defendant's exhibit may be properly considered by the Court at this stage of pleading. If the form constitutes Plaintiff's express written consent to be contacted by Defendant, then she does not have a claim under 47 U.S.C. § 227(c) or 47 C.F.R. § 64.1200(c)(2).

i. Consideration of Defendant's Exhibit A

When ruling on a 12(b)(6) motion, ordinarily a court may look only at the face of the complaint to decide a motion to dismiss. *Van Buskirk v. Cable News Network, Inc.*, 284 F. 3d 977, 980 (9th Cir. 2002). However, the Ninth Circuit has recognized an "incorporation by reference" rule that allows a court to look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment. *Id.* If a document is not attached to the complaint, but the "plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim," then it may be incorporated by reference into the complaint, the defendant can offer the document, and the court may assume its truth for the purposes of a 12(b)(6) motion to dismiss. *United States v. Ritchie*, 342 F. 3d 903, 908 (9th Cir. 2003). "This incorporation doctrine is permitted to prevent plaintiffs 'from

Orsatti v. Quicken Loans, Inc., Not Reported in Fed. Supp. (2016)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 61 of 93

surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based.' " *NYC Topanga, LLC v. Bank of Am.*, 2015 WL 4075844, at *2 (C.D. Cal. July 2, 2015).

Although "[o]rdinarily affirmative defenses may not be raised by motion to dismiss," they may be raised when "the defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). For example, a motion to dismiss may be granted based on an affirmative defense when the allegations in a complaint are contradicted by matters properly subject to judicial notice. *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). In addition, a motion to dismiss may be granted based upon an affirmative defense where the complaint's allegations, with all inferences drawn in Plaintiff's favor, nonetheless show that the affirmative defense "is apparent on the face of the complaint." *Neighborhood Assistance Corp. of Am. v. First One Lending Corp.*, 2012 WL 1698368, at *6 (C.D. Cal. May 15, 2012) (citing *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F. 3d 954, 969 (9th Cir. 2010).

In response to the exhibit attached by Defendant in its motion to dismiss, Plaintiff argues (1) that the document was not accompanied by a declaration supporting its authenticity and thus she has no means to determine its authenticity; (2) that the document relates to an element of an affirmative defense that Defendant could raise, not a *prima facie* element of her claim; and (3) that she only referred to the online form once in her FAC and only to the extent that she did not complete it. *See* Opp. at 3–5.

In its reply, Defendant asserts that under the incorporation by reference rule, it is not required to authenticate the online form it attached to its motion to dismiss. Dkt. 20 at 1. However, Defendant attached a declaration authenticating the form regardless and also maintains that because Plaintiff is the individual who accessed and filled out the form, she has personal knowledge of it. *Id.* Defendant further contends that Plaintiff's FAC specifically references the form, and that her Opposition concedes that the TCPA claim is "predicated" on the contents of the form. *Id.* at 5–6.

 **\*6** In response to the affirmative defense argument, Defendant argues that the Ninth Circuit has stated that consent is an element of a TCPA claim. *Id.* at 6. Defendant contends that because Plaintiff relies on the partial completion of the form in support of the claim Defendant lacked consent to call her, "applicable law and fundamental fairness" permits the Defendant to complete the story and the Court to consider the form. *Id.* at 6–7. Finally, Defendant contends that since affirmative defenses may be raised when "the defense raises no dispute of fact," and Plaintiff does not challenge the contents of the form, refuting the allegation of lack of consent, it is proper for the Court to take notice of the form. *Id.* at 7 (citing *Scott*, 746 F. 2d 1377 at 1378).

Both parties cite to *NYC Topanga, LLC v. Bank of Am.* in support of their respective arguments regarding whether the online form should be considered by the Court. *See* 2015 WL 4075844, at *2–3 (C.D. Cal. July 2, 2015) ("A document... may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. ... This incorporation doctrine is permitted to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which then claims are based.") (internal quotations and citations omitted). The Defendant argues that under the reasoning in *Topanga*, the online form should be considered because the Plaintiff referred extensively to it in her Complaint. The Plaintiff, on the other hand, argues that the plaintiff's claim in *Topanga* relied on a breach of contract issue and thus necessarily was based on the document the court admitted. *Id.* Additionally, the Plaintiff argues that the present case is more similar to *U.S. v. Ritchie*, a Ninth Circuit case cited in *Topanga*. In *Ritchie,* the court found that Plaintiff's mention of a petition to the DEA only once in her complaint did not make it "integral to [her] claim." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Further, Plaintiff's TCPA claim is based on Defendant not having consent to call Plaintiff, and thus not predicated solely on the contents of a form. It is the Defendant who must rely on the form to demonstrate consent.

The Court finds that the Defendant's Exhibit A is not properly before the Court at the current stage of the proceedings, and therefore will not consider it in analyzing the present Motion to Dismiss. The Court agrees with the Plaintiff that the online form does not form the basis of her § 64.1200(c) claim. She has sufficiently pled that she did not giant consent to the Defendant to contact her, and the form is necessary only to refute that claim. Therefore, the form is actually relevant to the Defendant's affirmative defense, not as the basis for the Plaintiff's claim. Additionally, the Plaintiff's reference to the form in her FAC does not rise to the level of "extensive" as illustrated by *Topanga* and *Ritchie*. The Plaintiff has alleged that she did not consent to

Orsatti v. Quicken Loans, Inc., Not Reported in Fed. Supp. (2016)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 62 of 93

the calls because she did not completely fill out the form, which is the only possible method of consent from the Plaintiff put forth by the parties. Thus, the Plaintiff has properly alleged her lack of consent as required by the TCPA, and the Defendant's attempts to refute that claim are properly addressed in a motion for summary judgment, not a motion to dismiss.

Further, while there appears to be no dispute of fact that the online form submitted by the Defendant is the one referenced by the Plaintiff in her FAC, there is a clear dispute of fact regarding the Plaintiff's actions with that form. She admits to partially filling out the form, but disputes that she ever submitted her personal information or consented to be contacted by the Defendant. Therefore, the submission of this form, how far in the process of submitting the form the Plaintiff progressed, and the implications of that progress on the Plaintiff's written consent to be contacted by the Defendant are all contested by the parties. Consequently, the exhibit submitted by the Defendant is not appropriate for judicial notice, and a motion to dismiss is not the proper forum to resolve these disputed issues.

**\*7** Because the Court will not consider the online form and the element of a lack of consent has been properly pled, the Court finds that the Plaintiff's FAC is sufficient to establish the elements of a TCPA claim under 47 U.S.C. § 227(c) and 47 CFR § 64.1200(c)(2). She has stated that she registered her residential telephone number on the Do–Not–Call Registry at the time in question, the Defendant called her twice within a 12–month period for the purposes of solicitation, and she had not provided written consent for such calls. Finally, the Defendant's claim that the Plaintiff had in fact provided express written consent is not apparent on the face of the complaint. The factual merits of these claims may be contested in a motion for summary judgment. Consequently, the Motion to Dismiss the Plaintiff's claims under 47 U.S.C. § 227(c) and 47 CFR § 64.1200(c)(2) is DENIED.

### b. The Plaintiff's Internal Do–Not–Call Claim Under 47 CFR § 64.1200(d)

While Plaintiff did not explicitly allege an internal Do–Not–Call claim, her argument that she revoked her consent to contact her residence during the Defendant's first call to the Plaintiff constitutes such a claim as described in § 64.1200(d). The FCC regulation contained in § 64.1200(d) [4] prescribes regulations and procedures for maintaining internal do-not-call lists for entities that place telemarketing calls. In particular, § 64.1200(d)(3) provides that an entity making calls to a residential phone for telemarketing purposes "must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request." Defendant argues that since Plaintiff's FAC has limited its allegations to calls made in or around June 2015, that even if Plaintiff did request Defendant not call again during the first call, a subsequent call in June would be within the 30 day safe harbor the statute enunciates. Dkt. 20, 10.

The Court agrees with the Defendant. Taking the Plaintiff's allegations as true, she asked to be put on the Defendant's internal Do–Not–Call registry during the first phone call with the Defendant, which occurred in June of 2015, according to the FAC. FAC, ¶ 6. At this point, the Defendant was required to honor this request, per 47 CFR § 64.1200(d)(3). However, that section allows the Defendant a reasonable tune to honor the request, not to exceed 30 days. The only other call the Plaintiff allegedly received from the Defendant also occurred in June of 2015. Therefore, such a call would be covered by the safe harbor provision of the FCC regulation and would not constitute a cause of action. To the extent that the Plaintiff received other calls from the Defendant outside of the 30 day window, she has not alleged such calls in her Complaint. Therefore, the Plaintiff fails to properly state a claim upon which relief can be granted under 47 CFR § 64.1200(d), and any claims based on that provision must be dismissed. As the Plaintiff has not yet had a chance to amend her complaint with regards to this cause of action, the Court GRANTS the Motion to Dismiss *without* prejudice. If the Plaintiff wishes to allege that she received calls from the Defendant more than thirty days after her request to be placed on the Defendant's internal Do–Not–Call list, she must amend her complaint within 21 days.

### V. Order

For the aforementioned reasons, the Motion to Dismiss is GRANTED in part and DENIED in part. The Court GRANTS the Defendants' Motion to Dismiss the Plaintiff's claims that are based on § 227(b) of the TCPA *with prejudice*. It DENIES the

Orsatti v. Quicken Loans, Inc., Not Reported in Fed. Supp. (2016)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 63 of 93

Motion to Dismiss the Plaintiff's claims that are based on § 227(c) of the TCPA and 47 CFR § 64.1200(c)(2). Finally, the Court GRANTS the Motion to Dismiss the Plaintiff's claims that are based on § 227(c) of the TCPA and 47 CFR § 64.1200(d) *without prejudice.* The Plaintiff may amend her complaint within 21 days in order to properly allege a violation of § 64.1200(d).

**\*8** IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 7650574

---

**Footnotes**

1    Both § 227(b)(1)(A) and § 227(b)(1)(B) are subject to further limitations not applicable to the case at hand. 47 U.S.C. § 227.

2    "For purposes of this exemption, the term "signed" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal or state contract law." In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. at 14159 (2003).

3    The Defendant also argues that the Plaintiff has not sufficiently pled that she is the residential telephone subscriber of the telephone number in question because she merely states that the telephone number was "hers." Dkt. 17, 8. The Court finds this pleading sufficient, as the FAC establishes that the telephone number in question belonged to the Plaintiff and was her home phone number, and thus qualified her as the residential telephone subscriber for the purposes of this motion.

4    As with the Plaintiff's previous claim under 47 CFR § 64.1200(c)(2), the FCC regulations in 47 CFR § 64.1200(d) have the power of law because of the grant of rulemaking authority to the FCC contained in § 227(c) of the TCPA.

---

**End of Document**                                                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 817485
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

James E. SHELTON, individually and on behalf of all others similarly situated,

v.

PRO SOURCE LENDING GROUP LLC, d/b/a Fast Fund Group, d/b/a Fast Funds Group, and Brittney Wilson

CIVIL ACTION No. 24-4394
|
Signed March 14, 2025

**Attorneys and Law Firms**

Andrew Roman Perrong, Perrong Law LLC, Glenside, PA, for James E. Shelton.

Jeffrey N. Rosenthal, Thomas Cialino, Blank Rome LLP, Philadelphia, PA, for Pro Source Lending Group LLC.

Joseph R. Heffern, Lance Rogers, Rogers Counsel, Ardmore, PA, for Brittney Wilson.

**MEMORANDUM**

McHUGH, United States District Judge

**\*1** Telemarketing calls are annoying to many consumers, leading Congress to enact the Telephone Consumer Protection Act ("TCPA"), which regulates telemarketing calls. The Act is partially enforced by two federal agencies, but also through provisions that create a private right of action rooted in strict liability imposing a monetary penalty for each violation.

For better or for worse, the availability of a private remedy draws both litigants and lawyers. In this case, James Shelton, a prolific plaintiff, and his counsel, Andrew Roman Perrong, equally prolific as a litigator under the TCPA, have joined forces to file a class complaint against Defendants Pro Source Lending Group LLC and Brittney Wilson, a Pro Source employee. Plaintiff alleges, on behalf of himself and others similarly situated, that Wilson impermissibly contacted him eight times over a 24-hour period on behalf of Pro Source, violating the TCPA. Both Defendants have moved to dismiss, in part on substantive legal grounds, and in part on the basis that as a serial litigator Plaintiff falls outside the protection of statute. The legal arguments advanced by the defense are unpersuasive, and the outcome of Shelton's prior litigation does not warrant dismissal unless it binds him in this case, which it does not. The motions will therefore be denied.

**I. Facts as Pled**

*1. Plaintiff creates his phone number, and subsequently uses it for business purposes.*

In 2015, Plaintiff obtained his phone number and registered it on the National Do Not Call Registry ("NDNC"). Compl. ¶ 32, ECF 12; Pl.'s Decl. ¶ 2, ECF 22-1 ("Shelton Decl."). The phone number is a residential, non-commercial telephone number. Compl. ¶ 23. At the time when he got the number and registered it on the NDNC, Plaintiff contends that he used the number for personal and household purposes. Compl. ¶¶ 30-32. In 2016, however, Plaintiff formed his business, Final Verdict Solutions, [1] at which point he began using the phone number for both business and personal purposes. Shelton Decl. ¶ 7.

In 2018, Plaintiff sued Target Advance LLC, alleging violations of Section 227 of the TCPA. *See Shelton v. Target Advance LLC*, No. 18-2070, 2019 WL 1641353 (E.D. Pa. Apr. 16, 2019). Plaintiff alleged that his phone number, the same number at issue here, was properly registered on the NDNC, and that Target Advance contacted Plaintiff to solicit business in violation of the TCPA. *Id.* at *1-2. At the time Plaintiff sued Target Advance, the phone number at issue was listed on his business website, and Plaintiff admits that he used it for business purposes. Shelton Decl. ¶ 7. The Court dismissed Plaintiff's claim because Section 227 only provides a private right of action to "residential" numbers. *Target Advance*, 2019 WL 1641353 at *6. Judge Quiñones held that because his number was accurately categorized as mixed-use and because Plaintiff "held his phone number out to the world as a business phone number" he lacked standing under the TCPA on that claim. *Id.*

*2. Plaintiff resumes exclusive personal use of his phone number.*

**\*2** Beginning in June 2019, Plaintiff purportedly ceased all business use of the phone number at issue. Shelton Decl. ¶¶ 7-12. Plaintiff states that he obtained a separate number for exclusive business use, and began using the number at issue for only "personal, family, and household purposes." *Id.* ¶¶ 5-7. Plaintiff explains that he has not held the number at issue out to the public as a business number, nor has it appeared on any website since at least 2019. *Id.* ¶¶ 9-10.

In 2021, Plaintiff sued Pro Source Lending Group LLC,[2] a defendant in this case, for TCPA violations. Compl. ¶¶ 36-38. The parties settled and Plaintiff alleges he asked to be placed on Pro Source's internal do-not-call-list. Shelton Decl. ¶¶ 13-14. Plaintiff has never been a customer of Pro Source, nor has he ever consented to receive calls from them. Compl. ¶ 35.

*3. The July 2024 phone calls and texts.*

The calls and texts underlying the present action all occurred within the span of twenty-four hours. On July 22, 2024, Plaintiff alleges that he received a call on his personal phone number from Defendant Wilson, a Pro Source employee, seeking to sell him a loan. Compl. ¶¶ 42-44. Wilson contacted Plaintiff from her personal cell phone number. *Id.* ¶¶ 43-45. About ten minutes later, Plaintiff received an email with a proposed loan application that Plaintiff did not sign. *Id.* ¶ 50. Within five minutes, Wilson also sent Plaintiff a text stating that she was reaching out on behalf of Fast Funds Group and inviting Plaintiff to ask her questions about the loan process. *Id.* ¶ 51.

A few hours later, Plaintiff received two additional calls from Pro Source: one from an individual named "Sean," and another call from Wilson. *Id.* ¶ 52. Simultaneously, Plaintiff also received a text from Wilson asking him to call her about the loan application. *Id.* ¶ 53.

Calls and texts continued into the next day. At 10:03 AM, Wilson called Plaintiff again. *Id.* ¶ 54. Immediately after, Plaintiff emailed Wilson, stating "Hi Brittney please stop calling me thank you!" *Id.* ¶ 55. At 10:06 AM, Plaintiff received another text from Wilson, again asking him about the loan application. *Id.* ¶ 56. At 10:09 AM, Wilson responded to Plaintiff's email, stating "Will do, thank you." *Id.* ¶ 55. Later that day, Plaintiff received one final call from Pro Source. *Id.* ¶ 58.

Based on this batch of unwanted phone calls and texts, Plaintiff now brings suit on behalf of himself and a class of similarly situated individuals.

**II. Standard of Review**

Defendants move for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. I construe the motion challenging subject matter jurisdiction under Rule 12(b)(1) as a facial attack, with the result that the analysis is identical for the arguments raised under both sections of the Rule. *Petruska v. Gannon Univ.*, 462 F.3d 294, 299 n.1 (3d Cir. 2006). The governing standard is set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III. Discussion

Plaintiff's class complaint contains two counts. In Count I, Plaintiff alleges that Defendants violated the TCPA by making telemarketing calls to him, despite his registration on the NDNC. 47 U.S.C. § 227(c); 47 C.F.R. 64.1200(c)(2). Count II asserts that Defendants also violated the Statute in failing to maintain statutorily adequate internal policies, including an internal do-not-call list. 47 U.S.C. § 227(c)(5); 47 C.F.R. 64.1200(d).

**\*3** Defendant Pro Source argues that Plaintiff's number is not properly registered on the NDNC, and that Plaintiff's frequent TCPA litigation places him beyond the statute's zone of interests, therein depriving him of standing. Defendant Wilson joins in those arguments, and separately argues that that individual liability is unavailable under the TCPA.

### A. Plaintiff states a claim under the Section 227(c) and Section 64.1200(c)(2).

Under Section 227 of the TCPA, an individual may register their residential telephone number [3] on a National Do Not Call Registry. A registration on the NDNC "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." 47 C.F.R. § 64.1200(c)(2). The FCC has explicitly "decline[d] to require that business and wireless numbers be removed from the Registry." Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 29 FCC Red. 9779, 9785 (June 17, 2008). Both Section 227 and its implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the NDNC and provide consumers with a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227 (c)(5); 47 C.F.R. § 64.1200(c)(2).

**\*4** Plaintiff purports to have registered his residential number on the NDNC in 2015, a full year prior to starting his business. Plaintiff also represents that he exclusively uses his number for personal purposes and has done so since at least 2019. Defendants have not presented any evidence to contradict Plaintiff's representation of his behavior over the past five years. Even if Plaintiff used his number for mixed purposes prior to 2019, NDNC registrations must be honored indefinitely, and the FCC has indicated that business numbers are not removed from the Registry. *See, e.g. National Do Not Call Registry FAQs*, FTC Consumer Advice, https://perma.cc/NVC5-ZNR5 ("No, your registration will never expire. The FTC will only remove your number from the Registry if it's disconnected and reassigned, or if you ask to remove it."). Given these regulations, Plaintiff's personal residential phone number is presumptively still on the NDNC.

Plaintiff therefore states a claim under Section 227(c): he alleges that he has a residential phone number on the NDNC, and that Defendants called Plaintiff on that phone number eight times over the span of 24 hours. [4]

### 1. Plaintiff's prior litigation does not preclude this suit.

Pro Source appears to argue that Plaintiff's claims are collaterally estopped, though this argument is advanced only in a footnote. Under the doctrine of collateral estoppel, a Plaintiff is precluded from relitigating a claim where (1) the identical issue was previously adjudicated, (2) that issue was actually litigated, (3) the previous determination was necessary to the decision, and (4) the party being precluded from relitigating the issue was fully represented in the prior action. *See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006).

In 2019, Plaintiff brought suit in this district alleging similar violations of Section 227 against a different entity. At that time, however, Plaintiff advertised his number on his business website and also used it for business purposes, rendering it a mixed-use number. *Target Advance*, 2019 WL 1641353 at \*6. The implementing regulations of Section 227 only prohibit telephone solicitations to "residential telephone subscriber[s]" on the NDNC. *See* 47 C.F.R. § 64.1200(c)(2). This led the Court to conclude that "because Plaintiff held the Phone number out to the world as a business phone number, he could not register it on the

National Do Not Call Registry for purposes of avoiding business-to-business calls, such as those giving rise to this action," and it dismissed Plaintiff's Section 227(c) claims for lack of standing. *Target Advance*, 2019 WL 1641353, at *6.

As noted above, once registered, numbers are not removed from the NDNC, and five years have lapsed since the *Target* decision. In 2019, the phone number at issue was used for both business and personal purposes. In this action, filed in 2024, Plaintiff pleads that it is used exclusively for personal use, and has not been used for business purposes since 2019. In that respect, the issue here differs from the issue decided against Plaintiff in *Target*. And Defendants point to no legal authority supporting a conclusion that past commercial use of a number permanently eliminates standing where the number continues to be listed on the NDNC. [5] Conceptually, there is a temporal aspect to standing, as illustrated by the fact that in some cases standing is deemed not to exist because the injury alleged is hypothetical, and in other instances a case allowed to proceed is later dismissed as circumstances change.

### 2. On the facts alleged, Plaintiff is not equitably estopped.

**\*5** Pro Source argues that in modifying his usage of the number at issue since the Court ruled in 2019, Plaintiff placed Pro Source in a "gotcha" – making it impossible for Pro Source to discern when a cause of action that was previously declared unavailable became available yet again. Pro Source Mot. to Dismiss, ECF 17-1 at 13. Although once again the argument is not fully formed, I construe it as one asserting equitable estoppel. Grounded in common law, equitable estoppel prevents a party from enforcing a right against another party when the right was gained through misleading actions. The party asserting equitable estoppel must show "(1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment." *U.S. v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987).

If Plaintiff took down the number from his business website and then immediately sued Pro Source or another marketer, I would be strongly inclined to find estoppel. But nearly five years have passed during which Plaintiff avers personal use only. Such a change in circumstance, if ultimately proven to be true, is not easily categorized as a misrepresentation. And it cannot be said that Pro Source could reasonably rely on how Plaintiff engaged with the public five years earlier. Legally, the onus is on Defendant to ensure that the number they are calling is not protected by the NDNC. With the number remaining on the NDNC, Pro Source could have checked whether Plaintiff's number was still listed on business websites or on Google as affiliated with his business before proceeding. The passage of time weighs against a finding of estoppel.

### B. Plaintiff's serial litigation does not bar standing.

For an individual to have standing under a "statutorily created cause of action," they must fall within the relevant statute's "zone of interest." *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). The "zone of interest" inquiry considers "the Congressional intent of the statute" and whether the "complainant's interests were 'among the sorts of interests' " the statute was specifically designed to protect. *Chem Serv., Inc. v. Envtl. Monitoring Sys. Lab.-Cincinnati of U.S. E.P.A.*, 12 F.3d 1256, 1262 (3d Cir. 1993).

Seeking to remove Plaintiff from within the TCPA's zone of protected interests, Pro Source compares Plaintiff here to the plaintiff in *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016). In *Stoops*, the plaintiff purchased at least thirty-five cellphones with the specific intent of receiving telemarketing calls so that she could bring lawsuits under the TCPA. *Id.* at 788. "In her deposition testimony, the plaintiff stated that she had a 'business suing offenders of the TCPA'; that she had specifically bought the cellphones in order to manufacture TCPA claims; and that she did not use the cellphones for any other purpose." *See Target Advance*, 2019 WL 1641353 at *4 (discussing *Stoops*, 197 F. Supp.3d at 799). The *Stoops* Court found that "because Plaintiff has admitted that her only purpose in using her cellphones is to file TCPA lawsuits, ... the calls did not constitute the 'nuisance, invasion of privacy, cost, and inconvenience' from which Congress intended to protect consumers," depriving the plaintiff of standing for lack of injury-in-fact. *Stoops*, 197 F. Supp. at 800.

Plaintiff here has two phone numbers, not thirty-five. Historically, there was a distinct line between personal and business numbers. That line is eroding, but not to the point where it can be presumed that the only purpose in maintaining two numbers is to bait companies into making telemarketing calls. [6] This is especially so where the record has not yet been developed, and at this stage, there is no evidence that Plaintiff advertises his personal phone number to make it more likely to receive telemarketing calls than any other standard residential phone number.

 **6** If Defendant contacted Plaintiff eight times over the span of 24 hours, that would seem to be conduct the TCPA is intended to address. At this juncture I cannot rule as a matter of law that he falls outside the TCPA's "zone of interest" based solely on litigation history. [7]

### C. Plaintiff states a claim under Section 227(c)(5) and Section 64.1200(d).

In addition to the NDNC, companies must also maintain an "Internal Do Not Call" policy. 47 C.F.R. § 64.1200(d). This written policy must be available upon demand, must explain the company's plans to maintain a do-not-call list and train telemarketing personnel on its use, and must record and honor "do-not-call" requests for at least five years after a request is made. *Id.* Where an individual makes a do-not-call request, that request must be honored within a reasonable amount of time once made, up to thirty days. *Id.*

Plaintiff alleges that in 2021, Plaintiff and Pro Source reached a settlement regarding a previous batch of unwanted calls. Compl. ¶ 37. Plaintiff avers that throughout the settlement process, Plaintiff made it unambiguously clear that he no longer wished to receive calls from Pro Source, and that Defendant therefore had notice of Plaintiff's do-not-call request for two and a half years prior to its July 2024 calls.

Defendant disregards the prior dispute between the parties, and identifies July 22, 2024 as the relevant date, when Plaintiff first asked Defendant Wilson to cease contacting him with regard to the present batch of calls. By that measure, the calls are not actionable, because Pro Source would have been permitted thirty days within which to accommodate that request.

At this stage, I am obligated to accept Plaintiff's representations about the content of conversations surrounding the 2021 Settlement. Taking those allegations as true, Plaintiff should have been on Pro Source's internal do-not-call list as of two and a half years ago. Allegations that Defendants contacted Plaintiff while he was listed on their internal do-not-call list are sufficient to state a claim for violation of Pro Source's obligations under § 64.1200(d).

### D. Defendant Wilson may be held individually liable.

Defendant Wilson argues that she may not be held liable under the TCPA. But her position ignores the plain text of the statute. Section 217 of the TCPA states: "In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or *employed by* any common carrier or user, *acting within the scope of [her] employment*, shall in every case also be deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*" (emphasis added). Plaintiff alleges that Ms. Wilson was directly involved in the communications with him, using her personal cell phone, a claim that falls within the literal terms of Section 217.

Citing a series of district court cases, the defense contends that the Third Circuit, in *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154 (3d Cir. 2018), has called into doubt whether individual liability is permitted under the TCPA. Such a broad reading of *City Select* is untenable. There, the defendants were a business consulting company that sent a series of faxes, as well as the president and owner of the company. *Id.* at 156. There was conflicting evidence as to the personal involvement of the president, and the sole issue on appeal was whether the trial court properly charged the jury about the standard for imposing liability on a corporate officer. *Id.* at 161-62. *City Select* simply did not address the type of claim raised here and certainly cannot be read as repealing the clear language of the statute that creates liability for direct personal involvement. [8]

**\*7** Plaintiff's claims against Wilson may therefore proceed.

## IV. Conclusion

For the reasons set forth above, Defendants' Motions to Dismiss will be denied. An appropriate order follows.

## All Citations

Slip Copy, 2025 WL 817485

---

### Footnotes

1    Defendants contend that the business existed for the purpose of generating TCPA claims. Pro Source Mot. to Dismiss, ECF 17-1 at 6.

2    Pro Source also does business as "Fast Fund(s) Group" and sells loans. Compl. ¶¶ 5, 39.

3    The FCC has yet to issue definitive guidance on numbers with a history of mixed-use, stating only that "we will review such calls as they are brought to our attention to determine whether or not the call was made to a residential subscriber." In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 ("2005 TCPA Order"), 20 FCC Rcd. 3788, 3793 (2005). A majority of other district courts, as well as the Ninth Circuit (the only circuit court to rule on this question) have found that mixed-use numbers are not per-se excluded from the TCPA's protections when registered on the NDNC, and that such numbers require a case-by-case evaluation. *See Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223-1226 (9th Cir. 2022); *see also Mattson v. New Penn Fin., LLC*, No. 18-990, 2020 WL 6270907, at \*2 (D. Or. Oct. 25, 2020) ("Although [plaintiff's] use of a phone line for personal calls does not automatically transform it into a residential line for purposes of the TCPA, neither does his use of a personal line for business calls automatically transform it into a business line."); *Clements v. Porch.com, Inc.*, No. 20-3, 2020 WL 5739591, at \*5 (D. Alaska Sept. 24, 2020) (holding that phones used for home-based businesses fall within the TCPA's zone of interest); *Smith v. Truman Rd. Dev., LLC*, No. 18-670, 2020 WL 2044730, at \*12 (W.D. Mo. Apr. 28, 2020) (holding that a cell phone used at least 60 percent for personal purposes can be residential); *Blevins v. Premium Merch. Funding One, LLC*, No. 18-377, 2018 WL 5303973, at \*2-3 (S.D. Ohio Oct. 25, 2018) ("[C]ourts have routinely looked at the facts and circumstances surrounding a particular case before deciding whether TCPA protection extended to a particular telephone number that was used for both business and residential purposes."). In *Target, supra*, a member of this Court concluded that mixed-use numbers are not residential, and therefore fall outside the Act.

I need not rule on this issue, because as this stage I must accept Plaintiff's allegation that during the relevant time frame, the phone was only used personally, and had been used exclusively so since June 2019.

4    Under the TCPA, text messages are considered "calls." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016). I will therefore address the 5 calls and 3 texts at issue as an aggregate of 8 calls.

5    On the facts as pleaded, this is not a case where Plaintiff's number was clearly a business number at the time when he registered it on the NDNC in 2015, which may raise a question as to whether his registration was void *ab initio*. Plaintiff instead asserts that he created the number and registered it on the NDNC in 2015 as a "residential telephone subscriber," "years prior" to forming his business in 2016, making his registration presumably proper. Compl. ¶ 32; ECF 22 at 6.

6    In fact, Plaintiff explicitly refutes this accusation in his sworn declaration, stating, "I do nothing to precipitate the illegal calls and messages which are placed to me ... I have never proactively created or found TCPA claims nor entrapped businesses." Shelton Dec. ¶¶ 17-18.

7    Congress explicitly included a private right of action within the TCPA, signifying its intention that members of the public be tasked with the Statute's enforcement. In my view, absent abuse of the statute by a serial litigant such as *Stoops*, a court's inquiry should focus on the merits of the case before it.

8    It also bears mention that the discussion of personal liability of corporate officers was pure *dicta*, as the majority's opinion acknowledged when it observed that it was "neither litigated in the District Court nor fully briefed and argued on appeal," 885 F.3d at 161, a fact emphasized by Judge Shwartz in her concurrence. *Id.* at 163.

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Sheski v. Shopify (USA) Inc., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 71 of 93

KeyCite Yellow Flag

Declined to Extend by   Abramson v. AP Gas & Electric (PA), LLC,   W.D.Pa.,   February 6, 2023

2020 WL 2474421

Only the Westlaw citation is currently available.

United States District Court, N.D. California.

David SHESKI, Plaintiff,

v.

SHOPIFY (USA) INC., et al., Defendants.

Case No. 19-cv-06858-HSG

|

Signed 05/13/2020

**Attorneys and Law Firms**

Jason Matthew Wucetich, Dimitrios Vasiliou Korovilas, Wucetich & Korovilas LLP, El Segundo, CA, for Plaintiff.

Christine Marie Reilly, Kristin Emily Haule, Manatt Phelps & Phillips LLP, Los Angeles, CA, John William McGuinness, Manatt, Phelps & Phillips, LLP, Washington, DC, for Defendants.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 15

HAYWOOD S. GILLIAM, JR., United States District Judge

**\*1** Pending before the Court is Defendants' motion to dismiss Plaintiff's class action complaint, for which briefing is complete. Dkt. No. 15 ("Mot."), 21 ("Opp."), 22 ("Reply"). For the reasons articulated below, the Court **GRANTS** Defendants' motion to dismiss, **WITH LEAVE TO AMEND**.

**I. BACKGROUND**

On October 21, 2019, Plaintiff David Sheski filed a class action complaint on behalf of a putative nationwide class, alleging violations of the Telephone Consumer Protection Act ("TCPA"), and three state common law claims: negligence, invasion of privacy, and unlawful intrusion. Dkt. No. 1 ("Compl."). Plaintiff's claims are based on Defendant Shopify (USA) Inc. and Defendant Shopify Inc.'s (collectively, "Shopify" or "Defendants") alleged "unlawful practice of making, facilitating, and participating in unauthorized text message marketing campaigns en masse to consumers' cellular telephones." *Id.* ¶ 1. Shopify is an e-commerce company that "provides the infrastructure and software for online retailers to build their online presence, including their point-of-sale systems and specifically the tools to structure retailers' checkout webpages to collect consumers' personal identification information, including their cellular numbers." *Id.* ¶ 2.

Plaintiff purchased a product from the retailer Masorini, an online clothing store with no physical locations, whose website is "maintain[ed], operate[d], direct[ed] and/or otherwise control[led]" by Shopify. *Id.* ¶ 30. When processing the purchase on the website, Plaintiff used the online checkout form which "specifically brands it as a Shopify platform, labeling the online order form 'Shopify Checkout.' " *Id.* ¶ 30. It additionally included "a line item input field for consumers to provide their telephone number," where the form "indicates the telephone number is '(For shipping updates).' " *Id.* Specifically, "[t]here [was] no

**Sheski v. Shopify (USA) Inc., Not Reported in Fed. Supp. (2020)**

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 72 of 93

line item check-box on the checkout page for consumers to click to indicate their prior express written consent to have their phone number used for text advertisements." *Id.* After completing the purchase, Plaintiff "received two text messages to his cell phone," on or about November 26, 2018. *Id.* ¶ 31. Both messages read "Masorini: Hey David. Cyber Monday! 30% OFF – Code: "CM30" Shop here! [sic] – STOP 17908 to opt-out." *Id.* ¶¶ 31–32.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

 **\*2**  In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

If the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citations and quotation marks omitted).

## III. ANALYSIS

Defendants argue that Plaintiff fails to state a TCPA claim since the complaint fails to sufficiently allege that Defendants were "directly involved" with, or vicariously liable for, placing the texts at issue. Mot. at 6–16. Defendants also argue that Plaintiff fails to state a claim for the three common law claims. *Id.* at 18–21. The Court addresses each argument in turn below.

###   A. TCPA

The TCPA makes it unlawful

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call....

47 U.S.C. § 227(b)(1)(A)(iii). To state a claim under the TCPA, a Plaintiff must allege that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system ["ATDS"]; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *see also* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). A text message constitutes a "call" for purposes of the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2012).

Sheski v. Shopify (USA) Inc., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 73 of 93

### i. Direct Liability

Defendants first argue that Plaintiff has failed to plead sufficient facts to establish that Shopify sent or was directly involved with sending the text messages at issue. Defendants point to the FCC's guidance in a 2015 order to argue that they do not qualify as having made a call under the TCPA and therefore cannot be liable for any TCPA violation. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7980–84 (2015) (hereinafter, "2015 TCPA Declaratory Ruling"), *set aside in part by ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir. Mar. 16, 2018).

The TCPA and its implementing regulations do not define the term "make a call" to determine who may be liable under the statute. The FCC has concluded that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *In the Matter of the Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013). As for whether entities that provide software applications or platforms that facilitate calling can be liable, the FCC explained that it "look[s] to the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA." 2015 TCPA Declaratory Ruling, 30 FCC Rcd. at 7980. Applying this standard, the FCC determined that the maker of an app called TextMe did not make or initiate calls when its app users used the TextMe app to send invitational text messages; rather it was the app user that initiated the text messages through "affirmative choices." *Id.* at 7983. Specifically, the FCC found it significant that the "app user [had to]: (1) tap a button that reads 'invite your friends'; (2) choose whether to 'invite all their friends or [ ] individually select contacts'; and (3) choose to send the invitational text message by selecting another button." *Id.* at 7983–84.

**\*3**  Defendants argue that similar to TextMe, they only provide a platform that third-party retailers use to send text messages to consumers. Shopify points to numerous cases in support of its position, primarily relying on *Meeks v. Buffalo Wild Wings, Inc.*, No. 17-cv-07129-YGR, 2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) and *Frank v. Cannabis & Glass, LLC*, No. 19-cv-00250-SAB, 2019 WL 4855378 (E.D. Wash. Oct. 1, 2019). In *Meeks*, the plaintiff provided his cellphone number to a restaurant hostess so he could be notified when his table was ready, and later received texts from the restaurant that included links to the website of platform provider Yelp. 2018 WL 1524067 at *1–2. The *Meeks* court held that "[w]hile plaintiff allege[d] that the restaurants use Yelp's 'platform' to send the offending text messages ... he d[id] not allege that Yelp decided whether, when, or to whom to send the messages." *Id.* at *5. Instead, "his allegations regarding Yelp pertain[ed] to its purported business model and the general advertising and analytics services Yelp provides to restaurants." *Id.* Somewhat similarly, in *Frank* the court dismissed the complaint, finding "no allegations that Defendant Springbig exercised any discernible involvement in deciding whether, when, or to whom the text message is sent, or what the text message said." 2019 WL 4855378 at *2. Here, Defendants argue that Plaintiff fails to provide any factual allegations that Defendants "exerted any control over the recipient lists, timing, or content of the texts sent by the users of the Shopify platform." Mot. at 12.

In response, Plaintiff argues that none of Defendants' cited cases are on point based on the allegations in the Complaint. Opp. at 14–15. For example, unlike the platform providers at issue in the other cases, Plaintiff alleges that "Shopify continues to be actively involved in its retailers' businesses both directly and indirectly" even after the retailers select their platform package, by providing "the creation of an online store, 24/7 support from dedicated Shopify employees, ongoing business counseling services, shipping services, and the creation of a point-of-sale software system, among other things." Compl. ¶ 18. Additionally, Plaintiff points to (1) Shopify's receipt of a percentage of retailers' revenues, *id.* ¶ 25, (2) the use of the same SMS short code by different retailers as evidence of "a common Shopify or Shopify-approved source," *id.* ¶ 26, (3) Shopify's awareness, "based on its participation in the creation and maintenance of retailers' checkout pages, whether a particular retailer has obtained express written consent form a consumer to use the consumer's cellular telephone number for text message marketing campaigns," *id.*

**Sheski v. Shopify (USA) Inc., Not Reported in Fed. Supp. (2020)**

Case 1:25-cv-01083-JPW   Document 32-1   Filed 12/19/25   Page 74 of 93

¶ 23, and (4) Shopify's "counsel[ to retailers] on best practices with respect to data collections and text message marketing, including the content and timing of te[x]t message marketing campaigns," *id.* ¶ 22.

Importantly, however, these allegations do not lead to the inference that Shopify sent or was directly involved in sending the text messages at issue in this case. That Shopify provides the template for the checkout form, offers a suite of apps (including texting apps) that can integrate into its platform, provides counseling on best practices for marketing, and takes a percentage of the retailer's revenue, does not indicate that Shopify has any control over a retailer's actual text marketing campaigns. Further, much like Yelp's platform in *Meeks* or the TextMe application in the 2015 TCPA Declaratory Ruling, the fact that Shopify provides a platform to send the text messages such that the SMS short code is the same for all of the retailers does not lead to the inference that Shopify, rather than the individual retailer identified in the text itself, controlled the content of and sent the message. Here, Plaintiff received only two text messages, which specifically identified Masorini as the sender. *See* Compl. at ¶ 26. [1]

**\*4** Thus, even making all inferences in Plaintiff's favor, the allegations provide no factual basis to establish that Shopify was directly involved in the procurement of consumers' phone numbers, stores those numbers, transfers the numbers to texting apps, or approves the messages to be sent to those numbers. While Shopify might provide additional resources beyond those provided by the platform provider in *Meeks*, these resources and features do not suggest that Shopify has any control over any individual retailer's marketing campaigns. Instead, the factual allegations suggest that Shopify provides a platform with a suite of capabilities and options for the retailer, which then sends text messages to numbers obtained when processing a direct sale to a consumer, such as Plaintiff. [2]

Because Plaintiff fails to plead sufficient facts to show that Defendant sent the text messages, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's TCPA claim.

### ii. Vicarious Liability

Defendants next argue that Plaintiff fails to state a claim for vicarious liability under the TCPA. "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd*, 136 S. Ct. 663 (2016), as revised (Feb. 9, 2016). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (quoting Restatement (Third) of Agency § 1.01 (Am. Law Inst. 2006)). "For an agency relationship to exist, an agent must have authority to act on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent.' " *Id.* (quoting Restatement (Third) of Agency § 1.01 cmt. c).

Here, Plaintiff simply points to Shopify's relationship with its retailers as evidence of an agency relationship via explicit and implicit authorization. Opp. at 17–18. This is insufficient. There are no factual allegations that support any sort agency relationship outside of Plaintiff's conclusory statement that "Defendants and their agents transmit text messages." Compl. at ¶ 37. Instead, it appears (accepting the well-pleaded factual allegations as true, as the Court must at this stage) that Defendants provide a suite of software options for retailers, who then determine which options to utilize. "In order to allege a traditional agency relationship, Plaintiff would have to allege Defendant controlled or had the right to control [the entity responsible for the text messages] and, more specifically, the manner and means of the text message campaign they conducted." *Linlor v. Five9, Inc.*, No. 17-cv-218-MMA (BLM), 2017 WL 2972447, at *3 (S.D. Cal. July 12, 2017) (quotations omitted). The only semblance of an allegation suggesting that Masorini acted on Defendants' behalf is the claim that Defendants receive a percentage of retail sales by each retailer (ranging from 2% to 0.5% of sales depending on the plan selected). *See id.* at ¶ 18. But this in no way supports an inference that retailers act on Defendants' behalf or that Defendants have any sort of control over third-party retailers. The Complaint entirely fails to plausibly plead any sort of agency relationship.

Sheski v. Shopify (USA) Inc., Not Reported in Fed. Supp. (2020)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 75 of 93

**\*5**  Accordingly, Plaintiff's vicarious liability claim is also **DISMISSED**.

### B. Common Law Claims

Defendants also argue that Plaintiff fails to state a claim for negligence, invasion of privacy or unlawful intrusion. Mot. at 18–21.

### i. Negligence

"Under California law, "[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." " *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 70 Cal. Rptr. 3d 519 (Cal. Ct. App. 2008)). Defendants argue that Plaintiff failed to allege any duty owed by Defendants to consumers, any breach of a general duty of care (since no specific duty is alleged), or any actual damages, even if breach was alleged. Mot. at 18–19. The Court agrees.

"[T]here is generally no duty to protect others from the conduct of third parties." *Regents of Univ. of California v. Superior Court*, 413 P.3d 656, 669 (Cal. 2018). "[P]laintiffs alleging a defendant had a duty to protect them must establish: (1) that an exception to the general no-duty-to-protect rule applies and (2) that the *Rowland* factors support the imposition of the duty." *Brown v. USA Taekwondo*, 253 Cal. Rptr. 3d 708, 723 (Cal. Ct. App. 2019), *as modified on denial of reh'g* (Nov. 6, 2019) (citing *Rowland v. Christian*, 443 P.2d 561 (Cal. 1968)). The *Rowland* factors include "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." *Regents*, 413 P.3d at 670 (quoting *Rowland*, 443 F.2d at 564).

Plaintiff fails to establish that Defendants' owe any duty to Masorini's customers. Plaintiff alleges that Defendants "failed to comply with third-party vendor rules, which require Defendants to have consumers' prior express written consent prior to sharing their personal identification information with the vendors," suggesting that these rules created a duty owed to Plaintiff and other consumers. Compl. at ¶ 52. Plaintiff provides no further allegations.[3] This vague reference to third-party vendor rules does not establish that an exception to the general rule applies, or that any duty should be imposed under *Rowland*. Moreover, for the same reasons discussed above, Plaintiff has failed to adequately plead that Defendants themselves sent the texts. As pled, Plaintiff's negligence claim thus fails.

**\*6**  Plaintiff further fails to allege any damages in this case. The TCPA provides specific statutory damages for unconsented marketing calls precisely because proving damages from a marketing phone call or a text is particularly difficult. Here, Plaintiff entered his phone number into the retail checkout and received two marketing texts afterwards. Plaintiff has not even alleged that he was charged for those texts or that he received other texts due the dissemination of the phone number outside of the retailer such that the conduct was particularly oppressive or a nuisance.

Because Plaintiff fails to adequately plead duty or damages, the Court dismisses the negligence cause of action for failure to state a claim.

### ii. Invasion of Privacy or Unlawful Intrusion

As Defendants note, it is not entirely clear what claim Plaintiff is attempting to state under the third and forth causes of action. "At common law there are four kinds of invasion of privacy actions which sound in tort ... (1) unreasonable intrusion upon solitude;

(2) appropriation of name or likeness; (3) unreasonable publicity given to private life; and (4) publicity that unreasonably places one in a false light." *Alim v. Superior Court*, 229 Cal. Rptr. 599 (Cal. Ct. App. 1986). Plaintiff's third purported cause of action is invasion of privacy and his fourth purported cause of action is unlawful intrusion, but unlawful intrusion is simply one alternative means of stating an invasion of privacy claim. So the Court assumes that Plaintiff is claiming unreasonable intrusion upon solitude.

That tort subjects to liability "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns ..., if the intrusion would be highly offensive to a reasonable person." *Taus v. Loftus*, 151 P.3d 1185, 1212 (Cal. 2007). Plaintiff does not allege any facts sufficient to support such a claim here. Even accepting Plaintiff's factual allegations, he voluntarily entered his phone number into the form, and even if he provided the number solely for "shipping updates," as a matter of law using that phone number to send two texts for other purposes related to the retailer does not rise to the level of being "highly offensive to a reasonable person." *See Folgelstrom v. Lamps Plus, Inc.*, 125 Cal. Rptr. 3d 260, 266 (Cal. Ct. App. 2011), *as modified* (June 7, 2011) (holding that defendant's "conduct of obtaining his ZIP code under false pretenses and using it for its own marketing purposes ... [did] not meet the standard of 'highly offensive.' "); *see also Marseglia v. JP Morgan Chase Bank*, 750 F. Supp. 2d 1171, 1178 (S.D. Cal. 2010) (dismissing an invasion of privacy claim where defendant placed 50 calls to plaintiff, but "there [were] no facts alleged upon which this Court could infer plaintiffs ever answered any of these calls or defendant ever made any direct contact with plaintiffs that might be construed as annoying or harassing conduct.").

Accordingly, the Court dismisses Plaintiff's third and fourth causes of action for failure to state a claim.

## IV. CONCLUSION

For the reasons noted above, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's Class Action Complaint for failure to state a claim **WITH LEAVE TO AMEND**.[4] Any amended complaint must be filed within twenty-eight (28) days of the date of this order, and Plaintiff may not add any new claims or defendants in any such complaint.

**\*7  IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 2474421

---

### Footnotes

1    The timing of the texts further belies Plaintiff's allegation that Defendant sent the text messages at issue. Similar to *Meeks*, the texts were sent after Plaintiff interacted with the retailer, providing his number for "shipping updates." *See* 2018 WL 1524067 at *4 ("[T]he complaint indicates that the timing of the text messages was linked to information in the [retailer's], not [Defendants'] possession.").

2    In his Opposition to Defendant's motion to dismiss, Plaintiff references facts not in the Complaint to support his argument that Defendant was directly involved in sending the text messages. *See* Opp. at 7–9. However, "[a] Complaint cannot be amended through allegations made in an opposition to a motion to dismiss." *Remington v. Mathson*, 42 F. Supp. 3d 1256, 1278 n.3 (N.D. Cal. 2012), *aff'd*, 575 F. App'x 808 (9th Cir. 2014). Accordingly, the Court does not consider these new facts. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the

**Sheski v. Shopify (USA) Inc., Not Reported in Fed. Supp. (2020)**

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 77 of 93

propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

3    Again, Plaintiff attempts to add facts in his Opposition that are not in the Complaint to support its argument that Defendants owed a duty of care. *See* Opp. at 18–19. The Court will not consider these new allegations.

4    The Court need not address Defendants' motion to strike and it is **DENIED AS MOOT**. Depending on the nature of an amended complaint, if any, Defendants may raise the argument again.

---

**End of Document**                                                                  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01083-JPW   Document 32-1   Filed 12/19/25   Page 78 of 93

Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)

2023 WL 3826460

Only the Westlaw citation is currently available.

United States District Court, M.D. Pennsylvania.

Joseph SHOEMAKER, Richard Gindin, Demya Johnson, Kimberly Starling, and

Matthew McCormick, individually and on behalf of all others similarly situated, Plaintiffs

v.

Richard ZEITLIN, American Technology Services, LLC, Unified Data Services, LLC, Compliance

Consultants, LLC, and John Does 1-10, corporate entities and individuals presently unknown, Defendants

CIVIL ACTION NO. 1:21-CV-1668

|

Signed June 5, 2023

**Attorneys and Law Firms**

David S. Senoff, First Law Strategy Group, LLC, Philadelphia, PA, Eric H. Weitz, Max Morgan, The Weitz Firm, LLC, Philadelphia, PA, for Plaintiffs.

Daniel J. Treuden, Pro Hac Vice, The Bernhoft Law Firm, S.C., Austin, TX, Patrick T. Kane, Pro Hac Vice, Robert G. Bernhoft, Austin, TX, Thomas Kimble, Pro Hac Vice, Arlington, TX, James N. Clymer, Clymer & Musser PC, Lancaster, PA, for Defendants Richard Zeitlin, American Technology Services, LLC, Unified Data Services, LLC, Compliance Consultants, LLC.

**MEMORANDUM**

Christopher C. Conner, United States District Judge

 **\*1**  Named plaintiffs bring this putative class action against defendants Richard Zeitlin and various entities associated with Zeitlin, asserting claims for violation of Section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and unjust enrichment under Pennsylvania law. Defendants move to dismiss plaintiffs' amended class action complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). Defendants also move to strike a portion of plaintiffs' class allegations under Rule 12(f). We will partially grant defendants' motion to dismiss, and we will deny their motion to strike.

**I. Factual Background & Procedural History**

Defendants are a telemarketing entrepreneur, Zeitlin, and a collection of entities he uses to conduct various telemarketing endeavors—American Technology Services, LLC ("ATS"); Unified Data Services, LLC ("UDS"); Compliance Consultants, LLC ("CC"). (See Doc. 33 ¶¶ 3-4 & n.1, 42, 44, 76-85, 107). Zeitlin is a resident of Nevada; ATS, UDS, and CC are Delaware limited liability companies with principal places of business in Nevada. (See id. ¶¶ 76, 78, 80, 82). Named plaintiffs Joseph Shoemaker, Richard Gindin, DeMya Johnson, Kimberly Starling, and Matthew McCormick are five individuals residing variously in Pennsylvania, Texas, and Sweden who allege defendants initiated robocalls to their cell phones without their prior consent on various dates between April 26, 2018, and August 2, 2021. (See id. ¶¶ 64-75, 85; see generally id. ¶¶ 112-203). The prerecorded voice on each of these calls solicited donations on behalf of a political action committee ("PAC") purporting to support law enforcement, and one of the calls successfully obtained a donation from plaintiff Shoemaker. (See id. ¶¶ 114, 119, 121, 138, 145, 166, 179, 190).

Plaintiffs' allegations, however, go beyond accusing defendants of engaging in robocalls: plaintiffs allege Zeitlin is the key figure in a "scheme" to solicit donations for PACs secretly controlled by Zeitlin or individuals in league with Zeitlin and whose

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 79 of 93

**Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)**

sole *raison d'être* is to funnel donated money to Zeitlin and his companies. (See id. ¶¶ 5-6, 29-32, 42). Plaintiffs provide a lengthy list of PACs they claim are "scams" orchestrated by or in collusion with Zeitlin, two of which feature prominently in the alleged events underlying the matter *sub judice*: Honoring American Law Enforcement PAC ("HALE") and the Police Officers Defense Alliance LLC ("PODA"). (See e.g., id. ¶¶ 29, 114, 138, 166, 179). Plaintiffs assert the PACs on their list share numerous officers, some of whom are business associates or friends of Zeitlin. According to the complaint, these PACs have no genuine interest in or intention of meaningfully advancing the causes they claim to support. (See id. ¶¶ 4-6, 33-41, 50, 126-127). Plaintiffs allege Zeitlin and his companies partner with these PACs and then make millions of robocalls soliciting donations on their behalf. (See id. ¶¶ 3-4, 42). The calls result in hundreds of thousands—if not millions—of dollars in donations to the PACs annually. (See id. ¶¶ 1, 5, 58; see also id. ¶¶ 125, 149). The PACs supposedly then transfer the lion's share of the money raised through these donations to Zeitlin and his companies "through an array of bogus and inflated overhead expenditures." (See id. ¶¶ 5, 42, 46, 48, 58, 149-156, 177).

**\*2** According to plaintiffs, Zeitlin and his companies have been the subject of journalistic investigations detailing the scheme. (See id. ¶¶ 30 & n.5, 32 n.7, 58). They also claim the passthrough nature of these PACs can be seen by examining the PACs' filings with the Federal Election Commission ("FEC"). (See id. ¶¶ 45-46; see generally id. ¶¶ 125-197). [1] Namely, they claim the reports show the PACs in question pay out an overwhelming preponderance of their income to entities owned or controlled by Zeitlin. (See Doc. 33 ¶¶ 45-46, 48, 58; see generally id. ¶¶ 125-197). These filings also purportedly show the PACs spend comparatively miniscule amounts on activities plausibly connected to their purported political or social objectives. (See id. ¶¶ 4-6, 126-127). To conceal the relationship between the PACs, Zeitlin, and Zeitlin-controlled companies, plaintiffs allege Zeitlin utilizes a "vast web of inextricably intertwined corporate entities" whose identities he obscures by employing unregistered fictious names, UPS Store mailboxes in far-flung states, and mail-forwarding services. (See id. ¶¶ 51-57, 99, 106, 154-164). Plaintiffs also allege Zeitlin operates his "vast web" of telemarketing companies as "alter egos of one another" constituting "a single economic enterprise." (See id. ¶¶ 99-106).

Plaintiffs initiated this putative class action against defendants on behalf of themselves and others similarly situated. The action is now proceeding pursuant to plaintiffs' amended complaint (Doc. 33). Defendants move to dismiss plaintiffs' amended complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), and partially strike their class allegations under Rule 12(f). The motions are fully briefed and ripe for disposition.

## II. Legal Standards

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides a court may dismiss a claim for lack of subject matter jurisdiction. See FED. R. CIV. P. 12(b)(1). Such jurisdictional challenges take one of two forms: (1) parties may levy a "factual" attack, arguing one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdictional ken; or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues a claim is not within the court's jurisdiction. Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) (quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)). In either instance, it is the plaintiff's burden to establish jurisdiction. See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Courts may grant a Rule 12(b)(1) motion based on the legal insufficiency of a claim only when it appears with certainty assertion of jurisdiction would be improper. See Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

### B. Rule 12(b)(2)

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a complaint for lack of personal jurisdiction. See FED. R. CIV. P. 12(b)(2). In ruling on a Rule 12(b)(2) motion, the court must accept the allegations in the complaint as true and draw all reasonable inferences supported by the well-pleaded factual allegations in the plaintiff's favor. See Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002); Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir.

1992). The court's review is not limited to the face of the pleadings, as consideration of affidavits submitted by the parties is both appropriate and required. See Carteret Sav. Bank, 954 F.2d at 146.

Although the plaintiff bears the ultimate burden of proving personal jurisdiction over a defendant, see Mellon Bank (East) PSFS Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992), the plaintiff need not make such a showing at the pleading stage of litigation, see Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009). To survive a motion to dismiss, the plaintiff must merely allege sufficient facts to establish a *prima facie* case of jurisdiction over the defendant. See id.; Carteret Sav. Bank, 954 F.2d at 142 n.1. When claims of jurisdiction are not clearly frivolous, courts ordinarily allow jurisdictional discovery. See Metcalfe, 566 F.3d at 335-36 (citing Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances, 723 F.2d 357, 362 (3d Cir. 1983)).

### C. Rule 12(b)(6)

**\*3** Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints which fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker, 292 F.3d at 374 n.7). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the ... claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' " Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679, 129 S.Ct. 1937 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955); Twombly, 550 U.S. at 556, 127 S.Ct. 1955. A claim is facially plausible when the plaintiff pleads facts "that allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

### D. Rule 12(f)

Under Federal Rule of Civil Procedure 12(f), the court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." See FED. R. CIV. P. 12(f). District courts have "considerable discretion" in resolving a Rule 12(f) motion. See Krisa v. Equitable Life Assurance Soc'y, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000) (quoting N. Penn. Transfer, Inc. v. Victaulic Co. of Am., 859 F. Supp. 154, 158 (E.D. Pa. 1994)). In general, such a motion will be denied unless the allegations are severely prejudicial to one of the parties and unrelated to the plaintiff's claims. See id.; see also 5C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1382 (3d ed. 2016). A party is prejudiced when the challenged pleading "confuses the issues" or places an undue burden on the responding party. Karpov v. Karpov, 307 F.R.D. 345, 348 (D. Del. 2015).

### III. Discussion

Plaintiffs advance two causes of action: they claim defendants violated Section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by initiating illegal robocalls to their cell phones, and they claim defendants are liable to them for unjust enrichment under Pennsylvania common law. (See Doc. 33 ¶¶ 228-39). Plaintiffs also seek certification

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 81 of 93

Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)

of a class comprising roughly "[a]ll persons and entities throughout the United States" who received an illegal robocall initiated by defendants between "September 27, 2017 through the date of class certification." (See id. ¶ 211).

**\*4** Defendants advance four challenges to plaintiffs' amended complaint. They argue plaintiffs' amended complaint should be dismissed in part or *in toto* for lack of subject matter jurisdiction, lack of personal jurisdiction, and for failure to state a claim. They also contend plaintiffs' class allegations should be partially stricken for lack of subject matter jurisdiction on the ground the particular provision of the TCPA under which plaintiffs bring this action was a constitutional nullity during a portion of the proposed class period. We will begin with defendants' two arguments related to subject matter jurisdiction.

### A. Subject Matter Jurisdiction

Plaintiffs assert we have subject matter jurisdiction over the above-captioned action because they bring their primary claim under 47 U.S.C. § 227(b)(3). (See Doc. 33 ¶ 59). Section 227(b)(3) creates a private cause of action against violators of the TCPA, see Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 374-75, 132 S.Ct. 740, 181 L.Ed.2d 881 (2012) (quoting 47 U.S.C. § 227(b)(3)), and plaintiffs allege defendants violated Section 227(b)(1)(A)(iii) of the TCPA, (see Doc. 33 ¶¶ 228-234). Because the TCPA is a federal law, federal courts have federal question jurisdiction over claims brought under Section 227(b)(3). See Mims, 565 U.S. at 372, 386-87, 132 S.Ct. 740. Nonetheless, defendants contend we lack subject matter jurisdiction over some of plaintiffs' claims because the United States Supreme Court's decision in Barr v. American Ass'n of Political Consultants ("AAPC"), 591 U. S. ——, 140 S. Ct. 2335, 207 L.Ed.2d 784 (2020), purportedly rendered Section 227(b)(1)(A)(iii) an unenforceable nullity from November 2, 2015 (when Congress amended the TCPA to include the provision AAPC deemed unconstitutional) through the issuance of AAPC on July 6, 2020. (See Doc. 39 at 3, 47-52); see also Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301, 129 Stat. 584, 588 (codified as amended at 47 U.S.C. § 227).

As a threshold matter, we must decide whether defendants' arguments related to the enforceability of Section 227(b)(1)(A)(iii) in the relevant time period are best considered under Rule 12(b)(1) or Rule 12(b)(6). The absence of a constitutionally valid statute under which to bring a claim "does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citations omitted). Consequently, district courts possess jurisdiction over a claim so long as the constitutional validity of the cause of action is arguable. See id. Only when the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous" is dismissal under Rule 12(b)(1) appropriate. See id. (quoting Bell v. Hood, 327 U.S. 678, 682-83, 66 S.Ct. 773, 90 L.Ed. 939 (1946)). Our court of appeals likewise advises "[w]hen disposing of a claim brought under an unconstitutional statute, courts ordinarily deny the claim on the merits, on the ground that the statute under which relief is sought is unconstitutional, rather than for lack of subject matter jurisdiction." Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 82 (3d Cir. 2003) (citing, *inter alia*, Martin v. United Way of Erie Cnty., 829 F.2d 445, 447 (3d Cir. 1987); Kulick v. Pocono Downs Racing Ass'n, 816 F.2d 895, 898 (3d Cir. 1987)).

Defendants are not the first to raise a jurisdictional challenge regarding enforceability of the TCPA between 2015 and July 6, 2020. Many courts, including some in our circuit, have addressed these arguments under Rule 12(b)(1) because they attack the constitutional validity of Section 227(b)(1)(A)(iii) during the stated time period. See, e.g., Morales v. Sunpath Ltd., No. 1:20-CV-1376, 2022 WL 610766, at \*4 (D. Del. Feb. 1, 2022) (citations omitted); Cunningham v. Matrix Fin. Servs., LLC, 531 F. Supp. 3d 1164, 1181 (E.D. Tex. 2021); Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc., 506 F. Supp. 3d 1242, 1245 (M.D. Fla. 2020); Creasy v. Charter Commc'ns, Inc., 489 F. Supp. 3d 499, 504-05 (E.D. La. 2020). Others have found enforceability, even if raised under Rule 12(b)(1), to be more appropriately considered under Rule 12(b)(6) because the analysis hinges on how the court construes the anti-robocall provision in light of AAPC. See, e.g., Lindenbaum v. Realgy, LLC, 13 F.4th 524, 527-28 (6th Cir. 2021), *cert.* denied, 4—— U.S. ——, 142 S. Ct. 1362 (2022); Pavelka v. Charter Commc'ns, Inc., No. 3:20-CV-1557, 2021 WL 5566390, at \*3 (D. Conn. Nov. 29, 2021); Williamson v. Irving K Motor Co., No. 3:21-CV-1599, 2022 WL 2053179, at \*4 (N.D. Tex. June 7, 2022).

**\*5** We find the reasoning and case law supporting the latter view more persuasive. Defendants concede their position on Section 227(b)(1)(A)(iii) is "controversial." (See Doc. 39 at 3). As we will discuss *infra*, the effect of AAPC on Section 227(b)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 82 of 93

Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)

(1)(A)(iii) is amenable to multiple reasonable constructions. The success of defendants' argument depends entirely on which construction we adopt. See Steel Co., 523 U.S. at 89, 118 S.Ct. 1003 (quoting Bell, 327 U.S. at 689, 66 S.Ct. 785). Moreover, even if we were to adopt defendants' proffered construction, their reading would defeat only a portion of the claims advanced in the amended complaint—some plaintiffs will still theoretically be entitled to relief. See Lindenbaum, 13 F.4th at 527. Plaintiffs' claims under Section 227(b)(1)(A)(iii) are not wholly insubstantial or frivolous, see Steel Co., 523 U.S. at 89, 118 S.Ct. 1003; they are substantial and colorable. We will therefore consider defendants' arguments regarding enforceability under Rule 12(b)(6) rather than Rule 12(b)(1).

**B. Personal Jurisdiction**

Section 227 of the TCPA does not authorize nationwide service of process. See 47 U.S.C. § 227; Mims, 565 U.S. at 381 n.11, 132 S.Ct. 740. Thus, we may exercise personal jurisdiction over a nonresident of the forum state only to the extent authorized by the law of the forum. See FED. R. CIV. P. 4(e), (k)(1); Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290, 297 (3d Cir. 1985); see also Fischer v. FedEx, 42 F.4th 366, 382 (3d Cir. 2022) (citing Max Daetwyler, 762 F.2d at 297), cert. denied, ––– U.S. ––––, 143 S. Ct. 1001 (2023). Pennsylvania's long-arm statute grants jurisdiction coextensive with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (citing 42 PA. CONS. STAT. § 5322(b)). Our constitutional inquiry is guided by the "minimum contacts" test established in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Under this test, plaintiff must show the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." See id. at 316, 66 S.Ct. 154 (internal quotation marks and citations omitted); see also Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (citation omitted). The focus of the minimum contacts analysis is "the relationship among the defendant, the forum, and the litigation," Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), with the focus on whether the defendant has fair warning they may be subject to suit in the forum, see Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)); Marten, 499 F.3d at 296. "[T]he mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." World-Wide Volkswagen, 444 U.S. at 298, 100 S.Ct. 580 (internal quotation marks and citation omitted).

Federal courts must possess one of two forms of personal jurisdiction to comport with these principles. See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). General jurisdiction allows a court to exercise jurisdiction over all claims against a party possessing contacts with the forum state so " 'continuous and systematic' as to render them essentially at home" there. Daimler AG v. Bauman, 571 U.S. 117, 127, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) (citing Helicopteros, 466 U.S. at 414 n.9, 104 S.Ct. 1868)); Chavez v. Dole Food Co., 836 F.3d 205, 223 (3d Cir. 2016) (en banc). Specific jurisdiction, on the other hand, allows the court to hear only claims arising out of or relating to the defendant's contacts with the forum state. Helicopteros, 466 U.S. at 414 n.8, 104 S.Ct. 1868; Telcordia Tech Inc. v. Telkom SA Ltd., 458 F.3d 172, 177 (3d Cir. 2006).

**\*6** Plaintiffs proceed solely on a theory of specific jurisdiction. (See Doc. 46 at 20-21). Specific jurisdiction usually is assessed on a claim-by-claim basis. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 n.3 (3d Cir. 2007) (citing Remick, 238 F.3d at 255-56). This is true even when, like here, plaintiffs bring a putative class action because, to paraphrase our court of appeals, a named plaintiff cannot accomplish as a representative of a class what they cannot achieve on their own. See Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 734 (3d Cir. 1970); see also Fischer, 42 F.4th at 375. Specific jurisdiction requires each named plaintiff to "establish with reasonable particularity" (1) defendants directed their activities at the forum state, (2) each claim arises out of defendants' activities in Pennsylvania, and (3) exercising personal jurisdiction in Pennsylvania will not offend traditional notions of fair play and substantial justice.[2] See Danziger & De Llano, LLP v. Morgan Verkamp LLC, 948 F.3d 124, 129-30 (3d Cir. 2020) (citations and internal quotation marks omitted).

Defendants contest the merits of Shoemaker and Gindin's claims but do not contest our specific jurisdiction over those claims. (See Doc. 39 at 38-45; Doc. 50 at 14, 18). Nor could they. Shoemaker and Gindin are residents of Pennsylvania and they allege defendants placed or directed illegal robocalls to their cell phones, both of which bear Pennsylvania area codes. (See Doc. 33 ¶¶ 61, 64, 66, 114, 138). We reasonably may infer plaintiffs' injuries—the phone calls they received—occurred in Pennsylvania. See Shelton v. Nat'l Gas & Elec., LLC, No. 17-4063, 2019 WL 1506378, at *7 (E.D. Pa. Apr. 5, 2019). By directing calls to Pennsylvania residents possessing Pennsylvania phone numbers, defendants purposely availed themselves of Pennsylvania and its laws. See Grand Ent. Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction." (citations omitted)); see also Abramson v. CWS Apartment Homes, LLC, No. 16-426, 2016 WL 6236370, at *4 & n.47 (W.D. Pa. Oct. 24, 2016) (collecting cases). We possess specific jurisdiction over the claims brought by Shoemaker and Gindin against all defendants. [3]

 **\*7** Johnson, Starling, and McCormick, however, are not residents of Pennsylvania. Johnson was a resident of Alabama at the time of his call and currently resides in Sweden. (See Doc. 33 ¶¶ 69-70). Starling and McCormick are residents of Texas. (See id. ¶¶ 72, 74). None of the three allege they received their calls while in Pennsylvania or attribute a Pennsylvania phone number to their cell phones. Insofar as can be reasonably inferred from plaintiffs' amended complaint, it is entirely possible Johnson, Starling, and McCormick have never set foot in Pennsylvania. We simply cannot say defendants' alleged conduct toward these three plaintiffs was directed at the Commonwealth of Pennsylvania. See Danziger, 948 F.3d at 129-30. We will dismiss Johnson's, Starling's, and McCormick's as named plaintiffs without prejudice. [4]

### C. Failure to State a Claim

#### 1. *TCPA*

Plaintiffs' TCPA claims are grounded in defendants' alleged violations of Section 227(b)(1)(A)(iii). Consequently, we must address defendants' threshold assertion that the TCPA's prohibition on robocalls was unenforceable during part of the time period relevant to plaintiffs' claims.

#### a. Enforceability

The TCPA prohibits certain undesirable telemarketing practices. See Facebook, Inc. v. Duguid, 593 U.S. ——, 141 S. Ct. 1163, 1167-68, 209 L.Ed.2d 272 (2021); AAPC, 140 S. Ct. at 2343-44 & n.1. Section 227(b) of the TCPA specifically prohibits initiating a robocall to a cell phone unless the call is made for "emergency purposes," the recipient has given their prior express consent, or the call falls within an exemption created by the Federal Communications Commission. See 47 U.S.C. § 227(b)(1)(A)(iii), (2)(C); see also AAPC, 140 S. Ct. at 2344-45 (citing 47 U.S.C. § 227(b)(1)(A)(iii)). The TCPA also provides a private cause of action against violators of its provisions. See 47 U.S.C. § 227(b)(3). Violators of Section 227(b)(1)(A)(iii) are liable for the plaintiff's actual damages or statutory damages of $500, whichever is greater; for willful or knowing violations, damages are trebled. See id. § 227(b)(3); see also AAPC, 140 S. Ct. at 2345 (citing 47 U.S.C. § 227(b)(3)).

Congress enacted Section 227(b)(1)(A) in 1991. See AAPC, 140 S. Ct. at 2344. Originally, Section 227(b)(1)(A) prohibited, in relevant part, " 'any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using ... an artificial or prerecorded voice' to 'any telephone number assigned to a ... cellular telephone service.' " See id. (quoting Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 3, 105 Stat. 2394, 2395-96) (codified at 47 U.S.C. § 227)) (emphasis omitted). Congress amended Section 227(b)(1)(A) in 2015 to include an exception for calls "made solely to collect a debt owed to or guaranteed by the United States." See id. at 2344-45 (citation omitted). The Supreme Court struck down this exception on July 6, 2020, in its plurality opinion in AAPC. See generally id.

**Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)**

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 84 of 93

**\*8** Most relevant to defendants' arguments, six Justices agreed the exception for government debt collectors "impermissibly favored debt-collection speech ... in violation of the First Amendment," although they differed significantly as to how they arrived at this conclusion. See id. at 2343 (plurality opinion). Seven Justices then agreed the unconstitutional provision was severable from Section 227(b)(1)(A)(iii) and, accordingly, invalidated the government-debt exception but left in place "the longstanding robocall restriction." See id. at 2355. The justices, however, failed to specify whether they intended the severance to apply only prospectively or retroactively. Justice Kavanaugh, writing for himself, the Chief Justice, and Justice Alito, addressed the implications of severance in footnote 12:

> [A]lthough our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case .... On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.

Id. at 2355 n.12. Justice Gorsuch, dissenting on the question of severance, took issue with this footnote. See id. at 2366 (Gorsuch, J., concurring in the judgment in part and dissenting in part). Joined by Justice Thomas, Justice Gorsuch observed the logic of footnote 12 "shields *only* government-debt collection callers from past liability ... [and] endors[es] the very same kind of content discrimination we say we are seeking to eliminate." Id.

Highlighting the tension between the AAPC plurality and Justice Gorsuch's partial concurrence, defendants present two arguments against the validity of some of plaintiffs' TCPA claims and the scope of plaintiffs' class allegations. First, they argue severance applies prospectively only, leaving Section 227(b)(1)(A)(iii) unenforceable between its enactment in 2015 and the Supreme Court's decision in AAPC. (See Doc. 39 at 51). Second, even if severance does apply retroactively, they argue—as Justice Gorsuch suggested—footnote 12 operates to create a new content-based restriction on speech, once again rendering Section 227(b)(1)(A)(iii) unenforceable between 2015 and issuance of AAPC. (See id. at 51-52).

Our court of appeals has not yet had occasion to consider these questions. In the immediate wake of AAPC, a handful of district courts determined the decision rendered Section 227(b)(1)(A)(iii) retroactively unenforceable. See, e.g., Creasy, 489 F. Supp. 3d at 503; Cunningham, 531 F. Supp. 3d 1164 (citing Creasy, 489 F. Supp. 3d 499); Hussain, 506 F. Supp. 3d at 1244-45 (same); Lindenbaum v. Realgy, LLC, 497 F. Supp. 3d 290 (N.D. Ohio 2020) (same), rev'd, 13 F.4th 524 (6th Cir. 2021). As the dust has settled, however, a strong majority—including several courts in this circuit—has coalesced around the opposite view, that Section 227(b)(1)(A)(iii) is fully enforceable as to robocalls predating AAPC. See, e.g., Morales, 2022 WL 610766, at \*6 & n.78 (collecting cases); Franklin v. Navient, Inc., 534 F. Supp. 3d 341, 346-47 (D. Del. 2021); Williamson, 2022 WL 2053179, at \*6 (citations omitted); see also Boisvert v. Carnival Corp., No. 8:20-CV-2076, 2021 WL 1329079, at \*2 (M.D. Fla. Mar. 12, 2021) (judge who decided Hussain reversing course and adopting emerging majority view). Most significantly, the Court of Appeals for the Sixth Circuit reversed the district court's decision in Lindenbaum and rejected the positions now advanced by defendants regarding retroactivity and the First Amendment. See Lindenbaum, 13 F.4th at 528-30. The Sixth Circuit reasoned that severance, at least in this context, was an act of constitutional interpretation capable of applying retroactively. See id. at 529-30. The court explained: AAPC "recognized only that the Constitution had 'automatically displace[d]' the government-debt-collector exception from the start, then interpreted what the statute has always meant in its absence." Id. at 530 (quoting Collins v. Yellen, 594 U.S. ——, 141 S. Ct. 1761, 1788-89, 210 L.Ed.2d 432 (2021)) (alteration in original). The court also squarely rejected the notion applying the anti-robocall provision to telemarketers not seeking to collect government-related debt during the retroactive period created a "First Amendment problem." See id.

**\*9** Adding to the persuasive weight of the Sixth Circuit's decision in Lindenbaum are two district court cases from our own circuit. See Morales, 2022 WL 610766, at \*7-8; Franklin, 534 F. Supp. 3d at 345-47. In Franklin, Judge Bibas, sitting with the district court by designation, cast footnote 12 as mere *dictum* that does not, in and of itself, exculpate from liability under

Section 227(b)(1)(A)(iii) robocallers who sought to collect government-related debts between 2015 and AAPC. See Franklin, 534 F. Supp. 3d at 347 (citing AAPC, 140 S. Ct. at 2355 n.12 (plurality opinion)); see also Morales, 2022 WL 610766, at *4 n.63 (collecting cases observing similarly). Judge Bibas also concluded Section 227(b)(1)(A)(iii) does not create a content-based disparity because it subjects all robocallers to the same degree of civil liability for conduct within the retrospective time frame. [5] See Franklin, 534 F. Supp. 3d at 346-47, 349.

We find the reasoning laid out by the Sixth Circuit, Judge Bibas, and other courts rejecting defendants' arguments to be persuasive. [6] We conclude Section 227(b)(1)(A)(iii) was enforceable throughout the period relevant to the matter *sub judice* and creates no conflict with the First Amendment. We will deny defendants' motion to dismiss claims and to strike class allegations related to calls initiated prior to July 6, 2020.

### b. Sufficiency

We now turn to the sufficiency of the remaining plaintiffs' claims. Courts weighing the plausibility of TCPA claims generally require plaintiffs to aver facts supporting three elements: (1) the defendant or their agent initiated a call to a cell phone number belonging to the plaintiff, (2) using a prerecorded or artificial voice, and (3) without obtaining the plaintiff's prior consent. See, e.g., Smith v. Direct Bldg. Supplies, LLC, No. 20-3583, 2021 WL 4623275, at *2 (E.D. Pa. Oct. 7, 2021) (citation omitted); Smith v. Vision Solar LLC, No. 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (same); Aaronson v. CHW Grp., Inc., No. 1:18-CV-1533, 2019 WL 8953349, at *1 (E.D. Va. Apr. 15, 2019). The first element—which is the only element defendants dispute, (see Doc. 39 at 18-37)—requires a plaintiff to plead facts supporting "the defendant actually, physically initiated the telephone call at issue," see Aaronson, 2019 WL 8953349, at *2 (citing Childress v. Liberty Mut. Ins. Co., No. 17-CV-1051, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018)); accord Direct Bldg. Supplies, 2021 WL 4623275, at *3. What this usually requires in practice is pleading facts tracing the call to the defendant or their agent. See Direct Bldg. Supplies, 2021 WL 4623275, at *3; Scruggs v. CHW Grp., Inc., No. 2:20-CV-48, 2020 WL 9348208, at *9 (E.D. Va. Nov. 12, 2020).

The gravamen of plaintiffs' pleadings is the alleged arrangement between Zeitlin, his companies, and an assortment of PACs to robocall thousands of people, solicit donations, and divide the proceeds. (See, e.g., Doc. 33 ¶¶ 29-58). We find this "scheme" sufficiently connects the calls identified by the remaining plaintiffs (Shoemaker and Gindin) to the defendants via a two-link chain of plausible inferences.

**\*10** The first link is the connection between the PACs and the calls. Shoemaker and Gindin claim the voices on their calls purported to solicit donations on behalf of two PACs—respectively, PODA and HALE. (See Doc. 33 ¶¶ 114, 138). The factual allegation that the callers identified themselves as calling on behalf of these PACs creates the plausible inference the calls were in fact made on their behalf. PODA's FEC filings document PODA receiving an "itemized individual contribution" from Shoemaker for $300 on April 26, 2018—the day of the alleged call to Shoemaker. (See id. ¶¶ 114, 119; PODA 2018 FEC Report). Had the caller been a prankster or fraudster merely pretending to represent PODA as defendants suggest, (see Doc. 39 at 29-31), Shoemaker's donation never would have made it to PODA.

The next link is the connection between the PACs and defendants. Plaintiffs plead the existence of a dubious hand-in-glove relationship between the PACs in question and Zeitlin and his companies. PODA reported to the FEC raising $624,367.22 in 2018, the year of the call to Shoemaker. (See Doc. 33 ¶¶ 114, 125; see also PODA 2018 FEC Report). PODA spent $496,484.02 the same year (an election year) on operating expenditures compared to $20,000 on identifiable political activities. (See Doc. 39 ¶ 126; see also PODA 2018 FEC Report). Of those operating expenses, PODA paid 88.6% to defendants. (See Doc. 33 ¶¶ 125-132; see also PODA 2018 FEC Report). The year of Gindin's call, HALE took in $5,647,945.22 and spent $4,844,861.94 with 83.8% of those outlays going to what are alleged to be Zeitlin-affiliated entities. (See Doc. 33 ¶¶ 56, 81, 149-64; see also HALE 2021-22 FEC Report). Few of HALE's payments to defendants and none of PODA's are coded as something plausibly related to telemarketing expenses, but plaintiffs allege the labels given to the payments "were coded in such a way to conceal

Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)

Case 1:25-cv-01083-JPW    Document 32-1    Filed 12/19/25    Page 86 of 93

the illegal telemarketing operation that was taking place." (See HALE 2021-22 FEC Report; PODA 2018 FEC Report; Doc. 33 ¶¶ 134-136).

The extensive outlays to Zeitlin-affiliated companies—whose line of business is alleged to be telemarketing—gives rise to the plausible inference all or most of PODA's and HALE's fundraising activity is conducted by those entities.[7] In other words, the facts pled are sufficient to support the notion that defendants, along with other Zeitlin-affiliated entities, were PODA's and HALE's predominate fundraisers. When this inference is combined with the inference the calls came from legitimate representatives of PODA and HALE, we find plaintiffs plausibly plead traceability, *i.e.*, one of the Zeitlin-affiliated entities, either directly or through one of their agents, initiated the calls to Shoemaker and Gindin.[8] The amended complaint only names ATS, UDS, and CC as defendants, but all three received payments from PODA and HALE raising a plausible claim each may have initiated the calls in question. Plaintiffs also plead facts supporting the conclusion these entities, along with the others named in the complaint, are essentially shells used to obscure a singular telemarketing enterprise orchestrated by Zeitlin. (See Doc. 33 ¶¶ 51-57, 99-106). Zeitlin's role at the center of the alleged scheme, considering the broad range of agency theories incorporated into the TCPA, gives rise to a plausible claim he too may be liable as an initiator of the calls.[9] With facts pled supporting traceability of the calls to defendants we will deny defendants' motion to dismiss Shoemaker's and Gindin's TCPA claims.

### 2. *Unjust Enrichment*

**\*11** Defendants argue plaintiffs' unjust enrichment claims must fail because plaintiffs do not plead facts supporting defendants received a benefit from their alleged TCPA violations. (See Doc. 39 at 46-47). Plaintiffs offer neither argument nor legal authority in answer to defendants' challenge to their unjust enrichment claim. We deem plaintiffs' failure to respond to this dispositive legal argument an abandonment of their claims. See Brice v. City of York, 528 F. Supp. 2d 504, 516 n.19 (M.D. Pa. 2007) (Conner, J.) (citing D'Angio v. Borough of Nescopeck, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999)); Brown v. Pa. State Dep't of Health, 514 F. Supp. 2d 675, 678 n.7 (M.D. Pa. 2007) (Conner, J.) (same); see also Levy-Tatum v. Navient Sols., Inc., 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016) (collecting cases). We will dismiss plaintiffs' unjust enrichment claims without prejudice.

### IV. Conclusion

We will grant in part and deny in part defendants' motion to dismiss. We will also deny their motion to strike. An appropriate order shall issue.

### All Citations

Not Reported in Fed. Supp., 2023 WL 3826460

---

### Footnotes

1    See also 2018 Financial Summary for Police Officers Defense Alliance LLC, FED. ELECTION COMM'N, https://www.fec.gov/data/committee/C00667865/?cycle=2018 (last visited Mar. 23, 2023) ("PODA 2018 FEC Report"); 2021-22 Financial Summary for Honoring American Law Enforcement PAC, FED. ELECTION COMM'N, https://www.fec.gov/data/committee/C00710178/ (last visited Mar. 23, 2023) ("HALE 2021-22 FEC Report").

2    Plaintiffs' TCPA and unjust enrichment claims arise from phone calls defendants allegedly placed or directed to plaintiffs. (See Doc. 33 ¶¶ 228-239; see also Doc. 46 at 2-4 (describing plaintiffs' unjust enrichment claims as being "concomitant"

with TCPA claims)). Hence, we may consider the two substantive claims together when ascertaining the presence of contacts necessary to support specific jurisdiction. See O'Connor, 496 F.3d at 318 n.3.

3    Defendants argue the claims against Zeitlin should be dismissed for lack of personal jurisdiction because he purportedly has no connection to ATS, UDS, CC, or any of the other named entities in the amended complaint. (See Doc. 39 at 43-44). In support of this argument, defendants submit an affidavit from Zeitlin averring he is "neither an owner nor an officer" of any of the named entities and does "not ... operate, control or have the right and ability to supervise, direct or control" any of the entities. (See Doc. 40). Defendants also argue we lack personal jurisdiction over Gindin's claim because ATS, UDS, and CC were all dissolved by the time Gindin received his call on July 14, 2021. (See Doc. 39 at 11, 44). Defendants submit Delaware public records purporting to demonstrate the claimed dissolution. (See Docs. 39-3, 39-4, 39-5). Plaintiffs dispute the accuracy of these records and point to other records indicating the entities were still operating after the date claimed by defendants. (See Doc. 46 at 5-8). Zeitlin's true relationship with the entities named in the amended complaint and the legal status of those entities throughout the period of time relevant to this action are disputes of fact reserved for resolution by the trier of fact. See Carteret Sav. Bank, 954 F.2d at 148. Plaintiffs plead sufficient facts supporting specific jurisdiction over Zeitlin, ATS, UDS, and CC to survive a motion to dismiss under Rule 12(b)(2). See Metcalfe, 566 F.3d at 330; Carteret Sav. Bank, 954 F.2d at 142 n.1.

4    District courts cannot dismiss a claim for lack of personal jurisdiction without first considering transferring the claim to a more appropriate forum under 28 U.S.C. § 1631. See Danziger, 948 F.3d at 132. Section 1631 provides the original court "shall, if it is in the interest of justice, transfer such action ... to any other such court" in which the case could have been brought when it was filed. See 28 U.S.C. § 1631. The court may transfer the entire action or a portion of the action. See D'Jamoos, 566 F.3d at 110. The amended complaint is silent with respect to where Johnson, Starling, and McCormick received the calls at issue, and it does not specify an area code associated with any of their cell phones; it is thus unclear in which court their claims could have been brought. Accordingly, we will dismiss Johnson, Starling, and McCormick as named plaintiffs, without prejudice to their ability to participate in this lawsuit as putative class members or to bring their individual claims in an appropriate forum.

5    Judge Bibas ultimately concludes punitive damages are unavailable against defendants who sought to collect government-related debt between 2015 and July 6, 2020, because of due process issues. See Franklin, 534 F. Supp. 3d at 349.

6    Even if footnote 12 were binding precedent, the plurality disclaims the very position defendants ask us to adopt. The plurality explicitly insists "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." See AAPC, 140 S. Ct. at 2355 n.12 (plurality opinion). The use of the past tense "covered" makes clear the plurality intends for past violators of Section 227(b)(1)(A)(iii) to remain liable. It would be nonsensical to adopt the first sentence as binding but not the second.

7    Defendants contend a large portion of HALE's disbursements were paid to entities not named as defendants. (See Doc. 39 at 28). This may well be true. But the entities receiving those disbursements are alleged to be controlled by Zeitlin, (see Doc. 33 ¶¶ 151-164), and we view them as potentially incorporated into plaintiffs' lawsuit as defendants through John Doe entities 1-10.

8    Defendants admit the TCPA allows for direct and vicarious liability. (See Doc. 39 at 19, 23-24). The consensus among federal courts is the TCPA incorporates the full range of vicarious-liability theories grounded in federal common-law agency principles. See, e.g., Henderson v. United Student Aid Funds, Inc., 918 F.3d 1068, 1072 (9th Cir. 2019) (citation omitted); Hodgin v. UTC Fire & Sec. Americas Corp., 885 F.3d 243, 251-52 (4th Cir. 2018) (citation omitted). However, our court of appeals has expressed skepticism as to the availability of personal-participation liability against corporate officers under the TCPA. See City Select Auto Sales Inc. v. David Randall Assocs., Inc., 885 F.3d 154, 159-60 (3d Cir. 2018).

Case 1:25-cv-01083-JPW     Document 32-1     Filed 12/19/25     Page 88 of 93

**Shoemaker v. Zeitlin, Not Reported in Fed. Supp. (2023)**

9        Defendants deny plaintiffs' allegation that Zeitlin owns or controls the entity defendants, (<u>see</u> Doc. 39 at 43-44), but we
         must take their allegation to be true for purposes of this motion.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2856295
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.

Chet Michael WILSON, Plaintiff,

v.

MEDVIDI INC., Defendant.

Case No. 5:25-cv-03996-BLF
|
Signed October 7, 2025

**Attorneys and Law Firms**

Anthony I. Paronich, Pro Hac Vice, Paronich Law, P.C., Hingham, MA, Dana J. Oliver, Oliver Law Center, Inc., Rancho Cucamonga, CA, for Plaintiff.

Eric Knowles, Pro Hac Vice, Paul Stephen St. Marie Jr., Pro Hac Vice, Frier & Levitt, LLC, Pine Brook, NJ, Young Woo Choi, Pleasanton, CA, for Defendant.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**

[Re: ECF No. 14]

BETH LABSON FREEMAN, United States District Judge

**\*1** Before the Court is Defendant MEDVIDI Inc.'s motion to dismiss Plaintiff Chet Michael Wilson's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 14 ("Mot."). Plaintiff filed an opposing brief, and Defendant filed a reply. ECF No. 26 ("Opp."); ECF No. 27 ("Reply"). The Court concludes that the motion is suitable for adjudication without oral argument and VACATES the hearing scheduled for October 23, 2025. *See* Civ. L.R. 7-1(b).

For the reasons below, Defendant's motion is GRANTED WITH LEAVE TO AMEND.

**I. BACKGROUND**

On May 7, 2025, Plaintiff filed this instant two-count class action complaint against Defendant alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), and implementing regulations 47 C.F.R. 64.1200(c), (d). ECF 1 ("Compl."). Plaintiff alleges that he registered his phone number on the National Do Not Call Registry, did not consent to receive calls from Defendant, and received multiple telemarketing text messages from Defendant in 2022 and 2024. *Id.* ¶¶ 18–22. Defendant alleges that he continued to receive text messages even after replying "STOP" in 2022. *Id.* ¶ 22.

Count I of the complaint alleges that Defendant violated the TCPA by making telemarketing calls to numbers on the Do Not Call Registry under 47 C.F.R. 64.1200(c)(2). *Id.* ¶ 39. Count II of the complaint alleges that that Defendant violated the TCPA by "sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop." *Id.* ¶ 44.

## II. LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) "if the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim." *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023). The task when ruling on a motion to dismiss "is to evaluate whether the claims alleged [plausibly] can be asserted as a matter of law." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Upon granting a motion to dismiss for failure to state a claim, a court has discretion to allow leave to amend the complaint pursuant to Rule 15(a). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear ... that the complaint could not be saved by amendment." *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). In deciding whether to grant leave to amend, the Court considers the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). The Ninth Circuit in *Eminence Capital* identified several factors to consider, including (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Id.* at 1052.

## III. DISCUSSION

**\*2** Defendant argues that section 227(c)(5) does not cover text messages, and that even if it did cover them, Plaintiff has not sufficiently pleaded factual allegations establishing direct or vicarious liability under the TCPA. The Court considers each argument in turn.

### A. Regulation of Text Messages Under Section 227(c)

The TCPA prohibits certain unsolicited telephone solicitations, including calls using automatic telephone dialing systems, *see* 47 U.S.C. § 227(b), and calls sent to residential telephone subscribers who have registered their phone numbers on the national Do Not Call registry, *see id.* § 227(c). The TCPA authorizes the Federal Communications Commission ("FCC") to prescribe regulations implementing the requirements of its prohibitions. *Id.* § 227(b)(2), (c)(2). Section 227(c) creates a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." *Id.* § 227(c)(5). 47 C.F.R. § 64.1200(c) prohibits the initiation of telephone solicitations to residential telephone subscribers who have registered their telephone numbers on the national do-not-call registries maintained by the federal government, and 47 C.F.R. § 64.1200(d) prohibits the initiation of "any artificial or prerecorded-voice telephone call pursuant to [enumerated exemptions] ... unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls."

Defendant argues that section 227(c) does not apply to text messages because the phrases "text message" and "SMS" message do not appear in the statutory text, asserting that Congress's choice to use the terms "telephone call" and "artificial or prerecorded-voice telephone call" manifest an affirmative intent to preclude liability for text messages. Mot. at 8. The Court disagrees. As a preliminary matter, it is unsurprising that the statute does not use the term "text message" because, as Plaintiff points out, the statute was enacted in 1991, before the first-ever text message was sent in 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). In determining whether section 227(c) applies to text messages, the Court looks to the plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991 at the time of the TCPA's passage. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998).

Construing the provisions of a statute requires the Court to begin with its language—the inquiry begins and ends with the text if it is clear and unambiguous. *McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th Cir. 2008). The TCPA itself does not define the term "call," which is a "request, demand, or command, [especially] to come or assemble." Call, Black's Law Dictionary (12th

ed. 2024). This definition makes clear that a "call" is distinguished from other communications such as a "lesson" or "message" by the meaning it conveys, not the form it takes. The Ninth Circuit has already held that the term refers to both oral and written communications. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir. 2009) (explaining that the "ordinary, contemporary, common meaning" of the "call" is "to communicate or try to get into communication with a person by a telephone" (internal quotation marks and citation omitted)). [1]

**\*3** This common-sense interpretation is confirmed by the purpose and structure of the TCPA, which was enacted to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers." S. Rep. No. 102-178, at 1 (1991). The core of section 227(c) is its prohibition of certain "telephone solicitations," which are defined by the statute as "the initiation of a telephone call or message *for the purpose of* encouraging the purchase or rental of[ ] ... property, goods, or services." 47 U.S.C. § (a)(4), (c)(1) (emphasis added). This language makes clear that Congress was more concerned with the purpose of the telephone communications it proscribed in the TCPA than the form in which those communications are transmitted. *See Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024) ("The purpose of a text or call determines whether it qualifies as a telephone solicitation[.]").

Given Congress's stated goal "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," 47 U.S.C. § 227(c)(1), it strains belief to suggest that Congress silently determined that such oral messages were more invasive or objectionable than written ones. *See also Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 799 (9th Cir. 2017) ("When Congress passed the [TCPA] it sought to protect individuals against invasions of privacy, in the form of unwanted calls (and now text messages) using automatic telephone dialing systems."). Defendant's invitation to inject a distinction between written and oral telephone solicitations is contrary both to the remedial bent of the TCPA and precedent. *See, e.g., Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' ...."); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 985–86 (9th Cir. 2023) ("We have held that the receipt of unsolicited phone calls or text messages in violation of the TCPA is 'a concrete injury in fact sufficient to confer Article III standing.' " (citation omitted)); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) ("Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients."); *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1040 (N.D. Cal. 2017) ("A text message is a 'call' within the meaning of the TCPA.").

Defendant nonetheless seeks to overcome the plain meaning of the statute by suggesting that the FCC, in implementing regulations pursuant to section 227(b) authority to proscribe certain calls made using automatic telephone dialing systems, somehow ratified Defendant's interpretation of the term "call" in section 227(c) as being limited to voice calls. Mot. at 8. In 47 C.F.R. § 64.1200(a)(9), the FCC specifically explained that "the term 'call' includes a text message, including a short message service (SMS) call." According to Defendant, "by limiting this definition and intent to regulate text messages outlined in Section 64.1200(a), the FCC clearly indicated that, unless otherwise specified, a 'call' does not include a 'text message' or 'SMS message.' " Mot. at 8. This tortured reasoning provides no basis to depart from the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage.

To begin with, the Court disagrees with the premise that, by defining "call" with reference to section 227(b) the FCC somehow signaled its position that the term "call" has a different meaning in section 227(b) and section 227(c), an interpretation which in any case would be disfavored by failing to give consistent meaning to the same term. *See United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023) ("[A] word or phrase is presumed to bear the same meaning throughout a text ...."). Moreover, it is unsurprising that the FCC first articulated its interpretation of "call" with reference to section 227(b) because that provision, which relates to autodialer and robocall prohibitions, uses the standalone term "call" much more extensively. It makes sense that the FCC first defined the term "call" with respect to section 227(b) because the term is more directly relevant. In any case, even if the FCC had intended to make this distinction, it could not rewrite the statute contrary to the text's plain meaning—as the Supreme Court has recently instructed, courts have an independent constitutional duty to construe the terms of the TCPA independent of the FCC's regulations. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 162 (2025).

**\*4** In short, nothing in the text, structure, or purpose of the TCPA suggests the distinction between written and oral communications that Defendant urges the Court to adopt. The Court concludes that a "telephone call" as used in 47 U.S.C. § 227(c) encompasses the types of text messages Plaintiff complains of.

### B. Allegations Set Forth in the Complaint

To state a claim under the TCPA, a plaintiff must allege that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). A plaintiff establishes direct liability under the TCPA by pleading that the defendant itself actually sent the offending telephone communication. *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. 2014), *aff'd*, 577 U.S. 153 (2016). On the other hand, "[a] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship ... between the defendant and a third-party caller." *Id.* at 879. Defendant argues that the factual allegations contained in the complaint fail to plausibly establish that Defendant sent the text messages directly or through a third party. Mot. at 10–11. The Court agrees.

The complaint does not plead sufficient facts to plausibly allege that Defendant was the party directly responsible for sending the alleged improper communications. Despite Plaintiff's conclusory allegation that the text messages were sent by Defendant, *see* Compl. ¶ 19, the complaint provides no factual details plausibly suggesting that Defendant actually sent them. There is no discussion, for example, of any investigation Plaintiff conducted to form the understanding that Defendant operated the separate phone numbers from which these messages were sent. Similarly, while alleging that "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA," *id.* ¶ 39, the complaint fails to allege any agency relationship or identify any third parties that could have sent the text messages. Such "unadorned labels" are insufficient as a matter of law to allege any agency relationship. *Armstrong v. Investor's Bus. Daily, Inc.*, No. 18-cv-182134-MFW, 2018 WL 6787049, at \*1 (C.D. Cal. Dec. 21, 2018).

Agreeing with Defendant that the complaint fails to allege direct or vicarious liability, the Court turns to Defendant's argument that the complaint should be dismissed without leave to amend. Mot. at 12. Defendant argues that "granting leave to amend would be futile as there is no indication that Plaintiff could cure these fundamental deficiencies through further amendment." *Id.* at 13. The Court disagrees. While the Court finds that amendment would be futile if the Court had agreed with Defendant's first argument that section 227(c) does not apply to text messages, for the reasons above, the Court concludes that section 227(c) does apply to text messages. Amending the complaint to provide additional factual allegations concerning the circumstances in which the text messages were sent and the identities of any third parties may be sufficient to state a claim for relief under TCPA and would assist the parties in clarifying the legal issues in this case. Moreover, there is no indication of any undue delay, bad faith on the part of Plaintiff, or undue prejudice to Defendant, and this would be the first time Plaintiff has amended the complaint.

### IV. ORDER

**\*5** For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Defendant's motion to dismiss is GRANTED.

(2) The complaint is DISMISSED WITH LEAVE TO AMEND. Defendant shall have twenty-eight days from the date of this order to file an amended complaint. Amendment is limited to curing the factual deficiencies identified in this order. No new claims or parties may be added without leave of court.

### All Citations

Slip Copy, 2025 WL 2856295

## Footnotes

1    The *Satterfield* court's conclusion was based in part on *Chevron* deference. *Id.* at 1041. Although *Chevron* has since been overruled, the Supreme Court has instructed that precedents relying on *Chevron* remain fully intact. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.