No *Shepard's* Signal™
As of: July 7, 2026 3:19 PM Z

## *Pero v. Brown-Daub Chevrolet of Nazareth*

United States District Court for the Eastern District of Pennsylvania

June 17, 2026, Decided; June 17, 2026, Filed

CIVIL ACTION NO. 25-7016

**Reporter**
2026 U.S. Dist. LEXIS 134498 *; 2026 LX 377290; 2026 WL 1747214

CATHERINE PERO, individually and on behalf of all others similarly situated v. BROWN-DAUB CHEVROLET OF NAZARETH

## Core Terms

*text message*, telephone, message, telephone *call*, telephone solicitation, unwanted, deference, phone

**Counsel:** **[*1]** For CATHERINE PERO, individually and on behalf of all others similarly situated, Plaintiff: ERIC LECHTZIN, LEAD ATTORNEY, ANDREW J. LAPAT, Edelson Lechtzin LLP, Newtown, PA.

For BROWN-DAUB CHEVROLET OF NAZARETH, Defendant: JAMES J. SCANLON, Norris McLaughlin, P.A., Allentown, PA; MICAH BROWN, Norris McLaughlin, Allentown, PA.

**Judges:** TIMOTHY J. SAVAGE, J.

**Opinion by:** TIMOTHY J. SAVAGE

## Opinion

## MEMORANDUM OPINION

### Savage, J.

The threshold issue in this case is whether a ***text message*** is a "telephone ***call***" for purposes of *Section 227(c) of the Telephone Consumer Protection Act (TCPA)*, which prohibits telephone solicitations to numbers on the National Do Not ***Call*** Registry (DNCR). Considering the statutory language and the Federal Communications Commission's (FCC) regulations and interpretations, we conclude that ***text messages*** are ***calls*** for purposes of *Section 227(c) of the TCPA*.

Plaintiff Catherine Pero brought this putative class action against defendant Brown-Daub Chevrolet of Nazareth for violating *Section 227(c) of the TCPA*.[1] Pero alleges she received multiple unwanted ***text messages*** from Brown-Daub on her cell phone number which was registered on the DNCR. Brown-Daub moves to dismiss, arguing that the ***TCPA*** regulates telephone ***calls*** and not ***text messages***.

### Factual Background

In 2021, Pero registered her phone number with the DNCR, a national **[*2]** list of persons who do not want to receive unsolicited telemarketing messages.[2] In October 2024, Pero gave Brown-Daub her number to receive information about trucks for sale.[3] She later opted out of receiving texts.[4] After Brown-Daub had initially confirmed that she was unsubscribed,[5] a Brown-Daub

---

[1] *Section 227(c)(5)* provides a private right of action for a person who "has received more than one telephone ***call*** within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed[.]" *47 U.S.C.A. § 227(c)(5)*.

[2] Compl. ¶¶ 12-13, ECF No. 1.

[3] *Id.* ¶ 14.

[4] *Id.* ¶ 16.

[5] *Id.* ¶ 17.

Anthony Paronich

employee overrode her opt-out request.[6] She received six unwanted texts from January 8, 2025 to March 28, 2025,[7] and an additional two undated texts.[8]

Pero claims a ***text message*** alerts and disturbs her.[9] Additionally, she contends the texts are an ongoing nuisance, an invasion of her privacy, and a distraction.[10] Pero claims the texts violated *Section 227(c) of the TCPA*.

**Analysis**

The FCC includes ***text messages*** within the ambit of prohibited telephone communications. For years, applying *Chevron* deference, which directed courts to defer to an agency's interpretation of a statute, courts relied on the FCC's determination that ***text messages*** were ***calls*** for purposes of the ***TCPA***.

*Chevron* deference has been abolished. *Loper Bright Enters. v. Raimondo, 603 U.S. 369, 412, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024)*. When conducting statutory interpretation, courts are no longer obligated to defer to an agency's interpretation. *Id. at 413*. Instead, they must exercise their independent judgment. *Id. at 412*.

Although they are no longer **[*3]** bound by an agency's interpretation, courts must respect it. *Id. at 394*. Courts may still consider an agency's interpretations because those interpretations are the product of a "body of experience and informed judgment." *Id. at 394* (quoting *Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944)*). This is especially true where, as here, Congress explicitly directs an agency to implement

the goals of the statute. *See id. at 413* ("[W]hen a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it.").

In *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, a case where the FCC interpreted the ***TCPA***'s definition of "telephone facsimile machine", the Supreme Court instructed district courts to use ordinary principles of traditional statutory interpretation when deciding civil enforcement proceedings. *606 U.S. 146, 168, 145 S. Ct. 2006, 222 L. Ed. 2d 405 (2025)*. Where an agency has interpreted a statute, district courts should give it appropriate respect, but they are not bound by it and need not interpret the statute the same way. *Id.*

Guided by these principles, we now decide whether a ***text message*** solicitation to a number on the DNCR violates the ***TCPA***. We begin with statutory construction.

Statutory Language

When **[*4]** interpreting a statute, we start with the text itself, giving ordinary words their ordinary meaning. *Artis v. District of Columbia, 583 U.S. 71, 83, 138 S. Ct. 594, 199 L. Ed. 2d 473 (2018)* (quoting *Moskal v. United States, 498 U.S. 103, 108, 111 S. Ct. 461, 112 L. Ed. 2d 449 (1990)*). The words of a statute are interpreted in accordance with their ordinary meaning at the time of the statute's enactment. *Wis. Cent. Ltd. v. United States, 585 U.S. 274, 284, 138 S. Ct. 2067, 201 L. Ed. 2d 490 (2018)* (quoting *Perrin v. United States, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979)*).

***Text messages*** did not exist when the ***TCPA*** was enacted.[11] Congress could not have contemplated

---

[6] *Id.* ¶ 19.

[7] *Id.* ¶¶ 19, 21-24.

[8] *Id.* ¶ 25.

[9] *Id.* ¶ 26.

[10] *Id.*

---

[11] The first ***text message*** was sent on December 3, 1992. *This Day in History*, History.com (https://www.history.com/this-day-in-history/december-3/first-sms-***text-message***-sent) (last visited June

*text messages* when it passed the **TCPA**. But, Congress intended to prohibit more than solicitations by telephone. It also included communications "by message." Clearly, the prohibition was not limited to telephone **calls**.

*Section 227(a)(4)* defines telephone solicitation as the "initiation of a telephone **call** or *message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *47 U.S.C.A. § 227(a)(4)* (emphasis added).

The telephone solicitation definition does not include **text messages** specifically. But, it is not limited to a telephone **call**. It includes solicitation by message. Congress intended to prohibit intrusive and unwanted contacts using a telephone line.

The **TCPA** does not define "telephone **call** or message." So, we must examine its meaning as it was commonly and ordinarily used when Congress **[*5]** enacted the statute in 1991. *Wis. Cent. Ltd., 585 U.S. at 284*. When the **TCPA** was enacted, "telephone" was defined as "[a]n instrument, apparatus, or device for conveying sound to a distance."[12] A "**call**" meant "[a] summons or communication by telephone; a telephone conversation."[13] "Message" was defined as "[a] communication transmitted through a messenger or other agency; an oral or written communication sent from one person to another."[14]

A **text message** is a communication (message) transmitted by a telephone (an agency). Thus, it is a "message" within the scope of the **TCPA**'s prohibition of unwanted telephone solicitations.

---

12, 2026).

[12] *Telephone*, Oxford English Dictionary (1989), https://www.oed.com/oedv2/00248465 (last visited June 12, 2026).

[13] **Call**, Oxford English Dictionary (1989), https://www.oed.com/oedv2/00031625 (last visited June 12, 2026).

[14] *Message*, Oxford English Dictionary (1989), https://www.oed.com/oedv2/00144966 (last visited June 12, 2026).

FCC Interpretation of *Sections 227(c)* and *(b)*

Congress directed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object" and to "prescribe regulations" to protect their privacy rights. *47 U.S.C.A. §§ 227(c)(1)-(2)*.

There is no doubt that Congress delegated broad power to the FCC to implement Congress's goal to protect telephone subscribers from intrusive and unwanted telephone **calls** and messages. The FCC did not intrude on Congressional prerogative or exceed its mandate. Thus, we accord its interpretation **[*6]** considerable weight in our analysis.

The FCC codified its DNCR regulations in *47 C.F.R. § 64.1200*, titled "Delivery Restrictions." The regulations provide that no person or entity shall initiate any telephone solicitation to a residential telephone subscriber registered with the DNCR. *47 C.F.R. § 64.1200(c)(2)*. A "do not **call**" registration must be honored either indefinitely, until the registration is canceled by the consumer, or until the phone number is removed by the database administrator. *Id.* A person making telephone solicitations is not liable if they can demonstrate the violation was an error and they have routine business practices for complying with the DNCR. *Id. § 64.1200(c)(2)(i)(A)-(E)*.

The FCC has clarified that the DNCR's protections extend to **text messages**. In *Targeting and Eliminating Unlawful **Text Messages**, Implementation of the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls*, the FCC "codifie[d] that the National Do-Not-**Call** (DNC) Registry's protections extend to **text messages**." *89 FR 5098-01, 2024 WL 283571 (F.R.), 5098 (Jan. 26, 2024)*. It warned that "[t]exters must have the consumer's prior express invitation or permission before sending a marketing text to a wireless

number in the DNC Registry." *Id.* at 5099. The Commission explained that the regulation was consistent with **[\*7]** court opinions and would "both deter illegal texts and make DNC enforcement easier." *Id.* Additionally, the FCC has explicitly ruled that sending ***text messages*** can violate the DNCR provisions of the ***TCPA***. *In The Matter of Emanuel "Manny" Hernandez; Click Cash Mktg., LLC; and Rock Solid Traffic, 33 FCC Rcd 12382, 2018 WL 6830220 at \*1 (F.C.C. Dec. 21, 2018)*.

In 2024, the FCC amended the regulations to clarify that *Section 227(c)* applies to any person or entity making telephone solicitations or telemarketing ***calls*** or ***text messages*** as described in the specific regulations cited above. *47 C.F.R. § 64.1200(e)*; *89 FR 5104* (Jan. 26, 2024).

The FCC has included a text in the definition of a "telephone ***call***" in regulations implementing other ***TCPA*** sections. In a regulation interpretating *Section 227(b) of the TCPA*, the FCC explained that the ***TCPA***'s prohibition on making ***calls*** using an autodialer "encompasses both voice ***calls*** and text ***calls*** to wireless numbers including, for example, short message service (SMS) ***calls***, provided the ***call*** is made to a telephone number assigned to such service." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C. Rcd. 14014, 14115 (2003)*.

The Supreme Court and lower courts have acknowledged this interpretation and have not rejected it. See *Barr v. Am. Ass'n of Pol. Consultants, Inc., 591 U.S. 610, 615 n.1, 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020)* (identifying the regulation as an example of the robocall restriction barring both automated voice ***calls*** and ***text messages***); *Gomez v. Campbell-Ewald Co., 768 F.3d 871, 874 (9th Cir. 2014)*, *aff'd*, *577 U.S. 153, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016)*; *Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952 (9th Cir. 2008)*.

The FCC issued a ruling in 2012 where it considered **[\*8]** whether a confirmation text violated the ***TCPA*** automatic dialing system prohibitions. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc. Petition for Expedited Declaratory Ruling, 27 F.C.C. Rcd. 15391, 15392 (2012)* ("*SoundBite* decision"). The Commission noted it "had concluded that the ***TCPA***'s prohibition on autodialers encompasses both voice and ***text calls***, including short ***message*** service (SMS) ***calls***," citing its 2003 regulation. *Id.*

Although this interpretation applies to *Section 227(b)*, it shows the FCC has determined that a "***text message***" is a "telephone ***call***" for purposes of the ***TCPA***. The same phrases are included in both *Sections 227(b)* and *(c)*, so we presume they have the same meaning and will conclude the interpretation applies to both sections. *See Pereira v. Sessions, 585 U.S. 198, 211, 138 S. Ct. 2105, 201 L. Ed. 2d 433 (2018)* (quoting *Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 571, 132 S. Ct. 1997, 182 L. Ed. 2d 903 (2012)*); *Cellco P'ship v. White Deer Twp. Zoning Hearing Bd., 74 F.4th 96, 105 (3d Cir. 2023)*.

When evaluating *Section 227(b)*, the Third Circuit held that the ***TCPA***'s prohibitions on using automatic dialing systems included ***text messages***. *Gager v. Dell Fin. Servs., L.L.C., 727 F.3d 265, 269 n.2 (3d Cir. 2013)*. In a footnote, the Court approvingly cited the FCC's *Soundbite* decision and the Ninth Circuit's *Satterfield* decision. *Id.* However, *Gager* predated *McLaughlin* and *Loper Bright*. It was decided before *Chevron* deference was abolished. The Third Circuit has not yet considered the issue applying statutory interpretation principles post-*Chevron*.

Six Circuits have determined that a text is a ***call***. *See Breda v. Cellco P'ship, 934 F.3d 1, 4 n.1 (1st Cir. 2019)*; *Cranor v. 5 Star Nutrition, L.L.C., 998 F.3d 686, 690 (5th Cir. 2021)*; *Keating v. Peterson's Nelnet, LLC, 615 F. App'x 365, 370 (6th*

*Cir. 2015)*; *Gadelhak v. AT&T Servs., Inc., 950 F.3d 458, 463 (7th Cir. 2020)*; *Hall v. Smosh Dot Com, Inc., 72 F.4th 983, 986 (9th Cir. 2023)*; *Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n, 127 F.4th 303, 307 n.2 (11th Cir. 2025)*.

All but one of these cases were decided while *Chevron* was alive. They all **[*9]** predated *McLaughlin*. Additionally, the *Breda, Cranor, Keating, Gadelhak*, and *Insurance Marketing Coalition* cases analyzed *Section 227(b)*, not *Section 227(c)*. Nevertheless, their reasoning is persuasive.

*Hall*, decided post-*Chevron*, considered whether the plaintiff who had received unwanted **text messages** had standing to bring an action under *Section 227(c)*. The Ninth Circuit held that the owner and subscriber of a phone number on the DNCR suffered an injury-in-fact for Article III purposes when unsolicited telemarketing **calls** or **text messages** were sent to the number. *Hall, 72 F. 4th at 985-986*.

District courts addressing this issue after *McLaughlin* have held that a text is a **call** for purposes of *Section 227(c)*. *See Wilson v. MEDVIDI Inc., 5:25-cv-03996, 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at *1, *4 (N.D. Cal. Oct. 7, 2025)* ("nothing in the text, structure, or purpose of the **TCPA** suggests [a] distinction between written and oral communications"); *Bosley v. A Bradley Hosp. LLC, 25-cv-22336, 2025 U.S. Dist. LEXIS 183986, 2025 WL 2686984, at *1, *5 (S.D. Fl. Sep. 19, 2025)* ("a **text message** constitutes a '**call**' under the **TCPA**"); *Wilson v. Skopos Fin., LLC, 6:25-cv-00376-MC, 2025 U.S. Dist. LEXIS 138638, 2025 WL 2029274, at *1, *4 (D. Or. July 21, 2025)* ("It cannot be argued in good faith that **text messages** are so categorically different from phone **calls** that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry"); *Duron v. Kings Cap. Holding LLC, 3:25-cv-00149-DCG, 2026 U.S. Dist. LEXIS 6340, 2026 WL 319779, at *1, *6 (W.D. Tex. Jan. 13, 2026)* ("the Court's

interpretation aligns with the weight of authority, confirming that **text messages** are actionable under *§ 227(c)(5)*").

Courts in this district have held that a text is a **call** for purposes **[*10]** of *Section 227(c)*. *See e.g., Newell v. Child.'s Dental Health Assocs., LLC, Civil Action No. 25-5238, 2026 U.S. Dist. LEXIS 74360, 2026 WL 927378, at *1, *9 (E.D. Pa. Apr. 6, 2026)* (Murphy, J.) ("We agree with the FCC and many courts that have considered the question that the statutory language '**calls**' includes **text messages**"); *Cole v. C/T Install America, LLC, Civil Action No. 25-3531, 2026 U.S. Dist. LEXIS 63254, 2026 WL 916582, at *1 n.1 (E.D. Pa. March 23, 2026)* (Henry, J.) ("[N]othing in the text, structure, or purpose of the **TCPA** suggests the barring of **text messages** under *§ 227(c)*...[the Court] conclude[s] that *§ 227(c)* includes **text messages** within its definition of a 'telephone **call**.'").

## Conclusion

Considering the statutory language, the FCC regulations, and the decisions of an overwhelming majority of courts, we hold that a **text message** is a **call** for purposes of *47 U.S.C. § 227(c)*. Thus, we will deny Pero's motion to dismiss.

## ORDER

**NOW**, this 17th day of June, 2026, upon consideration of Defendant's Motion to Dismiss the First Amended Complaint (Doc. No. 6), and the plaintiff's response, it is **ORDERED** that the motion is **DENIED**.

/s/ Timothy J. Savage

TIMOTHY J. SAVAGE, J.

---

**End of Document**