# EXHIBIT B

2026 WL 2741623
Only the Westlaw citation is currently available.
United States District Court,
N.D. Alabama, Middle Division.

MICHAEL CONRAD, Plaintiff,
v.
HART CONSUMER PRODUCTS, Defendant.

Case No. 4:24-cv-307-CLM
|
Filed 09/16/2026

**Attorneys and Law Firms**

Anthony Paronich, Paronich Law, PC, Hingham, MA, James Matthew Stephens, Methvin, Terrell, Yancey, Stephens & Miller, P.C., Birmingham, AL, for Plaintiff.

Christopher C. Yearout, Nick Langford, Wesley B. Gilchrist, Lightfoot Franklin & White LLC, Birmingham, AL, for Defendant.

**MEMORANDUM OPINION**

COREY L. MAZE UNITED STATES DISTRICT JUDGE

***1** Michael Conrad put his cell phone number on the National Do Not Call Registry. Yet Hart Consumer Products texted Conrad several unwanted ads for tools. So Conrad sued Hart under 47 U.S.C. § 227(c)(5). Hart seeks dismissal under Rule 12(b)(6) because, Hart says, § 227(c)(5) creates a private right of action only for unwanted telephone calls, not unwanted text messages. (Doc. 23). For the reasons explained below, the court agrees and thus **GRANTS** Hart's motion to dismiss.

**I.**

**STATUTORY BACKGROUND**

In 1991, Congress gave a private citizen the right to sue a company for unwanted "telephone solicitations" if that person "has received more than one telephone call within any 12-month period" from that company. 47 U.S.C. § 227(c)(5). Because Conrad alleges that Hart *texted* him advertisements, Hart's motion hinges on one question: Is a text message a "telephone call" under the TCPA?

While you might think the answer is a simple "no," the question has split federal district courts, thanks in part to later FCC regulations saying that text messages *are* "calls." Recently, the Seventh Circuit found that text messages are not "telephone calls" under § 227(c)(5), despite the FCC regulations, and thus affirmed the dismissal of a complaint like Conrad's. *See Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532 (7th Cir. 2026). The court explains within why it agrees with the Seventh Circuit's reading of § 227(c)(5). To do that, we look back to the age of landlines and fax machines —*i.e.*, 1991.

**A. The TCPA (1991)**

1. *Congress's findings*: In the 1980s, the continued rise of computers spawned the rise of computerized phone number lists and automatic and predictive dialers. *See, e.g.*, S. Rep. No. 102-178, at 1–2 (1991), and H.R. Rep. No. 102-317, at 10, 25 (1991). Combining these technologies resulted in "more than 300,000 solicitors call[ing] more than 18,000,000 Americans every day" by the end of the decade. Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(3), 105 Stat. 2394, 2394 ("TCPA"). Many such solicitations were "automated or prerecorded telephone calls to the home," *id.* § 2(12), which Congress deemed both "an intrusive invasion of privacy" and "a risk to public safety" when the calls tied up emergency and medical phone lines. *Id.* § 2(5).

Fax machines were also susceptible. Telemarketers would flood fax machines with text and images hawking their products, tying up lines and wasting time and toner in the process.

The States took the first crack at curbing these practices. But marketers sidestepped state statutes by operating across state lines. *Id.* § 2(7). So Congress passed the TCPA in December 1991 to curb interstate voice and fax solicitations and give the FCC the power to "adopt[ ] reasonable restrictions on automated or prerecorded calls to businesses as well as to the home, consistent with the constitutional protections of free speech." *Id.* § 2(15).

2. *The TCPA's provisions*: After naming the Act (§ 1) and stating its findings (§ 2), Congress gave the TCPA six subsections (§ 3):

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

***2** Title Definitions Restrictions on the use of automated telephone equipment Protection of subscriber privacy rights Technical and procedural standards Effect on state law Actions by States Current Code Provision 47 U.S.C. § 227(a) 47 U.S.C. § 227(b) 47 U.S.C. § 227(c) 47 U.S.C. § 227(d) 47 U.S.C. § 227(f) 47 U.S.C. § 227(g)

The court highlights in green the two subsections that created a private right of action to enforce its provisions and discusses them below. But like Congress, the court starts with the TCPA's definitions, particularly the one that differentiates between a "telephone call or message."

3. *"Call or message":* As shown by Congress's first finding, Congress passed the TCPA to curtail "[t]he use of the telephone to market goods and services to the home and other businesses[.]" TCPA, § 2(1). In other words, Congress passed the TCPA to limit unwanted "telephone solicitations," the general term Congress used throughout subsection (c). Congress defined "telephone solicitations":

> The term 'telephone solicitation' means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization.

47 U.S.C. § 227(a)(4) (highlighting added). The court highlights Congress's use of the disjunctive "initiation of a telephone call or message" here and elsewhere to highlight that Congress differentiated between calls and messages throughout the TCPA because marketers sometimes used telephones to "call" persons to encourage them to buy, while other times marketers used telephones (particularly fax machines) to "message" persons to encourage them to buy. That Congress considered calls and messages to be distinct forms of telephone solicitation is evident from subsection (d)'s "technical and procedural standards":

> It shall be unlawful for any person within the United States —
>
> (A) to initiate any communication using a telephone facsimile machine, or to make any telephone call using any automatic telephone dialing system, that does not comply with the technical and procedural standards prescribed under this subsection, or to use any telephone facsimile machine or automatic telephone dialing system in a manner that does not comply with such standards; or
>
> (B) to use a computer or other electronic device to send any message via a telephone facsimile machine unless such person clearly marks, in a margin at the top or bottom of each transmitted page of the message or on the first page of the transmission, the date and time it is sent and an identification of the business, other entity, or individual sending the message and the telephone number of the sending machine or of such business, other entity, or individual.

47 U.S.C. § 227(d)(1) (highlights added). As shown above, Congress considered automatic telephone dialing systems to make "telephone calls" and fax machines to send "message[s]." Later in subsection (d), Congress targeted phones that left "artificial or prerecorded telephone messages." 47 U.S.C. § 227(d)(3)(A). But subsection (d) did not create a private right to sue for making calls or sending messages. That right came in the preceding two provisions.

***3** First, subject to some exceptions, § 227(b) tackled marketers' use of automated telephone equipment to make calls and send messages by making it unlawful to:

- § 227(b)(1)(A): "Make any call ... using any automatic telephone dialing system or an artificial or prerecorded voice" to emergency lines (911), hospital rooms, pagers, or cell phones;
- § 227(b)(1)(B): "To initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message ...";
- § 227(b)(1)(C): To use fax machines, computers or other devices to send "an unsolicited advertisement" to a fax machine;
- § 227(b)(1)(D): To use automated telephone dialing systems to tie up two or more telephone lines at a business that uses multiple lines.

47 U.S.C. § 227(b)(1) (highlights added). After giving the FCC the power to enact regulations to implement subsection (b), *see* 47 U.S.C. § 227(b)(2), Congress then created the right to sue in state or federal court:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).[1] Notice that § 227(b)(3) imposes no minimum number of calls or messages before creating the right to sue. For example, if a private citizen received just one telephone call from an artificial or prerecorded voice (§ 227(b)(1)(B)) or received an unsolicited ad on his fax machine (§ 227(b)(1)(C)), he could sue the other party in federal court.

Section 227(c)—*i.e.*, the subsection Conrad sues under here—tasked the FCC with making rules to protect "residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). As noted, "telephone solicitations" included both calls and messages. *See* 47 U.S.C. § 227(a)(4). Subsections 227(c)(2)-(4) allowed the FCC to create a "single national database" of persons who objected to unwanted solicitations. The FCC used those subsections to create what is now referred to as the National Do Not Call Registry.

Within subsection (c)'s provisions, Congress again acknowledged that both calls and messages were a nuisance. For example, § 227(c)(3)(F) required the FCC regulations creating the DNC Registry to "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database." In other words, Congress told the FCC to prohibit persons from "making calls" and "transmitting messages" to numbers on the DNC Registry.

***4** Congress then gave private citizens the right to sue someone who violated the FCC's regulations:

A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State —

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(c)(5) (highlighting added). Conrad sues Hart under this provision, and the highlighted phrase is the genesis of the parties' disagreement. Unlike subsection (b)(3)'s creation of a private right of action, which required no number of solicitations before filing suit, subsection (c)(5) limits eligible plaintiffs to only persons who "received more than one telephone call within any 12-month period" from the defendant. Even though much of subsection (c) tasks the FCC with regulating "telephone solicitations," which again includes calls and messages, Congress gave the right to sue only to persons receiving multiple unwanted "telephone call[s]." And despite the first text message being sent one year later (1992), Congress never amended § 227(c)(5)'s private right of action to say, "received more than one telephone call <u>or text message</u>." The entire subsection reads as it did in 1991.

**B. FCC Regulations**

While Congress did not amend subsection (c) to address texts, the FCC altered its corresponding regulations over the years. Relevant here, in coordination with the FTC, the FCC created the National DNC Registry in 2003. *See* Rules & Regulations Implementing the Telephone Consumer Protection Act of

1991, Report and Order, 18 FCC Rcd 14014 (2003) ("FCC 03-153"). In FCC 03-153, the FCC presumed that wireless numbers were residential numbers and thus allowed persons to add wireless numbers to the DNC Registry. 18 FCC Rcd at 14037-39 ¶¶ 33-36. Later in FCC 03-153, when discussing 47 U.S.C. § 227(b), the FCC declared:

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules prohibit these calls, with limited exceptions, 'to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other [*sic*] common carrier service, or any service for which the called party is charged.' This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

***5** 18 FCC Rcd at 14115 ¶ 165 (highlighting added). Ever since, the FCC has treated text messages to cell phones as "telephone calls" subject to FCC regulation under 47 U.S.C. § 227(b).

In March 2024, the FCC amended 47 C.F.R. § 64.1200(e) to add "text messages" to the existing FCC regulation (47 C.F.R. § 64.1200(c)(2)) that barred a "telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations":

> the rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'

Targeting & Eliminating Unlawful Text Messages, Implementation of the TCPA of 1991, 89 Fed. Reg. 5098 (Jan. 26, 2024) (amending § 64.1200(e) to add the highlighted phrase). Combined, these FCC regulations treat text messages to cell phones the same way the FCC regulations treat automated voice calls to residential landlines. As explained below, Conrad bases his claim that Hart violated 47 U.S.C. § 227(c)(5) on these FCC regulations. *See* (doc. 1, ¶¶ 51-60).

**II.**

**CONRAD'S COMPLAINT**

1. *The facts*: Conrad uses his cell phone as his personal residential telephone. He does not use it for business. Conrad added his cell phone to the National DNC Registry in September 2023.

Despite Conrad's cell phone number being listed on the DNC Registry for 30+ days, Hart sent Conrad several Short Message Service ("SMS") messages advertising Hart tools in November and December 2023. Here are examples:

Tabular or graphical material not displayable at this time.

(Doc. 1, pp. 4-5). Conrad did not give Hart his cell phone number; he did not ask to receive these solicitations; nor did he want to receive them.

2. *The lawsuit*: So Conrad sued Hart. Conrad alleged one count, a violation of 47 U.S.C. § 227(c)(5), which as discussed, gives private citizens the right to sue for violations of the FCC's regulations implementing § 227(c). Conrad alleges that Hart's text messages violated 47 C.F.R. § 64.1200(c), which prohibits solicitations to phone numbers on the National DNC Registry, including text solicitations. *See* 47 C.F.R. § 64.1200(e) (making § 64.1200(c) applicable to "text messages to wireless telephone numbers").

Conrad seeks to raise this claim on behalf of a purported class under Rule 23. *See* (doc. 1, ¶¶ 23-50). Conrad says that his facts are typical of all class members and that his claims are "based on the same theories as are the claims of the members of the class." (*Id.*, ¶¶ 29-33).

3. *Hart's Rule 12 motion*: Hart moves for dismissal under Rule 12(b)(6), arguing that Conrad fails to plead a viable § 227(c)(5) claim because (a) a text message is not a "telephone call" and (b) a cell phone is not a "residential telephone." (Doc. 23, p. 1). Conrad counters that the TCPA's operative provisions cover "telephone solicitations," which includes "calls or messages." Both sides have offered recent opinions that have decided the issue their way. *Compare* (docs. 21, 29, 30, 32, 33) (Conrad's cases) *with* (docs. 31, 34) (Hart's cases). In sum, district courts have gone both ways, while the only Circuit Court to weigh in (*i.e.*, the Seventh) reads § 227(c)(5) to preclude a right of action to text recipients. *See Steidinger, supra.*

### III.

### STANDARD OF REVIEW

***6** Because Hart seeks dismissal under Rule 12(b), the court assumes Conrad's pleaded facts are true and determines whether those facts could prove a violation of 47 U.S.C. § 227(c)(5)—*i.e.*, the only count Conrad pleads in his complaint. Because the FCC has issued a regulation that interprets similar language in § 227(b)(1), this court "must exercise [its] independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). One year after *Loper Bright*, the Supreme Court said this about reading the TCPA: "the District Court should interpret the TCPA under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). That means "district courts in enforcement proceedings may conclude that an agency's interpretation of a statute is incorrect." *Id.* at 159.

### IV.

### SUPREME COURT & ELEVENTH CIRCUIT PRECEDENT

In his opposition, Conrad cites one Supreme Court opinion and two Eleventh Circuit opinions that he suggests are precedential holdings that text messages are "telephone calls" under the TCPA. (Doc. 25, pp. 6-7). But that suggestion goes too far.

None of the Supreme Court or Eleventh Circuit cases that Conrad cites interpreted the provision here, 47 U.S.C. § 227(c)(5). They instead stemmed from lawsuits alleging a violation of 47 U.S.C. § 227(b)(1)(A)(iii), which provides in relevant part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. § 227(b)(1)(A)(iii) (cleaned up, highlighting added). So none of the cited cases binds the court here.

That said, as the highlighted parts show, Conrad is right that each case flowed from the *assumption* that a text message was a "call to a cellular telephone service" under § 227(b)(1)(A). But it truly was an assumption. Twice the Supreme Court has interpreted this provision of the TCPA, and both times the parties and lower courts assumed that text messages fell within § 227(b)'s prohibitions. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016); *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400, n.2 (2021). Neither case turned on the question. As the cites show, the Supreme Court knew it was an assumption, and in *Duguid*, the Court pointed out that it was not deciding the issue. 592 U.S. at 400, n.2.

As for the Eleventh Circuit, it embraced the 'texts are calls' assumption years before the cases Conrad cites. In *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015), the Circuit Court matter-of-factly said: "The prohibition against auto dialed calls applies to text message calls as well as voice calls. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003) (affirming that the prohibition against automatic telephone dialing in § 227(b)(1) 'encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls')." The Circuit Court accepted the FCC's 2003 regulation and ultimately refused to contradict the FCC's treatment of "prior express consent" because to do so would violate the Hobbs Act. *Id.* at 1308. Of course, the Supreme Court later held that the Hobbs Act does not bind district courts in *McLaughlin.* More on that later.

***7** As for adopting the FCC's 2003 'texts are calls' order, however, the die was cast. Four years later, a Circuit Court panel reiterated the same acceptance of the FCC's 2003 order:

> There have been two relevant updates to the TCPA and its enforcement regime since 1991. First, in October 1992, Congress amended the TCPA to allow the FCC to exempt free-to-receive cellular calls if it so chooses. *Id.* § 227(b)(2)(C). The FCC has not done so. Second, the statute has been silent as to text messaging, for that medium did not exist in 1991. But under its TCPA rulemaking authority,

> the FCC has applied the statute's regulations of voice calls to text messages. 30 FCC Rcd. 7961, 7964 n.3, 7978–79, 8016–22 (2015); 18 FCC Rcd. 14014, 14115 (2003); *see also Campbell–Ewald Co. v. Gomez*, ––– U.S. ––––, 136 S. Ct. 663, 667, 193 L.Ed.2d 571 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."). Thus, Salcedo's complaint facially appears to state a cause of action under the TCPA as interpreted by the FCC.

*Salcedo v. Hanna*, 936 F.3d 1162, 1166 (11th Cir. 2019). In the last quoted sentence, the court said it "appears" Salcedo pleaded a claim under § 227(b), *id.*, but ultimately held that Salcedo had not suffered an injury because he only received one unwanted text message. *Id.* at 1173.

That panel decision was later reversed by the en banc decision in *Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023), the first Circuit Court case Conrad cites. In *Drazen*, the en banc court said this in a footnote:

> GoDaddy contends that Congress has been silent on 47 U.S.C. § 227(b)(1)(a)(iii)'s applicability to text messages. For the purposes of assessing our jurisdiction and without deciding the merits of the TCPA claim, we disagree and conclude that Congress appears to have targeted unwanted text messages (as well as unwanted phone messages) with the TCPA. *See Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690–91 (5th Cir. 2021); *see also, e.g., Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016) ('A text message to a cellular phone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii).').

*Id.* at 1343, n.5. But that footnote cannot carry the weight Conrad gives it. First and foremost, the en banc court expressly noted that it was not deciding the merits of whether § 227(b)(1)(a)(iii) applies to text messages, so there is no precedential holding. Plus the cited cases don't help Conrad. As explained, the Supreme Court did not decide the 'texts are calls' issue in *Campbell-Ewald* because the parties assumed it for the purpose of deciding the different question presented. As for pages 690-91 of the Fifth Circuit's opinion in *Cranor*, that Circuit Court said, "The TCPA also includes text messaging in its prohibitions on transmitting false caller ID information. *See id.* § 227(e)(1)." But Congress passed § 227(e)(1) in 2018, making it irrelevant for determining how Congress defined "telephone call" when passing §§ 227(b) and 227(c) in 1991. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 33 (2012) ("Reading Law") (Fixed-meaning canon: "words must be given the meaning they had when the text was adopted").

***8** Conrad's final Eleventh Circuit cite points to the Circuit Court again deciding whether the FCC overstepped its authority when defining "prior express consent"; this time, armed with *Loper Bright. See Ins. Mark. Coal. Ltd. v. FCC*, 127 F.4th 303 (11th Cir. 2025). Amid ruling that the FCC had overstepped its statutory authority, *id.* at 317-18, the Circuit Court made this comment that Conrad cites in a footnote:

> We use the terms 'robocalls' and 'robotexts' as shorthand for calls and texts made "using any automatic telephone dialing system or an artificial or prerecorded voice"—*i.e.*, the calls and texts that the TCPA regulates. See 47 U.S.C. § 227(b)(1)(A), (B). We note that even though the statute on its face does not mention text messages, the FCC—by regulation—has interpreted the word 'call' to include text messages. *See In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 (2003). For the ease of the reader, this opinion primarily uses the term 'robocalls' as a shorthand for 'robocalls and robotexts.'

*Id.* at 307, n.2. Of course, this footnote is not the holding of the case. It's the Circuit Court again noting that the FCC in 2003 interpreted "by regulation" text messages to be calls. *Id.*

—

In short, neither the Supreme Court nor the Eleventh Circuit has decided this issue. Instead, they have said either that (a) the parties assumed texts are calls for the purpose of that case or (b) the FCC declared texts are calls in a 2003 regulation. So this court writes on a blank slate, with a command from the Supreme Court to read the TCPA as Congress wrote it, not necessarily as the FCC reads it. *See McLaughlin, supra.*

## V.

## DISCUSSION

Hart argues that it is entitled to dismissal for either of two reasons: (a) because SMS text messages are not "telephone calls," Conrad fails to state a claim that he "received more than one telephone call within any 12-month period," as required by 47 U.S.C. § 227(c)(5), and (b) in 47 U.S.C. § 227(c)(1-2), Congress gave the FCC authority only to enact regulations to protect "residential telephone subscribers' privacy rights," and cell phones are not

"residential telephones." As explained below, the court agrees with Hart's first argument and thus needn't address the second.

Following *McLaughlin*, the court decides whether a text message is a "telephone call" under 47 U.S.C. § 227(c)(5) in two parts. First, the court interprets the TCPA using ordinary principles of statutory interpretation. Second, the court affords appropriate respect to the FCC's interpretation that a text message is a telephone call under § 227(b) by considering why the FCC reached that conclusion. In the end, the court agrees with the Seventh Circuit that a text message is not a telephone call under § 227(c)(5), and to the extent the FCC says otherwise, it is wrong. *See McLaughlin*, 606 U.S. at 159 ("district courts in enforcement proceedings may conclude that an agency's interpretation of a statute is incorrect").

**A. Ordinary Principles of Statutory Interpretation**

Courts interpret disputed statutory language "in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton Cnty*, 590 U.S. 644, 654 (2020). Or as Justice Scalia put it, courts must determine "how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." Reading Law 33.

***9** Congress enacted § 227(c) in 1991 and has not amended it since. So the relevant question is whether an ordinary, reasonable reader in 1991 would say that, if a person received multiple text messages, that person "received more than one telephone call." 47 U.S.C. § 227(c)(5). Of course, text messages didn't exist in 1991, so the question is odd at first blush. The court thus decides whether an ordinary, reasonable person in 1991 would have called the transmission of a short, text-based message by a computer to a hand-held phone to be read on that phone's screen was a "telephone call."

*McLaughlin* tells district courts to answer such questions by applying "ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." 606 U.S. at 152. The court does so below, starting with the "most fundamental semantic rule of interpretation," the ordinary-meaning canon. Reading Law 69.

1. *Ordinary-meaning canon*: "Words are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense." *Id.* Congress did not define "telephone call" in the TCPA, and nothing in the TCPA suggests that "telephone call" bears some technical sense. So the court's job is to determine what a reasonable reader of the TCPA in 1991 would understand a "telephone call" was, and what it wasn't, especially when compared to telephone "messages." *See infra* (discussion of omitted case and surplusage canons).

According to Webster's, the primary definition of the verb "call" in 1991 was "to speak in a loud distinct voice so as to be heard at a distance," and a later definition applies the word to telephones: "to get or try to get into communication by telephone." *Call*, Webster's Ninth New Collegiate Dictionary 197 (1990). Webster's primary definition of the noun "call" was "an act of calling with the voice," and a later definition applied the word to telephones: "the act of calling on the telephone." *Id.* At the same time, Webster's defined "Telephone" as "an instrument for reproducing sounds at a distance." *Id.* Putting these definitions together, a reasonable reader of the term "telephone call" in 1991 would have understood the term to mean "the act of communicating with a person by using a device that reproduces sound to be heard at a distance." The Seventh Circuit agrees: "Thus, in 1991, a 'telephone call' referred to communication via sound." *Steidinger*, 182 F.4th at 535-36.

Hart did not use a telephone to convey sound that Conrad could hear at a distance; Hart used a platform to send text through service providers to Conrad's phone. As a result, a reasonable reader of the phrase "telephone call" in 1991 would not say that Conrad received a "telephone call" from Hart because there was no voice (real or automated) to be heard on the other side when answering the call.

A simple test proves the point. Assume you hear the text notification ding on your friend's cell phone. Would you declare, "You're getting a call!" If you did, would your friend deem you ordinary or odd? Because ordinary users have always referred to text messages as "texts" or "messages," not "telephone calls," the court cannot say that the ordinary meaning of "telephone calls" in 1991 would have included Conrad's receipt of Hart's text messages. The ordinary-meaning canon thus suggests that text messages are excluded from § 227(c)(5)'s scope.

2. *Omitted-case canon*: "Nothing is to be added to what the text states or reasonably implies. That is, a matter not covered is to be treated as not covered." Reading Law 93. As explained in the Statutory Background section, Congress defined "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

rental of, or investment in, property, goods, or services[.]" 47 U.S.C. § 227(a)(4) (highlight added). The court continues to highlight Congress's disjunctive use of "call" and "message" to show that, in 1991, Congress considered calls and messages to be distinct forms of solicitation.

***10** In subsection (c), Congress gave the FCC the ability to protect telephone subscribers' rights "to avoid receiving telephone solicitations to which they object," meaning calls *and* messages. 47 U.S.C. § 227(c)(1). As part of this authority, Congress permitted the FCC to create the National Do Not Call Registry to collect the phone numbers of subscribers "who object to receiving telephone solicitations," 47 U.S.C. § 227(c)(3), and to enact regulations that "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database[.]" 47 U.S.C. § 227(c)(3)(F). Putting that clause in the disjunctive created by § 227(a)(4), Congress said that the FCC could prohibit both "making a telephone call" and "transmitting a message" to a number on the DNC Registry.

Yet when Congress created the private right of action in subsection (c)(5), it chose not to use the more inclusive term "telephone solicitation" that it used when giving regulatory authority. Instead, Congress gave that right to a "person who has received more than one telephone call within any 12-month period[.]" The omitted-case canon requires the court to give that choice meaning. If Congress chose to give the private right of action only to persons who received "telephone calls," not "messages" or "solicitations," the court must respect that choice. "The absent provision cannot be supplied by the courts," even if we think that's what Congress would have wanted. Reading Law 94. "What the Legislature 'would have wanted' it did not provide, and that is the end of the matter." *Id.*

3. *Surplusage canon*: To nonetheless hold that the term "telephone call" encompasses text messages would violate the surplusage canon: "If possible, every word and every provision is to be given effect. None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." Reading Law 174. Particularly, deeming a text message to be a "telephone call" would duplicate the term "message" or give it no consequence.

Congress intended "call" and "message" to mean different things, otherwise Congress would not have used the terms disjunctively when defining "telephone solicitation" in § 227(a)(4). Congress used the term "message" to describe the text and images received by a fax machine, *see* 47 U.S.C. § 227(d)(1)(B), and the recording left by artificial or prerecorded voices that called a telephone. *See* 47 U.S.C. § 227(b)(1)(B), 227(d)(3)(A). Both involve scripted messages left for the recipient, not interactive voice conversations with the recipient.

Spamming fax machines is most analogous to spam text messages, as both involve the receipt of text on a telephonic device. And Congress chose to use the term "message," not "call," when writing about fax machines. For example, § 227(d)(1)(B) refers to fax machines as "send[ing] any message" and § 227(d)(2) refers to persons or entities that use fax machines as "sending the message." Putting this back into the TCPA's definition of a "telephone solicitation," Congress was saying that persons and entities used fax machines in 1991 to initiate messages, not to initiate telephone calls. And to the court's knowledge, no court has held that a person has the right to file a lawsuit under § 227(c)(5) for receiving more than one image or text message on a fax machine because no one argued that receiving a fax amounted to receiving a "telephone call."

To the contrary, the Seventh Circuit noted the distinction between calls and messages when it "conclud[ed] that modern-day text messages are better understood as messages, not calls." *Steidinger*, 182 F.4th at 536-37. Focusing on the same provisions about fax machines, the Seventh Circuit said:

> ***11** Section 227(d)(1), about fax messages, is particularly instructive. The statute defines a telephone facsimile machine as equipment that can 'transcribe text or images, or both, from paper into an electronic signal,' or vice versa (*i.e.*, transcribe text or images from an electronic signal onto paper). 47 U.S.C. § 227(a)(3). And it articulates standards for 'send[ing] any message' via a telephone facsimile machine 'us[ing] a computer or other electronic device.' *Id.* § 227(d)(1)(B). Section 227(d)(1) shows that—though Congress in 1991 didn't contemplate text messages—it did consider something analogous, *i.e.*, text-based communications sent by an electronic device through a telephone line. And it regarded those communications as messages, not calls.

*Id.* at 537. To lump text messages sent from computers through service providers to telephones in with "telephone calls," rather than "messages" like text transmitted via fax machines, would erase the line drawn by Congress in 1991, thus violating the surplusage canon.

4. *Fixed-meaning canon*: While analogous, SMS text messaging technology is not the same technology that sent messages via fax in 1991. And some may argue (and the FCC may agree) that the term "telephone call" expanded as the technology expanded. But "words must be given the meaning they had when the text was adopted." Reading Law 78. Otherwise, unelected agency heads and judges could make "an end run around popular government" to change laws. *Id.* (quoting William H. Rehnquist, *The Notion of a Living Constitution*, 54 Tex. L. Rev. 693, 706 (1976)). So even if an annoyed consumer justifiably wants to expand Congress' 1991 understanding of "telephone calls" to capture modern annoyances, or the FCC does so on the frustrated consumer's behalf, courts cannot expand "telephone calls" under § 227(c)(5) to include text-based messages sent by computers through service providers rather than the real-time transmission of sound through telephones because the latter was the People's understanding of the term "telephone call" when their Congress created the private right of action in 1991.[2]

The Supreme Court made this point when reversing lower courts' expansion of § 227(a)(1)'s definition of "autodialer" to allow private citizens to sue Facebook under § 227(b)(3) for using a messaging system that did not rely on the use of "random or sequential number generators" to store, produce, or dial telephone numbers. *See Duguid*, 592 U.S. at 402. Duguid argued that the Court should treat the TCPA as an "agile tool" that courts adapt as technology "adapts to change." *Id.* at 408-09. But the Supreme Court unanimously rejected Duguid's call, noting that "Duguid's quarrel is with Congress, which did not define an autodialer as malleably as he would have liked." *Id.* The same is true here; Conrad's quarrel is with Congress, which has not amended § 227(c)(5)'s private right of action since the proliferation of solicitations via text message.

—

To sum up, both the timing of the TCPA and "ordinary principles of statutory interpretation" indicate that a reasonable reader of the TCPA would not have understood the phrase "received more than one telephone call" to include the receipt of multiple computer-generated text messages on a cellular phone. *McLaughlin*, 606 U.S. at 152.

**B. Appropriate Respect to FCC Interpretation**

***12** Having interpreted the TCPA's text without agency input, the court now "affords appropriate respect to the agency's interpretation" by looking at the reason FCC regulations treat text messages as telephone calls.[3] *Id.* Conrad points to the 2024 amendment to 47 C.F.R. § 64.1200(e), which added "or text messages" to the list of communications covered by the FCC regulations that apply to the National DNC Registry:

> the rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'

47 C.F.R. § 64.1200(e).[4]

The FCC adopted this rule in FCC 23-107, in which the FCC gave these reasons for adding "or text messages" to § 64.1200's coverage:

- To deter illegal texts and make enforcement easier;
- To be consistent with its 2003 decision to add wireless phone numbers to the DNC Registry;
- To eliminate the anomaly of treating text messages as calls in the part of the rules governing § 227(b) but not in the rules governing § 227(c);
- To be consistent with a Ninth Circuit opinion and some district court opinions that treated text messages as telephone calls; and,
- Consumer commenters and State Attorneys General favored the move.

FCC 23-107, ¶¶ 26-28. Of course, "[c]ommenters generally support this step," *id.* ¶ 27, is not a valid form of interpretation. And the other four reasons pose the same problem as the Eleventh Circuit statements the court outlined in Part IV: Everyone accepted what the FCC said as law under the Hobbs Act and allowed the consequences to perpetuate without deciding whether the FCC's original interpretation was lawful. But that deference is gone, *see McLaughlin, supra*, so the court must look back to the FCC's original 2003 decision to treat text messages as phone calls to determine whether that decision is due deference, particularly when § 64.1200(e) cites "FCC 03-153" as the parameters for treating text messages as telephone calls.

Unfortunately, the FCC did not explain in FCC 03-153 how or where it came up with the term "text calls" to loop "text messages to wireless telephone numbers" into § 227(b)'s regulatory reach. Nor did the FCC explain how a "text message" could also be a "text call" when Congress used those terms disjunctively. In fact, neither "text" nor "SMS" appears in FCC 03-153 before ¶ 165, meaning that SMS and other text messages were not mentioned as a known problem or issue in the Background section of the Report and Order. Plus, when looping "SMS calls" into ¶ 165, the FCC included a footnote that pointed to a 2002 report, in which the FCC described SMS like this:

> ***13** SMS provides the ability for users to send and receive text messages to and from mobile handsets with maximum message length ranging from 120 to 500 characters. SMS also can be used to deliver a wide range of information to mobile users, including stock prices, sport scores, news headlines, weather reports, and horoscopes. Worldwide, SMS has become increasingly popular, growing to 250 billion messages sent over wireless networks worldwide in 2001.

Implementation of Section 6002(b) of the Omnibus Budget Reconciliation Act of 1993; Annual Report and Analysis of Competitive Market Conditions with Respect to Commercial Mobile Services, Seventh Report, 17 FCC Rcd 12985, 13051 (2002) (highlighting added). Notice that the same order the FCC points to as evidence that SMS messages are "telephone calls" labels SMS as the sending of "messages," not calls.

Because the FCC provided no interpretive basis for calling SMS messages—which, again, means Short *Messaging* Service—telephone calls either in 2003 or in 2023, the court declines to give the FCC's regulations the weight needed to overcome the court's conclusion about § 227(c)(5)'s plain meaning using common sense and canons of interpretation. *See McLaughlin*, 606 U.S. at 155.

Consumers find spam text messages annoying. But they do not call text messages "telephone calls." They would not have used that term to describe the receipt of an SMS text in 1991, and they do not use it today.

Because Conrad fails to plead that he received more than one telephone call from Hart in a 12-month period, he fails to plead facts needed to prove a necessary element of his § 227(c)(5) claim. As a result, the court must dismiss his claim. But that doesn't leave Conrad without recourse; he could voice his concerns about Hart's texts to the FCC or his State Attorney General and allow them to enforce the TCPA against Hart. *See* 47 U.S.C. § 503(b)(1)(B) (creating forfeiture liability for any company that willfully violates 47 C.F.R. § 64.1200(c)); 47 U.S.C. § 227(g)(1) (giving State Attorneys General the right to sue persons engaged in "a pattern or practice of telephone calls or other transmissions to residents of that State" in violation of the TCPA or the FCC's regulations). While Conrad may not like those options, as the Supreme Court put it in *Duguid*, Conrad's "quarrel is with Congress, which did not define [a telephone call] as malleably as he would have liked." 592 U.S. at 409. Until Congress broadens § 227(c)(5)'s right of action to the receipt of "text messages" or all "text solicitations," Conrad has no personal right of action in this court.

## CONCLUSION

For these reasons, the court **GRANTS** Hart's Rule 12(b)(6) motion and will enter a separate order that dismisses Conrad's complaint with prejudice and closes the case.

**DONE and ORDERED** on September 16, 2026.

### All Citations

Slip Copy, 2026 WL 2741623

—

### Footnotes

1 In *Mims v. Arrow Fin. Servs. LLC*, 565 U.S. 368 (2012), the Supreme Court held that the TCPA's permissive language for bringing a claim in state court did not preclude bringing the same claim in federal court under federal question jurisdiction.

2 While Congress has not amended § 227(c)(5) since 1991, it has addressed text messages in later acts that amended or expanded the TCPA. In 2010, Congress added § 227(e) to prohibit false or misleading Caller ID information, then

in 2018 extended the prohibition to "text messages," which it defined to ***exclude*** "a real-time, two-way voice or video communication,"47 U.S.C. § 227(e)(8)(C). But the court does not rely on these 2009 or 2018 Acts, or any other subsequent TCPA amendment, because no post-1991 Act (a) applies to § 227(c)(5) or (b) informs us what reasonable persons *in 1991* understood a "telephone call" to be.

3 As the Seventh Circuit noted, the FCC "has not engaged in rulemaking to define the term [telephone call] for the purpose of § 227(c)(5)." *Steidinger*, 182 F.4th at 538. In other words, no FCC rule or regulation says that a private citizen can sue the sender of unwanted SMS text messages in state or federal court. So it's questionable whether there is an agency interpretation to "afford[ ] appropriate respect" in this case. *See McLaughlin*, 606 U.S. at 152. But for the sake of argument, the court treats the FCC's regulations about text messages as though the FCC would apply them to the question presented.

4 In his complaint, Conrad points to § 64.1200(e) as making violations of § 64.1200(c) applicable to text messages sent to cell phones. (Doc. 1, ¶ 55). But the addition of text messages to § 64.1200(e) did not take effect until March 26, 2024, 3+ months after Hart sent Conrad the text messages that Conrad complains of. (Doc. 1, ¶ 12). Because the court finds the FCC's regulations do not control, regardless of their effective date, the court pushes the timing point no further.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.