# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASHER BRONSTIN, individually and on behalf of all others similarly situated, | : | Civil No. 1:25-CV-01083 |
| Plaintiff, | : | |
| v. | : | |
| HAPPY CABBAGE ANALYTICS, INC. | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendant Happy Cabbage Analytics ("Happy Cabbage"). Plaintiff Asher Bronstin has adequately pleaded standing, and the court has jurisdiction to hear the case. However, Section 227(c)(5) of the Telephone Consumer Protection Act ("TCPA") does not provide a cause of action for the receipt of unwanted text messages. Accordingly, for the reasons that follow, the motion to dismiss will be denied under Rule 12(b)(1) and granted under Rule 12(b)(6).

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Bronstin brings this action against Happy Cabbage for violations of the TCPA. The facts alleged in Bronstin's complaint are as follows.

Happy Cabbage is a marketing company specializing in the cannabis industry. (Doc. 9, ¶ 22.) Happy Cabbage offers text message marketing, allowing

for cannabis companies to advertise cannabis products through texts to prospective customers. (*Id.*) Bronstin registered his personal cellular phone number on the National Do Not Call Registry on February 23, 2021, and his number has been on the Registry ever since. (*Id.* ¶ 28.) On March 9, 2022, Bronstin received a text message from a telephone number ending in 6060, which was registered to Happy Cabbage. (*Id.* ¶ 32.) The text message advertised various cannabis goods offered by The Spot. (*Id.* ¶ 30, 34.) Bronstin responded "STOP" after receiving the March 9, 2022 text, and he received a reply indicating he would be unsubscribed. (*Id.* ¶ 34.) Despite this, Bronstin received another text from a telephone number ending in 6372 on March 17, 2023. (*Id.* ¶ 35.) The telephone number ending in 6372 was also registered to Happy Cabbage. (*Id.* ¶ 32.) The second text again advertised cannabis products offered by The Spot. (*Id.*) Bronstin alleges that Happy Cabbage sent the texts, since both telephone numbers were registered to Happy Cabbage. (*Id.* ¶¶ 32–33, 36.)

Bronstin filed his amended complaint against Happy Cabbage on behalf of himself and as a class representative for all others similarly situated on August 19, 2025. (Doc. 9.) Bronstin brings his claim under § 227(c)(5) of the TCPA, which provides a private cause of action to individuals on the National Do Not Call Registry who receive unwanted telemarketing calls in violation of the regulations promulgated under § 227(c). (*Id.* ¶ 3.) After receiving extensions to respond to

Bronstin's complaint, Happy Cabbage filed a motion to dismiss, an accompanying declaration, and a brief in support of its motion on November 4, 2025. (Doc. 20, 20-1, 21.)

Happy Cabbage provides additional facts in its declaration. Happy Cabbage asserts that while the telephone numbers used to send the texts were registered in its name, the numbers were used by Happy Cabbage's client, The Spot. (Doc. 20-1, ¶ 7–8.) Happy Cabbage asserts that The Spot agreed to use Happy Cabbage's services to facilitate text communications with customers who consented to such texts. (*Id.* ¶ 10–11.) According to Happy Cabbage, it exercised no control over how The Spot communicated with customers beyond requiring that customers consent to receiving texts. (*Id.* ¶ 13.) A client utilizing Happy Cabbage's texting platform drafted each text, selected who would receive it, and selected when to send the texts. (*Id.* ¶ 12.) Finally, Happy Cabbage contends it has no record of a "STOP" request from Bronstin. (*Id.* ¶ 15.)

Happy Cabbage brings its motion to dismiss under Rules 12(b)(1) and 12(b)(6). Happy Cabbage first argues that Bronstin lacks standing and his complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. (Doc 21, pp. 6–11.)[1] Alternatively, Happy Cabbage argues Bronstin's complaint should be dismissed under Rule 12(b)(6) for failure to state a claim. (*Id.*

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

at pp. 11–21.) Bronstin filed a brief in opposition to the motion on December 5, 2025. (Doc. 31.) Happy Cabbage filed a reply brief on December 19, 2025. (Doc. 32.) Thus, this motion is ripe for disposition.

## STANDARD OF REVIEW

### A. Rule 12(b)(1) Motion To Dismiss For Lack Of Subject Matter Jurisdiction

The court, in determining whether it has subject-matter jurisdiction, must decide "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (quoting *Licata v. U.S. Postal Serv.*, 33 F.3d 259, 260 (3d Cir. 1994)). Rule 12(b)(1) challenges may be "facial" or "factual." *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack challenges whether jurisdiction has been properly pled and requires the court to "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891.) Conversely, when a defendant sets forth a factual attack on subject-matter jurisdiction, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case. . . . 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself

the merits of jurisdictional claims.'" *Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000) (quoting *Mortensen*, 549 F.2d at 891).

Happy Cabbage's standing challenge is a factual challenge under Rule 12(b)(1), because Happy Cabbage disputes Bronstin's factual allegations via its signed declaration. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (finding the defendant's Rule 12(b)(1) challenge to be factual because the defendant submitted with its motion to dismiss a signed declaration disputing the facts alleged in the complaint). Thus, the court may "weigh the evidence and satisfy itself whether it has power to hear the case." *Carpet Group Int'l*, 227 F.3d at 69.

**B. Rule 12(b)(6) Motion To Dismiss For Failure To State A Claim**

Under Rule 12(b)(6), in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a

complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n. 7 (3rd Cir. 2020).

## DISCUSSION

### C. Happy Cabbage's 12(b)(1) Motion To Dismiss For Lack Of Jurisdiction Will Be Denied Because Bronstin Has Sufficiently Pleaded The Elements Of Standing.

Happy Cabbage first argues Bronstin's complaint should be dismissed for lack of subject matter jurisdiction because Bronstin lacks standing to pursue his claim against Happy Cabbage. (Doc. 21, pp. 6–11.) A plaintiff must prove three elements to establish standing: (1) the plaintiff must have suffered an injury in fact; (2) the plaintiff's injury must be fairly traceable to the defendant's conduct; and (3) a favorable decision must be likely to redress the plaintiff's injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Happy Cabbage contests the second element, arguing that Bronstin's injury is not fairly traceable to Happy Cabbage's conduct. (Doc. 21, pp. 7–11.) More specifically, Happy Cabbage argues Bronstin's injury was caused by the "independent action" of a third party "not before the court", an entity called The Spot. (*Id.* at pp. 8–9.) Happy Cabbage

states that it merely provided a platform for its client, The Spot, to draft the texts and send them to Bronstin, and that The Spot is responsible for sending the disputed texts, not Happy Cabbage. (*Id.* at p. 10.)

Standing analysis must focus on whether the plaintiff is the right party to bring the particular claim, not whether the plaintiff has sued the right defendant. *See Davis v. Wells Fargo*, 824 F.3d 333, 338 (3d Cir. 2016). Whether the plaintiff has sued the right defendant is a merits question, not a jurisdictional standing question. *Id.* at 338. Courts within the Third Circuit have considered *Davis* in rejecting jurisdictional standing challenges where the defendant argued that the plaintiff sued the incorrect party. *See*, *e.g.*, *Bimbo Bakeries USA, Inc. v. Rubio*, 771 F. Supp. 3d 584, 589 (E.D. Pa. 2025) (noting that *Davis* has cautioned against "determining whether a plaintiff has sued the proper defendant as a matter of standing"); *Sierra Est. of Romagosa v. Trafigura Trading LLC*, No. 22-366-JLH-CJB, 2024 WL 4104130, at *6 (D. Del. Sept. 6, 2024) (finding that a dispute over whether a defendant can be held liable for the conduct at issue is a merits question and cannot be resolved through a standing challenge). Additionally, when a factual jurisdictional challenge attacks facts "at the core" of the merits of the claim, the court must find it has jurisdiction. *See Davis*, 824 F.3d at 348.

Here, Happy Cabbage attacks facts "at the core" of the merits of Bronstin's claim. Bronstin's assertion that Happy Cabbage bears responsibility for sending

the disputed texts is integral to his claim, since his alleged injury arises from his receiving these texts. Happy Cabbage asserts in its declaration, however, that it is not responsible for the disputed texts. (Doc. 20-1, ¶¶ 2, 12–14.) It further asserts that it exercised no control over how The Spot utilized its texting platform. (*Id.* ¶ 13.) Happy Cabbage uses these factual allegations not only to attack facts "at the core" of Bronstin's claim, but also to argue that it is not subject to liability under the TCPA. Happy Cabbage does not argue that Bronstin is not the right plaintiff to bring the claim, but rather that Happy Cabbage is not the right defendant to be sued. These factual assertions amount to a legal argument against liability, and this is a merits challenge, not a jurisdictional one. Thus, the standing challenge fails.

Further, the authorities Happy Cabbage cites in support of its standing challenge are unpersuasive because they involve merits challenges, not jurisdictional ones. *See Sheski v. Shopify (USA) Inc.*, No. 19-CV-06858-HSG, 2020 WL 2474421, at *2–5 (N.D. Cal. May 13, 2020) (deciding a 12(b)(6) motion to dismiss for failure to state a claim); *Franklin v. Upland Software, Inc.*, No. 1-18-CV-00236-LY, 2019 WL 433650, at *2 (W.D. Tex. Feb. 1, 2019), *report and recommendation adopted*, No. 1:18-CV-236-LY, 2019 WL 2745748 (W.D. Tex. Mar. 12, 2019) (deciding a summary judgment motion); *Linlor v. Five9, Inc.*, No. 17CV218-MMA (BLM), 2017 WL 2972447, at *3–4 (S.D. Cal. July 12, 2017) (deciding a 12(b)(6) motion to dismiss for failure to state a claim). Happy

Cabbage's standing challenge is argued through a 12(b)(1) motion, not a 12(b)(6) or summary judgment motion. And courts may not consider the merits of a claim when deciding a 12(b)(1) motion. Thus, *Sheski*, *Franklin*, and *Linlor* are distinguishable as merits challenges.

To the extent Happy Cabbage makes any facial challenge to Bronstin's standing, this challenge also fails. The court considers only the allegations in the complaint when evaluating a facial challenge to jurisdiction. *See Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006). Bronstin alleges in his complaint that Happy Cabbage sent him the text messages. (Doc. 9, ¶ 33.) This allegation adequately alleges traceability. Accordingly, the court will deny Happy Cabbage's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

### D. Happy Cabbage's Rule 12(b)(6) Motion To Dismiss Will Be Granted Because Texts Are Not Calls Under § 227(c)(5) Of The TCPA.

Happy Cabbage moves to dismiss Bronstin's complaint under Rule 12(b)(6) on the grounds that text messages are not telephone calls under § 227(c)(5) of the TCPA.[2] (Doc. 21, pp. 13–16.) To plausibly allege a claim under § 227(c)(5) of the TCPA, a plaintiff must plead the receipt of "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the

[2] Happy Cabbage also briefly argues that Bronstin's complaint should be dismissed because Bronstin is not a "residential telephone subscriber" under 47 C.F.R. § 16.1200(c), which is a regulation promulgated under § 227(c) of the TCPA. (Doc. 21, pp. 12–13.) The court need not address this argument in order to resolve this motion, and it declines to do so.

regulations prescribed under [§227(c)]". 47 U.S.C. § 227(c)(5). Courts across the nation have split on whether texts messages are telephone calls under § 227(c)(5).[3] The Seventh Circuit recently held that text messages are not telephone calls under § 227(c)(5). *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 540 (7th Cir. 2026). Because the court finds the Seventh Circuit's reasoning persuasive, and the plain text of the statute does not support Bronstin's interpretation, the court will grant Happy Cabbage's motion to dismiss under Rule 12(b)(6).

---

[3] *Compare*, *e.g.*, *Rebecka Miller v. S. Brown & Assocs., Inc.*, No. 2:26-CV-01480-MWC-SSC, 2026 WL 2855518, at *4 (C.D. Cal. Sept. 22, 2026) (holding that text messages are telephone calls under § 227(c)(5) of the TCPA); *Pero v. Brown-Daub Chevrolet of Nazareth*, No. CV 25-7016, 2026 WL 1747214, at *5 (E.D. Pa. June 17, 2026) (same); *Newell v. Children's Dental Health Assocs., LLC*, No. CV 25-5238, 2026 WL 927378, at *9 (E.D. Pa. Apr. 6, 2026) (same); *Rubin v. Staples, Inc.*, No. 2:25-15515 (WJM), 2026 WL 881651, at *6 (D.N.J. Mar. 31, 2026) (same); *Wilson v. Easy Spirit, LLC*, No. 3:25-CV-112 (SFR), 2026 WL 884170, at *6 (D. Conn. Mar. 31, 2026) (same); *Rabbitt v. Rohrman Midwest Motors, Inc.*, No. 25 C 11312, 2026 WL 851279, at *1 (N.D. Ill. Mar. 27, 2026) (same); *Cole v. C/T Install Am., LLC*, No. CV 25-3531, 2026 WL 916582, at *1, n.1 (E.D. Pa. Mar. 23, 2026) (same); *with*, *e.g.*, *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 540 (7th Cir. 2026) (holding that text messages are not telephone calls under § 227(c)(5) of the TCPA); *Radvansky v. 1st Class Med.*, No. 25-CV-03796-PAB-STV, 2026 WL 2858562, at *3 (D. Colo. Sept. 23, 2026) (same); *Conrad v. Hart Consumer Prod.*, No. 4:24-CV-307-CLM, 2026 WL 2741623, at *13 (N.D. Ala. Sept. 16, 2026) (same); *Card v. R.J. Reynolds Tobacco Holdings, Inc.*, No. 1:26-CV-433, 2026 WL 2673068, at *3 (M.D.N.C. Sept. 3, 2026) (same); *Rush v. Selectquote Ins. Servs., Inc.*, No. 6:26-CV-03157-MBB, 2026 WL 2495598, at *4 (W.D. Mo. July 30, 2026) (same); *James v. Smarter Contact, Inc.*, 828 F. Supp. 3d 1367, 1373 (M.D. Fla. 2026) (same); *Richards v. Fashion Nova, LLC*, No. 1:25-CV-01145-TWP-MKK, 2026 WL 847568, at *4–5 (S.D. Ind. Mar. 26, 2026) (same); *Richards v. Shein Distribution Corp.*, No. 1:25-CV-01385-TWP-TAB, 2026 WL 847584, at *4–5 (S.D. Ind. Mar. 26, 2026) (same); *Radvansky v. 1-800-Flowers.com, Inc.*, No. 1:25-CV-2811-TWT, 2026 WL 456919, at *5 (N.D. Ga. Feb. 17, 2026) (same); *Lopresti v. Nouveau Essentials Mktg. LLC*, No. 5:25-CV-00282-CEM-PRL, 2026 WL 964758, at *2, 6 (M.D. Fla. Feb. 26, 2026) (same); *Stockdale v. Skymount Prop. Grp., LLC*, 825 F. Supp. 3d 622, 625–27 (N.D. Ohio 2026) (same).

At the outset, the court appreciates that the Federal Communications Commission ("FCC") has interpreted calls under the TCPA to include text messages. *See In re Rules and Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 (July 3, 2003). The court, however, is not bound by the FCC's interpretation. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 606 U.S. 146, 155 (2025); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024). Instead, the court must independently interpret the meaning of § 227(c)(5) "under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *McLaughlin*, 606 U.S. at 155.

Thus, the court first looks to the plain meaning of § 227(c)(5) as understood at the time of its enactment. *See Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 564 (2020). Bronstin argues that text messages fit within the definition of "call" in 1991, the year Congress enacted the TCPA. (Doc. 31, pp. 8–9.) In 1991, "call" meant to "to try to get into communication by telephone". *Steidinger*, 182 F.4th at 536 (quoting *Call*, Webster's Ninth New Collegiate Dictionary). However, § 227(c)(5) prohibits solicitation not through all calls, but through "telephone calls". 47 U.S.C. § 227(c)(5). Additionally, the word "telephone" appears in the definition of "call". *See Steidinger*, 182 F.4th at 536 (quoting *Call*, Webster's Ninth New Collegiate Dictionary). It is therefore necessary to consider the

definition of "telephone" in 1991. In 1991, telephone meant "an instrument for reproducing sounds at a distance". *Steidinger*, 182 F.4th at 536 (quoting *Telephone*, Webster's Ninth New Collegiate Dictionary). Thus, a "telephone call" referred to communication through sound. *Id.* Text messages do not typically produce sounds, so they do not fit within the plain meaning of "telephone call" in § 227(c)(5).

When the meaning of a statute is plain, courts typically need not engage in any further analysis. *See In re Visteon Corp.*, 612 F.3d 210, 226 (3d Cir. 2010), *as amended* (July 15, 2010), *as amended* (July 19, 2010) ("The language Congress chose when crafting a statute must be considered first and foremost, and if plain and unambiguous, it must be credited, except in 'rare and exceptional circumstances'") (quoting *Rubin v. U.S.*, 449 U.S. 424, 430 (1981)). Thus, the analysis could end here. Because of the national split in authority on this issue, however, the court will address the remainder of the parties' arguments.

Bronstin argues that text messages are calls under § 227(c)(5) because they are a form of telephone solicitation, which § 227(c) of the TCPA specifically regulates. This argument is unavailing. "Telephone solicitation" is defined in § 227(a)(4) as "the initiation of a *telephone call or message* for advertising purposes. 47 U.S.C. § 227(a)(4) (emphasis added). Section 227(c)(5), however, only provides a private cause of action for individuals receiving unwanted

"telephone calls", not unwanted messages or unwanted telephone solicitations. *Id.* § 227(c)(5). The court presumes that because Congress used different terms in each of these sections, it intended different meanings. *See Steidinger*, 182 F.4th at 536. Thus, the court interprets § 227(c)(5) to provide a narrow remedy for only one kind of telephone solicitation – telephone calls. *See id.*

Congress's decision to amend other provisions of the TCPA to include text messages is similarly instructive. In 2018, Congress amended § 227(e) to include text messages. *See* Consolidated Appropriations Act, sec. 503(a), § 227(e)(1), (8), 132 Stat. 348, 1091–92 (2018). Congress could have, but did not, amend § 227(c)(5) to include text messages. When Congress decides to add specific language to one section of a statute but not another, courts typically understand the resulting "difference in language to convey a difference in meaning." *Bittner v. U.S.*, 598 U.S. 85, 94 (2023). Happy Cabbage argues that Congress's amending of § 227(e) to include text messages, but not § 227(c)(5), indicates that Congress did not intend § 227(c)(5) to encompass text messages. (Doc. 21, p. 15.) This court agrees.

Bronstin's cited case law is also unpersuasive. For example, Bronstin cites to *Campbell-Ewald Co v. Gomez*, 577 U.S. 153 (2016), for the proposition that texts are calls under the TCPA. (Doc. 31, p. 10.) *Campbell-Ewald* stated: "a text message to a cellular telephone, it is undisputed, qualifies as a call within the

compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), as revised (Feb. 9, 2016). The Court later clarified, however, that this statement was a mere assumption since neither party had contested the issue. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 400, n.2 (2021) (citing *Campbell* and stating that the court presumes texts are calls under the TCPA "without considering or resolving that issue" because neither party contested it).

Bronstin's reliance on pre-*Loper Bright* decisions that give the FCC substantial deference are likewise unpersuasive. (*See* Doc. 31, pp. 8–9) (citing *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949 (9th Cir. 2009); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269, n.2 (3d Cir. 2013)). Both *Satterfield* and *Gager* rely on agency deference to conclude that texts are calls under § 227(b) of the TCPA. *See Satterfield*, 569 F.3d at 949 ("Giving deference to the Federal Communications Commission ("FCC") . . . we hold that it is reasonable to interpret 'calls' under the TCPA to include both voice calls and text messages"); *Gager*, 727 F.3d at 269, n.2 (3d Cir. 2013) (citing *Satterfield* and an FCC declaratory ruling for the assertion that texts are calls under the "autodialing provisions" of § 227(b) of the TCPA). *Satterfield* expressly states that the TCPA is "silent as to whether a text message is a call within the Act". *Satterfield*, 569 F.3d at 954. Additionally, both *Satterfield* and *Gager* interpreted § 227(b) of the TCPA,

not § 227(c)(5) at issue here. *See id.* at 952; *Gager,* 727 F.3d at 269, n.2. Thus, *Satterfield* and *Gager* are inapplicable to the present case.

Nevertheless, the court acknowledges the weight of authority that has held that texts are calls under the TCPA. *See Pero v. Brown-Daub Chevrolet of Nazareth*, No. CV 25-7016, 2026 WL 1747214 at *4 (E.D. Pa. June 17, 2026) ("Six Circuits have determined that a text is a call.") (collecting cases). The vast majority of these cases, however, like *Satterfield* and *Gager*, were decided prior to *Loper-Bright* and *McLaughlin* and deferred to FCC guidance. While the court has considered the persuasive authority reaching the conclusion that texts are calls under the TCPA, the mere number of decisions reaching that conclusion is not dispositive. Here, because most of the prior authority granted deference to the FCC that this court may no longer grant, the court is not persuaded.

Finally, Bronstin's appeal to evolving technology concerns is unavailing. Bronstin asserts that a plain meaning interpretation of § 227(c)(5) leaves consumers "at the mercy of advancing technology". (Doc. 31, p. 13.) Legitimate as these concerns may be, they "cannot overcome the clear commands of [§ 227(c)(5)'s] text and the statutory context". *Steidinger*, 182 F.4th at 539 (quoting *Duguid*, 592 U.S. at 406). Congress can amend this statutory provision to include text messages.

While neither party raised the following issues, the court notes several other considerations that support a narrower reading of § 227(c)(5). Plaintiffs in similar cases have argued that subsequent revisions of § 227(b) of the TCPA supports interpreting § 227(c)(5) to include text messages. *See id.* Congress has indicated in these revisions that § 227(b) may apply to text messages. *See id.* (citing Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, sec. 10(a), § 227(i), 133 Stat. 3274, 3284 (2019) (discussing "a call made or a text message sent in violation of subsection (b))"). Under the doctrine of consistent usage, words in a statute must be read with their "view in place of the overall statutory scheme". *Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 320 (2014). Thus, these plaintiffs argue that § 227(c), like § 227(b), should also apply to text messages.[4]

The consistent usage doctrine, however, "readily yields to context". *See id.* For example, § 227(b) protects consumers from unwanted calls made to both pagers and telephones. *See* 47 U.S.C. § 227(b)(A)(iii). Section § 227(c), however, protects only against telephone calls. *See id.* § 227(c). Congress's express

---

[4] While Bronstin does not specifically address the subsequent revisions of § 227(b) in his brief in opposition, he does argue that § 227(b)'s protections against calls to "paging services" are proof that Congress understood "calls" to include written text, and that it would be "incongruous" to refuse to extend this protection to text messages. (Doc. 31, p. 11.) This argument appears to employ the same consistent usage argument employed by other plaintiffs regarding the revisions to § 227(b).

inclusion of pagers in § 227(b) but not in § 227(c) can be interpreted as evidence of Congress's intent to omit pagers and their modern-day equivalents from § 227(c)(5). *See Richards v. Fashion Nova, LLC*, No. 1:25-CV-01145-TWP-MKK, 2026 WL 847568, at *3 (S.D. Ind. Mar. 26, 2026).

Moreover, the private cause of action enumerated in § 227(b) is broader than the one in § 227(c). *See Steidinger*, 182 F.4th at 539. Section § 227(b)(3) provides a cause of action for any violation of the subsection or the regulations promulgated under it. *See* 47 U.S.C. § 227(b)(3). Section 227(c)(5) provides a cause of action only for the receipt of more than one "telephone call within any 12-month period". *See id.* § 227(c)(5). The difference in language between the sections therefore supports different interpretations for each section, i.e., a narrower interpretation of § 227(c)(5)'s private cause of action. *See Steidinger*, 182 F.4th at 539. Accordingly, the court finds that the consistent usage doctrine does not justify interpreting § 227(c)(5) to apply to text messages.

Section 227(d)(1) of the TCPA provides further evidence that text messages are not calls under § 227(c)(5), but are instead messages. *Steidinger*, 182 F.4th at 536–37. Section 227(d)(1) prohibits *messages* sent via a "telephone facsimile machine" using a "computer or other electronic device". *See* 47 U.S.C. § 227(d)(1) (emphasis added). This shows that, while text messages did not exist in 1991, Congress contemplated something similar – "text-based communications"

sent via an electronic device through a telephone line. *Steidinger*, 182 F.4th at 537. Congress refers to these text-based communications in § 227(d)(1) as messages, not calls. *See id.*; § 227(d)(1).

Plaintiffs in similar cases have also argued that Congress has adopted the FCC's interpretation that text messages are telephone calls under the TCPA. *See Steidinger*, 182 F.4th at 539. These plaintiffs argued that Congress was aware the FCC was interpreting text messages to be telephone calls. *Id.* They argued Congress adopted the FCC's interpretation when, pre-*Loper Bright*, it amended the TCPA without changing § 227(c)(5). *Id.* This argument, however, is not persuasive. If Congress knew that courts were interpreting text messages to be telephone calls under the TCPA, there would have been no reason to amend § 227(e) of the TCPA to include text messages, which Congress did in 2018. Moreover, "when 'Congress has not comprehensively revised a statutory scheme but has made only isolated amendments . . . it is impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval.'" *Steidinger*, 182 F.4th at 539 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 292 (2001)). Thus, courts cannot infer that congressional silence regarding § 227(c)(5) amounts to congressional adoption of the FCC's interpretation with respect to this particular section of the statute.

In sum, text messages are not telephone calls under the plain language in § 227(c)(5), and the receipt of unwanted text messages therefore does not create a private cause of action under § 227(c)(5). *See Steidinger*, 182 F.4th at 540. Accordingly, the court will grant Happy Cabbage's 12(b)(6) motion to dismiss.

**E. Happy Cabbage's Motion To Dismiss Count II Of Bronstin's Complaint Is Moot.**

Lastly, Happy Cabbage argues that Count II of Bronstin's complaint should be dismissed, because Count II arises under § 227(d) of the TCPA, and § 227(d) does not provide a private cause of action. (Doc. 22, pp. 17–21; Doc. 32, pp. 12–17.) Happy Cabbage also alleges that Bronstin failed to sufficiently plead that his "STOP" request was not honored within a reasonable timeframe. (Doc. 22, pp. 17–21; Doc. 32, pp. 12–17.) Bronstin argues Count II arises under § 227(c)(5), not § 227(d), and that he sufficiently pleaded that his "STOP" request was not honored within a reasonable timeframe. (Doc. 31, pp. 17–21.) The court need not decide these issues, having ruled that both counts of Bronstin's complaint should be dismissed because text messages are not telephone calls under § 227(c)(5).

## CONCLUSION

For the foregoing reasons, Happy Cabbage's motion to dismiss under Rule 12(b)(1) will be denied, and Happy Cabbage's motion to dismiss under Rule 12(b)(6) will be granted. This case will be dismissed with prejudice as amendment of the complaint would be futile. Bronstin's claim arises from the receipt of two text messages, which do not provide a cause of action under § 227(c)(5) of the TCPA. An amended complaint could not provide any additional facts to change this legal conclusion.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: October 29, 2026